Rachel Matteo-Boehm (SBN 195492)
rachel.matteo-boehm@bryancave.com
Roger Myers (SBN 146164)
roger.myers@bryancave.com
Goli Mahdavi (SBN 245705)
goli.mahdavi@bryancave.com
BRYAN CAVE LLP
3 Embarcadero Center, 7th Floor
San Francisco, CA 94111
Telephone:  (415) 675-3400
Facsimile: (415) 675-3434

Attorneys for Plaintiff
COURTHOUSE NEWS SERVICE

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

| | |
|---|---|
| Courthouse News Service,<br><br>Plaintiff,<br><br>vs.<br><br>David Yamasaki, in his official capacity as Court Executive Officer/Clerk of the Orange County Superior Court,<br><br>Defendant. | Case No. 8:17-CV-126<br><br>**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF** |

Plaintiff Courthouse News Service ("CNS"), by and though its undersigned attorneys, alleges the following as its Complaint for Injunctive and Declaratory Relief:

**PRELIMINARY STATEMENT**

1. In May 2016, the Honorable Judge S. James Otero of this District held that CNS and other members of the press and public have a First Amendment right of timely access to new complaints that attaches upon their receipt by a court for filing. *Courthouse News Service v. Planet*, CV11-08083 SJO (FFMx), Order Granting in Part Plaintiff's Motion for Summary Judgment and Denying Defendant's Motion for Summary Judgment ("Order") 18-19 (May 26, 2016) (ECF 195). The Order also held the Court Executive Officer/Clerk of Ventura Superior Court ("VSC") had violated that right by denying access until after complaints are "processed" – because the resulting delays in access were not essential to preserve higher values nor a reasonable time, place and manner restriction – and by receiving complaints for filing after public access was terminated for the day, which created "a distinct possibility that complaints filed late in the day may not be viewable by the public until the next day." *Id.* at 20-30. The right recognized in *Planet* applies "regardless of whether courts use paper filing or e-filing systems." Judgment for Declaratory Relief and Permanent Injunction ("Judgment") 2 (June 14, 2016) (ECF 199).

2. A few courts, however, such as Orange County Superior Court ("OSC"), continue to deny access until after complaints are processed, even after being notified of the Order and Judgment in *Planet*. And OSC continues to receive complaints for e-filing after public access is terminated for the day. CNS thus brings this action against Defendant David Yamasaki, in his official capacity as Court Executive Officer/Clerk of OSC, to restrain the deprivation under color of state law of CNS's rights, privileges and immunities under 42 U.S.C. §§ 1983-1988 and the Constitution.

3. This action simply seeks the same relief granted in *Planet* – timely access to new civil unlimited jurisdiction complaints upon receipt for filing, prior to processing. As *Planet* held, it has been a longstanding tradition for both state and

2
COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF    Case No. 8:17-CV-126

federal courts to provide reporters who visit the court every day with timely access to new complaints upon their receipt by the court for filing in order to facilitate the crucial role played by the media of informing interested persons about new court cases. This access upon receipt ensures that interested members of the public learn about new civil litigation while the initiation of that litigation is still newsworthy.

4. In contrast, at OSC delays in access are routine. During the week in May 2016 before Judge Otero's Order in *Planet*, the majority of new unlimited complaints were withheld two to 12 days while being processed. Even after the Order was entered, OSC withheld about half of all new unlimited complaints received during the last three months of 2016 for between one and nine days while they were being processed.

5. Denying CNS timely access upon receipt to newly filed civil unlimited jurisdiction complaints is tantamount to sealing those records for an appreciable amount of time after filing, in violation of the rights secured to CNS by the First and Fourteenth Amendments. Having failed in its efforts to work cooperatively with Defendant Yamasaki and his predecessor to reach an amicable resolution to these delays, CNS brings this action challenging the legality of OSC's actions and seeking injunctive and declaratory relief.

## **JURISDICTION AND VENUE**

6. CNS's claims arise under the First and Fourteenth Amendments to the United States Constitution and the Civil Rights Act, Title 42 U.S.C. §§ 1983-1988. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 (federal question), 1343 (civil rights) and 2201 (declaratory relief). Defendant is subject to personal jurisdiction in this judicial district at the time this action is commenced.

7. Venue is proper in this judicial district under 28 U.S.C. § 1391(b) because, on information and belief, Defendant resides in California and is employed in this district, and because a substantial part of the events or omissions giving rise to CNS's claims occurred in this district.

## PARTIES

8. Plaintiff CNS is a California corporation with its principal place of business in Pasadena, California. A widely read news service with subscribers across the nation, CNS is similar to other news services, such as the Associated Press, except that it focuses its reporting on civil litigation in state and federal courts, from the filing of new civil actions through appellate arguments and rulings. CNS's timely and comprehensive coverage of civil litigation through its print, web and e-mailed publications has made it a go-to source of information about the nation's civil courts. CNS has more than 2,000 institutional and individual subscribers across the nation, including more than 500 in California, and its freely available website, www.courthousenews.com, is read by hundreds of thousands of people each month.

9. Defendant Yamasaki is the Court Executive Officer/Clerk of the OSC, and is sued in that official capacity. The Court Executive Officer/Clerk is responsible for, among other things, the administration of court records. Acting in his official capacity, Defendant, and those acting under his direction and supervision, is directly involved with and/or responsible for the delays in access to new complaints experienced by CNS, which acts reflect the official policy of the clerk's office as a whole. Defendant's actions, as alleged in this Complaint, are under the color of California law and constitute state action within the meaning of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983. On information and belief, Defendant's primary place of employment is in Orange County, California.

10. Defendant is sued in his official capacity only. CNS seeks relief against Defendant as well as his agents, assistants, successors, employees, and all persons acting in concert or cooperation with him or at his direction or under his control.

## FACTUAL ALLEGATIONS

11. CNS has covered OSC since 1995. Both before and after the Order and Judgment in *Planet*, CNS notified Defendant and his predecessor that their policies denied timely access to many new unlimited complaints, sometimes for several days.

But they refused to change their policies, and the denial of timely access continues.

A.     **News Reporting Activities of CNS**

12.    CNS is a nationwide news service, founded in 1990 and employing more than 240 people, most of them reporters, covering courts in all 50 states in the nation. In California, CNS currently employs 78 people, including 52 reporters and editors who cover the state and federal trial and appellate courts of California.

13.    CNS's core publications are its New Litigation Reports, which contain original, staff-written summaries of significant new civil complaints.  In California, the New Litigation Reports only cover "unlimited jurisdiction" civil complaints – that is, complaints where the amount in controversy usually exceeds $25,000 – and focus on those against business institutions, public entities, prominent individuals or other civil actions of interest to CNS's subscribers.  They do not cover family law matters, name changes, probate filings, most mortgage foreclosures, or collection actions against individuals unless the individual is famous or notorious.  For larger courts, such as OSC, reports are e-mailed to subscribers each evening and provide coverage of new complaints filed that day.

14.    CNS publishes 16 New Litigation Reports on California courts, which cover civil actions filed in all four federal district courts as well as superior courts in Alameda, Contra Costa, Fresno, Kern, Los Angeles (downtown and Santa Monica courthouses), Orange, Placer, Riverside, Sacramento, San Bernardino, San Diego, San Francisco, San Joaquin, San Luis Obispo, San Mateo, Santa Barbara, Santa Clara, Solano, Sonoma, Stanislaus and Ventura Counties.  CNS covers OSC in its *Orange County Report*, which has about 275 subscribers.

15.    Among CNS's other publications are its two print newsletters – the *Entertainment Law Digest* and the *Four District Almanac* (which includes reports on all four federal district courts in California) – and an electronic "Daily Brief," which covers published appellate rulings throughout the nation, including all U.S. Supreme Court and federal circuit decisions, as well as significant rulings from a growing

number of federal district courts (again including all four districts in California).

16. CNS also publishes a freely available website featuring news reports and commentary, which is read by hundreds of thousands of people each month. The website functions much like a daily newspaper, providing staff-written articles from around the country that rotate on and off the page on a 24-hour news cycle.

17. CNS has been credited as the original source of reporting on civil litigation matters and topics by a wide range of publications, including the *ABA Journal*, ABC News, *The Atlantic*, *Austin American Statesman*, Black Christian News Network, *California Bar Journal*, CBS News, The Daily Beast, *The Christian Science Monitor*, *The Dallas Morning News*, Forbes, Fox News, *The Guardian*, The Hill, *Houston Chronicle*, The Huffington Post, *Long Island Press*, *Los Angeles Times*, *Mother Jones*, NBC News, *New York Daily News*, *New York Magazine*, *The New York Times*, NPR, *The Orange County Register*, Politico, *The Telegraph* (UK), *Rolling Stone*, San Antonio Express-News, Slate, *Salt Lake City Tribune*, *The Washington Times*, *Women's Health Policy Report*, *U.S. News and World Report*, *USA Today*, *The Wall Street Journal*, *The Washington Post*, UPI and others. In addition, U.S., Canadian and New Zealand radio shows have interviewed CNS reporters.

18. To prepare the New Litigation Reports and identify new cases that may warrant a website article, CNS's reporters visit their assigned court each work day so they can review all the complaints received by the court for filing that day to determine which are of interest to CNS's readers. Given the nature of the coverage in the New Litigation Reports and its other news publications, including its website, any delay in the ability of a reporter to obtain and review new complaints necessarily delays CNS's ability to inform subscribers and other readers of the factual and legal allegations that the reporter has identified to be of interest to CNS's readers.

19. Many news and entertainment outlets subscribe to CNS's publications, including but not limited to the *Los Angeles Times*, *Los Angeles Business Journal*, *Pacific Coast Business Times*, *San Jose Mercury News*, *The Atlanta Journal*

*Constitution*, *The Boston Globe*, BuzzFeed, *The Dallas Morning News, Detroit Free Press*, Fox Entertainment Group, *Houston Chronicle*, *The Salt Lake Tribune*, *San Antonio News Express*, *The Wall Street Journal*, Warner Bros. and many TV stations. The Washington-based Center for Public Integrity also subscribes.

20. Among academic institutions, subscribers to CNS's New Litigation Reports include Boston College Law School, Boston University, Case Western Reserve University, Harvard Law School, MIT School of Management, UC Hastings College of Law and UCLA School of Law, among others.

21. The New Litigation Reports also have several government subscribers, including the Los Angeles City Attorney's office and the City of Santa Monica.

22. All but a few of the nation's large and mid-sized law firms subscribe to one or more of CNS's publications, as do many smaller law firms in California.

**B.   <u>There Is a Long Tradition of Timely Access to New Complaints on Receipt</u>**

23. A new complaint initiates an official governmental proceeding. In recognition of the media's crucial role in informing the public about how its government is functioning and other news of interest, there is a longstanding tradition of courts providing reporters with access to new civil complaints upon receiving them for filing, whether or not the clerical tasks associated with the intake of that complaint have been completed. This ensures that interested members of the public learn about new cases in a timely manner and while those cases are still newsworthy.

24. Accordingly, Judge Otero found that "[t]here is a long history of courts making complaints available to the media and the public soon after they are received, regardless of whether such courts use paper filing or e-filing systems." Order 18.

25. Prior to 2002, reporters for CNS and other media traditionally reviewed paper copies of newly filed complaints at OSC towards the end of the day on which they were received, regardless of whether court staff had completed administrative processing. This was (and is) the practice in many other counties in California and in cities and counties across America. Beginning about 2002, OSC began implementing

administrative procedures that delayed access until completion of processing. Although some state court clerks recently began withholding access until after processing as part of a transition to e-filing, OSC began delaying access until after processing before it adopted e-filing, and has continued to abide by that practice in its current mandatory e-filing environment.

### C.      The Value in Timely Access on Receipt Is Lost When Access Is Delayed

26.     The complaint forms the basis, or foundation, of any litigation.  It is the document by which the jurisdiction of a branch of government is invoked to use its authority and power to resolve what had previously been a private dispute.  Even if dismissed without prejudice before judicial action, the filing of an action may affect the parties' rights under rules and statutes such as Federal Rule of Civil Procedure 41(a)(1)(B) and California Code of Civil Procedure § 425.16, or may be used to extract a private settlement that would not have been possible without a pending public case.

27.     When a complaint is received by a court clerk for filing, the public – which funds the operation of the courts – is entitled to know who has invoked the jurisdiction and authority of the judicial branch and to what ends.  The identity of the parties, the subject matter and factual and legal nature of the claims, and the day of filing are all matters of public interest, and often of immediate public concern.

28.     The value of public access to complaints is lost if access is delayed until after processing.  Withholding access until a complaint is deemed sufficiently "processed" withholds from the public knowledge of the important fact that a lawsuit has been filed, who is involved and what is at stake, until such time as the court clerk determines that a complaint is ready for the public to see.

29.     Delays in access to complaints lead to errors in news reporting about those cases.  In addition, denying access to complaints when they are received for filing allows the plaintiff to control what information the public is allowed to know about a complaint because the plaintiff can limit disclosure to a single select member

of the media whom plaintiff views as likely to be sympathetic to plaintiff's perspective.

30. As Judge Otero held in *Planet*, "'[l]ogic' [therefore] demands that the qualified right of timely access must arise the moment a complaint is received by the court, rather than after 'processing' is completed." Order 19.

### D. Delays in Access at Orange County Superior Court

31. When CNS began covering OSC in 1995, the court provided reporters with a "media box" into which court staff placed complaints on the day the court received them, prior to the completion of administrative processing, which reporters could review at the end of each day. In this way, new complaints were consistently and reliably available for review by reporters in a timely fashion.

32. Beginning in 2002, OSC began slowing press access to new civil complaints, first by withholding them until the morning after they were filed, and then by withholding them until after they were docketed and scanned.

33. As a result of this change in policy and practice, access to new complaints was often delayed by four or five days. After several meetings and discussions with CNS and other media, access improved slightly but was still delayed by at least one and often two or three days.

34. In 2009, OSC stopped providing the media box of paper complaints altogether, making electronic terminals housed in the Records and Exhibits Management Unit ("Records Area") the only way to view civil court records at the courthouse.

35. OSC implemented optional e-filing in civil cases in 2010 and mandatory e-filing in 2013. E-filing has not solved the access delays, however, because the court does not make newly filed complaints available upon electronic receipt by the court and instead withholds them until court staff have completed administrative processing. As a result, there continue to be significant delays between the filing of a complaint and its being made available to the press and the public.

36. The delays caused by OSC's denial of access until after processing are exacerbated by its policy of closing the Records Area to the public each day at 4 p.m. Court staff continue processing complaints until 5, but members of the press and public cannot view any complaints received for filing and/or processed between 4 and 5 on the public access terminals until at least the next court day.

37. Moreover, electronically filed documents received by the courts in California after the close of business are deemed to be filed the next court day, unless the court provides otherwise by local rule. Cal. R. Ct. 2.250(b)(7) & 2.259(c). By local rule, OSC provides that "[e]lectronically filed documents filed prior to midnight on a court day will be deemed filed as of that day." OSC Local Rule 352. However, OSC provides no way for the press and public to see these complaints until at least the next court day, at the earliest, depending on when they are processed.

38. CNS has attempted several times to work cooperatively with Defendant and his predecessor to resolve its concerns over OSC's denial of timely access, but has been unsuccessful. In October 2010, during one of several meetings between CNS and OSC staff to discuss the issue dating back to 2003, Defendant's predecessor, Alan Carlson, conceded it was technologically feasible to provide access to new complaints promptly upon filing, but he refused to do so because, he said, the public and press have no right to access complaints until court staff have completed administrative processing and "accepted" the complaint. Further communications with OSC were equally unavailing.

39. In October 2016, following Judge Otero's rulings in *Planet*, CNS's counsel sent Carlson a letter explaining that withholding complaints until after administrative processing, and denying access after 4 p.m., were inconsistent with the recent Order and Judgment in *Planet*. CNS again asked that OSC adopt one of the various alternatives that would result in timely access, regardless of how long processing takes. A true and correct copy of CNS's counsel's correspondence is attached hereto as Exhibit A.

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF          Case No. 8:17-CV-126

40. In an October 20 response, OSC General Counsel Jeff Wertheimer informed CNS that the court believed its policy and procedures complied with the First Amendment requirements in *Planet*, but did not address the *Planet* Court's ruling that withholding access until after processing, and denying access during the very end of the court day, both violated the First Amendment. A true and correct copy of Wertheimer's response is attached hereto as Exhibit B.

41. Wertheimer's letter also did not mention that Carlson had retired as Court Executive Officer effective October 2016, to be succeeded by Yamasaki as of December 2. When CNS learned of this change, it wrote to Wertheimer on December 1 to inquire whether Yamasaki was willing to resolve the matter by adopting one of the means available to ensure timely access to new complaints "irrespective of whether they have been processed." By letter dated December 12, 2016, which CNS's counsel did not receive until December 27, Wertheimer informed CNS that "Mr. Yamasaki's recent transition to the Court Executive Officer position at our Court will not cause any changes to be made to [its] policy" or "current procedures."

42. OSC's policy and procedures of withholding complaints until after processing, and denying access after 4 p.m. each day, prevent CNS from being able to access, and thus report on, a substantial percentage of newly filed civil complaints in a timely fashion.

43. CNS tracked and compiled access data for all civil unlimited complaints filed in OSC in October, November and December 2016, noting delays between when each complaint was received by the court for filing and when the court first made it available. Of the 3,225 civil unlimited complaints filed between October 1 and December 31, 2016, nearly half (49.1%) were withheld from the press and public for at least one and up to nine days after the court received them for filing.

44. During some periods, the delays were much worse. For example, during the first two weeks of October 2016, approximately 542 complaints were received for filing by OSC, of which 425 (more than 75%) were withheld from the press and

public for at least one and up to nine days. Access varied considerably from day to day, and on many days access was even more limited than that. Of the 52 complaints received for filing on October 6, 45 (or 86.5%) could not be seen for at least one day. On October 7, 42 out of 62 complaints (close to 70%) could not be seen for at least four days. On October 12, only four of 41 complaints received for filing that day (9.8%) could be reviewed that day, while 22 (more than 53%) could not be seen for at least two days. For October as a whole, 705 of the 1,069 complaints filed that month (roughly 66%) were not available for viewing for at least one day after they were received for filing, of which 265 (nearly 25%) were not available until two to nine days after filing. While access improved somewhat during the last two months of 2016, even then OSC denied access to more than four out of every 10 complaints received during that period (880 of 2,156 unlimited complaints, or 40.8%) for between one and nine days after filing.

45. These delays have impaired CNS's ability to provide timely reporting on civil filings of public interest. To cite just three examples from last year:

- In December 2016, a former NFL player filed a class action against a medical clinic specializing in emotional and behavioral issues, alleging that the clinic's purportedly confidential and HIPAA-compliant online patient portal was not secure and allowed unprotected access to patients' personal health information. This complaint was filed on Thursday, December 1, but was withheld by the court for more than a week, until Thursday, December 8. *McBean v. Amen Clinics, et al.*, Case No. 30-2016-00891254-CU-NP-CXC.
- In November 2016, consumers brought a class action against Procter & Gamble Co., alleging that Pampers-brand baby wipes marketed as "natural clean" contained "an unnatural and potentially harmful ingredient called phenoxyethanol" that could be harmful to infants. The complaint was filed on Monday, November 14, but was withheld by the

court until Friday, November 18.  *Brenner v. Procter & Gamble Co.*, No. 30-2016-00887781-CU-BT-CXC.

- And in January 2016, a class action was filed against the City of San Juan Capistrano alleging the city overcharged residents millions of dollars for water and, when it was caught, offered refunds of only 20% of the overcharges.  The complaint was filed on Friday, January 8, at 4:02 p.m., but was withheld by the court until the following Monday, January 11.  *Daneshmand v. City of San Juan Capistrano*, No. 30-2016-00829167-CU-BC-CXC.

46. The most efficient way to provide access to newly e-filed civil complaints is to provide electronic pre-processing access via computer terminals located at the courthouse and available to the press even after the Records Area closes for the day and/or remotely online via the Internet (as the vast majority of federal district courts and a growing number of state courts do).  Other options exist, as well.  The method used to provide timely access is not the issue.  What is important is that the public and press be provided timely access to new complaints upon their receipt for filing, as required by the First Amendment.

## COUNT ONE

### Violation of U.S. Const. Amend. I and 42 U.S.C. § 1983

47. Plaintiff CNS incorporates the allegations of Paragraphs 1-46 herein.

48. Defendant's actions under color of state law, including without limitation his policy and practice of withholding newly filed civil unlimited complaints from press and public view until after administrative processing, and the resulting denial of timely access to new civil unlimited complaints upon receipt for filing, deprive CNS, and by extension its subscribers, of their right of access to public court records secured by the First Amendment to the U.S. Constitution.

49. There is no compelling or overriding interest sufficient to justify Defendant's actions resulting in the denial of timely access to new complaints under

13
COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF         Case No. 8:17-CV-126

the First Amendment. And even if an overriding or compelling interest did exist, there are far less restrictive means of achieving any such interest, and Defendant's policies and practices are not narrowly tailored to serve any such compelling interest.

50. Defendant's policies and practices, including without limitation his policy and practice of denying access to new complaints until after they are processed, also are not narrowly tailored to serve a significant governmental interest. Nor do Defendant's policies and practices leave open ample alternative channels for communication of the information. They therefore are also not reasonable time, place or manner restrictions.

51. CNS has no adequate and speedy remedy at law to prevent or redress Defendant's unconstitutional actions, and will suffer irreparable harm as a result of Defendant's violation of its First Amendment rights. CNS is therefore entitled to declaratory and both preliminary and permanent injunctive relief to prevent further deprivation of the First Amendment rights guaranteed to it and its subscribers.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Courthouse News Service prays for judgment against Defendant David Yamasaki, in his official capacity as the Court Executive Officer/ Clerk of the Superior Court of the State of California, County of Orange, as follows:

1. For preliminary and permanent injunctions against Defendant, including his agents, assistants, successors, employees, and all persons acting in concert or cooperation with him, or at his direction or under his control, prohibiting him preliminarily, during the pendency of this action, and permanently thereafter, from continuing his policies that deny CNS timely access to new civil unlimited jurisdiction complaints once they are received by the court for filing, including, *inter alia*, his practice of denying access to complaints until after administrative processing.

2. For a declaratory judgment pursuant to 28 U.S.C. § 2201 declaring Defendant's policies and practices that knowingly affect delays in access to newly filed civil unlimited complaints are unconstitutional under the First and Fourteenth

Amendments to the United States Constitution because these policies and practices constitute an effective denial of timely public access to documents that become public court records when they are received by the court for filing.

3. For an award of costs and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988; and

4. For all other relief the Court deems just and proper.

Dated: January 24, 2017

BRYAN CAVE LLP
Rachel Matteo-Boehm
Roger Myers
Goli Mahdavi

By: /s/ Rachel Matteo-Boehm
Rachel Matteo-Boehm
Attorneys for Plaintiff
COURTHOUSE NEWS SERVICE