Rachel Matteo-Boehm (SBN 195492)
rachel.matteo-boehm@bryancave.com
Roger Myers (SBN 146164)
roger.myers@bryancave.com
Katherine Keating (SBN 217908)
katherine.keating@bryancave.com
Goli Mahdavi (SBN 245705)
goli.mahdavi@bryancave.com
BRYAN CAVE LLP
3 Embarcadero Center, 7th Floor
San Francisco, CA 94111
Telephone:  (415) 675-3400
Facsimile: (415) 675-3434

Attorneys for Plaintiff
COURTHOUSE NEWS SERVICE

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

| | |
|---|---|
| Courthouse News Service,<br><br>        Plaintiff,<br><br>    vs.<br><br>David Yamasaki, in his official capacity as Court Executive Officer/Clerk of the Orange County Superior Court,<br><br>        Defendant. | Case No.  8:17-cv-00126 AG (KESx)<br><br>**RESPONSE OF PLAINTIFF COURTHOUSE NEWS SERVICE TO MARCH 22, 2017 ORDER REGARDING ADDITIONAL BRIEFING**<br><br>Courtroom:  10D, Santa Ana Division<br>Judge:        Hon. Andrew J. Guilford |

Following the March 20, 2017 hearing on CNS's motion for a preliminary injunction, on March 22, 2017 this Court issued an Order Regarding Additional Briefing (ECF No. 30) (the "Order"), which directed Plaintiff Courthouse News Service ("CNS") to provide responses by March 31, 2017 to five questions posed by the Court. In accordance with the Court's Order, CNS responds as follows:

1.     **<u>Question No. 1</u>**

Question No. 1 of the Order asks, "In Orange County, California, and nationwide, what is the distribution of CNS subscribers among law firms and lawyers, news agencies, law schools, libraries, and any other categories?"

In response, CNS states as follows:  CNS currently has 2,220 subscribers, including law firms, media entities; private companies, educational institutions and government entities.  Of those, 2,049 are law firms and lawyers; 101 are non-law firm business entities including large publicly traded companies; 29 are media entities; 18 are academic institutions, primarily law schools; 17 are government individuals or entities; 4 are non-profit entities; and 2 are libraries not affiliated with schools. Declaration of William Girdner in Response to March 22, 2017 Order Regarding Additional Briefing ("Girdner Add'l Briefing Dec."), ¶ 3.

Of CNS's 2,220 subscribers, 537 are located in California, with the breakdown by category as follows: 488 law firms and lawyers; 26 non-law firm business entities; 7 media entities; 3 academic institutions; 12 government individuals or entities; and 1 non-profit entity.  CNS has 85 Orange County subscribers.  Of those, 78 are law firms and lawyers and 7 are non-law firm business entities.  These regional categorizations are made on the basis of CNS's records, namely where the subscriber's billing office is located, which is normally the home office.  *Id*., ¶¶ 4-5.  As reflected in the answer to Question 4, below, 119 law firms that subscribe to CNS have offices in Orange County, but the Orange County office is not necessarily the billing office used in connection with the subscription.

In addition, as explained in paragraph 9 of the January 30, 2017 Declaration of William Girdner in support of CNS's motion for a preliminary injunction ("Girdner Jan. 30 Dec.") (ECF No. 11-2), among the publications CNS offers is a web site, www.courthousenews.com, that is updated daily and available to subscribers and non-subscribers alike free of charge.  CNS does not know the identities of the persons who access that web site.  However, CNS does know that many media outlets check CNS's

website, as evidenced by the number of news outlets that have cited reports on CNS's website as the original source of reporting, including *The Orange County Register* and *The Los Angeles Times*, among many others that are identified in the answer to Question 5 below.  CNS has the ability to monitor traffic on its website, and from February 26 to March 27, 2017, there were 162,868 users of CNS's website.  Girdner Add'l Briefing Dec., ¶ 6.

**2.**   **Question No. 2**

Question No. 2 of the Order asks, "What profits does CNS make from each of the categories" listed in the prior question.

In response, CNS states as follows:  CNS does not allocate costs based on subscriber category or in a manner that would allow it to reasonably approximate and allocate them based on different categories of subscribers.  Additionally, the cost and scope of individual subscriptions varies per subscriber based on any number of different variables, including but not limited to the size of the subscribing company and the number of different publications to which it subscribes, with each publication having a different cost basis.  Accordingly, CNS does not have profit information for each subscriber category.  Girdner Add'l Briefing Dec., ¶ 8.

However, in an effort to respond to Question No. 2, and subject to the limitations identified in the preceding paragraph:  (1) In 2016, CNS had net income (gross profit) of $4,290,250, as reflected in the company's 2016 profit and loss statement; (2) based on the subscriber breakdown in CNS's response to Question 1, CNS calculated the ratio of the number of subscribers in each category to the total number of CNS's subscribers, and for each category multiplied CNS's total 2016 net income by that percentage; (3) according to this calculation, on a national level law firms and lawyers accounted for $3,959,785, non-law firm business entities accounted for $195,187, media entities accounted for $56,044, academic institutions accounted for $34,786, government entities accounted for $32,853, non-profit entities accounted for $7,730, and libraries not affiliated with an academic institution accounted for

CNS RESPONSE TO ORDER REG. ADD'L BRIEFING            Case No. 8:17-cv-00126 AG (KESx)

$3,865 of CNS's 2016 profits.  In California, this calculation shows that private law firms and lawyers accounted for $943,082, non-law firm business entities accounted for $50,246, media entities accounted for $13,528, academic institutions accounted for $5,798, government entities accounted for $23,191; and non-profit entities accounted for $1,933 of CNS's 2016 profits.  In Orange County, pursuant to this calculation, private law firms and lawyers accounted for $150,739 and non-law firm business entities accounted for $13,528 of CNS's 2016 profits.  *Id.*, ¶ 9.

**3.      Question No. 3**

Question No. 3 of the Order asks, "What news agencies serving Orange County are subscribers?"

In response, CNS states as follows:  The *Los Angeles Times*, which is a CNS subscriber, has an Orange County edition.  The *Los Angeles Business Journal* subscribes, and it has a sister publication that can be accessed directly from its web site called the *Orange County Business Journal*.  In addition, several national news entities that serve Orange County as part of their larger reach also subscribe to CNS, including *The Wall Street Journal*, *Buzzfeed*, and *Variety*.  In the past this group has also included the Associated Press, the *New York Times*, and AOL Inc./Huffington Post.  Girdner Add'l Briefing Dec., ¶ 11.

**4.      Question No. 4**

Question No. 4 of the Order asks, "What law firms with an office in Orange County are subscribers?"

While CNS does not maintain records on all of the office locations of each its law firm subscribers, the following is a list of CNS subscribers that, according to their web sites, have offices in Orange County:  Aegis Law Firm; Akin Gump Strauss Hauer & Feld LLP; Aldrich & Bonnefin; Allen Matkins; Archer Norris, PLC; Atkinson, Andelson, Loya, Ruud & Romo; Baker & Hostetler LLP; Best Best & Krieger LLP; Borton Petrini, LLP; Bremer Whyte Brown & O'Meara LLP; Browner Wegner McNamara LLP; Brownstein Hyatt Farber Schreck, LLP; Bryan Cave LLP; Buchalter;

Burke, Williams & Sorensen, LLP; Calabria Law Group, PC; California Justice Alliance, APC; Call & Jensen; Callahan & Blaine; Carlson Jayakumar LLP; Carothers DiSante & Freudenberger LLP; Chapman Glucksman Dean Roeb and Barger APC; Clyde & Co.; Clyde Snow; Cox, Castle & Nicholson LLP; Crosner Legal, P.C.; Crowell & Moring LLP; Daily Aljian LLP; Dechert LLP; Dentons US LLP; Dorsey & Whitney LLP; Emilio Law Group; Enenstein Ribakoff Laviña & Pham APC; Fisher & Phillips LLP; Foran Glennon Palandech Ponzi & Rudloff PC; Freeman, Freeman & Smiley LLP; Freeman Mathis & Gary, LLP; Gibson, Dunn & Crutcher LLP; Godes & Preis LLP; Gordee, Nowicki & Blakeney LLP; Gordon Rees Scully Mansukhani, LLP; Grant Thornton LLP; Green & Hall, LLP; Green LLP; Greenberg Gross LLP; Greenberg Traurig, LLP; Harbottle Law Group; Harrison & Bodell, LLP; Haynes and Boone, LLP; Hinshaw & Culbertson LLP; Irell & Manella, LLP; Jackson Lewis P.C.; Jeffer Mangels Butler & Mitchell LLP; Johnson & Bertram, LLP; Jones Day; K&L Gates LLP; Kahana & Feld, P.C.; Karish & Bjorgum PC; Kasdan Lipp Smith Weber Turner, LLP; Katten Muchin Rosenman LLP; Kimball Tirey & St. John LLP; Kitagawa Ebert, P.C.; Klatte, Budensiek & Young-Agriesti, LLP; Klinedinst PC; Knobbe, Martens, Olson & Bear, LLP; Koeller, Nebeker, Carlson, & Haluck, LLP; Kutak Rock LLP; Latham & Watkins LLP; Lee, Hong, Degerman, Kang & Waimey; Lewis Brisbois Bisgaard & Smith LLP; Littler Mendelson, P.C.; LTL Attorneys LLP; Manatt, Phelps & Phillips, LLP; Marshack Hays LLP; McDermott Will & Emery; Michelman & Robinson, LLP; Morgan, Lewis & Bockius LLP; Morris Law Group; Musick, Peeler & Garrett LLP; Newmeyer & Dillion LLP; Nexio, PC; Nossaman LLP; Ogletree, Deakins, Nash, Smoak & Stewart, P.C.; O'Melveny & Myers LLP; One LLP; Orbach Huff Suarez & Henderson LLP; Orrick, Herrington & Sutcliffe LLP; Outwater & Pinckes, LLP; Paul Hastings LLP; Payne & Fears LLP; Pearlman, Borska & Wax, LLP; Pepper Hamilton LLP; Plante Leibovic LLP; Robinson Calcagnie, Inc.; The Rodolff Law Firm, APC; Ruggerello Law Group L.L.P.; Rutan & Tucker, LLP; Scott & Whitehead; Sedgwick LLP; Severson & Werson; Sheppard, Mullin, Richter & Hampton LLP; Shook, Hardy

CNS RESPONSE TO ORDER REG. ADD'L BRIEFING          Case No. 8:17-cv-00126 AG (KESx)

& Bacon L.L.P.; Shulman Hodges & Bastian LLP; Smith Ellison; Snell & Wilmer L.L.P.; Songstad Randall Coffee & Humphrey LLP; Stephens Friedland LLP; Stradling Yocca Carlson & Rauth, P.C.; Stuart Kane LLP; Sutton & Murphy; Theodora Oringher PC; Troutman Sanders LLP; Umber Zipser LLP; Walsworth, Franklin, Bevins & McCall, LLP; Watt, Tieder, Hoffar & Fitzgerald L.L.P.; Weintraub Tobin Chediak Coleman Grodin Law Corporation; Wesierski & Zurek, LLP; Winthrop Couchot; Wolfe & Wyman LLP; Wood Smith Henning & Berman LLP; Wright, Finlay & Zak, LLP; and Zfaty Burns.  Girdner Add'l Briefing Dec., ¶ 13.  Each of these 119 law firms subscribes to one or more CNS publications, though not all subscribe to CNS's Orange County Report.  *Id.*, ¶ 14.

**5.   Question No. 5**

Question No. 5 of the Order asks, "If available, what are some stories locally or beyond involving lives saved or demonstrating other First Amendment values?"

The response to this question has several parts.  As a preliminary matter, the Ninth Circuit has held that CNS's news reporting about civil litigation as a general matter is in furtherance of First Amendment values because it constitutes the very "informed public discussion of ongoing judicial proceedings" that is "an essential part of the First Amendment's purpose."  *Courthouse News Service v. Planet*, 750 F.3d 776, 785, 787 (9th Cir. 2014).  This includes CNS's reporting about new civil complaints and civil litigation on through trial and appeal across all of its publications, including but not limited to the Orange County Report, the web site, the Daily Brief, and the Four Districts Almanac, as well as its other publications through which CNS provides comprehensive daily reporting on civil litigation in our nation's federal and state courts. *See* January 30 Girdner Dec., ¶¶ 7-9.  As the Ninth Circuit has held, that First Amendment value is thwarted when access to a new complaint is delayed because "CNS cannot report on complaints [a court] withholds," and "the public cannot discuss the content of unlimited civil complaints about which it has no information."  *Planet*, 750 F.3d at 788.  "CNS is a 'surrogate [] for the public,'" *id.* (quoting *Leigh v. Salazar*,

677 F.3d 892, 900 (9th Cir. 2012)), and its reporting thus reflects First Amendment values as evidenced by the "newspapers, lawyers, libraries and others who rely on CNS for information," including the Ninth Circuit itself.  *Id*. at 788 & n.7.

A sampling of stories that are illustrative of the First Amendment values at issue in this case are provided in paragraphs 17 to 26 and Exhibits 1 to 11 of Mr. Girdner's accompanying declaration.  These stories include examples of CNS's Orange County Reports reporting on new complaints covering a range of issues concerning public health, safety and interest, such as claims against local businesses, schools and health care providers relating to injuries or deaths allegedly caused by their negligence or other wrongdoing, product liability claims against an auto manufacturer by an individual severely injured in a roll-over accident, and claims against the City of Tustin by a historical preservation society based on the city's alleged failure to conduct a proper environmental review in connection with a condominium project.  Girdner Add'l Briefing Dec., ¶ 17(a) & Exh. 1.

The stories also include examples of other CNS publications reporting on the judicial branch, such as *The Four Districts Almanac*, which reports on decisions from each of the four federal district courts in California, and the *Daily Brief Report*, which reports on orders and opinions issued by federal district courts and state and federal appellate courts across the nations.  *Id.*, ¶ 17(b)-(c) & Exhs. 2-3.  Also included are samples of the home page for the CNS web site, which, contains original stories reporting on a wide range of political and legal events, and examples of stories published on the web site, including stories reporting on new complaints filed at Orange County Superior Court.  *Id*. ¶ 17(d) & Exhs. 4-5.

Additionally, included in this sampling are examples of stories published by other news entities, including *The Orange County Register* – which as noted, does not subscribe to CNS – in which CNS is credited as the original source of reporting.  *Id*., ¶ 18 & Exhs. 6 & 7.  As these stories reflect, CNS effectively serves as a national pool reporter, both for its subscribers and nonsubscribers.

CNS RESPONSE TO ORDER REG. ADD'L BRIEFING          Case No. 8:17-cv-00126 AG (KESx)

The important First Amendment issues in this case are also aptly demonstrated by instances in which a civil complaint receives coverage by both CNS as well as other media entities.  By way of example, CNS has included in the sampling several instances in which both it and *The Orange County Register* covered the same Orange County Superior Court complaint.  *Id.*, ¶¶ 19-20 & Exh. 8.

Also included are examples of situations where *The Los Angeles Times* and *The Orange County Register* reported on Orange County Superior Court complaints after they were filed but before the clerk's office released them for public viewing.  *Id.*, ¶¶ 22-24 & Exhs. 9 & 10.  During this blackout period, the plaintiff and its counsel can effectively control news coverage over the new action by providing the complaint to some (but not all) of the media, all to the detriment of full public discussion, from a variety of viewpoints, about "ongoing judicial proceedings," *Planet*, 750 F.3d at 787.  Such a result is inconsistent with the "'free discussion of governmental affairs'" that the First Amendment exists to protect."  *Id.* (quoting *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 604 (1982)).

Finally, CNS includes several examples of news reporting and commentary published by CNS that does not fall into one of the above categories, but demonstrates the breadth of the reporting about our nation's courts that CNS provides, or that otherwise demonstrates First Amendment values because of its content.  Girdner Add'l Briefing Dec., ¶ 26 & Exh. 11.

Dated:  March 31, 2017

BRYAN CAVE LLP
Rachel Matteo-Boehm
Roger Myers
Katherine Keating
Goli Mahdavi

By:    /s/ Rachel Matteo-Boehm
         Rachel E. Matteo-Boehm
         Attorneys for Plaintiff
         COURTHOUSE NEWS SERVICE

8