UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| **COURTHOUSE NEWS SERVICE** <br><br> Plaintiff, <br><br> v. <br><br> **DAVID YAMASAKI** <br><br> Defendant. | **CASE NO.** <br> **SACV 17-00126 AG (KESx)** <br><br><br> **ORDER DENYING MOTION FOR A PRELIMINARY INJUNCTION** |

Plaintiff Courthouse News Service ("CNS") sued Defendant David Yamasaki in his official capacity as Court Executive Officer/Clerk of the Orange County Superior Court ("OCSC") for injunctive and declaratory relief. CNS alleges that the OCSC delays access to complaints filed in the OCSC, thus violating CNS's First Amendment rights. CNS now asks the Court to "enjoin[] Defendant from denying CNS's right of timely access to new unlimited complaints." (Dkt. No. 11-1 at 32.) Also pending before the Court is an application for leave to file an *amici curiae* brief supporting Defendant's opposition, from the Orange County Bar Association, Family Violence Appellate Project, Legal Aid of Orange County, Public Law Center, and Veterans Legal Institute. (Dkt. No. 22.) This *amici* brief may underscore the powerful arguments made on behalf of a court system facing financial struggles as it attempts to meet weighty First Amendment arguments.

1. **PRELIMINARY MATTERS**

Before diving into the merits of CNS's motion for a preliminary injunction, the Court must address the application to file *amici curiae* ("Application") and CNS's two requests for judicial notice.

CNS argues that the Application should be denied because it is untimely and because it wouldn't contribute to the Court's understanding of the relevant facts and law. The *amici curiae* brief addresses the following issues: "(1) litigants' constitutional right to privacy under both the United States and California Constitutions, (2) cases in which courts have weighed an individual's right to privacy against the public's right to access judicial information when determining whether to allow disclosure of the information, and (3) how Orange County litigants' constitutional and statutory right of privacy should be weighed in determining

whether to issue a preliminary injunction in this case." (Dkt. No. 22 at 7.) The Court GRANTS the Application under the Court's "broad discretion to permit individuals or entities to participate in a case as *amici curiae*." *Ctr. for Biological Diversity v. U.S. Bureau of Land Mgmt.*, 2010 WL 1452863, at *2 (D. Ariz. Apr. 12, 2010).

Next, there are two requests for judicial notice from CNS. In the first one, CNS asks the Court to take judicial notice of 36 declarations filed in another case within the Central District of California. (Dkt. No. 12.) In the second request for judicial notice, CNS asks the Court to take judicial notice of nine printouts from government websites. (Dkt. No. 20.) Defendant doesn't oppose CNS's first request but opposes the second request, arguing that new evidence shouldn't be submitted by a party through its reply brief. Defendant also uses this opportunity to rebut CNS's new arguments. Putting aside whether a request for judicial notice is the proper procedure here, the Court has considered all documents in the first request and has considered only rebuttal evidence from the second request.

Finally, the Court invited further briefing from both parties after the hearing on this motion for preliminary injunction. Both parties filed additional briefs and third parties filed an *amici curiae* brief supporting CNS's position.

**2.      LEGAL STANDARD**

"[A]n injunction is an equitable remedy." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311 (1982). The grant or denial of equitable relief is committed to the sound discretion of the district court. *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). A plaintiff

seeking a preliminary injunction "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008); *see also Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) (applying the *Winter* four-element test). "[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing,* carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original) (quoting 11A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2948, pp. 129–130 (2d ed.1995)).

### 3. ANALYSIS: FINDINGS OF FACTS AND LEGAL CONCLUSIONS

#### 3.1. Likelihood of Success on the Merits

CNS is a national news service that specializes in reporting on civil lawsuits. CNS currently has around 2,220 subscribers. The further briefings show that of those, the vast majority—2,049—are law firms and lawyers, while 101 are non-law firm business entities, 29 are media entities, 18 are academic institutions, 17 are government individuals or entities, 4 are non-profit entities, and 2 are libraries not affiliated with schools. Of CNS's 2,220 subscribers, 537 are located in California and 85 are located in Orange County. Of the 85 Orange County subscribers, again, the vast majority—78—are law firms and lawyers and 7 are non-law firm business entities. CNS emails litigation reports to its subscribers who, as noted, are almost all law firms and lawyers. Those litigation reports contain summaries of all significant new complaints filed in a particular court. CNS also has a website with new stories and commentary that is freely available to the public.

The OCSC receives more new civil case filings in a year than any other superior court in California, except Los Angeles County. It sits in a county that has a population of more than three million residents and is one of the largest state trial courts in the country. Almost all unlimited civil cases in OCSC are electronically filed ("e-filed"). Before making them publicly available, OCSC reviews all new e-filed civil unlimited complaints to ensure they're not subject to California laws requiring that they be sealed or maintained in confidence. Cases that are subject to such laws include but are not limited to (a) name changes under the Safe at Home Program, (b) Election Voter Registry cases, (c) False Claims Act cases, (d) cases involving a violation of Insurance Code Section 1871, and (e) sexual abuse of a minor cases. At the same time the OCSC staff review complaints for confidentiality, they also spent an additional few minutes completing the remaining steps necessary to formally accept the complaints for filing. CNS alleges, through a 42 U.S.C. § 1983 claim, that OCSC is violating CNS's First Amendment rights by delaying access to newly filed unlimited civil complaints.

"The First Amendment, in conjunction with the Fourteenth, prohibits governments from 'abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.'" *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 575 (1980) (quoting U.S. Const. amend. I). "The Supreme Court has recognized that newsgathering is an activity protected by the First Amendment.'" *Leigh v. Salazar*, 677 F.3d 892, 897 (9th Cir. 2012). "To provide this First Amendment protection, the Supreme Court has long recognized a qualified right of access for the press and public to observe government activities." *Id.* at 898. So under the First Amendment, "the public and press have a . . . right of access to pretrial documents in general." *Associated Press v. U.S. Dist. Court for Cent. Dist. of California*, 705 F.2d 1143, 1145 (9th Cir. 1983). This First Amendment right of access includes a right of "*timely* access to newly

filed complaints." *Courthouse News Serv. v. Planet* ("*Planet I*"), 750 F.3d 776, 788 (9th Cir. 2014) (emphasis added). And it is "qualified." *Leigh*, 677 F.3d at 898.

The First Amendment "right of access may be overcome by an overriding [governmental] interest based on findings that closure is essential to preserve higher values." *Planet I*, 750 F.3d at 785 n. 9 (alteration in original) (internal quotations omitted). There may be "reasonable restrictions on the time, place, or manner of protected speech, provided the restrictions 'are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information.'" *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989).

To succeed on a section 1983 claim, a plaintiff must first show that the defendant was acting under "under color of law." *See Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1538 (9th Cir. 1992). Here, it's clear that Defendant was acting in his official capacity under color of state law while implementing or enforcing the OCSC policies that delay access to newly filed complaints. So to prevail on the merits of its claim, CNS must prove that OCSC denied "timely access" to newly filed complaints. *Planet I*, 750 F.3d at 788.

OCSC argues that the public *does* receive timely access to newly filed complaints and the analysis should thus end there. And even if that access were delayed, OCSC argues that it is still proceeding constitutionally because the delayed public disclosure of newly filed unlimited civil complaints is a reasonable restriction. The Court agrees with OCSC that public access to the newly filed complaints at issue are timely here.

The parties portray the relevant statistics differently. According to CNS, almost half of the new unlimited complaints during the last three months of 2016 (over 1,500 complaints) were delayed anywhere between one and nine days. But as OCSC points out, 89% of complaints filed in their court become publicly available within 8 business hours. So the vast majority of complaints filed in OCSC are publicly available very soon after they're filed.

CNS relies on a recent ruling by Judge Otero where he held that CNS was entitled to a similar injunctive relief against the Ventura County Superior Court ("VCSC"). *Courthouse News Serv. v. Planet* ("*Planet II*"), No. CV 11-08083-SJO, 2016 WL 4157210 (C.D. Cal. May 26, 2016). But as OCSC points out, *Planet II* is distinguishable. OCSC averages more than 100 new case filings per day than VCSC. The delays that CNS complains of here are minor given the heavy caseload in the OCSC. Specifically, the delays from October to December 2016 that CNS describes look like the following when they're broken down.

| Availability (in Business Hours) | Number of Cases | Percent of Total |
|---|---|---|
| < 8 | 2,922 | 89.2% |
| 8–15 | 239 | 7.3% |
| 16–23 | 67 | 2.0% |
| 24–31 | 21 | 0.6% |
| 32–39 | 13 | 0.4% |
| 40–47 | 6 | 0.2% |
| 48–55 | 3 | 0.1% |
| 56+ | 3 | 0.1% |

| **Total:** | 3,274 | 100% |

(Dkt. No. 17 at 15–16.)

As the chart shows, only about 10 percent of the new unlimited civil complaints become publicly available after more than eight business hours. In contrast, Judge Otero held that delays of over 36 hours for 50 percent or more of newly filed complaints were untimely and thus unconstitutional in VCSC, while stating that timely access didn't mean a "same-day right of access." *Planet II*, 2016 WL 4157210 at *11. Similarly, in *Courthouse News Service v. Jackson*, delays between 24 to 72 business hours were deemed untimely. *Jackson*, No. CIV A H-09-1844, 2009 WL 2163609 (S.D. Tex. July 20, 2009)

The Court recognizes the importance of timeliness of news. And as CNS points out, the U.S. Supreme Court has made it clear that First Amendment rights apply to news organizations even when they have a profit motive, and that speech isn't transformed into commercial speech on the basis of the speaker's economic interest. *Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations*, 413 U.S. 376 (1973). But the minor delays here, compared to other cases where courts found delays to be unconstitutional, simply do not constitute a First Amendment violation.

While the conclusion of this Court just stated is based on the law, it is worthwhile to briefly review some of the policy issues that are implicated by CNS's proposals. If, as CNS would have it, these newly filed complaints were made immediately available, significant privacy interests would be at risk. Of course, if OCSC hired more staff to go through the

massive case-load more quickly, processing could occur faster with due concern for privacy interests. But the only way more staff could be hired is if more money was taken from scrimping taxpayers for the budget-strapped OCSC. Thus, tax payers would be pressed into promoting CNS's profits.

The further briefings now shed further light, sometimes not so bright, on what may be driving this lawsuit. It seems that if CNS had its way, the vast majority of those who would benefit would be those with a commercial interest in gaining quick access to newly filed complaints. While CNS properly heralds its role as a purveyor of First Amendment rights for the general public, the facts show that over 92% of CNS's subscribers are paying law firms. Law firms likely then solicit business using the information CNS provides. And, as indicated, taxpayers shouldn't have to be encumbered with helping to fulfil CNS's business goals. In sum, the interests that would be served by CNS's proposals are dwarfed by the burdens it would impose.

### 3.2. Remaining Elements

Since CNS isn't likely to succeed on the merits of its claim, it's unnecessary to analyze the remaining *Winter* prongs.

### 4. DISPOSITION

The Court GRANTS the application for leave to file *amici curiae* brief. (Dkt. No. 22.)
The Court DENIES the motion for a preliminary injunction. (Dkt. No. 11.)

IT IS SO ORDERED.

Dated: August 7, 2017

_____
ANDREW J. GUILFORD
UNITED STATES DISTRICT JUDGE