Rachel Matteo-Boehm (SBN 195492)
rachel.matteo-boehm@bryancave.com
Roger Myers (SBN 146164)
roger.myers@bryancave.com
Katherine Keating (SBN 217908)
katherine.keating@bryancave.com
Jonathan G. Fetterly (SBN 228612)
jon.fetterly@bryancave.com
BRYAN CAVE LLP
3 Embarcadero Center, 7th Floor
San Francisco, CA 94111
Telephone:  (415) 675-3400
Facsimile: (415) 675-3434

John W. Amberg
jwamberg@bryancave.com
BRYAN CAVE LLP
120 Broadway, Suite 300
Santa Monica, CA 90401-2386
Telephone:  (310) 576-2100
Facsimile:  (310) 576-2200

Attorneys for Plaintiff
COURTHOUSE NEWS SERVICE

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

| | |
|---|---|
| Courthouse News Service,<br><br>Plaintiff,<br><br>vs.<br><br>David Yamasaki, in his official capacity as Court Executive Officer/Clerk of the Orange County Superior Court,<br><br>Defendant. | Case No.  8:17-cv-00126 AG (KESx)<br><br>**BRIEF OF PLAINTIFF COURTHOUSE NEWS SERVICE IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Date:　　　　January 29, 2018<br>Time:　　　　10:00 a.m.<br>Courtroom:  10D, Santa Ana Division<br>Judge:　　　Hon. Andrew J. Guilford |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................... 1

BACKGROUND ............................................................................................ 3

I.  THIS COURT DOES NOT HAVE JURISDICTION TO HEAR THE
    MSJ BECAUSE IT RAISES THE SAME ISSUES PENDING ON
    APPEAL ............................................................................................. 6

II. THE EVIDENCE AND LAW SHOW A "LONG HISTORY" OF AND
    LOGIC IN TIMELY ACCESS TO COMPLAINTS UPON RECEIPT,
    WHICH OCSC VIOLATES BY DENYING ACCESS 1-13 DAYS
    TO 56.9% OF COMPLAINTS ............................................................. 7

    A.  As *Planet* Held, The Facts And Law Show A History Of Access On
        Receipt .................................................................................... 8

    B.  As *Planet* Held, The Facts And Law Show The Logic Of Access
        On Receipt ............................................................................. 12

    C.  Frequent Delays Of 1-13 Days Means Timely Access Is At Least
        Disputed ................................................................................. 15

III. DEFENDANT CANNOT AVOID STRICT SCRUTINY AND FAILS TO
     MEET HIS BURDEN OF PROOF TO ESTABLISH HIS PROCESS-FIRST
     POLICY SATISFIES STRICT SCRUTINY OR IS A REASONABLE
     TPM RESTRICTION ........................................................................ 17

     A.  Strict Scrutiny Applies To Blanket Access Denials Even If Limited
         In Time ................................................................................. 17

     B.  Defendant Has Not Met His Burden Under Strict Scrutiny Analysis ..... 19

     C.  Defendant Has Not Met His Burden Under TPM Analysis ................ 23

CONCLUSION ........................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Am. Dist. Tel. Co. v. Brinks,*
  380 F.2d 131 (7th Cir. 1967) ......................................................................10

*Ambat v. City & County of S.F.,*
  757 F.3d 1017 (9th Cir. 2014) ......................................................................7

*Associated Press v. Dist. Court,*
  705 F.2d 1143 (9th Cir. 1983) ............................................... 2, 15, 17, 18

*Barber v. Conradi,*
  51 F. Supp. 2d 1257 (N.D. Ala. 1999) ......................................................24

*Barth v. City of Macedonia,*
  187 F.3d 634 (6th Cir. 1999) ..............................................................18, 25

*Bay Area Peace Navy v. U.S.,*
  914 F.2d 1224 (9th Cir. 1990) ............................................................23, 24

*Bernstein v. Bernstein Litowitz Berger & Grossman LLP,*
  2016 WL 1071107 (S.D.N.Y. Mar. 18, 2016)....................................11, 12

*Bernstein v. Bernstein Litowitz Berger & Grossman LLP,*
  814 F.3d 132 (2d Cir.2016) ................................................................12, 14

*Cal. First Amendment Coal. v. Woodford,*
  299 F.3d 868 (9th Cir. 2002) ......................................................................12

*Cal-Almond v. Dep't of Agric.,*
  960 F.2d 105 (9th Cir. 1992) ......................................................................10

*City of L.A., Harbor Div. v. Santa Monica Baykeeper,*
  254 F.3d 882 (9th Cir. 2001) ........................................................................1

*Comite de Jornaleros v. City of Redondo Beach,*
  657 F.3d 936 (9th Cir. 2011) ...........................................................7, 23

*Courthouse News Service v. Brown,*
  No. 17 C 7933 (N.D. Ill. Jan. 8, 2018) ..........................................1, 2, 25

*Courthouse News Service v. Jackson,*
  2009 WL 2163609 (S.D. Tex. July 20, 2009) ...................................18

*Courthouse News Service v. Planet,*
  750 F.3d 776 (9th Cir. 2015) ..................................... 2, 3, 8, 14, 17, 18, 24

*Courthouse News Service v. Planet,*
  614 Fed. App'x 912 (9th Cir. 2015) ..............................................2

*Courthouse News Service v. Tingling,*
  2016 WL 8739010 (C.D. Cal. May 26, 2016)....................... 2, 14, 15, 156, 18

*Detroit Free Press v. Ashcroft,*
  303 F.3d 681 (6th Cir. 2002) ....................................................10

*Doe v. Public Citizen,*
  749 F.3d 246 (4th Cir. 2014) ....................................................14

*Eastman Kodak Co. v. Image Technical Servs.,*
  504 U.S. 451 (1992)...........................................................15

*G.K. Ltd. Travel v. City of Lake Oswego,*
  436 F.3d 1064 (9th Cir. 2006) ..................................................25

*Globe Newspaper Co. v. Pokaski,*
  868 F.2d 497 (1st Cir. 1989)........................... 2, 14, 15, 17, 18, 21

*Globe Newspaper Co. v. Superior Court,*
  457 U.S. 596, (1982)...........................................................17

*Griggs v. Provident Consumer Disc. Co.,*
  459 U.S. 56 (1982)............................................................6

*Grove Fresh Distribs. v. Everfresh Juice Co.,*
24 F.3d 893 (7th Cir. 1994) ...................................................................13

*IDT Corp. v. eBay,*
709 F.3d 1220 ........................................................................................11

*In re Associated Press,*
172 Fed. App'x 1 (4th Cir. 2006) ..........................................................18

*In re Charlotte Observer,*
882 F.2d 850 (4th Cir. 1989) .................................................................14

*In re Copley Press,*
518 F.3d 1022 (9th Cir. 2008) .........................................................12, 13

*In re Policy Mgmt Sys. Corp.,*
67 F.3d 296 (4th Cir. 1995) ...................................................................11

*In re Reporters Comm.,*
773 F.2d 1325 (D.C. Cir. 1985)...........................................................9, 11

*In re U.S.,*
707 F.3d 283 (4th Cir. 2013) .................................................................11

*Klein v. City of San Clemente,*
584 F.3d 1196 (9th Cir. 2009) .........................................................13, 23

*KPMG LLP v. Kanam,*
2016 WL 7494262 (D. Alaska Jan. 4, 2016) ...........................................2

*Leigh v. Salazar,*
677 F.3d 892 (9th Cir. 2012) ...............................................................8, 13

*Lugosch v. Pyramid Co.,*
435 F.3d 110 (2d Cir. 2006) ..................................................................14

*Mapp v. Ohio,*
367 U.S. 643 (1961)...............................................................................25

*McCrary v. Elations Co.,*
2014 WL 1779243 (C.D. Cal. Jan. 13, 2014) ............................................................14

*Morgan Stanley & Co. v. Couch,*
2015 WL 7271717 (E.D. Cal. Nov. 17, 2015) ....................................................1, 6, 25

*NAACP v. Richmond,*
743 F.2d 1346 (9th Cir. 1984) ..........................................................................24, 25

*Nebraska Press Ass'n v. Stuart,*
427 U.S. 539 (1976) .............................................................................................13

*Nissan Fire & Marine Ins. Co. v. Fritz Cos.,*
210 F.3d 1099 (9th Cir. 2000) ..................................................................................7

*Oregonian Publ'g Co. v. Dist. Court,*
920 F.2d 1462 (9th Cir. 1990) ................................................................... 19, 21, 22

*Phelps v. Alameida,*
569 F.3d 1120 (9th Cir. 2009) ...............................................................................16

*Phoenix Newspapers v. Dist. Court,*
156 F.3d 940 (9th Cir. 1998) ................................................................... 13, 19, 21

*Plotkin v. Pac. Tel. & Co.,*
699 F.2d 1291 (9th Cir. 1982) ..................................................................................6

*Presley v. Georgia,*
558 U.S. 209 (2010) .............................................................................................19

*Press-Enterprise v. Superior Court,*
478 U.S. 1 (1986) ................................................................... 7, 12, 13, 19

*Richmond Newspapers v. Virginia,*
448 U.S. 555 (1980) .......................................................................................17, 21

*Rosen v. Port of Portland,*
641 F.2d 1243 (9th Cir. 1981) ...............................................................................24

*S. Cal. Gas. Co. v. City of Santa Ana,*
  336 F.3d 885 (9th Cir. 2003) ...........................................................................7

*Sandefur v. Village of Hanover Park,*
  862 F. Supp. 2d 840 (N.D. Ill. 2012)........................................................25

*Seattle Times Co. v. Dist. Court,*
  845 F.2d 1513 (9th Cir. 1988) .....................................................................10

*Small v. Operative Plasterers' & Cement Masons' Int'l Ass'n Local 200,*
  611 F.3d 483 (9th Cir. 2010) .................................................................2, 6

*Standard Chartered Bank Int'l v. Calvo,*
  757 F. Supp. 2d 258 (S.D.N.Y. 2010) ....................................................14

*Sullo & Bobbitt v. Abbott,*
  2013 WL 1949835 n.7 (N.D. Tex. May 13, 2013) ...................................11

*Sullo & Bobbitt v. Milner,*
  765 F.3d 388 (5th Cir. 2014) ......................................................................11

*Thalheimer v. City of San Diego,*
  645 F.3d 1109 (9th Cir. 2011) ......................................................................7

*Times Mirror Co. v. U.S.,*
  873 F.2d 1210 (9th Cir. 1989) .....................................................................20

*Turner Broad. Sys. v. FCC,*
  512 U.S. 662 (1994).....................................................................................23

*U.S. ex rel. Dahlman v. Emergency Physicians Prof. Ass'n,*
  2004 WL 287559 (D. Minn. 2004)............................................................12

*U.S. v. Brooklier,*
  685 F.2d 1162 (9th Cir. 1982) ..................................................... 15, 17, 19, 22

*U.S. v. Cianci,*
  175 F Supp. 2d 194 (D.R.I. 2001) .............................................................21

*U.S. v. Doherty,*
  675 F. Supp. 719 (D. Mass. 1987) ................................................................... 25

*U.S. v. Edwards,*
  823 F.2d 111 (5th Cir. 1987) ......................................................................... 13

*U.S. v. Gurney,*
  558 F.2d 1202 (5th Cir. 1977) ....................................................................... 24

*U.S. v. Guerrero,*
  693 F.3d 990 (9th Cir. 2012) ................................................................. 7, 9, 19

*U.S. v. Hastings,*
  695 F.2d 1278 (11th Cir. 1983) ..................................................................... 18

*U.S. v. Wecht,*
  537 F.3d 222 (3d Cir. 2008) .......................................................................... 14

*Valley Broad. Co. v. Dist. Court,*
  798 F.2d 1289 (9th Cir. 1986) ....................................................................... 18

*Vasquez-Brenes v. Las Vegas Metro. Police Dep't,,*
  2015 WL 1268026 ................................................................................... 6, 25

*Ward v. Rock Against Racism,*
  491 U.S. 781 (1989) ...................................................................................... 23

*Wilfong v. Morris Cty. Corr. Facility,*
  2006 WL 3392938 (D.N.J. 2006) ................................................................... 25

**State Cases**

*Arpaio v. Davis,*
  210 P.3d 1287 (Ariz. App. 2009) ................................................................... 12

*Campbell v. N.Y. Evening Post,*
  245 N.Y. 320 (1927) ...................................................................................... 10

*Cowley v. Pulsifer,*
  137 Mass. 392 (1884) .............................................................................. 10, 11

*Direct Mail Serv. v. Registrar of Motor Vehicles,*
296 Mass. 353 (1937) ...................................................................................8

*Ex parte Drawbaugh,*
2 App. D.C. 404 (1894) ...............................................................................10

*H.B. Fuller Co. v. Doe,*
151 Cal. App. 4th 879 (2007) .......................................................................9

*Health v. City of Alexandria,*
11 So. 3d 569 (La. App. 2009) ....................................................................12

*Iverson v. Superior Court,*
167 Cal. App. 3d 544 (1985) .......................................................................16

*Lybrand v. State Co.,*
179 S.C. 208 (1936) .....................................................................................12

*Mokhiber v. Davis,*
537 A.2d 1100 (D.C. Cir. 1988) ..................................................................11

*Nast v. Michels,*
107 Wash. 2d 300 (1986) .............................................................................15

*NBC Subsidiary (KNBC-TV) v. Superior Court,*
20 Cal. 4th 1178 (1999) ..............................................................................11

*Newell v. Field Enters.,*
91 Ill. App. 3d 735 (1980) ...........................................................................10

*Schmedding v. May,*
85 Mich. 1 (1891) ........................................................................................11

*Shiver v. Valdosta Press,*
82 Ga. App. 406 (1950) ...............................................................................10

*Siegel v. Sun Printing,*
223 N.Y.S. 549 (App. Div. 1927).................................................................10

*State ex rel. Williston Herald v. O'Connell,*
   151 N.W.2d 758 (N.D. 1967) ...................................................................13

*State v. McMillan,*
   49 Fla. 243 (Fla. 1905) ...........................................................................8

*Upton v. Catlin,*
   31 P. 172 (Colo. 1892)............................................................................8

**Federal Rules**

Fed. R. Civ. P. 26(a)(1)-(2) .......................................................................16

**State Statutes and Rules**

Cal. Civil Proc. Code § 1005 ....................................................................16

Cal. Gov't. Code §§ 2166-2166.5 ...............................................................5

Cal. R. Ct 1.20(a) .....................................................................................16

Cal. R. Ct. 2.551................................................................................5, 20

Del. Ct. Chancery § I ..................................................................................9

Me. Sup. Jud. Ct. Admin. Order JB-05-02 § III(A)......................................9

N.M. Stat. Ann § 14-2-8(D) ........................................................................9

N.Y. Ct R. § 124.1 .....................................................................................9

65 Pa. Stat. Ann. § 67.304 ..........................................................................9

R.I. Gen. Laws § 38-2-3(4)(T) ....................................................................9

S.C. Code Ann. § 30-4-30(C) ......................................................................9

Tex. R. Jud. Admin. 12.2(d) ........................................................................9

Utah R. Jud. Admin 4-202.206(2) ................................................................9

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Other Authorities**

H. Cross, *The Right to Know* (1953)................................................................12

*History of the Civil Trial in the U.S.,*
   51 U. Kan. L. Rev. 347 (2003) .................................................................11

Schwarzer, *Cal. Prac. Guide:  Federal Civil Procedure Before Trial* (2018)........7, 15

Sward, *History of the Civil Trial in the U.S.,*
   51 U. Kan. L. Rev. 347 (2003) .................................................................11

Note, *The Agent Orange Case: A Flawed Interpretation of the Federal Rules of Civil
   Procedure Granting Pretrial Access to Discovery,*
   42 Stan. L. Rev. 1577 (1990)..................................................................10

# **INTRODUCTION**

In his rush to summary judgment before discovery is completed or the Ninth Circuit rules on the pending appeal of Plaintiff Courthouse News Service ("CNS") from the Order Denying Preliminary Injunction ("Order"), Defendant David Yamasaki filed a motion this Court lacks jurisdiction to hear.  "[F]iling of a notice of interlocutory appeal divests the district court of jurisdiction over the particular issues **involved in that appeal**."  *City of L.A., Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 886 (9th Cir. 2001).[1]  Defendant's motion for summary judgment ("MSJ") rests on the same ground on which this Court denied the injunction, and involves the same issues.  CNS's "appeal divest[s] the Court of jurisdiction over the core issue presented in [Defendant's] motion for summary judgment, which necessarily renders the Court **without jurisdiction to rule on the motion**."  *Morgan Stanley & Co. v. Couch*, 2015 WL 7271717, *3 (E.D. Cal. Nov. 17, 2015).

Even if the Court could consider Defendant's motion, a new Order granting a preliminary injunction against the clerk of Cook County Circuit Court in Chicago confirms the MSJ should be denied.  *CNS v. Brown*, No. 17 C 7933 (N.D. Ill. Jan. 8, 2018) (attached).  Like Orange County Superior ("OCSC"), Cook County allowed timely access until it began withholding e-filed complaints for processing, including confidentiality review.  *Id.* 2, 13.  Rejecting defendant's reliance on the Order in this case, *Brown* found delays in access of at least one day to 39% of "new e-filed complaints" were **not** "'**minor**'" – but instead "violate[] the First Amendment right of timely access … unless the Clerk can demonstrate" the "policy is narrowly tailored and necessary to preserve higher values" – even if 90.9% were "available within one business day."  *Id.* 3, 10, 12.  Like Defendant here, the defendant failed to carry her burden because she "made no effort to explain why it is not feasible … to adopt any one of the various methods that numerous other … courts currently use" to provide access before processing while protecting confidentiality.  *Id.* 13-14.

---

[1] Unless noted, all emphases are added and citations to internal quotations omitted.

Defendant here also failed to present evidence sufficient to carry his burden – even under the intermediate scrutiny "time, place and manner" test ("TPM"), if it could apply – and thus spends much of his MPA arguing he should not have to carry any burden on the theory the access he allows is good enough.  That theory rests on his claim he allows access within eight business hours to 95.97% of new e-filed unlimited complaints.  MPA 1.  But the difference between that and 90.9% is "immaterial," *Brown*, Memo. Op. & Order at 3 n.1, not least because the evidence shows access at OCSC was delayed in 2017 by at least *one to 13 days* to *56.9%* of e-filed unlimited complaints, Add'l Mat. Facts 114 ("AMF"), far more than in *Brown*, *CNS v. Planet*, 2016 WL 4157210, *20 (C.D. Cal. May 26, 2016) ("*Planet* Order"), or *CNS v. Tingling*, 2016 WL 8739010 (S.D.N.Y. Dec. 16, 2016) (copy at Doc. 11-1, pg 34).

Moreover, Defendant's theory that the First Amendment allows him to adopt rules in his "discretion" denying access until he deems it appropriate without satisfying any scrutiny, MPA 15, is not only inconsistent with the right of "timely access to newly filed complaints" recognized in *CNS v. Planet*, 750 F.3d 776, 788 (9th Cir. 2014) ("*Planet I*"), it was raised by Defendant's counsel and rejected in both *CNS v. Planet*, 614 Fed. App'x 912, 914-15 (9th Cir. 2015) ("*Planet II*") and the *Planet* Order *12, and raised again in Defendant's Answering Brief on appeal in this case.[2]

In March, the Court told Defendant "I would have a hard time ruling against the plaintiff at the 12(b)(6) and 56 stage." RT 49:8-9 (Doc. 66).  It certainly should not do so on this record, especially in light of the new decision in *Brown*, and cannot while the same issues are before the Ninth Circuit.  *See, e.g., KPMG LLP v. Kanam*, 2016 WL 7494262, *2 (D. Alaska Jan. 4, 2016) (citing, e.g., *Small v. Operative Plasterers' & Cement Masons' Int'l Ass'n Local 200*, 611 F.3d 483, 495 (9th Cir. 2010)).

---

[2] It also cannot be reconciled with precedent holding that "even a one to two day delay impermissibly burdens the First Amendment" *unless* it satisfies "heightened scrutiny."  *Globe Newspaper Co. v. Pokaski*, 868 F.2d 497, 505-07 (1st Cir. 1989) (following *Associated Press v. Dist. Court*, 705 F.2d 1143, 1147 (9th Cir. 1983) (following *U.S. v. Brooklier*, 685 F.2d 1162, 1169-71 (9th Cir. 1982)).

## **BACKGROUND**

CNS is not a "news aggregator," MPA 1, but the creator of original content about civil litigation, including new complaints, compiled by reporters and editors nationwide.  AMF 12-22.   It provides reports to subscribers and on its free website, and its subscribers include not only law firms, MPA 6, but libraries and many other media, for whom CNS serves as "pool reporter" for new lawsuits.  AMF 25.

Courts throughout the nation have traditionally made complaints available to journalists by the end of the day they are filed to enable timely reports on newsworthy new cases.  AMF 26-27.  With paper filings, courts often put complaints in a box for reporter review, regardless of whether they had been docketed.  AMF 27-28.  This was OCSC's practice until 2002, when it began holding complaints until after staff completed administrative processing, resulting in significant delays.  AMF 39-40.

With the advent of e-filing, many courts modified their procedures to provide timely electronic access without any action by court staff.  AMF 29.  Virtually every federal district court and numerous state courts provide access to newly e-filed complaints on receipt, prior to administrative review or processing.  AMF 142.  When OCSC announced plans for e-filing, CNS urged the court to use this technology to restore timely access.  AMF 49.  OCSC refused, but never mentioned confidentiality as the reason, instead insisting a complaint is not a public record until after staff have processed and "accepted" it, and the public and press have no right to see it until that process is completed – a position Defendant maintains to this day.  AMF 49, 68-81.

Delays continued, exacerbated by OCSC closing the access-terminal area during the last hour of the workday, so complaints processed after 4 p.m. can only be seen online by paying a per-document fee of $7.50-$40.  In October 2016, CNS renewed its request that OCSC restore pre-processing access in light of the *Planet* Order.  AMF 63.  Then-clerk Alan Carlson directed OCSC's general counsel to "send them the usual response," the gist of which was "thank you, but we're not inclined to change our processes," but did not mention confidentiality.  AMF 65.

CNS sued Defendant in January 2017 and moved for preliminary injunction on the ground that, in the last quarter of 2016, OCSC withheld nearly half of all unlimited complaints 1-to-9 days after receipt.  Doc. 1, 11-1.  OCSC did not dispute the accuracy of CNS's data, but arrived at a more favorable interpretation by counting business hours.  OCSC says delays improved in 2017, and through October 18 it processed 95.97% of unlimited complaints within eight "business hours."  MSJ 6.  But when measured by the actual passage of time, delays got worse, with more than half – 56.9 % – of unlimited complaints filed through October 18 not available to view at the court for 1-to-13 days.  AMF 114-25.  Delays were longer for the most significant cases, with 78% of all complex cases in 2017 delayed for 1-to-7 days.  AMF 126-39.

Since *Planet* rejected processing as a justification for delayed access, Defendant now claims his delays are to review for confidentiality.  But OCSC's e-filing system was not designed to protect confidential filings.  The interface does not reference confidentiality and provides no guidance to e-filers on how to designate a filing as confidential.  AMF 105-07.  In practice, staff (called "LPSs") rely on filers to use a "comment" text field to request confidential handling, but nothing in the interface instructs filers to use the box for this purpose.  *Id.*  Unlike many courts, OCSC does not require users to check a box or select from a drop-down menu to indicate whether a document should be filed securely.  AMF 106-07  Nor does it list the categories of filings that warrant confidential handling or ask the filer whether a complaint falls into them.  *Id.*  Nevertheless, OCSC – unlike many courts – allows e-filing of complaints that require confidential handling rather than require them to be filed in paper.  As a result, OCSC keeps complaints confidential only if an LPS notices words like "confidential" (or a statutory reference the LPS happens to know implicates confidentiality) in the "comment box" or face of the complaint.  AMF 104-05.

Nor is OCSC's processing focused on confidentiality.  Processing – performed by OCSC's least experienced LPSs, who typically do the job for less than a year, AMF 93, 95 – involves 10 to 15 minutes of tasks like correcting disparities between the e-

filing form and complaint, accepting fees and affixing filing stamps.  AMF 56, 68-72.  OCSC's training manual does not mention review for confidentiality as a step in e-file processing.  AMF 109.  When looking at the face of a complaint for administrative purposes, an LPS may scan the page for "a second or two" for something suggesting confidentiality or might notice a request for confidentiality when he or she spends "two seconds" reading the comments box from the intake screen.  AMF 105

OCSC identified three categories of unlimited complaints that are confidential by statute:  (a) Safe at Home name change petitions; (b) False Claims Act complaints; and (c) Insurance Frauds Protection Act complaints.  AMF 156.[3]  Otherwise, unlimited complaints are public unless a filer follows Rule of Court 2.551 for filing under seal.  Of the 14,000 unlimited complaints filed each year, OCSC could identify only **one** e-filing falling into these categories in each of 2016 and 2017.  AMF 159-62.  It also identified a total of 17 e-filings in 2016-17 where "a request to seal the complaint was made at the time of filing," but only one of these included a motion to seal, and OCSC does not contend confidential handling was appropriate for each.  AMF 166-67.

CNS appealed the denial of its preliminary injunction motion on September 4, Doc. 58, and moved to stay trial court proceedings pending the appeal.  Doc. 60.  That motion was denied October 16 (Doc. 70), and Defendant filed its MSJ November 17.[4]  On December 11, the Ninth Circuit consolidated the appeal in this case with the *Planet* appeal.  Appeal No. 17-56331, Dkt. 66.  Both are fully briefed and ready for argument.

---

[3] Defendant also cites Gov't Code §§ 2166-2166.5, which direct elections officials to keep voter data confidential if a court so orders.  But it does not exempt requests for such an order from Rule 2.551.  He also cites sexual abuse of minor claims because in some cases defendants are designated as Does.  Civ. Proc. Code § 341.1.  But his staff does **not review § 341.1 complaints** to determine if such circumstances exist.  AMF 164.  And he includes fee waiver requests, which are not complaints and which OCSC's e-filing system evidently has no trouble auto-segregating.  AMF165, 168.

[4] CNS objected to the MSJ as premature, with discovery barely begun and not set to close until March 1 and with the issues raised pending in the Ninth Circuit.  Fetterly Dec., ¶¶ 22-24.  Defendant agreed to move the hearing, but only to January 29.  *Id*.

## I.

## THIS COURT DOES NOT HAVE JURISDICTION TO HEAR THE MSJ BECAUSE IT RAISES THE SAME ISSUES PENDING ON APPEAL

It is a fundamental tenant of subject matter jurisdiction that "a federal district court and a federal court of appeals should not attempt to assert jurisdiction over a case simultaneously." *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982) (per curiam).  An interlocutory appeal "***divests the district court of its control over those aspects of the case involved in the appeal***.'"  *Small*, 611 F.3d at 495 (quoting *Griggs*).

Defendant's MSJ rests on the same ground on which this Court denied CNS's motion for an injunction.  *Compare* Order 8 ("the minor delays here, compared to other cases where courts found delays to be unconstitutional, simply do not constitute a First Amendment violation") *with* MPA 1 ("there is no constitutional right to access the contents of civil complaints on a more expeditious basis than what OCSC already provides").  Moreover, Defendant's MSJ largely repeats the very arguments he made on appeal in defending the Order.  *Compare* Answering Brief ("AB") § VI.A.1-2 (Dkt. 29) *with* MPA § IV.A *and* AB § VI.B *with* MPA § IV.B. [5]

Because "the heart of this case" – and of Defendant's MSJ – "is currently on appeal before the Ninth Circuit," *Morgan Stanley*, 2015 WL 7271717 at *3, "this court is effectively divested of jurisdiction" to hear the motion.  *Vasquez-Brenes v. Las Vegas Metro. Police Dep't*, 2015 WL 1268026, *3 (D. Nev. Mar. 19, 2015). [6]

---

[5]  MPA § IV.C, addressing strict scrutiny, overlaps with the TPM analysis in § IV.B.  *See infra* Section III.  Moreover, even ruling on this issue would exceed the Court's jurisdiction as it "could 'alter the status of the case' before the Ninth Circuit," by resulting in the claim being "dismissed in its entirety."  *Vasquez-Brenes*, 2015 WL 1268026 at *3 (during appeal from denial of qualified immunity, district court without jurisdiction to hear motion that "plaintiff lacked standing to pursue" the claim).

[6]  *Plotkin v. Pac. Tel. & Co.*, 688 F.2d 1291 (9th Cir. 1982), which allowed summary judgment while an appeal was pending, predated *Griggs* and, to the extent inconsistent with *Griggs*, has been "winnowed down."  *Morgan Stanley*, 2015 WL 7271717 at *3.

**II.**

**THE EVIDENCE AND LAW SHOW A "LONG HISTORY" OF AND LOGIC IN TIMELY ACCESS TO COMPLAINTS UPON RECEIPT, WHICH OCSC VIOLATES BY DENYING ACCESS 1-13 DAYS TO 56.9% OF COMPLAINTS**

Even if it had jurisdiction to hear Defendant's MSJ, the Court could not grant it, as Defendant has not carried his "initial burden of production" and cannot carry his "ultimate burden of persuasion" that "there is no genuine issue of material fact." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

At trial, Defendant will "bear[] the burden of justifying [his] speech-restrictive [policy]" of denying access until after processing and review. *Thalheimer v. City of San Diego*, 645 F.3d 1109, 1115 (9th Cir. 2011); *see, e.g., U.S. v. Guerrero*, 693 F.3d 990, 1002 (9th Cir. 2012) (party opposing access failed to carry burden to "show[]" essential elements of "overriding interest" test); *Comite de Jornaleros v. City of Redondo Beach*, 657 F.3d 936, 944 (9th Cir. 2011) (en banc) (same in TPM case).

On summary judgment, Defendant "must establish 'beyond controversy every essential element'" of whichever defense applies. *S. Cal. Gas. Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003). "'*[H]is showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party*'" on each element. Schwarzer, *Cal. Prac. Guide: Federal Civil Procedure Before Trial* § 14:124 (2018) (emphasis in original). As shown in Section III, Defendant has not come close to carrying that "'heavy burden.'" *Id.* § 14:123 (quoting *Ambat v. City & County of S.F.*, 757 F.3d 1017, 1031 (9th Cir. 2014)).

Defendant thus tries to rewrite access law so "CNS … bears the burden of establishing that both experience and logic *compel OCSC to grant a level of access greater than which it already provides*.'" MPA 8. But he cites no case supporting the highlighted phrase – and no Ninth Circuit cases at all – because it is not the law.

In *Press-Enterprise v. Superior Court*, 478 U.S. 1 (1986) ("*Press-Enterprise II*"), "the Supreme Court articulated a two-part test for right of access claims. First, the court must determine *whether a right of access attaches*" under the experience

and logic test.  *Leigh v. Salazar*, 677 F.3d 892, 898 (9th Cir. 2012).  "Second, if the court determines that a qualified right applies, the government may overcome that right *only* by demonstrating 'an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest.'"  *Id.* This rule is not limited to where CNS can "show" it "was denied access.  The relevant question is *not* whether [Defendant] prohibited [CNS] from observing [complaints] altogether," but "whether the viewing *restrictions* were unconstitutional."  *Id.* at 900.

As this Court has recognized, the "First Amendment right of access includes a right of '*timely* access to newly filed complaints.'"  Order 5-6 (quoting *Planet I*, 750 F.3d at 788) (emphasis in original).  As Judge Otero held, that right of access "*attaches when new complaints are received by a court*."  *Planet* Order *12 (emphasis in original).  From that point on, Defendant bears the burden to justify any "access restriction" that impedes timely access.  *Leigh*, 677 F.3d at 900.

Supreme Court and Ninth Circuit law, therefore, do not compel CNS to establish an experience of and logic in more timely access than OCSC provides, but simply to show the policy Defendant imposes restricts timely access.  In subsection C, CNS will show that the evidence demonstrates, at the very least, a genuine dispute on this point.  First, though, CNS will show the evidence and law amply support Judge Otero's holding that experience and logic "dictate" access that is more timely than OCSC provides by allowing access prior to any processing and review.

A.  **As *Planet* Held, The Facts And Law Show A History Of Access On Receipt**

The fundamental flaw in Defendant's theory is it ignores the evidence of a "long history" of access to complaints on receipt, *Planet* Order *12, and relies instead on inapt cases – involving abstracts of title, *State v. McMillan*, 49 Fla. 243 (Fla. 1905); *Upton v. Catlin*, 31 P. 172 (Colo. 1892), motor vehicle records, *Direct Mail Serv. v. Registrar of Motor Vehicles*, 296 Mass. 353 (1937), and a much "criticiz[ed]" decision "minimizing the constitutional valence of contemporaneous access to documentary evidence produced in discovery and used in a summary judgment

1   motion," *H.B. Fuller Co. v. Doe*, 151 Cal. App. 4th 879, 893 n.7 (2007) (describing *In*
2   *re Reporters Comm.*, 773 F.2d 1325 (D.C. Cir. 1985)) – and inapposite statutes.[7]

3        The access test looks to the "'practice'" and "'experience … throughout the
4   United States.'" *U.S. v. Guerrero*, 693 F.3d 990, 1000 (9th Cir. 2012). The evidence
5   in *Planet*, resubmitted here, Doc. 12, 12-1 & 12-2, shows a practice of court clerks
6   throughout allowing reporters view "new complaints ***immediately upon … receipt*,"[8]
7   often "within minutes after they were received,"[9] or "every hour or half hour" or "1-2
8   hours" or "two to three hours,"[10] with "***little, if any, delay from when the complaints***
9   ***are submitted*,"[11] "even if the complaint had not yet been reviewed by a clerk" or
10  processed.[12] This includes some of the busiest courts in the country, Los Angeles,
11  New York and Chicago, AMF 231 – as well as OCSC and Defendant's prior court,
12  Santa Clara, AMF39, 82 – and dates back to the 1970s and '80s. AMF 232.

---

13  [7] Many "***appl[y] only to … administrative records*," Del. Policy on Public Access to
14  Records in Del. Ct. Chancery § I; N.Y. Ct R. § 124.1; R.I. Gen. Laws § 38-2-3(4)(T),
15  "***financial records*," 65 Pa. Stat. Ann. § 67.304, or records "***not pertaining to its***
16  ***adjudicative function*," Tex. R. Jud. Admin. 12.2(d), or sought by "***written request*,"
    N.M. Stat. Ann § 14-2-8(D), S.C. Code Ann. § 30-4-30(C), Utah R. Jud. Admin 4-
17  202.06(2), or ***party* "***names*." Me. Sup. Jud. Ct. Admin. Order JB-05-20 § III(A).

18  [8] AMF 226 (citing state courts in Alabama, California, Connecticut, Georgia,
19  Louisiana, Michigan, Nevada, New York, Ohio, and Oregon, and federal courts in
    Alabama, Arkansas, California, Hawaii, Illinois, Michigan, Minnesota, Nebraska,
20  Nevada, New Jersey, Ohio, Virginia, Washington and Wisconsin).

21  [9] AMF 227 (Georgia; also Oregon, Minnesota ("on the spot"), Washington, Wisconsin).

22  [10] AMF 228 (citing, respectively, Nebraska and Tennessee ("20 to 30 minutes");
23  Arkansas, Oregon and Washington; Illinois and the S.D.N.Y.).

24  [11] AMF 229 (Utah (state and federal); also Arkansas, Georgia (both) and Michigan).

25  [12] AMF 230 (N.D. Ill.; also state courts in Alabama, Alaska, Arkansas, California (5),
    Connecticut (2), Georgia (3), Hawaii, Illinois, Louisiana, Michigan (2), Nevada, New
26  York, Ohio (2), Oklahoma, Oregon, Pennsylvania, Washington and Wisconsin, and
27  federal courts in Alabama, Arkansas (2), California (4), Georgia, Illinois, Louisiana,
    Minnesota, Nevada, New Jersey, New York, Ohio, Oregon, Pennsylvania (2), Ohio
28  (2), Texas (2), Virginia, Washington and Wisconsin) .

---

This evidence establishes a "long history" of access to complaints upon receipt, "regardless whether such courts use paper filing or e-filing." *Planet* Order *12.[13] Even if "'[a] historical tradition of at least some duration is obviously necessary,'" MPA 9 (quoting *Detroit Free Press v. Ashcroft*, 303 F.3d 681, 701 (6th Cir. 2002)), much "brief[er] historical tradition[s]" have been held sufficient. *Detroit Free Press*, 303 F.3d at 700-01 (citing *Cal-Almond v. Dep't of Agric.*, 960 F.2d 105, 109 (9th Cir. 1992) (current practice)); *Seattle Times Co. v. Dist. Court*, 845 F.2d 1513, 1516 (9th Cir. 1988) (no "unbroken history" of access before Bail Reform Act of 1984).

Moreover, while pre-1900 cases "involving *pretrial discovery* denied access," Note, *The Agent Orange Case: A Flawed Interpretation of the Federal Rules of Civil Procedure Granting Pretrial Access to Discovery*, 42 STAN. L. REV. 1577, 1603 (1990), "the right to inspect and to require copies of … judicial records" dates to "'a very early period.'" *Ex parte Drawbaugh*, 2 App. D.C. 404, 406-07 (1894).[14]  Some old cases refused to protect the press from libel for reporting new complaints, *Cowley v. Pulsifer*, 137 Mass. 392 (1884), but courts soon "rejected *Cowley*," *Am. Dist. Tel. Co. v. Brinks*, 380 F.2d 131, 132 (7th Cir. 1967) (citing *Campbell v. N.Y. Evening Post*, 245 N.Y. 320 (1927)), because a "privilege to report on judicial proceedings … when the complaint is filed," *Newell v. Field Enters.*, 91 Ill. App. 3d 735, 746 (1980), reflected the reality that reporters saw complaints "filed … the same day," *Shiver v. Valdosta Press*, 82 Ga. App. 406, 413 (1950); *Siegel v. Sun Printing & Pub'g*, 223

---

[13] Neither the survey nor Report Card cited at MPA 13 n.5 are to the contrary.  The survey found seven states "do not provide remote access," which is not the same. *Remote Public Access to Electronic Court Records* 2-4 (2017) ("most common approach" to protect sensitive data is to require e-filer to redact it).  Most of the courts in the Report Card, , did or do allow same-day access.  AMF 26.

[14] Contrary to Defendant's mischaracterization, *Drawbaugh* did not "declin[e] to recognize a right 'to inspect and take copies from papers merely filed, but before any action had thereon by the court,'" MPA 10, but instead recognized that as "a distinction made in some of the cases" (citing one holding and one "intimat[ion]") that, *Drawbaugh* held, "have no application to this case."  2 App. D.C. at 407.

---

N.Y.S. 549, 550 (App. Div. 1927), unless plaintiff, "at the time of filing, requested [it] be suppressed, meaning thereby that [the clerk] would not permit the newspaper reporters to have access." *Schmedding v. May*, 85 Mich. 1, 2-4 (1891).[15]

Defendant's contrary view rests on cases following *Cowley* without noting its rejection, *Reporters Committee*, 773 F.2d at 1335, and following *Reporters Committee –IDT Corp. v. eBay*, 709 F.3d 1220, 1224 n.* (8th Cir. 2013) – without noting "courts in subsequent decisions have declined to follow … *Reporters Committee*." *NBC Subsidiary (KNBC-TV) v. Superior Court*, 20 Cal. 4th 1178, 1220 n.43 (1999); *Bernstein v. Bernstein Litowitz Berger & Grossman LLP*, 2016 WL 1071107, *7 (S.D.N.Y. Mar. 18, 2016) (rejecting *IDT* as premised on "proposition that New York courts found antiquated even in 1927" and finding right of access to complaint once filed), *aff'd*, 814 F.3d 132 (2d Cir. 2016); *Mokhiber v. Davis*, 537 A.2d 1100, 1112-13 (D.C. Cir. 1988) (*Reporters Comm.* "[c]ontra" to general rule of access upon filing).[16]

The codes and rules Defendant cites are entirely consistent with the history set out in the reporter declarations of access upon receipt.  Most are public records laws that do not specifically address court records – let alone new complaints – and often require access "upon request" or "immediately" unless in "active use," a term that does

---

[15] Perhaps "'no one ever suggested'" there was a "'right' of the public to be present at … pretrial proceedings,'" MPA 10, because there were **no pretrial proceedings at common law**.  A "trial had **just two stages**" – "the pleading stage," where "parties set forth their claims and defenses orally before the judge," followed by the trial.  Sward, *History of the Civil Trial in the U.S.,* 51 U. Kan. L. Rev. 347, 350 (2003).

[16] Defendant cites two cases his counsel unsuccessfully relied on in *Planet II*: *In re Policy Mgmt Sys. Corp.*, 67 F.3d 296 (4th Cir. 1995), the "unpublished table decision" whose holding is cited by *In re U.S.*, 707 F.3d 283, 290 (4th Cir. 2013), and *Sullo & Bobbitt v. Milner*, 765 F.3d 388 (5th Cir. 2014).  They are inapposite.  The first concerned sealed **discovery** that "d[id] not play any role in the adjudicative process." *In re Policy Mgt*, 67 F.3d 296 at *4.  In the second, the district court ordered plaintiffs to allege a nationwide history of timely access "in the **commercial speech** context," *Sullo & Bobbitt v. Abbott*, 2013 WL 1949835, *5 n.7 (N.D. Tex. May 13, 2013) (**distinguishing CNS on this ground**), which they did not do.  765 F.3d at 394 n.5.

*not* apply to use by the "clerk's office." *Health v. City of Alexandria*, 11 So. 3d 569, 571 (La. App. 2009). Several have been supplemented or supplanted by decisions holding "case records are open to the public on an immediate basis," *Arpaio v. Davis*, 210 P.3d 1287, 1292 (Ariz. App. 2009), and a "complaint … [once] filed [i]s a public document in a public office." *Lybrand v. State Co.*, 179 S.C. 208, 215 (1936).

More broadly, rules requiring access as soon as possible or within days to (often older) records already in case files or storage, *see also* MPA 12 n.4, "say[] nothing about whether the public" actually had "access" to new complaints when "filed," *Bernstein*, 814 F.3d at 141, when interest is at its height. AMF 35. Whatever "discretion" clerks had to adopt "reasonable rules" on access, MPA 14-15, "[i]n the preponderant majority of states" they exercised that discretion so "judicial records [were] in fact and law open to inspection … *as and when the papers become judicial records through being filed*." H. Cross, *The Right to Know* 151 (1953). "Complaints have been regarded as public for a long time, … and are filed publicly *even when there is arguably sensitive information in the complaint*," *Bernstein,* 2016 WL 1071107 at *9 (emphasis in original); *Bernstein*, 814 F.3d at 140-41; *U.S. ex rel. Dahlman v. Emergency Physicians Prof. Ass'n*, 2004 WL 287559, *2 (D. Minn. Jan. 5, 2004).

**B.    As *Planet* Held, The Facts And Law Show The Logic Of Access On Receipt**

Defendant says CNS must "establish[] … both experience and logic," MPA 8, and logic must "'take account of … the extent to which openness impairs the public good.'" *Id.* 15. But that is not the law in the Ninth Circuit. As "'complementary considerations,'" *Cal. First Amendment Coal. v. Woodford*, 299 F.3d 868, 875 (9th Cir. 2002) (quoting *Press-Enterprise II*, 478 U.S. at 8), one, "even without [the other], may be enough to establish the right." *In re Copley Press*, 518 F.3d 1022, 1026 (9th Cir. 2008). Consequently, "[w]here access has traditionally been granted to the public without serious adverse consequences, *logic necessarily follows*." *Id.* at 1026 n.2.

Defendant speculates private information might become public, MPA 16-17, but like the VSC clerk before him, *Planet* Order *16, presents no evidence of any harm, let

alone serious harm, from the history of public access on receipt.  *See* Section III.[17]

This illustrates why *Copley Press* is correct and Defendant is not.  He bears "the burden of justifying [his] restriction," *Klein v. City of San Clemente*, 584 F.3d 1196, 1201 (9th Cir. 2009), via "evidence in the record" showing access "***would endanger***" privacy rights.  *Phoenix Newspapers v. Dist. Court*, 156 F.3d 940, 950 (9th Cir. 1998).  He cannot shirk that burden by positing theoretical risks in the logic analysis.  That would "rubber-stamp an access restriction simply because the government says it is necessary," which the Ninth Circuit held "a court cannot" do.  *Leigh*, 677 F.3d at 900.[18]

At the least, there is a genuine dispute here.  Viewing largely the same evidence, Judge Otero held "'[l]ogic' likewise demands that the qualified right of timely access ***must arise the moment a complaint is received*** by the court, rather than after 'processing' is completed."  *Planet* Order *13, 16.  As CNS's evidence shows, "timing is a critical element of a story's newsworthiness," *id.* *13, and of accuracy in reporting, the likelihood stories about important complaints, impacting public health and safety, will come to public attention.  AMF 26-29; *accord* Media Amici Br. 8-13 (Dkt. 41-1).

Indeed, "delay" can "destroy the ***contemporary news value*** of the information the press seeks to disseminate" about a case.  *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 609 (1976) (Brennan, J., concurring) ("'hypothesis of the First Amendment [is] that ***injury is inflicted on our society when we stifle the immediacy of speech***'").  "The newsworthiness of a particular story is often fleeting.  To delay or postpone disclosure undermines the benefit of public scrutiny and may have the same result as complete suppression."  *Grove Fresh Distribs. v. Everfresh Juice Co.*, 24 F.3d 893,

---

[17] Defendant concedes filers are responsible to protect confidential information.  AMF __.  He fears pro se won't, and that technology makes pleadings available "instantly," but ***cites no evidence of pre-review access violating privacy*** because courts did "'develop [alternate] rules'" to protect private data.  MPA 16-17.  *See* Section III.

[18] Two cases Defendant cites recognize "contemporaneous access" can be restricted if necessary to protect a compelling interest in the right to "an impartial jury," *U.S. v. Edwards*, 823 F.2d 111, 118-19 (5th Cir. 1987), or if a valid "time, place, and manner" rule.  *State ex rel. Williston Herald v. O'Connell*, 151 N.W.2d 758, 763 (N.D. 1967).

897-98 (7th Cir. 1994); *Doe v. Public Citizen*, 749 F.3d 246, 272 (4th Cir. 2014).

A "complaint is a judicial document subject to a presumption of public access." *Bernstein*, 814 F.3d at 141 at 136. "'[I]n light of the values which the presumption of access endeavors to promote, a necessary corollary to the presumption is that access should be immediate and *contemporaneous*.'" *Lugosch v. Pyramid Co.*, 435 F.3d 110, 126-27 (2d Cir. 2006) (emphasizing "*importance of immediate access*"). Thus, "'*when* a plaintiff invokes the Court's authority by *filing a complaint, the public has a right to know* who is invoking it, and towards what purpose, and in what manner.'" *McCrary v. Elations Co.*, 2014 WL 1779243, *6 (C.D. Cal. Jan. 13, 2014).

Defendant tries to undermine this logic by claiming access merely "'guard[s]'" against "'impropriety,'" which need not be "'reported contemporaneously.'"  MPA 17.  But the purpose of access is much broader; it "'ensures'" the "'constitutionally protected discussion of governmental affairs is an informed one.'" *Planet I*, 750 F.3d at 785, 787; *Tingling*, Doc. 11-1 at 82 (timely "public access to complaints allows the public to understand the activity of the courts, enhances the court system's accountability and legitimacy, and informs the public of matters of public concern").

Defendant's policy "prevent[s] the public from learning anything about [thousands of] … action[s] – including [their] existence," *Standard Chartered Bank Int'l v. Calvo*, 757 F. Supp. 2d 258, 260 (S.D.N.Y. 2010) – for 1-13 days.  AMF 114.  It stifles "informed public discussion of ongoing judicial proceedings" because "CNS cannot report on complaints the … [c]ourt withholds." *Planet I*, 750 F.3d at 787.  His argument in support of that policy "unduly minimizes, if it does not entirely overlook, the *value of* '*openness*' itself, a value which *is threatened whenever immediate access* to ongoing proceedings *is denied*, whatever provision is made for later public disclosure." *In re Charlotte Observer*, 882 F.2d 850, 856 (4th Cir. 1989); *U.S. v. Wecht*, 537 F.3d 222, 229 (3d Cir. 2008) ("*value of … access* would be *seriously undermined if* it could *not* be *contemporaneous*"); *Pokaski*, 868 F.2d at 507 ("as *little as a day*" delay burdens First Amendment by "delay[ing] access to news").

**C.     Frequent Delays Of 1-13 Days Means Timely Access Is At Least Disputed**

Defendant's core argument – that he provides "timely access" – rests on a calculation that masks the actual delays and cannot support summary judgment because "the nonmovant's version of any disputed issue of fact is presumed correct." *Federal Civil Procedure Before Trial, supra*, § 14:251 (citing, e.g., *Eastman Kodak Co. v. Image Technical Servs.*, 504 U.S. 451, 456 (1992)).

Defendant claims he allows access quickly enough because, he says, processing only takes 10-15 minutes, 80% of complaints are available within four business hours and 95% within eight (or one business day).  MPA 6.  But his staff often does not immediately process complaints on receipt, and many of the complaints in the first category, and most in the second, cannot be seen by the public at the court until at least the next court day, often 3-4 calendar days later.  AMF 98, 100, 110-12.

As a result, nearly ***57%*** of unlimited complaints e-filed in 2017 through mid-October were ***not available for 1-to-13 days***, and more than 11% were not available for two or more days.  AMF 114.  Defendant does not cite a single case holding delays of anything close to this magnitude constitute such timely access that they comport with the First Amendment without needing to satisfy strict scrutiny or the TPM test.

To the contrary, "even a one to two day delay impermissibly burdens the First Amendment."  *Pokaski*, 868 F.2d at 507 (citing *Associated Press*, 705 F.2d at 1147 ("48 hours") (citing *Brooklier*, 685 F.2d at 1169-71 ("24 hours")); *Nast v. Michels*, 107 Wash. 2d 300, 308 (1986) ("procedurally implemented ***1-day turnaround*** time" to access court records "***unacceptable***" because "***next day access*** is ***too slow***").

Similarly, *Tingling* found access after processing not "contemporaneous" where access was delayed at least a day to one third of complaints.  Doc. 11-1 at 36, 82.  Here, access is delayed by at least a day closer to two thirds.  The *Planet* Order found VSC's Scanning Policy unconstitutional because, by stopping access at 3 p.m. while continuing to receive and scan complaints until 4:30, it created "a ***distinct possibility*** that complaints filed late in the day may not be viewable by the public until the next

11112567.9

BRIEF OF CNS IN OPP. TO DEF'S MSJ                    Case No. 8:17-cv-00126 AG (KESx)

day." *Planet* Order *20.   Here, it is no mere possibility, but happens nearly six out of 10 times due, in part, to OCSC's similar policy of terminating access at 4.[19]

Defendant's calculation also masks the extent of the delays to complaints that are often the most newsworthy – those in complex cases.  AMF 126, 140.[20]  Of nearly 500 complex cases in 2017, more than 75% were delayed at least a day, and 38.5% were delayed 2-7 days with an average delay to these of 3.4 days.  AMF 126-27.

This helps show why Defendant's position is "nonsensical."  *Planet* Order *13. His "opinion" that access should be delayed until after a complaint is processed, AMF 152, "run[s] contrary to the text ... and purpose [of] various rules of court," including Cal. R. Ct 1.20(a), "which requires that complaints be 'deemed filed on the date … received by the court clerk."  *Planet* Order *13.  And counting business hours and days runs contrary to rules on computing time, in which every hour or day is counted. Fed. R. Civ. P. 26(a)(1)-(2); *Iverson v. Superior Court*, 167 Cal. App. 3d 544, 547-48 (1985) (striking down OCSC rule counting notice under Civ. Proc. Code § 1005 in "court days" because "'five days' means five ***calendar*** days") (emphasis in original).

After CNS sued, Defendant was able to speed up processing due to the "serendipity" that OCSC has, "[a]t the moment," a "few more" staff processing cases. AMF 96.  But he concedes he must reduce staff, AMF 225, lengthening the time before processing.  If the Court grants summary judgment, nothing will constrain him from exercising his "discretion," MPA 15, to lengthen them even more.  This is another reason "it would make little sense to restrict the media's ability to monitor until after court personnel have had an opportunity to delay providing access to the requested complaints." *Planet* Order *13.  "'[P]rotecting constitutional rights'" should not rest on "happenstance or … luck."  *Phelps v. Alameida*, 569 F.3d 1120, 1123 (9th Cir. 2009).

---

[19] While OCSC is a busy court, MPA 2, so is the Manhattan court in *Tingling*.  In any event, Reasons for delay are analyzed as part of the strict scrutiny or TPM analysis .

[20] And it masks the fluctuation in delays.  In 13 weeks – a quarter of the year – access was delayed at least a day to more than 60% of complaints; several weeks (especially in the summer) it ranged from almost 78 to 91.6%.   AMF 126-39.

BRIEF OF CNS IN OPP. TO DEF'S MSJ                    Case No. 8:17-cv-00126 AG (KESx)

**III.**

**DEFENDANT CANNOT AVOID STRICT SCRUTINY AND FAILS TO MEET HIS BURDEN OF PROOF TO ESTABLISH HIS PROCESS-FIRST POLICY SATISFIES STRICT SCRUTINY OR IS A REASONABLE TPM RESTRICTION**

Since the First Amendment right of access to complaints attaches on receipt by a court (rather than after processing), and the delays in access at OCSC – both in 2016 and in 2017 – implicate the First Amendment no matter how Defendant tries to portray them, Defendant's "process-before-access system" violates the First Amendment unless Defendant can overcome that right by meeting his burden of proof under either of the two defenses identified by the Ninth Circuit in *Planet I.  Planet* Order *13.

Even if the Court had jurisdiction to reach this issue despite the pending appeal – and, as shown, it does not – the discovery to date makes clear that, as in *Planet*, Defendant has not met his burden under either defense (strict scrutiny or TPM).

**A.   Strict Scrutiny Applies To Blanket Access Denials Even If Limited In Time**

In an attempt to avoid his burden of proving an "'overriding [governmental] interest based on findings that closure is essential to preserve higher values,'" *Planet I*, 750 F.3d at 793 n.9, Defendant says strict scrutiny does not apply to "mere ***delays***." MPA 18 (emphasis in original).  But as CNS noted on appeal, No. 17-56331, Dkt. 38, at 17-19, the Ninth Circuit applies strict scrutiny to delays in access of "24 hours," *Brooklier*, 685 F.2d at 1170, or "48 hours," *Associated Press*, 705 F.2d at 1147, because the "effect … is a total restraint on the public's first amendment right of access even though the restraint is limited in time." *Id.; see Pokaski*, 868 F.2d at 507 (strict scrutiny applied to "delay" defendant called "minimal, at times as little as a day"). [21]

---

[21] Defendant errs in asserting *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, (1982), "recognized" TPM applies to delays.  *Globe Newspaper* merely said limits on access "resembl[ing]" TPM restrictions need not meet strict scrutiny.  *Id.* at 617 n.17. It cited *Richmond Newspapers v. Virginia*, 448 U.S. 555 (1980), which gave TPM examples that ***did not involve delays*** in access, but rather conducting trials "in a quiet and orderly setting" or controlling attendance in courts of "limited capacity," while providing "preferential seating for media representatives." *Id.* at 581 n.18.

Defendant's only mention of *Associated Press* is to its concurrence, MPA 14, which "did not concur" with the majority on this point, 705 F.2d at 1148, and does not reflect Ninth Circuit law.  The only real difference between that case and this one is that here, a clerk rather than a judge does the review.[22]  The same is true of *Pokaski*, where access to records was delayed to determine if there was "any continuing need for privacy."  868 F.2d at 501.  As in those cases, the result at OCSC is the very "blanket denial of access" Defendant denies is happening.  MPA 18.  That is why courts in CNS's other cases applied strict scrutiny to delays similar to – and in some instances shorter than – those here.  *Planet* Order *20-21 (one court day); *Tingling* Doc. 11-1 at 52 (same); *CNS v. Jackson*, 2009 WL 2163609, *4 (S.D. Tex. July 20, 2009) (rejecting TPM because "24 to 72 hour delay" is "effectively an access denial").

Unable to meaningfully distinguish these cases, Defendant cites a case applying TPM to a "manner" restriction – against televising trials – because the press could still attend and "report whatever they observe."  *U.S. v. Hastings*, 695 F.2d 1278, 1282 (11th Cir. 1983).  That is not true of withholding complaints for even a day.  *Planet I*, 750 F.3d at 787-88 ("CNS cannot report on complaints [OCSC] withholds").[23]

---

[22] *Associated Press* held denying access to all papers submitted for filing until after review to determine if they should remain confidential "impermissibly reverse[d] the 'presumption of openness,'" and such "blanket orders" are unconstitutional.  705 F.2d at 1147.  At OCSC, all new complaints are effectively filed under seal until after "processing," AMF 68-81 – "intake procedure[s]" that involve much more than just manual confidentiality review, AMF 70, 72 – only *after* which OCSC considers a new complaint to be a public record the press has a right to see.  AMF 68-81.

[23] Defendant also relies on *Barth v. City of Macedonia*, 187 F.3d 634 (6th Cir. 1999), an unpublished decision that cannot be reconciled with, *inter alia*, *Associated Press* and *Pokaski*.  If *Barth* were correct, access to court records could be routinely delayed for administrative reasons.  But such concerns cannot receive *more* deference, and be evaluated at a *lower* standard, than the fair trial right in *Associated Press* or other overriding interests subject to strict scrutiny.  To the contrary, "administrative burdens [are] not sufficient to override [even] the *common law* right of access to judicial records."  *In re Associated Press*, 172 Fed. App'x 1, 5 (4th Cir. 2006) (citing *Valley Broad. Co. v. Dist. Court*, 798 F.2d 1289 (9th Cir. 1986) (emphasis in original)).

**B.**   **Defendant Has Not Met His Burden Under Strict Scrutiny Analysis**

To "overcome" the right of timely access under strict scrutiny, Defendant must show, and the Court must find, that denying access until after processing "'(1) serves a compelling interest; (2) there is a substantial probability that, in the absence of [doing so], this compelling interest **would be harmed**; and (3) there are no alternatives … that would adequately protect th[at] … interest.'"  *Guerrero*, 693 F.3d at 1002.  He must also show his policies "effectively protect" his interest.  *Brooklier*, 685 F.2d at 1169.

Defendant cannot rely on "conclusory assertions," *Phoenix Newspapers*, 156 F.3d at 949, or invoke a "generic risk ... unsubstantiated by any specific threat or incident."  *Presley v. Georgia*, 558 U.S. 209, 215 (2010); *Press-Enterprise II*, 478 U.S. at 14-15 ("right of access cannot be overcome by the conclusory assertion that publicity might deprive the defendant of [his fair trial right]"); *Oregonian Publ'g Co. v. Dist. Court*, 920 F.2d 1462, 1466-67 (9th Cir. 1990) (error to seal based on "conclusion … not supported by any factual finding" for which "[t]here was no evidentiary support").

Defendant says he has a "compelling interest in protecting the privacy of information that California statutes require be maintained in confidence," there "is a substantial probability that, in the absence of a confidentiality review, privacy interests would be lost," and his "practices pass the strict scrutiny test because there are no alternatives that would adequately protect the privacy interests that OCSC currently safeguards."  MPA 23-24.  Except for the fact that protecting confidentiality is important, Defendant's argument "while superficially appealing," is "upon closer inspection illusory," *Planet* Order *17, failing at every step of the analysis.

***Defendant's Current "Confidentiality Review" Procedure Is An Unreliable Way To Protect Privacy Interests, And He Offers No Evidence of Harm*** – Defendant asserts that manual review is necessary to protect confidentiality because "OCSC has identified at least 18 cases [in 2016] in which filers failed to properly mark civil unlimited complaints as 'confidential.'"  MPA 24 (citing SUF ¶ 21).  But he provided ***no*** evidence of a filer failing to properly mark an unlimited complaint as confidential.

SUF ¶ 21 cites Ochoa Decl., ¶¶ 21-22 & Exhs. A & B.  According to Ochoa, the cases she describes are not examples of filers ***failing*** to properly mark complaints as confidential, but rather of filers ***properly*** following OCSC's procedures by noting confidentiality in the "comments box" of the e-filing interface or on the cover page of the complaint.  Ochoa Decl., ¶¶ 21-22 & Exhs. A & B; *see also* AMF 104-05.[24]

That review was "necessary" to identify these for confidential handling speaks not to the virtue of staff review but rather to the risks of relying on it.  OCSC's system "amplifies the potential for human error," and could "better assure" confidentiality by using check off box(es) or similar automated features to determine if a confidential complaint is at issue, and "automatically code the filing … for confidential treatment" or "prompt … a notice telling the filer the document must be filed in paper."  AMF142.

Moreover, Defendant could not "point[] to any evidence," *Planet* Order *17, that inadvertent release of a confidential complaint ever caused any harm.  AMF 170-73; *see* MPA 23 (harm "could" occur).[25]  This is not surprising: the possibility that a confidential complaint might be inadvertently put in a public file has always been a risk, even in the paper-filing world, but such instances will be rare, inhere in our open court system, and cannot justify systemic delays in access like those here.

"[T]he constitutionally grounded presumption of openness simply is too strong

---

[24] Though Exhibits A and B list 19 cases, Defendant offers only 16 as examples of complaints that "would have been made public" without LPS review.  Ochoa Decl., ¶ 21.  In fact, at most, six of the 2016 cases and seven in 2017 represent case-initiating filings where an LPS properly kept a document confidential based on review.  Two cases appear to have been included in error; two cases that reference sealing in the "comment" box did not actually involve a confidential submission in the case-initiating filing transaction;, and in two cases documents were improperly sealed upon request of filer without a motion to seal required by Rule of Court 2.551(b)(1).  AMF 158.

[25] Instead, Defendant claims "the First Amendment right of access must bow when an individual is accused of criminal conduct but the judicial record is unaccompanied by sufficient facts providing a context for the allegation," MPA 23, but the case he cites involved pre-indictment materials related to search warrants to which there was "***no right of access***."  *Times Mirror Co. v. U.S.*, 873 F.2d 1210, 1211 (9th Cir. 1989).

---

1    to permit these certain burdens to remain in order to avoid harms that will occur only

2    rarely, if at all." *Pokaski*, 868 F.2d at 509; *Phoenix Newspapers*, 156 F.3d at 949-50

3    (district court failed to specify "just how security would be 'thwarted,' and how, in

4    turn, this 'thwarting' would threaten" fair trial rights); *Oregonian*, 920 F.2d at 1467.[26]

5        ***Failure to show no alternatives to protect the asserted interest*** – The majority of

6    federal courts, including all California district courts, allow access to e-filed complaints

7    as soon as they are received by the court prior to processing. AMF 26-27, 143. This

8    includes those e-filed after the clerk's office closes for the day but that, like at OCSC,

9    receive that day's "file" stamp if received before midnight. So do state courts in several

10   states, including Alabama, Connecticut, Georgia, Nevada, New York and California

11   (such as, most recently, Fresno County Superior). Some courts provide this access at

12   the courthouse (including via press rooms open late), some via the Internet (either for

13   free or a nominal fee), and some offer both. Such access is often provided before

14   official "acceptance," even to cases that may later be rejected, AMF 143, and before

15   assignment of an official case number. AMF 26-27, 143.[27]

16       All these courts found alternative ways to ensure confidential e-filings remain

17   confidential. In New York, where all 27 e-filing courts provide access to complaints

---

18   [26] *Phoenix Newspapers* also disposes of Defendant's suggestion that access can be
19   delayed without satisfying strict scrutiny. MPA 24 (citing *U.S. v. Cianci*, 175 F Supp.
20   2d 194, 205 (D.R.I. 2001)). As *Phoenix Newspapers* held, where there is "no
     evidence in the record …establishing why release … would endanger [the asserted
21   interest] … there was ***no reason to delay*** the release." 156 F.3d at 950.

22   [27] To the extent OCSC's concerns are driven by its policy choice to make records
23   available for remote Internet viewing on its paid web site (which accounts for about
     $700,000 in annual revenue, AMF62), the relief CNS seeks does not require it to
24   provide access over the Internet. Since OCSC made a policy choice to give filers the
     benefit of a midnight deadline, Defendant must allow timely access to late-filed
25   complaints. But he could limit access to unprocessed complaints to the courthouse by,
26   for example, making them available via a computer terminal in a room open late or the
     hallway outside the clerk's office, where the press could review complaints after the
27   clerk's office closes. AMF 199. This is the sort of TPM rule the Supreme Court had
28   in mind. *Richmond Newspapers*, 448 U.S. at 581 n.18.

---

via the Internet on receipt before processing, confidential categories must be filed in paper,[28] and are "greyed out" in the e-filing interface.  AMF 234.  In Fulton County, Georgia, for each document uploaded for e-filing, a user must select either "Public" or "Non-Public" from a "Security" drop-down menu that cannot be bypassed.  AMF 175-84.  In Fresno County, when e-filers upload a document, they must enter a "Document Type," and choose "Confidential," "Civil Document" or "Restricted."  AMF 233.

Defendant is aware of these practices but disregarded them, not on the basis of any objective facts, or because they are not possible at OCSC, but based on personal belief – a "difference of opinion," AMF 152; *see* AMF 143-51 – "there are no equally effective alternatives" to "clerk review."  MPA 24-25.[29]  He suggests CNS must show these alternatives will "work[] as well as the system OCSC has adopted," *id.* 25, but has it backwards.  "It is the ***burden of the party seeking closure*** … to demonstrate that available alternatives will not protect his rights."  *Oregonian*, 920 F.2d at 1467; *Brooklier*, 685 F.2d at 1169.  Nor is his burden lessened because he sees nothing to be gained by pre-processing access.  "Where the first amendment supplies the right of access, the party seeking access has the benefit of the presumption that disclosure should be made" and a "district court err[s] by placing the initial burden to demonstrate a basis for disclosure on" the press.  *Oregonian*, 920 F.2d at 1466-67. [30]

---

[28] This would pose no burden on OCSC because paper filing is already permissible for pro per filers and a significant percentage of complaints are filed in paper.  AMF 53.

[29] The National Center for State Courts Report Defendant cites, MPA 25, actually urges technology-based solutions.  *Best Practices for Court Privacy Policy Formulation* 3, 5-7 (July 2017) (not identifying the "audits" that found compliance "is not very good").  It cites an article rejecting privacy review policies like OCSC's, which were common "in the early days of … e-filing" but "a very time and resource intensive approach that would not scale and … ***legally dubious***."  *A Contrarian View of Two Key Issues in Court Records Privacy and Access*, 2016 Future Trends in State Courts 56.

[30] Although the burden rests on Defendant to demonstrate these alternatives are ineffective, CNS's expert confirmed that OCSC's e-filing system "would be ***more efficient and less prone to errors***" if modified as noted above.  AMF 144.

**C.     Defendant Has Not Met His Burden Under TPM Analysis**

Even under TPM analysis, "'the Government bears the burden of proving the constitutionality of its actions.'"  *Comite de Jornaleros*, 657 F.3d at 944.  Defendant must prove his policy is [1] "'justified without reference the content of the regulated speech, … [2]narrowly tailored to serve a significant government interest, and … [3] leave open ample alternative channels for communication of the information.'"  *Id.* at 945 (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989)).  Even if it is not content-based, Defendant's policy fails the second and third parts of this test.

*Defendant's policies are not narrowly tailored to serve a significant government interest* – "'[M]erely invoking interests ... is insufficient.'"  *Klein*, 584 F.3d at 1202.  It is not enough "[t]hat the Government's asserted interests are important in the abstract."  *Turner Broad. Sys. v. FCC*, 512 U.S. 662, 664 (1994).  Defendant must "demonstrate that the recited harms are real, not merely conjectural, and that the [restriction] will in fact alleviate these harms."  *Id*.  As shown above, he has not done this.  Nor has he satisfied the "narrowly tailored" part of this TPM prong.

While Defendant's policy need not be "the least restrictive means of pursing the substantial governmental interest," MPA 21, he overlooks that "Government bears the burden of showing that the remedy it has adopted does not 'burden substantially more speech than is necessary to further the government's legitimate interests.'" *Comite*, 657 F.3d at 948.  Rather than providing "evidence in support of [his] position" *id*, at 949, Defendant asks the Court to defer to his personal opinion that manual review is superior to automated processes for segregating confidential filings from public ones.  But he cannot avoid his burden by setting up a false choice between tolerating delayed access and hiring more staff to speed processing, as if the latter were the only way to avoid the former.  "Even under the intermediate scrutiny 'time, place, and manner' analysis," the Court "cannot ignore the existence of these readily available alternatives."  *Comite*, 657 F.3d at 950; *Bay Area Peace Navy v. U.S.*, 914 F.2d 1224, 1227 (9th Cir. 1990) ("no tangible evidence" restriction "necessary" to protect stated

interest and record showed "ample ability" to protect interest through other means).[31]

*Defendant's policy does not leave open ample alternative channels* – To "'leave open ample alternative channels for communication of the information,'" *Planet* Order *19, Defendant must allow "'some alternative for expression concerning fast-breaking events.'" *Id.* As in *Planet*, he does not articulate alternative channels for the public to learn about new cases at OCSC in a timely manner while they are still newsworthy and likely to capture the public's attention, instead suggesting that eventual disclosure is itself the alternative channel that satisfies the First Amendment.

Alternative channels are "constitutionally inadequate if the speaker's 'ability to communicate effectively is threatened.'" *Bay Area Peace Navy*, 914 F.2d at 1229. When a speaker seeks to engage in "[i]mmediate speech … on immediate issues" allowing it to communicate later is inadequate because it does not effectively reach the intended audience. *NAACP v. Richmond*, 743 F.2d 1346, 1355-56 (9th Cir. 1984). "[D]issemination delayed is dissemination denied." *Id.* at 1356 (involving marches).

CNS seeks timely access to newly filed complaints so it and its subscribers -- and the non-subscribing public who learn about new complaints from CNS's website, libraries, or other media who subscribe -- can engage in "informed public discussion of ongoing judicial proceedings" but they "cannot discuss … unlimited civil complaints about which [they have] no information." *Planet I*, 750 F.3d at 787-88. "[T]he delay inherent" in Defendant's policy – even if only for one business day – prevents CNS from effectively engaging in speech about the day's new civil actions. *Richmond*, 743 F.2d at 1355 (citing *Rosen v. Port of Portland*, 641 F.2d 1243, 1249 (9th Cir. 1981)). And "[a] delay 'of even a day or two' may be intolerable" where, as

---

[31] Given the alternatives, the theoretical cost of hiring more staff is a red herring, and cases offered to show cost is a "significant" interest, MPA 20, are irrelevant. There is no evidence here that timely access would "unduly interfere with the clerk's office's ability to perform its functions," *Barber v. Conradi*, 51 F. Supp. 2d 1257, 1267 (N.D. Ala. 1999) (review of *4,200 files*), or prevent records from being "available when called for" *during trial*. *U.S. v. Gurney*, 558 F.2d 1202, 1210 n.13 (5th Cir. 1977).

here, "'the element of timeliness may be important.'" *Id*. at 1356.[32]

## CONCLUSION

By resting his MSJ on the same grounds asserted in the Order and his brief on appeal, Defendant has presented "separate courts" with "the same matters simultaneously," which he cannot do. *Vasquez-Brenes*, 2015 WL 1268026 at *3.[33] Even if he could, the fate of his motion is sealed not only by the *Brown* decision just issued, but by the case he quotes to begin his brief. "'There is no war between the Constitution and common sense,'" MPA 1 (quoting *Mapp v. Ohio*, 367 U.S. 643, 657 (1961)), because it would be illogical not to require a state court to enforce the Bill of Rights to the same extent as federal courts, thereby "encourag[ing] disobedience to the Federal Constitution which it is bound to uphold." *Mapp*, 367 U.S. at 657.   Yet that is exactly what Defendant seeks by asking this Court to allow his court not to enforce the First Amendment right of timely access the same way it has been enforced by federal courts in, among other places, CNS's other cases.  His motion should be denied.

Dated:  January 8, 2018          BRYAN CAVE LLP


By:   /s/ Rachel Matteo-Boehm
      Attorneys for Plaintiff
      COURTHOUSE NEWS SERVICE

---

[32] Holding complaints for 1-13 days is not like the regulation in *G.K. Ltd. Travel v. City of Lake Oswego*, 436 F.3d 1064 (9th Cir. 2006) (barring some signs but allowing others), because it *does* "foreclose[ ] 'an entire medium of public expression.'" *Id*. at 1074.  Defendant's other authority is inapposite. *Sandefur v. Village of Hanover Park*, 862 F. Supp. 2d 840, 849 (N.D. Ill. 2012) (person removed from meeting for *carrying concealed gun* had alternative channels to communicate); *Wilfong v. Morris Cty. Corr. Facility*, 2006 WL 3392938, *5 n.3 (D.N.J. Nov. 21, 2006) (not discussing alternative channels where mail delay did not violate *First Amendment as applied to prisons*).  The unpublished *Barth* decision failed even to address this requirement. 187 F.3d at *1-2.  And impounding juror information *to protect a compelling interest* does not support TPM. *U.S. v. Doherty*, 675 F. Supp. 719, 724-25 (D. Mass. 1987).

[33] But the Court could reconsider the order denying CNS's motion to stay, and should at least stay or postpone the trial date. *Morgan Stanley*, 2015 WL 7271717 at *4-5.

BRIEF OF CNS IN OPP. TO DEF'S MSJ                    Case No. 8:17-cv-00126 AG (KESx)