Robert A. Naeve (State Bar No. 106095)
rnaeve@jonesday.com
Cary D. Sullivan (State Bar No. 228527)
carysullivan@jonesday.com
JONES DAY
3161 Michelson Drive, Suite 800
Irvine, CA 92612.4408
Telephone: +1.949.851.3939
Facsimile: +1.949.553.7539

Nathaniel P. Garrett (State Bar No. 248211)
ngarrett@jonesday.com
JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94104-1500
Telephone: +1.415.626.3939
Facsimile: +1.415.875.5700

Attorneys for Defendant
David Yamasaki

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| Courthouse News Service,<br><br>Plaintiff,<br><br>v.<br><br>David Yamasaki, in his official capacity as Court Executive Officer/Clerk of the Orange County Superior Court,<br><br>Defendant. | Case No. 8:17-cv-00126 AG (KESx)<br><br>Assigned for all purposes to Hon. Andrew J. Guilford<br><br>**DEFENDANT DAVID YAMASAKI'S OBJECTIONS TO EVIDENCE SUBMITTED IN SUPPORT OF OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**<br><br>Date:      January 29, 2018<br>Time:      10:00 a.m.<br>Courtroom: 10D<br>Judge:     Hon. Andrew J. Guilford |

1    Defendant David Yamasaki, in his official capacity as Court Executive
2    Officer/Clerk of the Orange County Superior Court ("OCSC") submits the
3    following evidentiary objections to the declarations of William Girdner, Joanna
4    Mendoza, Craig Rosenberg, Jonathan Fetterly, accompanying exhibits thereto,
5    exhibits attached to ECF No. 12, and exhibits attached to ECF No. 92 referenced by
6    Plaintiff Courthouse News Service ("CNS") In Support of Its Opposition to
7    OCSC's Motion for Summary Judgment.  OCSC respectfully requests the Court
8    sustain the below objections and strike the following evidence.

9
10   **I.   OBJECTIONS TO DEPOSITION OF WILLIAM GIRDNER**

11   **OBJECTION NO. 1:**

12   "CNS's news media subscribers rely on us to provide them with timely
13   information about civil litigation, our specialty, so they can provide information
14   about those cases to their own readers and viewers. In recent years, as the traditional
15   news industry has withered, we have seen an increasing number of news
16   organizations become CNS subscribers. At the same time, we have seen news
17   organizations cut back on court coverage. The end result is that in many courts CNS
18   effectively serves as a pool reporter, with its reporter sometimes the only journalist
19   reporting on that court." (ECF No. 86, Declaration of William Girdner ("Girdner
20   Decl.") ¶ 12, 5:13-20.)

21   **GROUNDS FOR OBJECTION NO. 1:**

22   **Lack of foundation as to personal knowledge; speculation.**  Fed. R. Evid.
23   601, 602; Fed. R. Evid. 701.

24   Mr. Girdner fails to establish foundation for his speculative statement as to
25   what CNS subscribers purportedly "rely on" CNS to provide.  He further fails to
26   establish foundation for his assertion regarding how other news organizations handle
27   "court coverage."  As a result, his concluding sentence regarding the "end result"
28   necessarily lacks foundation as well.

1   <u>**OBJECTION NO. 2**</u>:

2       "I have observed a longstanding tradition in state and federal courts throughout

3   the country whereby news reporters review new complaints on the day they are

4   received, before clerks performed the administrative tasks that follow a court's receipt

5   of a new complaint." (ECF No. 86, Girdner Decl. ¶ 19, 8:11-14.)

6   <u>**GROUNDS FOR OBJECTION NO. 2**</u>:

7       **Lack of foundation as to personal knowledge; improper legal conclusion;**

8   **contradicted by the evidence.**   Fed. R. Evid. 601, 602; Fed. R. Evid. 701.

9       Mr. Girdner fails to establish foundation for his purported observance of "a

10  longstanding tradition in state and federal courts around the country," or even which

11  courts those are.  Mr. Girdner also purports to state a legal conclusion in this context

12  by opining as to a purported tradition.  *See Press-Enterprise Co. v. Superior Court*,

13  478 U.S. 1 (1986).  In addition, Mr. Girdner's statement is contradicted by evidence

14  submitted both by CNS and OCSC, specifically numerous third-party declarations in

15  which court reporters actually contradict Mr. Girnder's assertion, ECF No. 12,

16  Abbott Decl. ¶¶ 14, 35; Angione Decl. ¶ 49; Lee Decl. ¶ 16; Marshall Decl. ¶ 59;

17  Ross Decl. ¶ 7; William Decl. ¶ 10,   and the "report card" published by CNS

18  demonstrating that, even in California alone, there is no such tradition.  ECF No. 75-

19  6, Declaration of Cary D. Sullivan ("Sullivan Decl.") ¶ 2, Ex. A (pp. 6-23).

20  <u>**OBJECTION NO. 3**</u>:

21      "Before the advent of e-filing, federal and state courts in California typically

22  gave reporters access to the day's complaints by providing them in paper form in a

23  box, bin or stack on, behind, beside, or near the intake counter at the end of the day,

24  when courthouse beat reporters would visit the court to learn what had been filed that

25  day." (ECF No. 86, Girdner Decl. ¶ 20, 8:16-20.)

26  <u>**GROUNDS FOR OBJECTION NO. 3**</u>:

27      **Lack of foundation as to personal knowledge; contradicted by the**

28  **evidence.**   Fed. R. Evid. 601, 602; Fed. R. Evid. 701.

Mr. Girdner fails to establish foundation for his assertion as to what California state and federal courts "typically" did before the advent of e-filing, and which courts those are. Moreover, Mr. Girdner's statement is contradicted by evidence submitted both by CNS and OCSC, specifically numerous third-party declarations in which court reporters actually contradict Mr. Girnder's assertion, ECF No. 12, Abbott Decl. ¶¶ 14, 35; Angione Decl. ¶ 49; Lee Decl. ¶ 16; Marshall Decl. ¶ 59; Ross Decl. ¶ 7; William Decl. ¶ 10, and the "report card" published by CNS demonstrating that, even in California alone, there is no such tradition. ECF No. 75-6, Sullivan Decl. ¶ 2, Ex. A (pp. 6-23).

**OBJECTION NO. 4:**

"The tradition of press access was alive and well in the superior courts of California when the paper medium was dominant…. Many of the superior courts that had bad grades on the Report Card were willing to return traditional access to news reporters…. These courts are addressed in detail in the declarations submitted by myself, and current and former CNS employees, in the *Courthouse News v. Planet* case." (ECF No. 86, Girdner Decl. ¶ 33, 14:20-15:18.)

**GROUNDS FOR OBJECTION NO. 4:**

**Lack of foundation as to personal knowledge; improper legal conclusion; contradicted by the evidence.** Fed. R. Evid. 601, 602; Fed. R. Evid. 701.

Mr. Girdner fails to establish foundation for his purported observance of "a tradition of press access," or even which courts observed such a tradition. Mr. Girdner also purports to state a legal conclusion in this context by opining as to a purported tradition. *See Press-Enterprise Co. v. Superior Court*, 478 U.S. 1 (1986). In addition, Mr. Girdner's statement is contradicted by evidence submitted both by CNS and OCSC, specifically numerous third-party declarations in which court reporters actually contradict Mr. Girnder's assertion, ECF No. 12, Abbott Decl. ¶¶ 14, 35; Angione Decl. ¶ 49; Lee Decl. ¶ 16; Marshall Decl. ¶ 59; Ross Decl. ¶ 7; William Decl. ¶ 10, and the "report card" published by CNS demonstrating that,

even in California alone, there is no such tradition.  ECF No. 75-6, Declaration of Cary D. Sullivan ("Sullivan Decl.") ¶ 2, Ex. A (pp. 6-23).

**OBJECTION NO. 5:**

"…he [Alan Carlson] stated that he does not believe the press should have access to new civil actions e-filed in his court until after they are officially "accepted" into the court's docketing system." (ECF No. 86, Girdner Decl. ¶ 34, 15:23-25.)

**GROUNDS FOR OBJECTION NO. 5:**

**Inadmissible hearsay; contradicted by evidence**. Fed. R. Evid. 801, 802.

Mr. Girdner's assertion regarding Mr. Carlson's purported out-of-court statement, which is being offered for the truth of the matter asserted, constitutes classic and inadmissible hearsay.  *See* Fed. R. Evid. 801; 6 Handbook of Fed. Evid. § 801:5 (8th ed. 2017) ("If the evidentiary purpose is to prove a fact asserted, and such purpose is not approved under Evid. R. 801(d), then the hearsay objection should be sustained.").  In addition, Mr. Girdner's statement is contradicted by Mr. Carlson himself.  *See* ECF No. 17-8,  Declaration of Alan Carlson In Support of Opposition to Motion for Preliminary Injunction ("Carlson Decl."), ¶¶ 3-4.

**OBJECTION NO. 6:**

"After the remodel, the clerk then leased a room to The Orange County Register directly across from the viewing area for court records, a room which I understand, based on CNS's coverage of the court, that newspaper still leases today." (ECF No. 86, Girdner Decl. ¶ 45, 19:24-27.)

**GROUNDS FOR OBJECTION NO. 6:**

**Lack of foundation as to personal knowledge; contradicted by the evidence.**  Fed. R. Evid. 601, 602; Fed. R. Evid. 701.

Mr. Girdner fails to establish foundation for his purported knowledge regarding whether and how the OCSC clerk supposedly leased space to the Orange County Register.  This statement is also directly contradicted by the reply declaration of Jeff Wertheimer in which Mr. Wertheimer describes how the State of California

owns the building that houses OCSC's Central Justice Center, and how the State – not OCSC – leases space in the building to each of the tenants in the building, including the Orange County Register.  Declaration of Jeff Wertheimer In Support Of Reply ("Wertheimer Decl. ISO Reply") ¶ 2. This statement is further contradicted by David Yamasaki's deposition testimony to the same effect.  Declaration Cary D. Sullivan In Support of Reply ("Sullivan Decl. ISO Reply") ¶ 7; Ex. E, David Yamasaki Deposition Testimony ("Yamasaki Depo."), 114:16-21.

**OBJECTION NO.  7:**

"Based on my review of the transcript of Mr. Yamasaki's deposition in this case, it is my understanding there is no reason, other than OCSC's current process-first policy, why OCSC could not put a computer terminal into that room for the press to review new complaints as they are received and before processing, including complaints that are e-filed after the clerk's office closes for the day, which under OCSC local rules are given that day's "filed" date if filed before midnight." (ECF No. 86, Girdner Decl. ¶ 45, 20:3-8.)

**GROUNDS FOR OBJECTION NO.  7:**

**Lack of foundation as to personal knowledge; contradicted by the evidence.**   Fed. R. Evid. 601, 602; Fed. R. Evid. 701.

Mr. Girdner fails to establish foundation for his assertions regarding OCSC's purported "policy" as well as whether and how OCSC can place its public computer terminals.  Further, Mr. Girdner's suggestion that OCSC could place a terminal in a room that it leases to the Orange County Registered is based on a false premise – that OCSC somehow controls the room.  As demonstrated in Mr. Wertheimer's reply declaration and Mr. Yamasaki's deposition testimony, OCSC does not lease space to The Register, nor does OCSC have any right to use or place anything in The Register's room, because The Register leases that space directly from the State of California.  Wertheimer Decl. ISO Reply ¶ 2; Sullivan Decl. ISO Reply ¶ 7, Ex. E, Yamasaki Depo., 114:16-21.

**OBJECTION NO. 8:**

"In 2002, OCSC supervisor Connie Pilcher called a meeting to tell news reporters covering the court that they would no longer see new complaints in the press box at the end of the day, and would henceforth be required to review them on the day following receipt." (ECF No. 86, Girdner Decl. ¶ 46, 20:9-13.)

**GROUNDS FOR OBJECTION NO. 8:**

**Inadmissible hearsay**. Fed. R. Evid. 801, 802.

Mr. Girdner's assertion regarding Ms. Pilcher's purported out-of-court statement, which is being offered for the truth of the matter asserted, constitutes classic and inadmissible hearsay. *See* Fed. R. Evid. 801; 6 Handbook of Fed. Evid. § 801:5 (8th ed. 2017) ("If the evidentiary purpose is to prove a fact asserted, and such purpose is not approved under Evid. R. 801(d), then the hearsay objection should be sustained.").

**OBJECTION NO. 9:**

"Ms. Levitzky began to express sympathy and some agreement with our request, …Mr. Slater acknowledged that press access to new complaints had been delayed by at least four or five days but expressed the view that such delays were just fine. He was adamant in his refusal to consider our request to reinstate traditional press access on the day of filing, and made it clear he was willing to litigate the matter." (ECF No. 86, Girdner Decl. ¶ 47, 20:17-22.)

**GROUNDS FOR OBJECTION NO. 9:**

**Inadmissible hearsay; lack of foundation as to personal knowledge; contradicted by the evidence.** Fed. R. Evid. 801, 802; Fed. R. Evid. 601, 602; Fed. R. Evid. 701.

Mr. Girdner's assertions regarding Ms. Levitzky's and Mr. Slater's purported out-of-court statements, offered for the truth of the matters asserted, constitute classic and inadmissible hearsay. *See* Fed. R. Evid. 801; 6 Handbook of Fed. Evid. At § 801:5 ("If the evidentiary purpose is to prove a fact asserted, and such purpose is not

1    approved under Evid. R. 801(d), then the hearsay objection should be sustained.").

2        Mr. Girdner also fails to establish foundation for his assertion regarding the

3    purported "traditional press access on the day of filing," which statement is

4    contradicted by evidence in any event, specifically numerous third-party declarations

5    in which court reporters actually contradict Mr. Girnder's assertion, ECF No. 12,

6    Abbott Decl. ¶¶ 14, 35; Angione Decl. ¶ 49; Lee Decl. ¶ 16; Marshall Decl. ¶ 59;

7    Ross Decl. ¶ 7; William Decl. ¶ 10, and the "report card" published by CNS

8    demonstrating that, even in California alone, there is no such tradition.  ECF No. 75-

9    6, Sullivan Decl. ¶ 2, Ex. A(pp. 6-23).

10   **OBJECTION NO.  10:**

11       "…Ms. Mehta informed the clerk's staff that because of the delays, the Times

12   had largely stopped reporting on new cases filed in that court. She explained that

13   reporters could not 'sell' a breaking story to editors when it was a day old." (ECF

14   No. 86, Girdner Decl. ¶ 48, 21:1-4.)

15   **GROUNDS FOR OBJECTION NO.  10:**

16       **Inadmissible hearsay.**  Fed. R. Evid. 801, 802.

17       Mr. Girdner's assertion regarding Ms. Mehta's purported out-of-court

18   statements, offered for the truth of the matters asserted, constitutes classic and

19   inadmissible hearsay.  *See* Fed. R. Evid. 801; 6 Handbook of Fed. Evid. At § 801:5

20   ("If the evidentiary purpose is to prove a fact asserted, and such purpose is not

21   approved under Evid. R. 801(d), then the hearsay objection should be sustained.").

22   **OBJECTION NO.  11:**

23       "And it has been CNS's experience that the more important and newsworthy

24   actions tend to be filed late in the day, making them particularly prone to extended

25   delays in press access where courts condition access on processing." (ECF No. 86,

26   Girdner Decl. ¶ 53, 22:13-16.)

27   **GROUNDS FOR OBJECTION NO.  11:**

28       **Lack of foundation as to personal knowledge; irrelevant; misleading and**

**prejudicial.** Fed. R. Evid. 601, 602; Fed. R. Evid. 701; Fed. R. Evid. 401, 402, 403.

Mr. Girdner fails to establish foundation for his assertion regarding "more important and newsworthy actions" supposedly being filed "late in the day," nor does he identify or provide data to support this bald assertion. Moreover, the assertion is rendered irrelevant as a matter of fact by CNS's repeated admission in its evidentiary objections to OCSC's summary judgment motion that, "Courthouse News Service is not requesting that the OCSC identify and promptly publish only 'newsworthy' complaints; it is asking that OCSC make all complaints available the same day they are submitted by the filer." ECF No. 93, CNS Evidentiary Objections ("CNS Evid. Obj."), 5:15-18, 8:18-21, 12:12-15. As a result, CNS's focus on supposedly "newsworthy" complaints is irrelevant and can only be intended to confuse or mislead the Court, and is therefore prejudicial.

**OBJECTION NO. 12:**

"Since the *Times* no longer staffs OCSC with a reporter, and the story was written from Sacramento, it is very likely the complaint was forwarded to the *Times* by the plaintiff attorney, allowing the *Times* to play up the story while beating its rival of old, *The Orange County Register*." (ECF No. 86, Girdner Decl. ¶ 58, 24:10-13.)

**GROUNDS FOR OBJECTION NO. 12:**

**Lack of foundation as to personal knowledge; contradicted by the evidence.** Fed. R. Evid. 601, 602; Fed. R. Evid. 701.

Mr. Girdner fails to establish foundation for his assertion that "the Times no longer staffs OCSC with a reporter." He further fails to establish foundation for his speculation as to how the Times received the subject complaint. As set forth in Ms. Ochoa's reply declaration, the subject complaint was made public at 9:28 a.m. on August 29, 2017, the morning of the day the Times published its story. Declaration of Sara Ochoa In Support Of Reply ("Ochoa Decl. ISO Reply") ¶ 6. Mr. Girdner fails to explain why the Times would supposedly be unable to access the complaint

on the public docket and draft and publish a story about the complaint in the 5½ hours between when the complaint was made public and when the Times published its story at 3:00 p.m. that afternoon.

**OBJECTION NO. 13:**

"As a result of the Clerk's process-first policy, reporting on an important complaint against a celebrated local business was held up by 23 and 26 normal hours." (ECF No. 86. Girdner Decl. ¶ 58, 24:15-17.)

**GROUNDS FOR OBJECTION NO. 13:**

**Lack of foundation as to personal knowledge; irrelevant; misleading and prejudicial.** Fed. R. Evid. 601, 602; Fed. R. Evid. 701; Fed. R. Evid. 401, 402, 403.

Mr. Girdner fails to establish foundation for his assertion regarding OCSC's "policy." Moreover, this assertion is rendered irrelevant as a matter of fact by CNS's repeated admission in its evidentiary objections to OCSC's summary judgment motion that, "Courthouse News Service is not requesting that the OCSC identify and promptly publish only 'newsworthy' complaints; it is asking that OCSC make all complaints available the same day they are submitted by the filer." ECF No. 93, CNS Evid. Obj., 5:15-18, 8:18-21, 12:12-15. As a result, CNS's focus on supposedly "important" or newsworthy complaints is irrelevant and can only be intended to confuse or mislead the Court, and is therefore prejudicial.

**OBJECTION NO. 14:**

"[Ms. Levitzky] informed me that she discussed the matter with her supervisor, who flatly denied the delays." (ECF No. 86, Girdner Decl. ¶ 61, 25:25-26:1.)

**GROUNDS FOR OBJECTION NO. 14:**

**Inadmissible hearsay.** Fed. R. Evid. 801, 802.

Mr. Girdner's assertion regarding Ms. Levitzky's purported out-of-court statement, as well as that of her "supervisor," both of which are offered for the truth of the matters asserted, constitutes classic and inadmissible hearsay. *See* Fed. R. Evid. 801; 6 Handbook of Fed. Evid. At § 801:5 ("If the evidentiary purpose is to

prove a fact asserted, and such purpose is not approved under Evid. R. 801(d), then the hearsay objection should be sustained.").

**OBJECTION NO. 15:**

"At that meeting, Mr. Carlson acknowledged that there was a delay between when the court received a civil complaint fore-filing and when it became available to the press and public. He said the delay was due to a backlog in processing other filings before his staff processed new complaints." (ECF No. 86, Girdner Decl. ¶ 64, 26:20-24.)

**GROUNDS FOR OBJECTION NO. 15:**

**Inadmissible hearsay; contradicted by evidence.** Fed. R. Evid. 801, 802.

Mr. Girdner's assertion regarding Mr. Carlson's purported out-of-court statements, offered for the truth of the matters asserted, constitute classic and inadmissible hearsay. Fed. R. Evid. 801; 6 Handbook of Fed. Evid. At § 801:5 ("If the evidentiary purpose is to prove a fact asserted, and such purpose is not approved under Evid. R. 801(d), then the hearsay objection should be sustained.").   Mr. Girdner's assertion is also contradicted by Mr. Carlson himself. *See* Carlson Decl., ¶¶ 3-4.

**OBJECTION NO. 16:**

"Mr. Carlson acknowledged then in 2010 that the in-box was 'technically possible,' or words to that effect…" (ECF No. 86, Girdner Decl. ¶ 65, 27:1-2.)

**GROUNDS FOR OBJECTION NO. 16:**

**Inadmissible hearsay; contradicted by evidence.** Fed. R. Evid. 801, 802.

Mr. Girdner's assertion regarding Mr. Carlson's purported out-of-court statements, offered for the truth of the matters asserted, constitute classic and inadmissible hearsay. *See* Fed. R. Evid. 801; 6 Handbook of Fed. Evid. At § 801:5 ("If the evidentiary purpose is to prove a fact asserted, and such purpose is not approved under Evid. R. 801(d), then the hearsay objection should be sustained."). Mr. Girdner's assertion is also contradicted by Mr. Carlson himself. *See* Carlson

Decl., ¶ 5.

**OBJECTION NO. 17:**

"In the meeting with Mr. Carlson, he argued with vehemence that the press had no right to see a filing until his staff had completed administrative processing, saying words to the effect, 'It's not filed until I put my stamp on it.'" (ECF No. 86, Girdner Decl. ¶ 66, 5:7.)

**GROUNDS FOR OBJECTION NO. 17:**

**Inadmissible hearsay; contradicted by evidence.** Fed. R. Evid. 801, 802.

Mr. Girdner's assertion regarding Mr. Carlson's purported out-of-court statements, offered for the truth of the matters asserted, constitute classic and inadmissible hearsay. Mr. Girdner's assertion is also contradicted by Mr. Carlson himself. *See* Carlson Decl., ¶¶ 3-4.

**OBJECTION NO. 18:**

"The introduction of e-filing rules was accompanied by what I saw as a pincer movement to degrade traditional timely access. The first part of the pincer movement was a proposed rule that gave clerks a justification for withholding access until new filings were processed." (ECF No. 86, Girdner Decl. ¶ 75, 30-15-18.)

**GROUNDS FOR OBJECTION NO. 18:**

**Lack of foundation as to personal knowledge; improper legal conclusion; contradicted by the evidence; inadmissible hearsay; contradicted by evidence.** Fed. R. Evid. 601, 602; Fed. R. Evid. 701; Fed. R. Evid. 801, 802.

Mr. Girdner opines as to a so-called "pincer movement" without establishing foundation that such a movement is anything more than a figment of his own imagination. Moreover, Mr. Girdner's implication of a conspiracy is directly contradicted by the California Rules of Court, which provide that e-filing "does not include the processing and review of the document, and its entry into the court records, which are necessary for a document to be officially filed." *See* Cal. R. Ct. 2.250(B)(7).

1  **OBJECTION NO. 19:**

2      "Similarly, state courts in Alabama, Connecticut, Georgia, Nevada, New York,

3  Utah, and most recently, in Fresno County, California, also provide electronic access

4  to new e-filed civil complaints upon receipt, before processing. As with federal

5  district courts, there are variations in how the state courts provide that access. Such

6  access can be provided online over the Internet, locally through terminals at the

7  courthouse, or through both methods. In some courts, new e-filed actions are

8  automatically accepted, while in others complaints bear only temporary numbers

9  when they first appear in the electronic in-box and receive a permanent case number

10 only after administrative tasks are completed. Some jurisdictions limit electronic in-

11 box access to credentialed press, while others open the in-box to any interested

12 member of the public. In some jurisdictions, the press can review late filed e-filed

13 complaints at the courthouse, as they are received, in press rooms even after the

14 clerk's office has shut for the night. In all instances, the method used provides timely

15 access to new civil complaints as soon as they are filed, upon receipt, before they are

16 processed, akin to the pre-docketing access traditionally provided to paper-filed

17 complaints." (ECF No. 86, Girdner Decl. ¶ 92, 26:8-23.)

18 **GROUNDS FOR OBJECTION NO. 19:**

19      **Lack of foundation as to personal knowledge; improper legal conclusion;**

20 **contradicted by the evidence.**  Fed. R. Evid. 601, 602; Fed. R. Evid. 701.

21      Mr. Girdner fails to establish foundation for his assertions regarding the

22 various practices ascribed to state and federal courts across the country, and he fails

23 to identify the specific courts referenced.  Moreover, Mr. Girdner's assertions are

24 contradicted by evidence submitted both by CNS and OCSC, specifically numerous

25 third-party declarations in which court reporters actually contradict Mr. Girnder's

26 assertion, ECF No. 12, Abbott Decl. ¶¶ 14, 35; Angione Decl. ¶ 49; Lee Decl. ¶ 16;

27 Marshall Decl. ¶ 59; Ross Decl. ¶ 7; William Decl. ¶ 10, and the "report card"

28 published by CNS demonstrating that, even in California alone, there is no such

1    tradition.  ECF No. 75-6, Sullivan Decl. ¶ 2, Ex. A (pp. 6-23).

2         In addition, Mr. Girdner purports to state a legal conclusion as to whether and

3    how various purported methods provide "timely access" to new complaints.

4    **OBJECTION NO. 20:**

5         "Implementing an electronic in-box is a matter of fairly basic programming by

6    court IT staff or e-filing vendors. I understand from the clerk for Georgia's Fulton

7    County Superior Court that when that court decided to set up its electronic in-box, its

8    e-filing vendor was able to do so quickly and at no cost to the court." (ECF No. 86,

9    Girdner Decl. ¶ 93, 36:24-37:1.)

10   **GROUNDS FOR OBJECTION NO. 20:**

11        **Lack of foundation as to personal knowledge; speculation; inadmissible**

12   **hearsay**. Fed. R. Evid. 601, 602; Fed. R. Evid. 701; Fed. R. Evid. 801, 802.

13        Mr. Girdner fails to establish foundation for his assertion regarding whether

14   and how "an electronic in-box" could be added through "fairly basic programming,"

15   to OCSC's court case management system ("CCMS").  Mr. Girdner has no personal

16   knowledge regarding OCSC's CCMS, and cannot establish otherwise, rendering his

17   suggestion pure speculation.

18        In addition, Mr. Girdner's assertion regarding the Georgia clerk's purported

19   out-of-court statements, offered for the truth of the matter asserted, constitutes classic

20   and inadmissible hearsay.  *See* Fed. R. Evid. 801; 6 Handbook of Fed. Evid. At §

21   801:5 ("If the evidentiary purpose is to prove a fact asserted, and such purpose is not

22   approved under Evid. R. 801(d), then the hearsay objection should be sustained.").

23   **OBJECTION NO. 21:**

24        "The ease with which courts have been able to set up electronic in-boxes is

25   consistent with my own experience based on supervising CNS 's programmers who

26   configure our subscribers' means of accessing CNS content electronically." (ECF No.

27   86, Girdner Decl. ¶ 93, 37:8-11.)

28

**GROUNDS FOR OBJECTION NO. 21:**

**Lack of foundation as to personal knowledge; irrelevant.** Fed. R. Evid. 601, 602; Fed. R. Evid. 701; Fed. R. Evid. 401, 402.

Mr. Girdner fails to establish foundation for his purported knowledge regarding "the ease with which courts have been able to set up electronic in-boxes," and he fails to identify any of the courts with which he's supposedly familiar.

In addition, Mr. Girdner's purported "experience supervising CNS's programmers who configure our subscribers' means of accessing CNS content electronically" is irrelevant with respect to court e-filing systems. Because Mr. Girdner fails to establish foundation for any purported relation between court e-filing systems, including OCSC's CCMS (about which Mr. Girdner has no personal knowledge, and he cannot establish otherwise), and CNS's own electronic systems, which do not involve any sort of court filings, such that Mr. Girdner's assertion is irrelevant as a matter of fact.

**OBJECTION NO. 22:**

"On December 11, 2017, I communicated via email with Fresno Superior Court's manager in charge of its Case Management System, Kevin Anderson. In this e-mail exchange, Mr. Anderson explained how Fresno County Superior Court designed and successfully implemental a technological security option that safeguarded confidential filings from public view in the press review site. A true and correct copy of this email string is attached at Exhibit 20." (ECF No. 86, Girdner Decl. ¶ 100, 42:19-24.)

**GROUNDS FOR OBJECTION NO. 22:**

**Inadmissible hearsay; violation of the Best Evidence Rule; contradicted by evidence**. Fed. R. Evid. 801, 802; Fed. R. Evid. 1002.

Mr. Girdner's assertions regarding Mr. Anderson's purported out-of-court statements, offered for the truth of the matters asserted, constitute classic and inadmissible hearsay. *See* Fed. R. Evid. 801; 6 Handbook of Fed. Evid. At § 801:5

("If the evidentiary purpose is to prove a fact asserted, and such purpose is not approved under Evid. R. 801(d), then the hearsay objection should be sustained.").

In addition, Mr. Girdner's characterization of Mr. Anderson's statements is contradicted by the attached email string, which speaks for itself, and in which Mr. Anderson relays that the changes were made by an outside vendor, and that Mr. Anderson lacks any personal knowledge about them. *See* ECF No. 87, Ex. 20 to Girdner Decl. (pp. 544-557).

**OBJECTION NO. 23:**

"Other state courts that provide electronic access to new e-filed civil complaints upon receipt, before clerk review or processing, include Fresno Superior Court in California, four courts in Georgia (the State Court of Fulton County, the Superior Court of Fulton County, the State Court of DeKalb County, and the Superior Court of DeKalb County), Hartford County Superior Court in Connecticut, Jefferson County Circuit Court in Alabama, Salt Lake County Court (Third Judicial District) in Utah, and the Eighth Judicial District Court of Nevada." (ECF No. 86, Girdner Decl. ¶ 111, 50:21-27.)

**GROUNDS FOR OBJECTION NO. 23:**

**Lack of foundation as to personal knowledge; contradicted by the evidence; irrelevant.** Fed. R. Evid. 601, 602; Fed. R. Evid. 701; Fed. R. Evid. 401, 402.

Mr. Girdner fails to establish foundation for his assertions regarding the practices ascribed to the various courts. Moreover, Mr. Girdner's assertions are contradicted by evidence submitted both by CNS and OCSC, specifically numerous third-party declarations in which court reporters actually contradict Mr. Girnder's assertion, ECF No. 12, Abbott Decl. ¶¶ 14, 35; Angione Decl. ¶ 49; Lee Decl. ¶ 16; Marshall Decl. ¶ 59; Ross Decl. ¶ 7; William Decl. ¶ 10, and the "report card" published by CNS demonstrating that, even in California alone, there is no such tradition. ECF No. 75-6, Sullivan Decl. ¶ 2, Ex. A (pp. 6-23).

1   In addition, Mr. Girdner does not state that such electronic access means *public*
2   access, thereby rendering the assertion irrelevant as a matter of fact.

3   **OBJECTION NO.  24:**

4   "The Clerk's Office at OCSC has followed a similar roller coaster when it
5   comes to processing. Measured over five days just before May 29, 2016, when Judge
6   James Otero handed down his motion for summary judgment ruling in the Planet
7   case, the OCSC Clerk's Office was taking two days to process, providing access to
8   only 6% of the new unlimited complaints on the day of filing, and withholding 82%
9   for two days or more. After the ruling, the Clerk's Office sped up processing and by
10  mid-August 2016, nearly half of the unlimited complaints, 51.5%, could be seen on
11  the day of filing with a lesser 9.4% withheld for two days or more.  But by early
12  October 2016 the Clerk's office had dropped down low again and was processing
13  only 12.9% on the day of filing while withholding 59.5% for two days or more."
14  (ECF No. 86, Girdner Decl. ¶ 131, 62:5-15.)

15  **GROUNDS FOR OBJECTION NO. 24:**

16  **Lack of foundation as to personal knowledge; contradicted by the**
17  **evidence.**   Fed. R. Evid. 601, 602; Fed. R. Evid. 701.

18  Mr. Girdner fails to establish any foundation whatsoever for the cited statistics.
19  Mr. Girdner fails to establish any analytical foundation for how he arrived at these
20  statistics, fails to establish any foundation for his purported personal knowledge of
21  the statistics, and further fails to identify or provide source data for the statistics
22  themselves.

23  In addition, the referenced statistics are contradicted by OCSC business
24  records, specifically the "Turnaround Reports" submitted with OCSC's preliminary
25  injunction and summary judgment papers, which data underlies OCSC's calculations
26  regarding when new civil unlimited complaints are made public relative to receipt.
27  Significantly, CNS does not contest the data contained in the "Turnaround Reports,"
28  and does not dispute the accuracy of OCSC's calculations.  *See* ECF No. 75-2,

1    Declaration of Sara Ochoa ("Ochoa Decl.") ¶¶ 28-29, Ex. C (pp. 20-30); ECF No.

2    75-3, Declaration of Deborah T. Kruse ("Kruse Decl.") ¶¶ 11-12.  While CNS argues

3    that OCSC's calculations are a mischaracterization because they are based on

4    business hours, CNS does not dispute the accuracy of the actual numbers.  *See* ECF

5    No. 83, CNS's Opposition to OCSC's Motion for Summary Judgment ("Opp."),

6    15:1-16:14.

7    **OBJECTION NO. 25:**

8        "In the next year, 2017, the Clerk's Office followed the same pattern.  The

9    week before the complaint in CNS v. Yamasaki was filed on January 24, 2017, the

10   Clerk's Office was processing, and providing access to, only 21% of new unlimited

11   complaints on the day of filing and 19.8% were withheld two days or more.  In early

12   February, the percentage of cases processed and able to be seen on the day of filing

13   jumped up to 44.1% with 13.3% withheld two days or more. Then began a series of

14   ups and downs, dropping to 22.1% of complaints processed and provided on the day

15   of filing in early April, rising to 62.4% in mid-May, dropping to 8.4% in mid-July

16   then jumping to 55.1% in mid-September, before dropping down to 39.8% being

17   processed and provided to the press and public on the day of filing in mid-October

18   2017, with 11.8% withheld two days or more." (ECF No. 86, Girdner Decl. ¶ 132,

19   62:16-26.)

20   **GROUNDS FOR OBJECTION NO. 25:**

21       **Lack of foundation as to personal knowledge; contradicted by the**

22   **evidence.**   Fed. R. Evid. 601, 602; Fed. R. Evid. 701.

23       Mr. Girdner fails to establish any foundation whatsoever for the cited statistics.

24   Mr. Girdner fails to establish foundation for his purported personal knowledge of the

25   statistics and further fails to establish foundation, and fails to identify or provide

26   source data, for the statistics themselves.

27       In addition, the referenced statistics are contradicted by OCSC business

28   records, specifically the "Turnaround Reports" submitted with OCSC's preliminary

injunction and summary judgment papers, which data underlies OCSC's calculations regarding when new civil unlimited complaints are made public relative to receipt. Significantly, CNS does not contest the data contained in the "Turnaround Reports," and does not dispute the accuracy of OCSC's calculations. *See* ECF No. 75-2, Ochoa Decl. ¶¶ 28-29, Ex. C (pp. 20-30); ECF No. 75-3, Kruse Decl. ¶¶ 11-12. While CNS argues that OCSC's calculations are a mischaracterization because they are based on business hours, CNS does not dispute the accuracy of the actual numbers. *See* ECF No. 83, Opp., 15:1-16:14.

**OBJECTION NO. 26:**

"But the roller coaster is most pronounced in the Complex Division of OCSC, where the most important and newsworthy litigation is filed. In January of 2017, prior to CNS's filing of its complaint in this action, the complex unit provided access to only 3.2% of the newly filed complex complaints on the day of filing. In the month of February 2017, that percentage jumped modestly to 29.2%. The pace continued to ramp up to a peak of 42.1% in August 2017. In other words, timely access was provided to less than half the cases when the unit was working at its fastest pace. The processing rate then began to slide, dramatically. In October, only 13.5% of the new complex cases could be reviewed on the day they were filed, and by the end of December 2017, the monthly rate of access on the day of filing had dropped to 9.8%, back to the bottom where the roller coaster started out in late January." (ECF No. 86, Girdner Decl. ¶ 133, 63:5-16.)

**GROUNDS FOR OBJECTION NO. 26:**

**Lack of foundation as to personal knowledge; contradicted by the evidence; irrelevant; prejudicial.** Fed. R. Evid. 601, 602; Fed. R. Evid. 701; Fed. R. Evid. 401, 402, 403.

Mr. Girdner fails to establish any foundation whatsoever for the cited statistics. Mr. Girdner fails to establish foundation for his purported personal knowledge of the statistics and further fails to establish foundation, and fails to identify or provide

1  source data, for the statistics themselves.

2       In addition, the referenced statistics are contradicted by OCSC business

3  records, specifically the "Turnaround Reports" submitted with OCSC's preliminary

4  injunction and summary judgment papers, which data underlies OCSC's calculations

5  regarding when new civil unlimited complaints are made public relative to receipt.

6  Significantly, CNS does not contest the data contained in the "Turnaround Reports,"

7  and does not dispute the accuracy of OCSC's calculations.  *See* ECF No. 75-2, Ochoa

8  Decl. ¶¶ 28-29, Ex. C (pp. 20-30); ECF No. 75-3, Kruse Decl. ¶¶ 11-12.  While

9  CNS argues that OCSC's calculations are a mischaracterization because they are

10  based on business hours, CNS does not dispute the accuracy of the actual numbers.

11  *See* ECF No. 83, Opp., 15:1-16:14.

12       Mr. Girdner also fails to establish foundation for his assertion regarding "most

13  important and newsworthy litigation" supposedly being civil complex actions.

14  Moreover, this assertion is rendered irrelevant as a matter of fact by CNS's repeated

15  admission in its evidentiary objections to OCSC's summary judgment motion that,

16  "Courthouse News Service is not requesting that the OCSC identify and promptly

17  publish only 'newsworthy' complaints; it is asking that OCSC make all complaints

18  available the same day they are submitted by the filer."  ECF No. 93, CNS Evid. Obj.,

19  5:15-18, 8:18-21, 12:12-15.  As a result, CNS's focus on supposedly "newsworthy"

20  civil complex complaints is irrelevant and can only be intended to confuse or mislead

21  the Court, and is therefore prejudicial.

22  **OBJECTION NO. 27:**

23       "In sum, the statistics show that for the 488 complex complaints filed in 2017,

24  about one fifth (21.9%) were made available without delay. The bulk of the complex

25  complaints (78%) were withheld for one to seven days while they were processed.

26  That set of withheld complex cases was about evenly split between two fifths (39.5%)

27  that were withheld one day and two fifths (38.5%) that were withheld for two days

28  up to seven days. By even the most elastic interpretation of the word 'timely,' such

1   access cannot be considered timely access." (ECF No. 86, Girdner Decl. ¶ 134, 62:22-
2   64:2.)

3   **<u>GROUNDS FOR OBJECTION NO. 27</u>:**

4       **Lack of foundation as to personal knowledge; improper legal conclusion;**
5   **contradicted by the evidence; irrelevant; prejudicial.**   Fed. R. Evid. 601, 602;
6   Fed. R. Evid. 701.

7       Mr. Girdner fails to establish any foundation whatsoever for the cited statistics.
8   Mr. Girdner fails to establish foundation for his purported personal knowledge of the
9   statistics and further fails to establish foundation, and fails to identify or provide
10  source data, for the statistics themselves.

11      In addition, the referenced statistics are contradicted by OCSC business
12  records, specifically the "Turnaround Reports" submitted with OCSC's preliminary
13  injunction and summary judgment papers, which data underlies OCSC's calculations
14  regarding when new civil unlimited complaints are made public relative to receipt.
15  Significantly, CNS does not contest the data contained in the "Turnaround Reports,"
16  and does not dispute the accuracy of OCSC's calculations.  *See* ECF No. 75-2, Ochoa
17  Decl. ¶¶ 28-29, Ex. C (pp. 20-30); ECF No. 75-3, Kruse Decl. ¶¶ 11-12.  While
18  CNS argues that OCSC's calculations are a mischaracterization because they are
19  based on business hours, CNS does not dispute the accuracy of the actual numbers.
20  *See* ECF No. 83, Opp., 15:1-16:14.

21      In addition, Mr. Girdner's assertion is rendered irrelevant as a matter of fact
22  by CNS's repeated admission in its evidentiary objections to OCSC's summary
23  judgment motion that, "Courthouse News Service is not requesting that the OCSC
24  identify and promptly publish only 'newsworthy' complaints; it is asking that OCSC
25  make all complaints available the same day they are submitted by the filer."  ECF
26  No. 93, CNS Evid. Obj., 5:15-18, 8:18-21, 12:12-15.  As a result, CNS's focus on
27  civil complex complaints is irrelevant and can only be intended to confuse or mislead
28  the Court, and is therefore prejudicial.

1    Finally, Mr. Girdner's opinion as to what does or does not constitute "timely

2    access" is an inadmissible legal conclusion.

3    **OBJECTION NO.  28:**

4    "I understand that Mr. Yamasaki distinguishes the Judge Otero's ruling in the

5    Planet case by saying Ventura sees a much lower volume of complaints than does

6    OCSC." (ECF No. 86, Girdner Decl. ¶ 138., 64:23-25.)

7    **GROUNDS FOR OBJECTION NO. 28:**

8    **Lack of foundation as to personal knowledge; inadmissible hearsay.**   Fed.

9    R. Evid. 601, 602; Fed. R. Evid. 701; Fed. R. Evid. 801, 802.

10   Mr. Girdner fails to establish foundation for his purported knowledge of Mr.

11   Yamasaki's thoughts and opinions regarding the *Planet* case.  And to the extent Mr.

12   Girdner offers Mr. Yamasaki's out-of-court statements regarding the Planet case,

13   offered for the truth of the matter asserted, that constitutes inadmissible hearsay.

14   *See* Fed. R. Evid. 801; 6 Handbook of Fed. Evid. At § 801:5 ("If the evidentiary

15   purpose is to prove a fact asserted, and such purpose is not approved under Evid. R.

16   801(d), then the hearsay objection should be sustained.").

17   **OBJECTION NO.  29:**

18   "But a small coterie of clerks primarily in Southern California does not see it

19   that way. Operating under the flag of new technology. they have blocked timely

20   access by news reporters. Their determination to withhold press access has persisted

21   in the face of two Ninth Circuit opinions and three district court opinions, one from

22   a California district court, in large part because they are protected from any

23   consequence by the financial backing of an opaque central bureaucracy which. in a

24   demonstration of power and insularity, is using public funds to fight against-public

25   access." (ECF No. 86, Girdner Decl. ¶ 142, 66:6-13.)

26   **GROUNDS FOR OBJECTION NO. 29:**

27   **Lack of foundation as to personal knowledge; inadmissible hearsay;**

28   **improper legal conclusion.**  Fed. R. Evid. 601, 602; Fed. R. Evid. 701; Fed. R. Evid.

801, 802.

Mr. Girdner fails to establish foundation for his assertions regarding the purported views and "determination" of court clerks in Southern California.  Mr. Girdner further fails to establish foundation for his assertion regarding their "financial backing."  He also fails to establish foundation for his assertion regarding the "bureaucracy['s]" use of "public funds" and related intent.

To the extent Mr. Girdner purports to relay out-of-court statements of the clerks, for the truth of the matters asserted, that constitutes inadmissible hearsay. *See* Fed. R. Evid. 801; 6 Handbook of Fed. Evid. At § 801:5 ("If the evidentiary purpose is to prove a fact asserted, and such purpose is not approved under Evid. R. 801(d), then the hearsay objection should be sustained.").

Mr. Girdner also purports to state inadmissible legal conclusions regarding whether "timely access" has been or is being provided.

## II.   OBJECTIONS TO DEPOSITION OF JOANNA MENDOZA

### OBJECTION NO.  30:

"I understand from my editor, William Girdner, that before I began covering OSC, the court provided access to newly filed civil unlimited complaints, which were at that time filed in paper form, by placing the complaints in a box, which members of the media would access in the records area at the end of each court day." (ECF No. 88, Declaration of Joanna Mendoza ("Mendoza Decl.") ¶ 5, 1:24-27.)

### GROUNDS FOR OBJECTION NO. 30:

**Lack of foundation as to personal knowledge; inadmissible hearsay.**  Fed. R. Evid. 601, 602; Fed. R. Evid. 701; Fed. R. Evid. 801, 802.

Ms. Mendoza fails to establish foundation for her personal knowledge regarding the matters stated; she purports merely to rely comments from Mr. Girdner.  Accordingly, because Ms. Mendoza purports to offer Mr. Girdner's out-of-court statements for the truth of the matters asserted, that also constitutes

Def's Obj to Evidence Supporting Opp to MSJ
8:17-cv-00126 AG (KESx)

inadmissible hearsay. *See* Fed. R. Evid. 801; 6 Handbook of Fed. Evid. At § 801:5 ("If the evidentiary purpose is to prove a fact asserted, and such purpose is not approved under Evid. R. 801(d), then the hearsay objection should be sustained.").

**OBJECTION NO. 31:**

"A court security guard in the complex building has informed me that I am not permitted to use the terminal for more than a short period of time because it is regularly used by members of the public. He also told me that court security officers clear the area where the terminal is located shortly after 4:00 each day." (ECF No. 88, Mendoza Decl. ¶ 11, 3:27-4:2.)

**GROUNDS FOR OBJECTION NO. 31:**

**Inadmissible hearsay; contradicted by evidence**.  Fed. R. Evid. 801, 802.

Ms. Mendoza offers the security guard's purported out-of-court statements for the truth of the matters asserted, constituting inadmissible hearsay.  *See* Fed. R. Evid. 801; 6 Handbook of Fed. Evid. At § 801:5 ("If the evidentiary purpose is to prove a fact asserted, and such purpose is not approved under Evid. R. 801(d), then the hearsay objection should be sustained.").  Such statements are also contracted by Mr. Wertheimer's reply declaration.  Wertheimer Decl. ISO Reply ¶¶ 5-7.

**OBJECTION NO. 32:**

"They are also the complaints that are withheld from public review for the greatest amount of time." (ECF No. 88, Mendoza Decl. ¶ 13, 4:16-17.)

**GROUNDS FOR OBJECTION NO. 32:**

**Inadmissible hearsay; contradicted by evidence; irrelevant; prejudicial**.  Fed. R. Evid. 801, 802; Fed. R. Evid. 401, 402, 403.

Ms. Mendoza fails to establish any foundation whatsoever for the cited calculation or conclusion.  Ms. Mendoza fails to establish any analytical foundation for how she or her CNS team arrived at these numbers, fails to establish any foundation for her purported personal knowledge of the qualitative conclusions, and further fails to identify or provide source data for the calculation itself.

1    In addition, the referenced statistics are contradicted by OCSC business

2    records, specifically the "Turnaround Reports" submitted with OCSC's preliminary

3    injunction and summary judgment papers, which data underlies OCSC's calculations

4    regarding when new civil unlimited complaints are made public relative to receipt.

5    Significantly, CNS does not contest the data contained in the "Turnaround Reports,"

6    and does not dispute the accuracy of OCSC's calculations.  *See* ECF No. 75-2, Ochoa

7    Decl. ¶¶ 28-29, Ex. C (pp. 20-30); ECF No. 75-3, Kruse Decl. ¶¶ 11-12.  While

8    CNS argues that OCSC's calculations are a mischaracterization because they are

9    based on business hours, CNS does not dispute the accuracy of the actual numbers.

10   *See* ECF No. 83, Opp., 15:1-16:14.

11   Ms. Mendoza also fails to establish foundation or relevance for her focus on

12   civil complex actions.  Indeed, this assertion is rendered irrelevant as a matter of fact

13   by CNS's repeated admission in its evidentiary objections to OCSC's summary

14   judgment motion that, "Courthouse News Service is not requesting that the OCSC

15   identify and promptly publish only 'newsworthy' complaints; it is asking that OCSC

16   make all complaints available the same day they are submitted by the filer."  ECF

17   No. 93, CNS Evid. Obj., 5:15-18, 8:18-21, 12:12-15.  As a result, CNS's focus on

18   civil complex complaints is irrelevant and can only be intended to confuse or mislead

19   the Court, and is therefore prejudicial.

20   **OBJECTION NO. 33:**

21   "For purposes of analyzing the OCSC Turnaround Reports to measure the

22   actual delays experienced by CNS, I treated new civil complaints processed after 4

23   p.m. on a given day as having been made available on the next day the court was

24   open, because that would have been the first opportunity anyone would have to see

25   the complaint without paying a viewing fee of between $7.50 and $40. For purposes

26   of my analysis, I counted new civil complaints received on weekends and holidays

27   as being received on the next court day, which I understand is consistent with court

28   rules." (ECF No. 88, Mendoza Decl. ¶ 24, 4:8-15.)

1  **GROUNDS FOR OBJECTION NO. 33:**

2      **Contradicted by evidence; incomplete, misleading, and prejudicial**. Fed.

3  R. Evid. 403.

4      Ms. Mendoza's self-serving attempt to mischaracterize OCSC's "Turnaround

5  Reports" by calculating "new civil complaints processed after 4 p.m. on a given day

6  as having been made available on the next day the court was open," is contrary to the

7  undisputed evidence (the "Turnaround Reports" themselves) and ignores that all

8  complaints made available on the public docket are available 24 hours a day through

9  the internet, a fact that Ms. Mendoza concedes. *See* ECF No. 88, Mendoza Decl. ¶

10  46. That Ms. Mendoza apparently prefers not to access complaints that way is neither

11  relevant nor does it constitute good cause to mischaracterize the results to make it

12  seem like complaints are being made available later than they really are.

13      Significantly, CNS does not contest the data contained in the "Turnaround

14  Reports," and does not dispute the accuracy of OCSC's calculations. *See* ECF No.

15  75-2, Ochoa Decl. ¶¶ 28-29, Ex. C (pp. 20-30); ECF No. 75-3, Kruse Decl. ¶¶ 11-

16  12. While CNS argues that OCSC's calculations are a mischaracterization because

17  they are based on business hours, CNS does not dispute the accuracy of the actual

18  numbers. *See* ECF No. 83, Opp., 15:1-16:14. CNS's attempt to re-calculate these

19  numbers with false criteria can only be intended confuse and mislead the Court, and

20  is therefore prejudicial.

21  **OBJECTION NO. 34:**

22      "The results of my analysis of the OCSC Turnaround Reports for all new civil

23  complaints filed between Jan. 1, 2017 and Oct. 18, 2017 is reflected in the attached

24  Exhibit 5. This summary in Exhibit 5 reflects that the same data OCSC used to

25  calculate its assertion that 95.97% of unlimited civil complaints filed between Jan. l,

26  2017 to Oct. 18, 2017 were "published" within eight "business hours," shows that I

27  was not able to see more than half (56.9%) of them on the day the court received

28  them for filing. OCSC withheld 45.8% of the civil unlimited cases for one day, and

withheld another 11.1% for two to thirteen days." (ECF No. 88, Mendoza Decl. ¶ 25, 8:16-23.)

**GROUNDS FOR OBJECTION NO. 34:**

**Lack of foundation as to personal knowledge; contradicted by evidence; incomplete, misleading, and prejudicial**. Fed. R. Evid. 601, 602; Fed. R. Evid. 701; Fed. R. Evid. 403.

Ms. Mendoza fails to establish foundation for the cited statistics and further fails to provide her calculations.

In addition, Ms. Mendoza's self-serving attempt to mischaracterize OCSC's "Turnaround Reports" by calculating "new civil complaints processed after 4 p.m. on a given day as having been made available on the next day the court was open," is contrary to the undisputed evidence (the "Turnaround Reports" themselves) and ignores that all complaints made available on the public docket are available to the public 24 hours a day through the internet, a fact that Ms. Mendoza concedes. *See* ECF No. 88, Mendoza Decl. ¶ 46. That Ms. Mendoza apparently prefers not to access complaints that way is neither relevant nor does it constitute good cause to mischaracterize the results to make it seem like complaints are being made available later than they really are.

Significantly, CNS does not contest the data contained in the "Turnaround Reports," and does not dispute the accuracy of OCSC's calculations. *See* ECF No. 75-2, Ochoa Decl. ¶¶ 28-29, Ex. C (pp. 20-30); ECF No. 75-3, Kruse Decl. ¶¶ 11-12. While CNS argues that OCSC's calculations are a mischaracterization because they are based on business hours, CNS does not dispute the accuracy of the actual numbers. *See* ECF No. 83, Opp., 15:1-16:14. CNS's attempt to re-calculate these numbers with false criteria can only be intended to confuse and mislead the Court, and is therefore prejudicial.

**OBJECTION NO. 35:**

"Also reflected in Exhibit 5 is the fact that the OCSC Turnaround Reports

1   show that access in some weeks was especially bad. Of the civil unlimited complaints

2   filed the week of July 17 - 23, for example, 91.6% were withheld until at least the

3   following court day after they were received for filing." (ECF No. 88, Mendoza Decl.

4   ¶ 26, 8:24-27.)

5   **GROUNDS FOR OBJECTION NO. 35:**

6   **Lack of foundation as to personal knowledge; contradicted by evidence;**

7   **incomplete, misleading, and prejudicial**. Fed. R. Evid. 601, 602; Fed. R. Evid.

8   701; Fed. R. Evid. 403.

9   Ms. Mendoza fails to establish any foundation whatsoever for the cited

10   calculation or conclusion. Ms. Mendoza fails to establish any analytical foundation

11   for how she or her CNS team arrived at these numbers, fails to establish any

12   foundation for her purported personal knowledge of the qualitative conclusions, and

13   further fails to identify or provide source data for the calculation itself.

14   In addition, Ms. Mendoza's self-serving attempt to mischaracterize OCSC's

15   "Turnaround Reports" by calculating "new civil complaints processed after 4 p.m.

16   on a given day as having been made available on the next day the court was open,"

17   is contrary to the undisputed evidence (the "Turnaround Reports" themselves) and

18   ignores that all complaints made available on the public docket are available 24 hours

19   a day through the internet, a fact that Ms. Mendoza concedes. *See* ECF No. 88,

20   Mendoza Decl. ¶ 46. That Ms. Mendoza apparently prefers not to access complaints

21   that way is neither relevant nor does it constitute good cause to mischaracterize the

22   results to make it seem like complaints are being made available later than they really

23   are.

24   Significantly, CNS does not contest the data contained in the "Turnaround

25   Reports," and does not dispute the accuracy of OCSC's calculations. *See* ECF No.

26   75-2, Ochoa Decl. ¶¶ 28-29, Ex. C (pp. 20-30); ECF No. 75-3, Kruse Decl. ¶¶ 11-

27   12. While CNS argues that OCSC's calculations are a mischaracterization because

28   they are based on business hours, CNS does not dispute the accuracy of the actual

numbers.  *See* ECF No. 83, Opp., 15:1-16:14.  CNS's attempt to re-calculate these numbers with false criteria can only be intended to confuse and mislead the Court, and is therefore prejudicial.

**OBJECTION NO. 36:**

ECF No. 88, Exhibit 5 to Mendoza Decl. (pp. 96-99).

**GROUNDS FOR OBJECTION NO. 36:**

**Lack of foundation as to personal knowledge; contradicted by evidence; incomplete, misleading, and prejudicial**.  Fed. R. Evid. 601, 602; Fed. R. Evid. 701; Fed. R. Evid. 403.

Ms. Mendoza fails to establish any foundation whatsoever for the cited calculation or conclusion.  Ms. Mendoza fails to establish any analytical foundation for how she or her CNS team arrived at these numbers, fails to establish any foundation for her purported personal knowledge of the qualitative conclusions, and further fails to identify or provide source data for the calculation itself.

Significantly, CNS does not contest the data contained in the "Turnaround Reports," and does not dispute the accuracy of OCSC's calculations.  *See* ECF No. 75-2, Ochoa Decl. ¶¶ 28-29, Ex. C (pp. 20-30); ECF No. 75-3, Kruse Decl. ¶¶ 11-12.  While CNS argues that OCSC's calculations are a mischaracterization because they are based on business hours, CNS does not dispute the accuracy of the actual numbers.  *See* ECF No. 83, Opp., 15:1-16:14.  CNS's attempt to re-calculate these numbers with false criteria can only be intended to confuse and mislead the Court, and is therefore prejudicial.

**OBJECTION NO. 37:**

"Through an analysis of OCSC's data for January 1, 2017 -October 18, 2017, supplemented by information from the Register of Actions and payment receipts for cases filed from October 19, 2017 - December 19, 2017, I noted the following elements associated with the filing, processing and public availability of a complex complaint: ( 1) filing date; (2) case number with the complex suffix CXC; (3) date

1   and time on which the complaint was received; (4) date and time on which the

2   complex complaint was processed (from October 19 through December 29, time of

3   processing is based on payment receipts and is unavailable for complaints filed with

4   fee waivers, which are listed in the summary with a date and an asterisk); and (5)

5   delay between when the complaint was received and the processing time, which

6   serves as a reliable indicator of when the complaint first becomes available for

7   viewing. In preparing this summary, I excluded cases with a "CXC" designation that

8   were assigned to Judge Bauer because he is a non-complex judge and it appears those

9   cases received the CXC suffix only because Judge Bauer's courtroom is located in

10  the complex building. The summary also excludes a small number of cases that were

11  misfiled as complex, but are not complex cases per the Register of Actions." (ECF

12  No. 88, Mendoza Decl. ¶ 29, 9:18-10:5.)

13  **GROUNDS FOR OBJECTION NO. 37:**

14      **Lack of foundation as to personal knowledge; irrelevant; prejudicial.** Fed.

15  R. Evid. 601, 602; Fed. R. Evid. 701; Fed. R. Evid. 401, 402, 403.

16      Ms. Mendoza fails to establish foundation for her assertions regarding (1)

17  Judge Bauer's supposed assignment; (2) "cases that were misfiled as complex"; and

18  (3) the additional information with which she purported supplemented OCSC's

19  "Turnaround Reports," which information she also fails to identify or provide.

20      In addition, Ms. Mendoza's focus on civil complex cases is rendered irrelevant

21  as a matter of fact by CNS's repeated admission in its evidentiary objections to

22  OCSC's summary judgment motion that, "Courthouse News Service is not

23  requesting that the OCSC identify and promptly publish only 'newsworthy' or

24  complex complaints; it is asking that OCSC make all complaints available the same

25  day they are submitted by the filer." ECF No. 93, CNS Evid. Obj., 5:15-18, 8:18-21,

26  12:12-15. As a result, Ms. Mendoza's focus on civil complex complaints is irrelevant

27  and can only be intended to confuse or mislead the Court, and is therefore prejudicial.

28

Def's Obj to Evidence Supporting Opp to MSJ
8:17-cv-00126 AG (KESx)

1 **OBJECTION NO. 38:**

2      "Exhibit 6 shows that on the day they were filed I was not able to see more

3 than three-quarters (78%) of the 488 complex civil unlimited complaints filed

4 between January 1, 2017 and December 29, 2017. The court withheld more than one

5 third (39.5%) of the complex civil unlimited cases for one day. The court withheld

6 more- than another third (38.5%) for two to seven days. The average delay for all

7 these complex cases was 1.7 days beyond the day they were received by OCSC."

8 (ECF No. 88, Mendoza Decl. ¶ 31, 10:11-16.)

9 **GROUNDS FOR OBJECTION NO. 38:**

10      **Lack of foundation as to personal knowledge; contradicted by the**

11 **evidence; irrelevant; prejudicial.**   Fed. R. Evid. 601, 602; Fed. R. Evid. 701; Fed.

12 R. Evid. 401, 402, 403.

13      Ms. Mendoza fails to establish foundation for her assertions regarding (1)

14 Judge Bauer's supposed assignment; (2) "cases that were misfiled as complex"; and

15 (3) the additional information with which she purported supplemented OCSC's

16 "Turnaround Reports" , which information she also fails to identify or provide.

17      In addition, the referenced statistics are contradicted by OCSC business

18 records, specifically the "Turnaround Reports" submitted with OCSC's preliminary

19 injunction and summary judgment papers, which data underlies OCSC's calculations

20 regarding when new civil unlimited complaints are made public relative to receipt.

21 Significantly, CNS does not contest the data contained in the "Turnaround Reports,"

22 and does not dispute the accuracy of OCSC's calculations.  *See* ECF No. 75-2, Ochoa

23 Decl. ¶¶  28-29, Ex. C (pp. 20-30); ECF No. 75-3, Kruse Decl. ¶¶  11-12.  While

24 CNS argues that OCSC's calculations are a mischaracterization because they are

25 based on business hours, CNS does not dispute the accuracy of the actual numbers.

26 *See* ECF No. 83, Opp., 15:1-16:14. CNS's attempt to re-calculate these numbers with

27 false criteria can only be intended to confuse and mislead the Court, and is therefore

28 prejudicial.

1       In addition, Ms. Mendoza's focus on civil complex cases is rendered irrelevant

2   as a matter of fact by CNS's repeated admission in its evidentiary objections to

3   OCSC's summary judgment motion that, "Courthouse News Service is not

4   requesting that the OCSC identify and promptly publish only 'newsworthy' or

5   complex complaints; it is asking that OCSC make all complaints available the same

6   day they are submitted by the filer."  ECF No. 93, CNS Evid. Obj., 5:15-18, 8:18-21,

7   12:12-15.  As a result, Ms. Mendoza's focus on civil complex complaints is irrelevant

8   and can only be intended to confuse or mislead the Court, and is therefore also

9   prejudicial.

10   **OBJECTION NO. 39:**

11       ECF No. 88, Exhibit 6 to Mendoza Decl. (pp. 100-116).

12   **GROUNDS FOR OBJECTION NO. 39:**

13       **Lack of foundation as to personal knowledge; contradicted by the**

14   **evidence; irrelevant; prejudicial.**   Fed. R. Evid. 601, 602; Fed. R. Evid. 701; Fed.

15   R. Evid. 401, 402, 403.

16       Ms. Mendoza fails to establish any foundation whatsoever for the cited

17   calculation or conclusion.  Ms. Mendoza fails to establish any analytical foundation

18   for how she or her CNS team arrived at these numbers, fails to establish any

19   foundation for her purported personal knowledge of the qualitative conclusions, and

20   further fails to identify or provide source data for the calculation itself.

21       Further, the referenced statistics are contradicted by OCSC business records,

22   specifically the "Turnaround Reports" submitted with OCSC's preliminary

23   injunction and summary judgment papers, which data underlies OCSC's calculations

24   regarding when new civil unlimited complaints are made public relative to receipt.

25   Significantly, CNS does not contest the data contained in the "Turnaround Reports,"

26   and does not dispute the accuracy of OCSC's calculations. *See* ECF No. 75-2, Ochoa

27   Decl. ¶¶ 28-29, Ex. C (pp. 20-30); ECF No. 75-3, Kruse Decl. ¶¶ 11-12.  While

28   CNS argues that OCSC's calculations are a mischaracterization because they are

1    based on business hours, CNS does not dispute the accuracy of the actual numbers.

2    *See* ECF No. 83, Opp., 15:1-16:14.  CNS's attempt to re-calculate these numbers

3    with false criteria can only be intended to confuse and mislead the Court, and is

4    therefore prejudicial.

5          In addition, Ms. Mendoza's focus on civil complex cases is rendered irrelevant

6    as a matter of fact by CNS's repeated admission in its evidentiary objections to

7    OCSC's summary judgment motion that, "Courthouse News Service is not

8    requesting that the OCSC identify and promptly publish only 'newsworthy or

9    complex complaints; it is asking that OCSC make all complaints available the same

10   day they are submitted by the filer."  ECF No. 93, CNS Evid. Obj., 5:15-18, 8:18-21,

11   12:12-15.  As a result, Ms. Mendoza's focus on civil complex complaints is irrelevant

12   and can only be intended to confuse or mislead the Court, and is therefore also

13   prejudicial.

14   **OBJECTION NO.  40:**

15          "Within the last group of complaints that were delayed from two to seven days,

16   the court withheld 29 .3% of those complex civil unlimited complaints for three days

17   or more, and it withheld 13.7% of the complex civil unlimited complaints for four

18   days or more. The average delay for the complex civil unlimited cases falling within

19   this group was 3.4 days beyond the day they were received by OCSC." (ECF No. 88,

20   Mendoza Decl. ¶ 32. 10:17-21.)

21   **GROUNDS FOR OBJECTION NO.  40:**

22          **Lack of foundation as to personal knowledge; contradicted by the**

23   **evidence; irrelevant; prejudicial.**   Fed. R. Evid. 601, 602; Fed. R. Evid. 701; Fed.

24   R. Evid. 401, 402, 403.

25          Ms. Mendoza fails to establish foundation for her assertions regarding 1) Judge

26   Bauer's supposed assignment; 2) "cases that were misfiled as complex;" and 3) the

27   additional information with which she purported supplemented OCSC's

28   "Turnaround Reports" , which information she also fails to identify or provide.

In addition, the referenced statistics are contradicted by OCSC business records, specifically the "Turnaround Reports" submitted with OCSC's preliminary injunction and summary judgment papers, which data underlies OCSC's calculations regarding when new civil unlimited complaints are made public relative to receipt. Significantly, CNS does not contest the data contained in the "Turnaround Reports," and does not dispute the accuracy of OCSC's calculations. *See* ECF No. 75-2, Ochoa Decl. ¶¶ 28-29, Ex. C (pp. 20-30); ECF No. 75-3, Kruse Decl. ¶¶ 11-12. While CNS argues that OCSC's calculations are a mischaracterization because they are based on business hours, CNS does not dispute the accuracy of the actual numbers. *See* ECF No. 83, Opp., 15:1-16:14. CNS's attempt to re-calculate these numbers with false criteria can only be intended to confuse and mislead the Court, and is therefore prejudicial.

In addition, Ms. Mendoza's focus on civil complex cases is rendered irrelevant as a matter of fact by CNS's repeated admission in its evidentiary objections to OCSC's summary judgment motion that, "Courthouse News Service is not requesting that the OCSC identify and promptly publish only "newsworthy" or complex complaints; it is asking that OCSC make all complaints available the same day they are submitted by the filer." ECF No. 93, CNS Evid. Obj., 5:15-18, 8:18-21, 12:12-15. As a result, Ms. Mendoza's focus on civil complex complaints is irrelevant and can only be intended to confuse or mislead the Court, and is therefore also prejudicial.

**OBJECTION NO. 41:**

"The unavailability of the complex civil complaints for between one to seven days after filing has…" (ECF No. 88, Mendoza Decl. ¶ 33, 10:22-23.)

**GROUNDS FOR OBJECTION NO. 41:**

**Lack of foundation as to personal knowledge; contradicted by the evidence; irrelevant; prejudicial.** Fed. R. Evid. 601, 602; Fed. R. Evid. 701; Fed. R. Evid. 401, 402, 403.

1  Ms. Mendoza fails to establish foundation for her assertions regarding 1) Judge

2  Bauer's supposed assignment; 2) "cases that were misfiled as complex;" and 3) the

3  additional   information   with   which   she   purported   supplemented   OCSC's

4  "Turnaround Reports" , which information she also fails to identify or provide.

5  In addition, the referenced statistics are contradicted by OCSC business

6  records, specifically the "Turnaround Reports" submitted with OCSC's preliminary

7  injunction and summary judgment papers, which data underlies OCSC's calculations

8  regarding when new civil unlimited complaints are made public relative to receipt.

9  Significantly, CNS does not contest the data contained in the "Turnaround Reports,"

10  and does not dispute the accuracy of OCSC's calculations.  *See* ECF No. 75-2, Ochoa

11  Decl. ¶¶  28-29, Ex. C (pp. 20-30); ECF No. 75-3, Kruse Decl. ¶¶  11-12.   While

12  CNS argues that OCSC's calculations are a mischaracterization because they are

13  based on business hours, CNS does not dispute the accuracy of the actual numbers.

14  *See* ECF No. 83, Opp., 15:1-16:14.  CNS's attempt to re-calculate these numbers

15  with false criteria can only be intended to confuse and mislead the Court, and is

16  therefore prejudicial.

17  In addition, Ms. Mendoza's focus on civil complex cases is rendered irrelevant

18  as a matter of fact by CNS's repeated admission in its evidentiary objections to

19  OCSC's   summary   judgment   motion   that,   "Courthouse   News   Service   is   not

20  requesting that the OCSC identify and promptly publish only 'newsworthy or

21  complex complaints; it is asking that OCSC make all complaints available the same

22  day they are submitted by the filer."  ECF No. 93, CNS Evid. Obj., 5:15-18, 8:18-21,

23  12:12-15.  As a result, Ms. Mendoza's focus on civil complex complaints is irrelevant

24  and can only be intended to confuse or mislead the Court, and is therefore also

25  prejudicial.

26  **OBJECTION NO.  42:**

27  "The delays  that  naturally  result  from  OCSC's  practice  of  withholding

28  complaints until after processing…" (ECF No. 88, Mendoza Decl. ¶ 45, 14:15-16.)

Def's Obj to Evidence Supporting Opp to MSJ
8:17-cv-00126 AG (KESx)

**GROUNDS FOR OBJECTION NO. 42:**

**Lack of foundation as to personal knowledge; contradicted by the evidence.**   Fed. R. Evid. 601, 602; Fed. R. Evid. 701.

Ms. Mendoza fails to establish foundation for her assertion of OCSC's purported "practice of withholding complaints until after processing."   Moreover, this assertion is contradicted by the declarations of Sara Ochoa and Debbie Kruse submitted with OCSC's moving papers, both of which make clear that OCSC's LPSs review all civil unlimited complaints in the order received and as quickly as possible. *See* ECF No. 75-2, Ochoa Decl. ¶¶ 25-27; ECF No. 75-3, Kruse Decl. ¶¶ 8-10.  OCSC does not withhold anything.

**OBJECTION NO.  43:**

"…for the complex cases in 2017, took up to seven days." (ECF No. 88, Mendoza Decl. ¶ 46, 15:4-5.)

**GROUNDS FOR OBJECTION NO. 43:**

**Lack of foundation as to personal knowledge; contradicted by the evidence; irrelevant; prejudicial.**   Fed. R. Evid. 601, 602; Fed. R. Evid. 701; Fed. R. Evid. 401, 402, 403.

Ms. Mendoza fails to establish foundation for her assertions regarding 1) Judge Bauer's supposed assignment; 2) "cases that were misfiled as complex;" and 3) the additional information with which she purported supplemented OCSC's "Turnaround Reports" , which information she also fails to identify or provide.

In addition, the referenced statistics are contradicted by OCSC business records, specifically the "Turnaround Reports" submitted with OCSC's preliminary injunction and summary judgment papers, which data underlies OCSC's calculations regarding when new civil unlimited complaints are made public relative to receipt. Significantly, CNS does not contest the data contained in the "Turnaround Reports," and does not dispute the accuracy of OCSC's calculations.  *See* ECF No. 75-2, Ochoa Decl. ¶¶  28-29, Ex. C (pp. 20-30); ECF No. 75-3, Kruse Decl. ¶¶  11-12.  While

CNS argues that OCSC's calculations are a mischaracterization because they are based on business hours, CNS does not dispute the accuracy of the actual numbers. *See* ECF No. 83, Opp., 15:1-16:14. CNS's attempt to re-calculate these numbers with false criteria can only be intended to confuse and mislead the Court, and is therefore prejudicial.

In addition, Ms. Mendoza's focus on civil complex cases is rendered irrelevant as a matter of fact by CNS's repeated admission in its evidentiary objections to OCSC's summary judgment motion that, "Courthouse News Service is not requesting that the OCSC identify and promptly publish only 'newsworthy' or complex complaints; it is asking that OCSC make all complaints available the same day they are submitted by the filer." ECF No. 93, CNS Evid. Obj., 5:15-18, 8:18-21, 12:12-15. As a result, Ms. Mendoza's focus on civil complex complaints is irrelevant and can only be intended to confuse or mislead the Court, and is therefore also prejudicial.

**OBJECTION NO. 44:**

"OCSC provides *Orange County Register* reporters with a dedicated working room across the hall from the Records Area." (ECF No. 88, Mendoza Decl. ¶ 47, 15:6-7.)

**GROUNDS FOR OBJECTION NO. 44:**

**Lack of foundation as to personal knowledge; contradicted by the evidence.** Fed. R. Evid. 601, 602; Fed. R. Evid. 701..

Ms. Mendoza fails to establish foundation for her purported knowledge regarding whether and how OCSC supposedly "provides Orange County Register reporters with a dedicated working room across the hall from the Records Area." This statement is also directly contradicted by the reply declaration of Jeff Wertheimer in which Mr. Wertheimer describes how the State of California owns the building that houses OCSC's Central Justice Center, and how the State – not OCSC – leases space in the building to each of the tenants in the building, including the

Orange County Register.  Wertheimer Decl. ISO Reply ¶ 2. This statement is further contradicted by David Yamasaki's deposition testimony to the same effect. Declaration Cary D. Sullivan In Support of Reply ("Sullivan Decl. ISO Reply") ¶ 7; Ex. E, Yamasaki Depo., 114:16-21.

**OBJECTION NO.  45:**

"…understand from *Register* reporters that they are permitted to work in that room as late as they wish after the court closes to the general public at 5 p.m." (ECF No. 88, Mendoza Decl. ¶ 47, 15:8-10.)

**GROUNDS FOR OBJECTION NO.  45:**

**Inadmissible hearsay; irrelevant**.  Fed. R. Evid. 801, 802; Fed. R. Evid. 401, 402.

Ms. Mendoza purports to relay comments from Orange County Register reporters regarding whether they are permitted to work late in the room that The Register leases from the State of California.  Because the comments are being offered for the truth of the matter asserted, they constitute inadmissible hearsay.

In addition, because the State of California owns the building that houses OCSC's Central Justice Center, and because the State – not OCSC – leases space in the building to each of the tenants in the building, including the Orange County Register, Wertheimer Decl. ISO Reply ¶ 2; Sullivan Decl. ISO Reply ¶ 7, Ex. E, Yamasaki Depo., 114:16-21, whether and how The Register's reporters use The Register's privately leased space is irrelevant as a matter of fact.

## III.   OBJECTIONS TO DEPOSITION OF CRAIG ROSENBERG, Ph.D.

**OBJECTION NO.  46:**

"Based on my review of that material and my experience, I am of the opinion that the method that the Orange County Superior Court ("OCSC") currently uses to secure the confidentiality of complaints that are conditionally sealed (i.e., filed with a motion or a request to seal) or required to be kept confidential by statute is not

optimal and could be improved quickly and easily by OCSC programmers, while at the same time allowing the public to have access to non-confidential complaints as soon as the complaints are electronically received by OCSC and before manual clerk review." (ECF No. 89, Declaration of Craig Rosenberg ("Rosenberg Decl. ") ¶ 5, 3:10-17.)

**GROUNDS FOR OBJECTION NO. 46:**

**Lack of foundation; improper expert opinion; lack of reliability; failure to submit expert disclosures.** Fed. R. Evid. 702, 703; Fed. R. Civ. P. 26, 37.

Dr. Rosenberg fails to establish foundation for his purported knowledge of (1) OCSC's CCMS; (2) "the method that [OCSC] currently uses to secure the confidentiality of complaints that are conditionally sealed … or required to be kept confidential by statute"; and (3) whether and how CCMS "could be improved quickly and easily by OCSC programmers."  Dr. Rosenberg does not profess to have any knowledge of or familiarity with CCMS – because he has none – and thus cannot know its technological capabilities, functionality, and/or possibilities.

Dr. Rosenberg also lacks expertise in the relevant area.  Dr. Rosenberg's CV reveals that he has advanced degrees, specifically an M.S. and Ph.D., in "Human Factors," and describes himself as "[a]n accomplished human factors engineer … specializing in analysis and design of mobile computing devices, complex systems, user centered design, information architecture, user experience…."  ECF No. 89, Rosenberg Decl. ¶ 2, Ex. 1  (p. 9).  Dr. Rosenberg does not profess to have any background or expertise in computer programming generally or in the programming or creation of court case management systems specifically.

As a result, Dr. Rosenberg is not qualified to opine as to CCMS's capabilities and functionality, nor is he qualified to opine as to what may or may not be possible with respect to re-programming the system to add new features or functions.  *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993); *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 US 137 (1999); *Avila v. Willits Envtl. Remediation Tr.*,

633 F.3d 828, 839 (9th Cir. 2011) (courts properly exclude expert testimony where expert offers opinions outside area of expertise).[1]

Furthermore, Dr. Rosenberg's opinions on these matters should be excluded because they are not "reliable," as required for the admission of scientific expert testimony. *See Daubert* 509 U.S. at 589. Dr. Rosenberg does not demonstrate personal knowledge of OCSC's computer systems or that his opinions are based on scientific foundations. *See Morrison v. Quest Diagnostics Inc.*, 2016 WL 3457725, at *3–4 (D. Nev. June 23, 2016) (reliability may be shown by personal knowledge or scientific basis). And "[a]n opinion based on … unsubstantiated and undocumented information is the antithesis of the scientifically reliable expert opinion admissible under *Daubert* and Rule 702." *Cabrera v. Cordis Corp.*, 134 F.3d 1418, 1423 (9th Cir. 1998). Indeed, Dr. Rosenberg gives no sense whatsoever of the reasoning underlying his opinions. That is fatal. An expert must, at minimum, provide the basis for his scientific conclusions. *See, e.g.*, *Diviero v. Uniroyal Goodrich Tire Co.*, 114 F.3d 851, 853 (9th Cir. 1997). If he does not, courts rightly disregard the opinions offered as "unsubstantiated and subjective, and therefore unreliable and inadmissible." *Id.* That is the proper course here.

Finally, Dr. Rosenberg's opinions on these matters should be excluded because he failed to provide the necessary written disclosures under Federal Rule of Civil Procedure 26(a)(2). "Although these rules refer to experts used at trial, courts have applied them when an expert's testimony is offered to the court in connection with summary judgment motions, reasoning that in such situations, the expert has 'entered the judicial arena.'" *S. Yuba River Citizens League v. Nat'l Marine Fisheries Serv.*, 257 F.R.D. 607, 611 (E.D. Cal. 2009). Here, Dr. Rosenberg has not disclosed what Rule 26 requires, which includes "the facts or data considered by the witness in

---

[1] The current summary judgment briefing schedule does not allow sufficient time for Yamasaki to formally notice a motion to exclude Dr. Rosenberg's testimony under *Daubert* prior to the scheduled hearing. Yamasaki reserves the right to notice such a motion at a future date.

1  forming" his opinion; a list of prior cases in which the witness has served as an expert

2  witness; and the witness's compensation.  Fed. R. Civ. P. 26(a)(2)(B).  As already

3  explained, Dr. Rosenberg's declaration provides no detail regarding the facts or data

4  he considered in forming his various conclusions.  And a report that describes "none

5  of the underlying data or observations" relied on by the expert is deficient.  *Taser*

6  *Int'l, Inc. v. Bestex Co.*, 2007 WL 2947564, at *8-9 (C.D. Cal. Feb. 9, 2007).  Because

7  Dr. Rosenberg did not disclose what he was required to under Rule 26, Yamasaki

8  was never given the opportunity to probe the basis of his views, including by

9  deposition.  Exclusion of his testimony is therefore warranted.  *See, e.g.*, *id.* at *8-9

10  (excluding expert testimony where the defendant was rendered unable to effectively

11  respond to testimony because of party's failure to disclose); *Colony Holdings, Inc. v.*

12  *Texaco Ref. & Mktg., Inc.*, 2001 WL 1398403, at *6 (C.D. Cal. Oct. 29, 2001)

13  (excluding testimony because expert "was not disclosed as an expert witness, no

14  expert report was prepared and produced, and Defendants did not have the

15  opportunity to depose and examine [the expert] regarding the reliability of his

16  opinions").

17  **OBJECTION NO.  47:**

18     "Given these facts, it would be more efficient and less prone to errors for the

19  Court to modify its e-filing system so that the e-filers themselves would be required

20  to check a single box or select one of two radio buttons (that would be functionally

21  equivalent to the check box) to indicate that the filing contains confidential

22  information." (ECF No. 89, Rosenberg Decl. ¶ 7, 4:1-5.)

23  **GROUNDS FOR OBJECTION NO.  47:**

24     **Lack of foundation; improper expert opinion; lack of reliability; failure**

25  **to submit expert disclosures.**  Fed. R. Evid. 702, 703; Fed. R. Civ. P. 26, 37.

26     Dr. Rosenberg fails to establish foundation for his purported knowledge of (1)

27  OCSC's CCMS; (2) the functionality of CCMS with respect to designation of

28  confidential complaints or complaints that are to be sealed; and (3) whether and how

CCMS could be re-programmed or upgraded by OCSC programmers.  Dr. Rosenberg does not profess to have any knowledge of or familiarity with CCMS – because he has none – and thus cannot know its technological capabilities, functionality, and/or possibilities.

Dr. Rosenberg also lacks expertise in the relevant area.  Dr. Rosenberg's CV reveals that he has advanced degrees, specifically an M.S. and Ph.D., in "Human Factors," and describes himself as "[a]n accomplished human factors engineer … specializing in analysis and design of mobile computing devices, complex systems, user centered design, information architecture, user experience…."  ECF No. 89, Rosenberg Decl. ¶ 2, Ex. 1  (p. 9).  Dr. Rosenberg does not profess to have any background or expertise in computer programming generally or in the programming or creation of court case management systems specifically.

As a result, Dr. Rosenberg is not qualified to opine as to CCMS's capabilities and functionality, nor is he qualified to opine as to what may or may not be possible with respect to re-programming the system to add new features or functions.  *See Daubert*, 509 U.S. 579; *see also Kumho Tire*, 526 US 137; *Avila*, 633 F.3d at 839 (courts properly exclude expert testimony where expert offers opinions outside area of expertise).

Furthermore, Dr. Rosenberg's opinion on these matters should be excluded because they are not "reliable," as required for the admission of scientific expert testimony.  *See Daubert* 509 U.S. at 589.  Dr. Rosenberg does not demonstrate personal knowledge of OCSC's computer systems or that his opinions are based on scientific foundations.  *See Morrison*,  2016 WL 3457725, at *3–4 (reliability may be shown by personal knowledge or scientific basis).  And "[a]n opinion based on … unsubstantiated and undocumented information is the antithesis of the scientifically reliable expert opinion admissible under *Daubert* and Rule 702."  *Cabrera*, 134 F.3d at 1423.   Indeed, Dr. Rosenberg gives no sense whatsoever of the reasoning underlying his opinions.  That is fatal.  An expert must, at minimum, provide the

basis for his scientific conclusions.  *See, e.g.*, *Diviero*, 114 F.3d at 853.  If he does not, courts rightly disregard the opinions offered as "unsubstantiated and subjective, and therefore unreliable and inadmissible."  *Id.*  That is the proper course here.

Dr. Rosenberg's opinions on these matters should also be excluded because he failed to provide the necessary written disclosures under Federal Rule of Civil Procedure 26(a)(2).  "Although these rules refer to experts used at trial, courts have applied them when an expert's testimony is offered to the court in connection with summary judgment motions, reasoning that in such situations, the expert has 'entered the judicial arena.'"  *S. Yuba River Citizens League*, 257 F.R.D. at 611.  Here, Dr. Rosenberg has not disclosed what Rule 26 requires, which includes "the facts or data considered by the witness in forming" his opinion; a list of prior cases in which the witness has served as an expert witness; and the witness's compensation.  Fed. R. Civ. P. 26(a)(2)(B).  As already explained, Dr. Rosenberg's declaration provides no detail regarding the facts or data he considered in forming his various conclusions. And a report that describes "none of the underlying data or observations" relied on by the expert is deficient.  *Taser Int'l*, 2007 WL 2947564, at *8-9.  Because Dr. Rosenberg did not disclose what he was required to under Rule 26, Yamasaki was never given the opportunity to probe the basis of his views, including by deposition. Exclusion of his testimony is therefore warranted.  *See, e.g.*, *id.* at *8-9 (excluding expert testimony where the defendant was rendered unable to effectively respond to testimony because of party's failure to disclose); *Colony Holdings*, 2001 WL 1398403, at *6 (excluding testimony because expert "was not disclosed as an expert witness, no expert report was prepared and produced, and Defendants did not have the opportunity to depose and examine [the expert] regarding the reliability of his opinions").

In addition, Dr. Rosenberg's assertion that a check-box or push-button feature would be "more efficient and less prone to errors" is based on a demonstrably false premise – that filers always comply with filing requirements regarding confidential

1   complaints.   OCSC has already establishes numerous examples where filers

2   disregarded an express requirement to note confidential treatment on the caption page

3   of a complaint.  *See* ECF No. 75-2, Ochoa Decl. ¶¶ 21-22.  And while CNS quibbles

4   with the exact number of these examples, CNS concedes that 13 confidential

5   complaints would have been made public but for LPS review.  ECF No. 84, CNS

6   Response to OCSC SUF ("CNS Resp. to SUF"), ¶ 21.  In other words, CNS concedes

7   the dispositive fact that, but for LPS review, more than a dozen confidential

8   complaints would have been made public.  Consequently, because we know that

9   leaving the confidentiality determination to filers is not a failsafe approach, LPS

10  review would still be required for the Court to fulfill its obligation to do all it can to

11  ensure that complaints that are required by law to be kept confidential are not

12  accidentally made public.  Cal. Civ. Proc. Code § 1277(b)(3); Cal. Rs. Ct. 2.575-

13  2.577; Cal. Rs. Ct. 2.571(e), 2.573(a); Cal. Ins. Code § 1871.7(e)(2); Cal. Civ. Proc.

14  Code § 340.1(m); *Mao's Kitchen, Inc. v. Mundy*, 209 Cal. App. 4th 132, 149 (2012);

15  Cal. R. Ct. 3.54; Cal. Elec. Code § 2166–2166.5; *see* ECF No. 75-2, Ochoa Decl. ¶

16  30; ECF No. 75-3, Kruse Decl. ¶ 13.

17  **OBJECTION NO.  48:**

18      "OCSC's current procedure of relying on the LPS to review a text box for e-

19  filer comments and the face page of the complaint amplifies the potential for human

20  error. First, OCSC's current system requires the e-filer to remember to request

21  confidentiality where appropriate (either explicitly, or by referencing one of several

22  categories of confidential complaints by name or code section) rather than explicitly

23  requiring the e-filer to address the question of confidentiality. Second, an e-filer

24  entering comments into a free-form text box might not use the key words or code

25  section the LPS looks for to identify confidentiality. Third, even if thee-filer uses

26  these key terms, the LPS can overlook them despite their best diligence. At the same

27  time, the LPS review does nothing to improve the appropriate selection of a security

28  level because the reviewing LPS relies on the e-filer to designate a complaint as

Def's Obj to Evidence Supporting Opp to MSJ
8:17-cv-00126 AG (KESx)

1  "confidential," "secret," or conditionally "sealed" by using those words or referencing
2  one of several categories of confidential complaints by name or code section in the
3  comments box or on the complaint's face page." (ECF No. 89, Rosenberg Decl. ¶ 8,
4  4:23-5:9.)

5  **GROUNDS FOR OBJECTION NO. 48:**

6  **Lack of foundation; improper expert opinion; lack of reliability; failure
7  to submit expert disclosures.** Fed. R. Evid. 702, 703; Fed. R. Civ. P. 26, 37.

8  Dr. Rosenberg fails to establish foundation for his purported knowledge of 1)
9  OCSC's CCMS; and 2) the functionality of CCMS with respect to designation of
10  confidential complaints or complaints that are to be sealed.  Dr. Rosenberg does not
11  profess to have any knowledge of or familiarity with CCMS – because he has none
12  – and thus cannot know its technological capabilities, functionality, and/or
13  possibilities.

14  Dr. Rosenberg also lacks expertise in the relevant area.  Dr. Rosenberg's CV
15  reveals that he has advanced degrees, specifically an M.S. and Ph.D., in "Human
16  Factors," and describes himself as "[a]n accomplished human factors engineer …
17  specializing in analysis and design of mobile computing devices, complex systems,
18  user centered design, information architecture, user experience…." ECF No. 89,
19  Rosenberg Decl. ¶ 2, Ex. 1  (p. 9).  Dr. Rosenberg does not profess to have any
20  background or expertise in computer programming generally or in the programming
21  or creation of court case management systems specifically.

22  As a result, Dr. Rosenberg is not qualified to opine as to CCMS's capabilities
23  and functionality.  *See Daubert*, 509 U.S. 579; *see also Kumho Tire*, 526 US 137;
24  *Avila*, 633 F.3d at 839 (courts properly exclude expert testimony where expert offers
25  opinions outside area of expertise).

26  Furthermore, Dr. Rosenberg's opinion on these matters should be excluded
27  because they are not "reliable," as required for the admission of scientific expert
28  testimony.  *See Daubert* 509 U.S. at 589.  Dr. Rosenberg does not demonstrate

1    personal knowledge of OCSC's computer systems or that his opinions are based on

2    scientific foundations.  *See Morrison*,  2016 WL 3457725, at *3–4 (reliability may

3    be shown by personal knowledge or scientific basis).  And "[a]n opinion based on …

4    unsubstantiated and undocumented information is the antithesis of the scientifically

5    reliable expert opinion admissible under *Daubert* and Rule 702."  *Cabrera*, 134 F.3d

6    at 1423.   Indeed, Dr. Rosenberg gives no sense whatsoever of the reasoning

7    underlying his opinions.  That is fatal.  An expert must, at minimum, provide the

8    basis for his scientific conclusions.  *See, e.g.*, *Diviero*, 114 F.3d at 853.  If he does

9    not, courts rightly disregard the opinions offered as "unsubstantiated and subjective,

10   and therefore unreliable and inadmissible."  *Id.*  That is the proper course here.

11          Finally, Dr. Rosenberg's opinions on these matters should be excluded because

12   he failed to provide the necessary written disclosures under Federal Rule of Civil

13   Procedure 26(a)(2).  "Although these rules refer to experts used at trial, courts have

14   applied them when an expert's testimony is offered to the court in connection with

15   summary judgment motions, reasoning that in such situations, the expert has 'entered

16   the judicial arena.'"  *S. Yuba River Citizens League*, 257 F.R.D. at 611.  Here, Dr.

17   Rosenberg has not disclosed what Rule 26 requires, which includes "the facts or data

18   considered by the witness in forming" his opinion; a list of prior cases in which the

19   witness has served as an expert witness; and the witness's compensation.  Fed. R.

20   Civ. P. 26(a)(2)(B).  As already explained, Dr. Rosenberg's declaration provides no

21   detail regarding the facts or data he considered in forming his various conclusions.

22   And a report that describes "none of the underlying data or observations" relied on

23   by the expert is deficient.  *Taser Int'l*, 2007 WL 2947564, at *8-9.  Because Dr.

24   Rosenberg did not disclose what he was required to under Rule 26, Yamasaki was

25   never given the opportunity to probe the basis of his views, including by deposition.

26   Exclusion of his testimony is therefore warranted.  *See, e.g.*, *id.* at *8-9 (excluding

27   expert testimony where the defendant was rendered unable to effectively respond to

28   testimony because of party's failure to disclose); *Colony Holdings*, 2001 WL

1398403, at *6 (excluding testimony because expert "was not disclosed as an expert

witness, no expert report was prepared and produced, and Defendants did not have

the opportunity to depose and examine [the expert] regarding the reliability of his

opinions").

**OBJECTION NO.  49:**

"Additionally, providing the security level check box or radio buttons at the

user interface is a relatively simple and inexpensive task. I have read portions of

Mr. Yamasaki's deposition where he acknowledges that such a solution is clearly

possible and within the capacity of OCSC's Court Technology services department,

which is evidently currently working to upgrade OCSC's case management

system." (ECF No. 89, Rosenberg Decl. ¶ 9, 5:10-14.)

**GROUNDS FOR OBJECTION NO.  49:**

**Lack of foundation; improper expert opinion; lack of reliability; failure
to submit expert disclosures.**  Fed. R. Evid. 702, 703; Fed. R. Civ. P. 26, 37.

Dr. Rosenberg fails to establish foundation for his purported knowledge of 1)

OCSC's CCMS; 2) the functionality of CCMS with respect to designation of

confidential complaints or complaints that are to be sealed; and 3) whether and how

CCMS could be re-programmed or upgraded by OCSC programmers.  Dr.

Rosenberg does not profess to have any knowledge of or familiarity with CCMS –

because he has none – and thus cannot know its technological capabilities,

functionality, and/or possibilities.

Dr. Rosenberg also lacks expertise in the relevant area.  Dr. Rosenberg's CV

reveals that he has advanced degrees, specifically an M.S. and Ph.D., in "Human

Factors," and describes himself as "[a]n accomplished human factors engineer …

specializing in analysis and design of mobile computing devices, complex systems,

user centered design, information architecture, user experience…."  ECF No. 89,

Rosenberg Decl. ¶ 2, Ex. 1  (p. 9).  Dr. Rosenberg does not profess to have any

background or expertise in computer programming generally or in the programming

1   or creation of court case management systems specifically.

2        As a result, Dr. Rosenberg is not qualified to opine as to CCMS's capabilities

3   and functionality, nor is he qualified to opine as to what may or may not be possible

4   with respect to re-programming the system to add new features or functions.  *See*

5   *Daubert*, 509 U.S. 579; *see also Kumho Tire*, 526 US 137; *Avila*, 633 F.3d at 839

6   (courts properly exclude expert testimony where expert offers opinions outside area

7   of expertise).

8        Furthermore, Dr. Rosenberg's opinion on these matters should be excluded

9   because they are not "reliable," as required for the admission of scientific expert

10  testimony.  *See Daubert* 509 U.S. at 589.  Dr. Rosenberg does not demonstrate

11  personal knowledge of OCSC's computer systems or that his opinions are based on

12  scientific foundations.  *See Morrison*,  2016 WL 3457725, at *3–4 (reliability may

13  be shown by personal knowledge or scientific basis).  And "[a]n opinion based

14  on … unsubstantiated and undocumented information is the antithesis of the

15  scientifically reliable expert opinion admissible under *Daubert* and Rule 702."

16  *Cabrera*, 134 F.3d at 1423.  Indeed, Dr. Rosenberg gives no sense whatsoever of

17  the reasoning underlying his opinions.  That is fatal.  An expert must, at minimum,

18  provide the basis for his scientific conclusions.  *See, e.g.*, *Diviero*, 114 F.3d at 853.

19  If he does not, courts rightly disregard the opinions offered as "unsubstantiated and

20  subjective, and therefore unreliable and inadmissible."  *Id.*  That is the proper

21  course here.

22       Dr. Rosenberg's opinions on these matters should also be excluded because he

23  failed to provide the necessary written disclosures under Federal Rule of Civil

24  Procedure 26(a)(2).  "Although these rules refer to experts used at trial, courts have

25  applied them when an expert's testimony is offered to the court in connection with

26  summary judgment motions, reasoning that in such situations, the expert has 'entered

27  the judicial arena.'"  *S. Yuba River Citizens League*, 257 F.R.D. at 611.  Here, Dr.

28  Rosenberg has not disclosed what Rule 26 requires, which includes "the facts or data

1   considered by the witness in forming" his opinion; a list of prior cases in which the

2   witness has served as an expert witness; and the witness's compensation.  Fed. R.

3   Civ. P. 26(a)(2)(B).  As already explained, Dr. Rosenberg's declaration provides no

4   detail regarding the facts or data he considered in forming his various conclusions.

5   And a report that describes "none of the underlying data or observations" relied on

6   by the expert is deficient.  *Taser Int'l*, 2007 WL 2947564, at *8-9.  Because Dr.

7   Rosenberg did not disclose what he was required to under Rule 26, Yamasaki was

8   never given the opportunity to probe the basis of his views, including by deposition.

9   Exclusion of his testimony is therefore warranted.  *See, e.g.*, *id.* at *8-9 (excluding

10   expert testimony where the defendant was rendered unable to effectively respond to

11   testimony because of party's failure to disclose); *Colony Holdings*, 2001 WL

12   1398403, at *6 (excluding testimony because expert "was not disclosed as an expert

13   witness, no expert report was prepared and produced, and Defendants did not have

14   the opportunity to depose and examine [the expert] regarding the reliability of his

15   opinions").

16        In addition, Dr. Rosenberg's basic assertion that a check-box or push-button

17   feature would be better is based on a demonstrably false premise – that filers always

18   comply with filing requirements regarding confidential complaints.   OCSC has

19   already established numerous examples where filers disregarded an express

20   requirement to note confidential treatment on the caption page of a complaint.  *See*

21   ECF No. 75-2, Ochoa Decl. ¶¶ 21-22.  And while CNS quibbles with the exact

22   number of these examples, CNS concedes that 13 confidential complaints would

23   have been made public but for LPS review.  ECF No. 84, CNS Response to OCSC

24   SUF ("CNS Resp. to SUF"), ¶ 21.  In other words, CNS concedes the dispositive fact

25   that, but for LPS review, more than a dozen confidential complaints would have been

26   made public.   Consequently, because we know that leaving the confidentiality

27   determination to filers is not a failsafe approach, LPS review would still be required

28   for the Court to fulfill its obligation to do all it can to ensure that complaints that are

1   required by law to be kept confidential are not accidentally made public.  Cal. Civ.

2   Proc. Code § 1277(b)(3); Cal. Rs. Ct. 2.575-2.577; Cal. Rs. Ct. 2.571(e), 2.573(a);

3   Cal. Ins. Code § 1871.7(e)(2); Cal. Civ. Proc. Code § 340.1(m); *Mao's Kitchen, Inc.*,

4   209 Cal. App. 4th at 149; Cal. R. Ct. 3.54; Cal. Elec. Code § 2166–2166.5; *see* ECF

5   No. 75-2, Ochoa Decl. ¶ 30; ECF No. 75-3, Kruse Decl. ¶ 13.

6   **OBJECTION NO. 50:**

7        "None of these concerns should present an issue for implementing the

8   improved, safer, and more efficient user interface proposed above. First, thee-filing

9   system can easily assign a temporary case number or other identifier automatically

10  as soon as the complaint is e-fil~ and that number can subsequently be

11  automatically linked to and replaced by a permanent case number assigned by the

12  LPS at a later time. Programming these system upgrades is a relatively simple and

13  short task. Second, the Court can easily program its system to post a notice in the

14  initial public access screen that a complaint has not been officially accepted by the

15  Court and may be rejected for a variety of issues, such as non-payment of fees.

16  Programming these system upgrades is also a relatively simple and inexpensive

17  task." (ECF No. 89, Rosenberg Decl. ¶ 11, 5:25-6:7.)

18  **GROUNDS FOR OBJECTION NO. 50:**

19       **Lack of foundation; improper expert opinion; lack of reliability; failure**

20  **to submit expert disclosures.**  Fed. R. Evid. 702, 703; Fed. R. Civ. P. 26, 37.

21       Dr. Rosenberg fails to establish foundation for his purported knowledge of 1)

22  OCSC's CCMS; 2) the functionality of CCMS with respect to designation of

23  confidential complaints or complaints that are to be sealed; and 3) whether and how

24  CCMS could be re-programmed or upgraded by OCSC programmers.  Dr.

25  Rosenberg does not profess to have any knowledge of or familiarity with CCMS –

26  because he has none – and thus cannot know its technological capabilities,

27  functionality, and/or possibilities.

28       Dr. Rosenberg also lacks expertise in the relevant area.  Dr. Rosenberg's CV

1    reveals that he has advanced degrees, specifically an M.S. and Ph.D., in "Human

2    Factors," and describes himself as "[a]n accomplished human factors engineer …

3    specializing in analysis and design of mobile computing devices, complex systems,

4    user centered design, information architecture, user experience…."  ECF No. 89,

5    Rosenberg Decl. ¶ 2, Ex. 1  (p. 9).  Dr. Rosenberg does not profess to have any

6    background or expertise in computer programming generally or in the programming

7    or creation of court case management systems specifically.

8         As a result, Dr. Rosenberg is not qualified to opine as to CCMS's capabilities

9    and functionality, nor is he qualified to opine as to what may or may not be possible

10   with respect to re-programming the system to add new features or functions.  *See

11   Daubert*, 509 U.S. 579; *see also Kumho Tire*, 526 US 137; *Avila*, 633 F.3d at 839

12   (courts properly exclude expert testimony where expert offers opinions outside area

13   of expertise).

14        Furthermore, Dr. Rosenberg's opinion on these matters should be excluded

15   because they are not "reliable," as required for the admission of scientific expert

16   testimony.  *See Daubert* 509 U.S. at 589.  Dr. Rosenberg does not demonstrate

17   personal knowledge of OCSC's computer systems or that his opinions are based on

18   scientific foundations.  *See Morrison*,  2016 WL 3457725, at *3–4 (reliability may

19   be shown by personal knowledge or scientific basis).  And "[a]n opinion based on …

20   unsubstantiated and undocumented information is the antithesis of the scientifically

21   reliable expert opinion admissible under *Daubert* and Rule 702."  *Cabrera*, 134 F.3d

22   at 1423.   Indeed, Dr. Rosenberg gives no sense whatsoever of the reasoning

23   underlying his opinions.  That is fatal.  An expert must, at minimum, provide the

24   basis for his scientific conclusions.  *See, e.g.*, *Diviero*, 114 F.3d at 853.  If he does

25   not, courts rightly disregard the opinions offered as "unsubstantiated and subjective,

26   and therefore unreliable and inadmissible."  *Id.*  That is the proper course here.

27        Dr. Rosenberg's opinions on these matters should also be excluded because he

28   failed  to  provide  the  necessary  written  disclosures  under  Federal  Rule  of  Civil

1   Procedure 26(a)(2).  "Although these rules refer to experts used at trial, courts have
2   applied them when an expert's testimony is offered to the court in connection with
3   summary judgment motions, reasoning that in such situations, the expert has 'entered
4   the judicial arena.'"  *S. Yuba River Citizens League*, 257 F.R.D. at 611.  Here, Dr.
5   Rosenberg has not disclosed what Rule 26 requires, which includes "the facts or data
6   considered by the witness in forming" his opinion; a list of prior cases in which the
7   witness has served as an expert witness; and the witness's compensation.  Fed. R.
8   Civ. P. 26(a)(2)(B).  As already explained, Dr. Rosenberg's declaration provides no
9   detail regarding the facts or data he considered in forming his various conclusions.
10  And a report that describes "none of the underlying data or observations" relied on
11  by the expert is deficient.  *Taser Int'l*, 2007 WL 2947564, at *8-9.  Because Dr.
12  Rosenberg did not disclose what he was required to under Rule 26, Yamasaki was
13  never given the opportunity to probe the basis of his views, including by deposition.
14  Exclusion of his testimony is therefore warranted.  *See, e.g.*, *id.* at *8-9 (excluding
15  expert testimony where the defendant was rendered unable to effectively respond to
16  testimony because of party's failure to disclose); *Colony Holdings*, 2001 WL
17  1398403, at *6 (excluding testimony because expert "was not disclosed as an expert
18  witness, no expert report was prepared and produced, and Defendants did not have
19  the opportunity to depose and examine [the expert] regarding the reliability of his
20  opinions").

21      In addition, Dr. Rosenberg's assertion that a check-box or push-button
22  feature would be more efficient is based on a demonstrably false premise – that
23  filers always comply with filing requirements regarding confidential complaints.
24  OCSC has already established numerous examples where filers disregarded an
25  express requirement to note confidential treatment on the caption page of a
26  complaint.  *See* ECF No. 75-2, Ochoa Decl. ¶¶ 21-22.  And while CNS quibbles
27  with the exact number of these examples, CNS concedes that 13 confidential
28  complaints would have been made public but for LPS review.  ECF No. 84, CNS

Def's Obj to Evidence Supporting Opp to MSJ
8:17-cv-00126 AG (KESx)

Response to OCSC SUF ("CNS Resp. to SUF"), ¶ 21.  In other words, CNS concedes the dispositive fact that, but for LPS review, more than a dozen confidential complaints would have been made public.  Consequently, because we know that leaving the confidentiality determination to filers is not a failsafe approach, LPS review would still be required for the Court to fulfill its obligation to do all it can to ensure that complaints that are required by law to be kept confidential are not accidentally made public.  Cal. Civ. Proc. Code § 1277(b)(3); Cal. Rs. Ct. 2.575-2.577; Cal. Rs. Ct. 2.571(e), 2.573(a); Cal. Ins. Code § 1871.7(e)(2); Cal. Civ. Proc. Code § 340.1(m); *Mao's Kitchen, Inc.*, 209 Cal. App. 4th at 149; Cal. R. Ct. 3.54; Cal. Elec. Code § 2166–2166.5; *see* ECF No. 75-2, Ochoa Decl. ¶ 30; ECF No. 75-3, Kruse Decl. ¶ 13.

**OBJECTION NO.  51:**

"Implementing this proposed system would not require the LPS to open up the complaint twice. Access could be provided on receipt before the LPS reviews the complaint, with the complaint only being opened once later as the LPS is able to turn their attention to the complaint. If the LPS for some reason were to decide that the initial designation of the case as "confidential" or "conditionally under seal" by the e-filer was erroneous, the LPS could simply access the existing drop-down security menu (as they currently do) and change the security level set in the system from "2" to "l," and thereby trigger an automated notice to thee-filer that the security level had been downgraded. Thus, the "single touch" approach favored by Mr. Yamasaki, as reflected in the excerpts of his deposition transcripts that I reviewed would be maintained." (ECF No. 89, Rosenberg Decl. ¶ 12, 6:8-18.)

**GROUNDS FOR OBJECTION NO.  51:**

**Lack of foundation; improper expert opinion; lack of reliability; failure to submit expert disclosures.**  Fed. R. Evid. 702, 703; Fed. R. Civ. P. 26, 37.

Dr. Rosenberg fails to establish foundation for his purported knowledge of 1) OCSC's CCMS; 2) the functionality of CCMS with respect to designation of

1  confidential complaints or complaints that are to be sealed; and 3) whether and how

2  CCMS could be re-programmed or upgraded by OCSC programmers.  Dr.

3  Rosenberg does not profess to have any knowledge of or familiarity with CCMS –

4  because he has none – and thus cannot know its technological capabilities,

5  functionality, and/or possibilities.

6      Dr. Rosenberg also lacks expertise in the relevant area.  Dr. Rosenberg's CV

7  reveals that he has advanced degrees, specifically an M.S. and Ph.D., in "Human

8  Factors," and describes himself as "[a]n accomplished human factors engineer …

9  specializing in analysis and design of mobile computing devices, complex systems,

10 user centered design, information architecture, user experience…."  ECF No. 89,

11 Rosenberg Decl. ¶ 2, Ex. 1  (p. 9).  Dr. Rosenberg does not profess to have any

12 background or expertise in computer programming generally or in the programming

13 or creation of court case management systems specifically.

14      As a result, Dr. Rosenberg is not qualified to opine as to CCMS's capabilities

15 and functionality, nor is he qualified to opine as to what may or may not be possible

16 with respect to re-programming the system to add new features or functions.  *See*

17 *Daubert*, 509 U.S. 579; *see also Kumho Tire*, 526 US 137; *Avila*, 633 F.3d at 839

18 (courts properly exclude expert testimony where expert offers opinions outside area

19 of expertise).

20      Furthermore, Dr. Rosenberg's opinion on these matters should be excluded

21 because they are not "reliable," as required for the admission of scientific expert

22 testimony.  *See Daubert* 509 U.S. at 589.  Dr. Rosenberg does not demonstrate

23 personal knowledge of OCSC's computer systems or that his opinions are based on

24 scientific foundations.  *See Morrison*,  2016 WL 3457725, at *3–4 (reliability may

25 be shown by personal knowledge or scientific basis).  And "[a]n opinion based on …

26 unsubstantiated and undocumented information is the antithesis of the scientifically

27 reliable expert opinion admissible under *Daubert* and Rule 702."  *Cabrera*, 134 F.3d

28 at 1423.   Indeed, Dr. Rosenberg gives no sense whatsoever of the reasoning

underlying his opinions.  That is fatal.  An expert must, at minimum, provide the basis for his scientific conclusions.  *See, e.g.*, *Diviero*, 114 F.3d at 853.  If he does not, courts rightly disregard the opinions offered as "unsubstantiated and subjective, and therefore unreliable and inadmissible."  *Id.*  That is the proper course here.

Dr. Rosenberg's opinions on these matters should also be excluded because he failed to provide the necessary written disclosures under Federal Rule of Civil Procedure 26(a)(2).  "Although these rules refer to experts used at trial, courts have applied them when an expert's testimony is offered to the court in connection with summary judgment motions, reasoning that in such situations, the expert has 'entered the judicial arena.'"  *S. Yuba River Citizens League*, 257 F.R.D. at 611.  Here, Dr. Rosenberg has not disclosed what Rule 26 requires, which includes "the facts or data considered by the witness in forming" his opinion; a list of prior cases in which the witness has served as an expert witness; and the witness's compensation.  Fed. R. Civ. P. 26(a)(2)(B).  As already explained, Dr. Rosenberg's declaration provides no detail regarding the facts or data he considered in forming his various conclusions.  And a report that describes "none of the underlying data or observations" relied on by the expert is deficient.  *Taser Int'l*, 2007 WL 2947564, at *8-9.  Because Dr. Rosenberg did not disclose what he was required to under Rule 26, Yamasaki was never given the opportunity to probe the basis of his views, including by deposition.  Exclusion of his testimony is therefore warranted.  *See, e.g.*, *id.* at *8-9 (excluding expert testimony where the defendant was rendered unable to effectively respond to testimony because of party's failure to disclose); *Colony Holdings*, 2001 WL 1398403, at *6 (excluding testimony because expert "was not disclosed as an expert witness, no expert report was prepared and produced, and Defendants did not have the opportunity to depose and examine [the expert] regarding the reliability of his opinions").

In addition, Dr. Rosenberg's basic assertion that a check-box or push-button feature would be better is based on a demonstrably false premise – that filers

Def's Obj to Evidence Supporting Opp to MSJ
8:17-cv-00126 AG (KESx)

1   always comply with filing requirements regarding confidential complaints.  OCSC

2   has already established numerous examples where filers disregarded an express

3   requirement to note confidential treatment on the caption page of a complaint.  *See*

4   ECF No. 75-2, Ochoa Decl. ¶¶ 21-22.  And while CNS quibbles with the exact

5   number of these examples, CNS concedes that 13 confidential complaints would

6   have been made public but for LPS review.  ECF No. 84, CNS Response to OCSC

7   SUF ("CNS Resp. to SUF"), ¶ 21.  In other words, CNS concedes the dispositive

8   fact that, but for LPS review, more than a dozen confidential complaints would

9   have been made public.  Consequently, because we know that leaving the

10  confidentiality determination to filers is not a failsafe approach, LPS review would

11  still be required for the Court to fulfill its obligation to do all it can to ensure that

12  complaints that are required by law to be kept confidential are not accidentally

13  made public.  Cal. Civ. Proc. Code § 1277(b)(3); Cal. Rs. Ct. 2.575-2.577; Cal. Rs.

14  Ct. 2.571(e), 2.573(a); Cal. Ins. Code § 1871.7(e)(2); Cal. Civ. Proc. Code §

15  340.1(m); *Mao's Kitchen, Inc.*, 209 Cal. App. 4th at 149; Cal. R. Ct. 3.54; Cal.

16  Elec. Code § 2166–2166.5; *see* ECF No. 75-2, Ochoa Decl. ¶ 30; ECF No. 75-3,

17  Kruse Decl. ¶ 13.

18  **OBJECTION NO. 52:**

19      "In conclusion, it is my opinion that OCSC could better assure that e-filed

20  complaints to be conditionally sealed or that must be kept confidential by statute are

21  in fact kept inaccessible to the public by changing its e-filing user interface to

22  require the filer to either check a box or make radio-button selections on the

23  interface, which would designate whether public access should be allowed to the

24  complaint or not. This would eliminate the additional possibility for human error

25  that the present system poses by making the security of the complaint dependent on

26  the LPS catching one of several specific key words or statutory code sections in the

27  text-based comment box of OCSC's e-filing interface or on the face page of the

28  complaint Such an upgrade to the current system would not increase the risk that

1  confidential or conditionally sealed complaints might be made accessible to the

2  public. Such an upgrade would also allow the public to access any complaint that

3  the filer's selections have coded as being appropriate for public access, in a timely

4  manner after the e-filer submits the complaint to the court and before clerk review

5  or other processing." (ECF No. 89, Rosenberg Decl. ¶ 13. 6:19-7:6.)

6  **GROUNDS FOR OBJECTION NO. 52:**

7       **Lack of foundation; improper expert opinion; lack of reliability; failure**

8  **to submit expert disclosures.**  Fed. R. Evid. 702, 703; Fed. R. Civ. P. 26, 37.

9       Dr. Rosenberg fails to establish foundation for his purported knowledge of 1)

10  OCSC's CCMS; 2) the functionality of CCMS with respect to designation of

11  confidential complaints or complaints that are to be sealed; and 3) whether and how

12  CCMS could be re-programmed or upgraded by OCSC programmers.  Dr.

13  Rosenberg does not profess to have any knowledge of or familiarity with CCMS –

14  because he has none – and thus cannot know its technological capabilities,

15  functionality, and/or possibilities.

16       Dr. Rosenberg also lacks expertise in the relevant area.  Dr. Rosenberg's CV

17  reveals that he has advanced degrees, specifically an M.S. and Ph.D., in "Human

18  Factors," and describes himself as "[a]n accomplished human factors engineer …

19  specializing in analysis and design of mobile computing devices, complex systems,

20  user centered design, information architecture, user experience…."  ECF No. 89,

21  Rosenberg Decl. ¶ 2, Ex. 1  (p. 9).  Dr. Rosenberg does not profess to have any

22  background or expertise in computer programming generally or in the

23  programmingor creation of court case management systems specifically.

24       As a result, Dr. Rosenberg is not qualified to opine as to CCMS's capabilities

25  and functionality, nor is he qualified to opine as to what may or may not be possible

26  with respect to re-programming the system to add new features or functions.  *See*

27  *Daubert*, 509 U.S. 579; *see also Kumho Tire*, 526 US 137; *Avila*, 633 F.3d at 839

28  (courts properly exclude expert testimony where expert offers opinions outside area

1    of expertise).

2              Furthermore, Dr. Rosenberg's opinion on these matters should be excluded

3    because they are not "reliable," as required for the admission of scientific expert

4    testimony. *See Daubert* 509 U.S. at 589.  Dr. Rosenberg does not demonstrate

5    personal knowledge of OCSC's computer systems or that his opinions are based on

6    scientific foundations. *See Morrison*,  2016 WL 3457725, at *3–4 (reliability may

7    be shown by personal knowledge or scientific basis).  And "[a]n opinion based

8    on … unsubstantiated and undocumented information is the antithesis of the

9    scientifically reliable expert opinion admissible under *Daubert* and Rule 702."

10   *Cabrera*, 134 F.3d at 1423.  Indeed, Dr. Rosenberg gives no sense whatsoever of

11   the reasoning underlying his opinions.  That is fatal.  An expert must, at minimum,

12   provide the basis for his scientific conclusions. *See, e.g.*, *Diviero*, 114 F.3d at 853.

13   If he does not, courts rightly disregard the opinions offered as "unsubstantiated and

14   subjective, and therefore unreliable and inadmissible." *Id.*  That is the proper

15   course here.

16             Dr. Rosenberg's opinions on these matters should also be excluded because he

17   failed to provide the necessary written disclosures under Federal Rule of Civil

18   Procedure 26(a)(2).  "Although these rules refer to experts used at trial, courts have

19   applied them when an expert's testimony is offered to the court in connection with

20   summary judgment motions, reasoning that in such situations, the expert has 'entered

21   the judicial arena.'" *S. Yuba River Citizens League*, 257 F.R.D. at 611.  Here, Dr.

22   Rosenberg has not disclosed what Rule 26 requires, which includes "the facts or data

23   considered by the witness in forming" his opinion; a list of prior cases in which the

24   witness has served as an expert witness; and the witness's compensation.  Fed. R.

25   Civ. P. 26(a)(2)(B).  As already explained, Dr. Rosenberg's declaration provides no

26   detail regarding the facts or data he considered in forming his various conclusions.

27   And a report that describes "none of the underlying data or observations" relied on

28   by the expert is deficient. *Taser Int'l*, 2007 WL 2947564, at *8-9.  Because Dr.

1    Rosenberg did not disclose what he was required to under Rule 26, Yamasaki was

2    never given the opportunity to probe the basis of his views, including by deposition.

3    Exclusion of his testimony is therefore warranted.  *See, e.g.*, *id.* at *8-9 (excluding

4    expert testimony where the defendant was rendered unable to effectively respond to

5    testimony because of party's failure to disclose); *Colony Holdings*, 2001 WL

6    1398403, at *6 (excluding testimony because expert "was not disclosed as an expert

7    witness, no expert report was prepared and produced, and Defendants did not have

8    the opportunity to depose and examine [the expert] regarding the reliability of his

9    opinions").

10        In addition, Dr. Rosenberg's conclusion that a check-box or push-button

11   feature would be better is based on a demonstrably false premise – that filers

12   always comply with filing requirements regarding confidential complaints.  OCSC

13   has already established numerous examples where filers disregarded an express

14   requirement to note confidential treatment on the caption page of a complaint.  *See*

15   ECF No. 75-2, Ochoa Decl. ¶¶ 21-22.  And while CNS quibbles with the exact

16   number of these examples, CNS concedes that 13 confidential complaints would

17   have been made public but for LPS review.  ECF No. 84, CNS Response to OCSC

18   SUF ("CNS Resp. to SUF"), ¶ 21.  In other words, CNS concedes the dispositive

19   fact that, but for LPS review, more than a dozen confidential complaints would

20   have been made public.  Consequently, because we know that leaving the

21   confidentiality determination to filers is not a failsafe approach, LPS review would

22   still be required for the Court to fulfill its obligation to do all it can to ensure that

23   complaints that are required by law to be kept confidential are not accidentally

24   made public.  Cal. Civ. Proc. Code § 1277(b)(3); Cal. Rs. Ct. 2.575-2.577; Cal. Rs.

25   Ct. 2.571(e), 2.573(a); Cal. Ins. Code § 1871.7(e)(2); Cal. Civ. Proc. Code §

26   340.1(m); *Mao's Kitchen, Inc.*, 209 Cal. App. 4th at 149; Cal. R. Ct. 3.54; Cal.

27   Elec. Code § 2166–2166.5; *see* ECF No. 75-2, Ochoa Decl. ¶ 30; ECF No. 75-3,

28   Kruse Decl. ¶ 13.

1

## IV. <u>OBJECTION TO DEPOSITION OF JONATHAN FETTERLY</u>

2

## <u>OBJECTION NO. 53:</u>

3

4          "Attached hereto as Exhibit 16 are true and correct copies of excerpts from

5   Sara Ochoa's deposition transcript relating to the issues raised in Defendant's Motion

6   for Summary Judgment, and related exhibits.."   (ECF No. 90, Declaration of

7   Johnathan Fetterly ("Fetterly Decl.") ¶ 15, 3:13-15.)

## <u>GROUNDS FOR OBJECTION NO. 53:</u>

8

9          **Lack of foundation as to personal knowledge.**  Fed. R. Evid. 601, 602; Fed.

10  R. Evid. 701.

11         "It is insufficient for a party to submit, without more, an affidavit from [ ]

12  counsel identifying the names of the deponent, the reporter, and the action and stating

13  that the deposition is a 'true and correct copy.'" *Orr v. Bank of Am., NT & SA*, 285

14  F.3d 764, 774 (9th Cir. 2002).  "Such an affidavit lacks foundation even if the affiant-

15  counsel were present at the deposition." *See id.*

16         Here, because Exhibit 16 does not contain a signed court reporter certification

17  page, *see* ECF No. 91, p. 901, Mr. Fetterly's declaration that the transcript is a "true

18  and correct copy" is insufficient to authenticate the exhibit.  Further, Mr. Fetterly's

19  statement that the related deposition exhibits are attached is false.  The deposition

20  transcript attached as Exhibit 16 does not contain any exhibits.

## <u>OBJECTION NO. 54:</u>

21

22         ECF No. 91, Exhibit 16 to Fetterly Decl. (pp. 749-901).

## <u>GROUNDS FOR OBJECTION NO. 54:</u>

23

24         **Not properly authenticated.**  Fed. R. Evid. 901.

25         "A deposition or an extract therefrom is authenticated in a motion for summary

26  judgment when it identifies the names of the deponent and the action and includes

27  the reporter's certification that the deposition is a true record of the testimony of the

28  deponent."  *Orr*, 285 F.3d at 774 (9th Cir. 2002); *Pavone v. Citicorp Credit Servs.,*

Def's Obj to Evidence Supporting Opp to MSJ
8:17-cv-00126 AG (KESx)

*Inc.*, 60 F.Supp.2d 1040, 1045 (S.D. Cal. 1997) (excluding a deposition for failure to submit a signed certification from the reporter).

Here, Exhibit 16 does not contain a signed court reporter certification page. ECF No. 91, p. 901. Thus, the deposition transcript has not been properly authenticated and is therefore inadmissible. Further, Mr. Fetterly's statement that the related deposition exhibits are attached is false. The deposition transcript attached as Exhibit 16 does not contain any exhibits.

**OBJECTION NO. 55:**

"Attached hereto as Exhibit 17 are true and correct copies of excerpts from Debbie Kruse's deposition transcript relating to the issues raised in Defendant's Motion for Summary Judgment, and related exhibits." (ECF No. 90, Fetterly Decl. ¶ 16, 3:13-15.)

**GROUNDS FOR OBJECTION NO. 55:**

**Lack of foundation as to personal knowledge.** Fed. R. Evid. 601, 602; Fed. R. Evid. 701.

"It is insufficient for a party to submit, without more, an affidavit from [ ] counsel identifying the names of the deponent, the reporter, and the action and stating that the deposition is a 'true and correct copy.'" *Orr*, 285 F.3d 764, 774 (9th Cir. 2002). "Such an affidavit lacks foundation even if the affiant-counsel were present at the deposition." *See id.*

Here, because Exhibit 17 does not contain a signed court reporter certification page, *see* ECF No. 91, p. 1043, Mr. Fetterly's declaration that the transcript is a "true and correct copy" is insufficient to authenticate the exhibit. Further, Mr. Fetterly's statement that the related deposition exhibits are attached is false. The deposition transcript attached as Exhibit 17 does not contain any exhibits.

**OBJECTION NO. 56:**

ECF No. 91, Exhibit 17 to Fetterly Decl. (pp. 902-1043).

Def's Obj to Evidence Supporting Opp to MSJ
8:17-cv-00126 AG (KESx)

**GROUNDS FOR OBJECTION NO.  56:**

    **Not properly authenticated.**  Fed. R. Evid. 901.

    "A deposition or an extract therefrom is authenticated in a motion for summary judgment when it identifies the names of the deponent and the action and includes the reporter's certification that the deposition is a true record of the testimony of the deponent."  *Orr*, 285 F.3d at 774 (9th Cir. 2002); *Pavone*, 60 F.Supp.2d at 1045 (excluding a deposition for failure to submit a signed certification from the reporter).

    Here, Exhibit 17 does not contain a signed court reporter certification page. ECF No. 91, p. 1043.   Thus, the deposition transcript has not been properly authenticated and is therefore inadmissible.  Further, Mr. Fetterly's statement that the related deposition exhibits are attached is false.  The deposition transcript attached as Exhibit 17 does not contain any exhibits.

**OBJECTION NO.  57:**

    "Attached hereto as Exhibit 18 are true and correct copies of excerpts from David Yamasaki's deposition transcript relating to the issues raised in Defendant's Motion for Summary Judgment, and related exhibits."  **(**ECF No. 90, Fetterly Decl. ¶ 17, 3:21-23.)

**GROUNDS FOR OBJECTION NO.  57:**

    **Lack of foundation as to personal knowledge.**  Fed. R. Evid. 601, 602; Fed. R. Evid. 701.

    "It is insufficient for a party to submit, without more, an affidavit from [ ] counsel identifying the names of the deponent, the reporter, and the action and stating that the deposition is a 'true and correct copy.'" *Orr*, 285 F.3d at 774.  "Such an affidavit lacks foundation even if the affiant-counsel were present at the deposition." *See id.*

    Here, because Exhibit 18 does not contain a signed court reporter certification page, *see* ECF No. 91, p. 1198, Mr. Fetterly's declaration that the transcript is a "true and correct copy" is insufficient to authenticate the exhibit.  Further, Mr. Fetterly's

statement that the related deposition exhibits are attached is false.  The deposition transcript attached as Exhibit 18 does not contain any exhibits.

**OBJECTION NO.  58:**

ECF No. 91, Exhibit 18 to Fetterly Decl. (pp. 1044-1198).

**GROUNDS FOR OBJECTION NO.  58:**

**Not properly authenticated.**  Fed. R. Evid. 901.

"A deposition or an extract therefrom is authenticated in a motion for summary judgment when it identifies the names of the deponent and the action and includes the reporter's certification that the deposition is a true record of the testimony of the deponent."  *Orr*, 285 F.3d at 774 (9th Cir. 2002); *Pavone*, 60 F.Supp.2d at 1045 (excluding a deposition for failure to submit a signed certification from the reporter).

Here, Exhibit 18 does not contain a signed court reporter certification page.  ECF No. 91, p. 1198.  Thus, the deposition transcript has not been properly authenticated and is therefore inadmissible.  Further, Mr. Fetterly's statement that the related deposition exhibits are attached is false.  The deposition transcript attached as Exhibit 18 does not contain any exhibits.

 **OBJECTION NO.  59:**

"Attached hereto as Exhibit 19 are true and correct copies of excerpts from Jeff Wertheimer's deposition transcript relating to the issues raised in Defendant's Motion for Summary Judgment, and related exhibits."  (ECF No. 90, Fetterly Decl. ¶ 18, 3:25-27.)

**GROUNDS FOR OBJECTION NO. 59:**

**Lack of foundation as to personal knowledge.**  Fed. R. Evid. 601, 602; Fed. R. Evid. 701.

"It is insufficient for a party to submit, without more, an affidavit from [ ] counsel identifying the names of the deponent, the reporter, and the action and stating that the deposition is a 'true and correct copy.'" *Orr*, 285 F.3d at 774.  "Such an affidavit lacks foundation even if the affiant-counsel were present at the deposition."

1  *See id.*

2      Here, because Exhibit 19 does not contain a signed court reporter certification

3  page, *see* ECF No. 91, p. 1302, Mr. Fetterly's declaration that the transcript is a "true

4  and correct copy" is insufficient to authenticate the exhibit.  Further, Mr. Fetterly's

5  statement that the related deposition exhibits are attached is false.  The deposition

6  transcript attached as Exhibit 19 does not contain any exhibits.

7  **OBJECTION NO.  60:**

8      ECF No. 91, Exhibit 19 to Fetterly Decl. (pp. 1099-1302).

9  **GROUNDS FOR OBJECTION NO.  60:**

10      **Not properly authenticated.**  Fed. R. Evid. 901.

11      "A deposition or an extract therefrom is authenticated in a motion for summary

12  judgment when it identifies the names of the deponent and the action and includes

13  the reporter's certification that the deposition is a true record of the testimony of the

14  deponent."  *Orr*, 285 F.3d at 774 (9th Cir. 2002); *Pavone*, 60 F.Supp.2d at 1045

15  (excluding a deposition for failure to submit a signed certification from the reporter).

16      Here, Exhibit 19 does not contain a signed court reporter certification page.

17  ECF No. 91, p. 1302.   Thus, the deposition transcript has not been properly

18  authenticated and is therefore inadmissible.  Further, Mr. Fetterly's statement that the

19  related deposition exhibits are attached is false.  The deposition transcript attached

20  as Exhibit 19 does not contain any exhibits.

21  **OBJECTION NO.  61:**

22      "Attached hereto as Exhibit 20 are true and correct copies of excerpts from

23  Michael Planet's deposition transcript in that matter relating to the issues raised in

24  Defendant's Motion for Summary Judgment, and related exhibits." (ECF No. 90,

25  Fetterly Decl. ¶ 19, 4:5-7.)

26  **GROUNDS FOR OBJECTION NO.  61:**

27      **Lack of foundation as to personal knowledge.**  Fed. R. Evid. 601, 602; Fed.

28  R. Evid. 701.

1   "It is insufficient for a party to submit, without more, an affidavit from [ ]
2   counsel identifying the names of the deponent, the reporter, and the action and stating
3   that the deposition is a 'true and correct copy.'" *Orr*, 285 F.3d at 774.  "Such an
4   affidavit lacks foundation even if the affiant-counsel were present at the deposition."
5   *See id.*

6          Here, because Exhibit 20 does not contain a signed court reporter certification
7   page, *see* ECF No. 91, p. 1319, Mr. Fetterly's declaration that the transcript is a "true
8   and correct copy" is insufficient to authenticate the exhibit.

9   **OBJECTION NO.  62:**

10         ECF No. 91, Exhibit 20 to Fetterly Decl. (pp. 1303-1333).

11  **GROUNDS FOR OBJECTION NO.  62:**

12         **Not properly authenticated; inadmissible hearsay.**  Fed. R. Evid. 901; Fed.
13  R. Evid. 801, 802.

14         "A deposition or an extract therefrom is authenticated in a motion for summary
15  judgment when it identifies the names of the deponent and the action and includes
16  the reporter's certification that the deposition is a true record of the testimony of the
17  deponent."  *Orr*, 285 F.3d at 774 (9th Cir. 2002); *Pavone*, 60 F.Supp.2d at 1045
18  (excluding a deposition for failure to submit a signed certification from the reporter).
19  Here, Exhibit 20 does not contain a signed court reporter certification page.  ECF No.
20  91, p. 1319.  Thus, the deposition transcript has not been properly authenticated and
21  is therefore inadmissible.

22         Further, the deposition transcript and accompanying exhibits constitute
23  inadmissible hearsay as out-of-court statements offered for the truth of the matters
24  asserted.

25  **OBJECTION NO.  63:**

26         "The declarations filed as and comprising ECF Document Nos. 12 through 12-
27  3 in this case are all true and correct copies of the declarations previously filed in the
28  *Planet* case." (ECF No. 90, Fetterly Decl. ¶ 21, 4:19-21.)

1

**GROUNDS FOR OBJECTION NO. 63:**

2

    **Lack of foundation as to personal knowledge.**  Fed. R. Evid. 601, 602; Fed.

3

R. Evid. 701.

4

    Mr. Fetterly's declaration does not lay adequate foundation for declarations

5

filed in another proceeding.  It is not enough that Mr. Fetterly characterizes the

6

declarations as "true and correct copies."  *Beyene v. Coleman Sec. Servs., Inc.*, 854

7

F.2d 1179, 1182 (9th Cir. 1988).

8

9

**V.    OBJECTIONS TO COURT REPORTER DECLARATIONS IN ECF NO. 12**

10

11

**OBJECTION NO. 64:**

12

    ECF No. 12 through ECF No. 12-3, Exs. 1-36 to RJN (p. 1-417).

13

**GROUNDS FOR OBJECTION NO. 64:**

14

    **Not properly authenticated; inadmissible hearsay; irrelevant.**  Fed. R.

15

Evid. 901; Fed. R. Evid. 801, 802; Fed. R Evid. 401, 402.

16

    These declarations were prepared for and were submitted in another

17

proceeding.  Given that Mr. Fetterly did not properly authenticate the declarations,

18

they are inadmissible.

19

    Further, the declarations contain inadmissible hearsay.  *See* ECF No. 12,

20

Abbott Decl. ¶ 9 ("The following is a description of procedures used at some of the

21

courts covered by CNS reporters under my supervision."); ECF No. 12, Angione

22

Decl. ¶ 8 (as a supervisor he "observed and experienced the procedures used by

23

reporters in many of these courts to access and review new civil complaints"); ECF

24

No. 12, Brown Decl. ¶ 5 (as a supervisor she "observe[d] CNS's procedures for

25

reviewing new civil complaints received for filing in these courts."); ECF No. 12,

26

Marshall Decl. ¶ 9 (as a supervisor he has "observed and experienced the procedures

27

used by CNS's reporters in many of these courts to access and review new civil

28

complaints received by those courts for filing."); ECF No. 12, Venza Decl. ¶ 19 (as

1    a supervisor she has "observed CNS reporters use the following procedures to review

2    new civil petitions.").  Thus, these out-of court-statements cannot be offered for their

3    truth because they are not subject to cross-examination.

4         Finally, that other courts may provide a greater or lesser extent of access to

5    complaints, without first conducting a confidentiality review, is irrelevant to whether

6    timely access has been provided under the circumstances of *this* case by one of the

7    largest and busiest trial court systems in the nation and under California law that

8    obligates OCSC to protect litigant confidentiality.  Indeed, none of the declarations

9    indicate whether these courts conduct any confidentiality review before making new

10   complaints publicly available. Nor does CNS offer any evidence showing that the

11   referenced state courts have confidentiality requirements similar to those imposed by

12   California law.

## VI.   OBJECTIONS TO OTHER COURTS' E-FILING RULES & COURT DOCKETS IN ECF NO. 92

**OBJECTION NO.  65:**

ECF No. 92,  Exs. 1-9 to RJN (p. 5-52).

**GROUNDS FOR OBJECTION NO.  65:**

**Irrelevant.**  Fed. R Evid. 401, 402.

As explained in OCSC's response to CNS's Requests for Judicial Notice, filed concurrently herewith, tat other courts' e-filing rules may require confidential filings to be filed in paper is irrelevant to whether timely access has been provided under the circumstances of *this* case by one of the largest and busiest trial court systems in the nation and under California law that obligates OCSC to protect litigant confidentiality.  Indeed, none of the court rules indicate whether these courts conduct any confidentiality review before making new complaints publicly available nor correlate the purpose for filing in paper with protecting confidentiality. Further, CNS does not offer any evidence showing that the referenced courts have confidentiality

1    requirements similar to those imposed by California law.

2    **OBJECTION NO. 66:**

3        ECF No. 92, Exs. 10-13 to RJN (p. 53-77).

4    **GROUNDS FOR OBJECTION NO. 66:**

5        **Contradicted by evidence; incomplete, misleading, and prejudicial**.  Fed.

6    R. Evid. 403.

7        As explained in the declaration by Sara Ochoa submitted in support of OCSC's

8    reply brief and OCSC's response to CNS's Requests for Judicial Notice, both filed

9    concurrently herewith, the court dockets for four Orange County Superior Court

10   contained in Exhibits 10-13 are contradicted by other evidence in this matter,

11   incomplete, misleading and prejudicial.

12       CNS cites these exhibits in response to OCSC's assertion in its Statement of

13   Uncontroverted Facts and Conclusions of Law ("SUF") for the proposition that "[a]t

14   most, 13 of the cases listed in Exhibits A and B to the Ochoa Declaration and referred

15   to in Paragraph 21 of the Ochoa Declaration represent case-initiating filings where

16   an LPS properly kept a document confidential based on LPS review."  ECF No. 84,

17   ¶ 21.  CNS appears to contend that because a case initiating document is currently

18   available on the public dockets in these matters, OCSC's statement is somehow

19   untrue.  But CNS's position is unsupported.

20       In some of the cases that CNS cites, certain attachments to the complaints *were*

21   *properly* filed under seal and remain under seal; and in one case that CNS cites, an

22   unredacted version of a complaint *was properly* filed under seal and remains under

23   seal, while the redacted version of the complaint is available on the public docket.

24   Ochoa Decl. ISO Reply ¶¶ 19(a)-(c), 20.  Thus, CNS's reliance on these cases is

25   inapposite.  These cases do not undermine OCSC's position that but for LPS review,

26   the attachments to the complaints or the unredacted version of a complaint would

27   have been publicly available. *See id.*

28

1 | Dated: January 16, 2018

JONES DAY

2

3 | By: /s/ Robert A. Naeve

Robert A. Naeve

4

5 | Attorneys for Defendant
DAVID YAMASAKI

6

7 | NAI-1503341898v1

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28