Robert A. Naeve (State Bar No. 106095)
rnaeve@jonesday.com
Cary D. Sullivan (State Bar No. 228527)
carysullivan@jonesday.com
JONES DAY
3161 Michelson Drive, Suite 800
Irvine, CA  92612.4408
Telephone:  +1.949.851.3939
Facsimile:   +1.949.553.7539

Nathaniel P. Garrett (State Bar No. 248211)
ngarrett@jonesday.com
JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94104-1500
Telephone:  +1.415.626.3939
Facsimile:   +1.415.875.5700

Attorneys for Defendant
David Yamasaki

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| Courthouse News Service,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>David Yamasaki, in his official capacity as Court Executive Officer/Clerk of the Orange County Superior Court,<br><br>　　　　　Defendant. | Case No. 8:17-cv-00126 AG (KESx)<br><br>Assigned for all purposes to Hon. Andrew J. Guilford<br><br>**DEFENDANT DAVID YAMASAKI'S RESPONSE TO OBJECTIONS TO EVIDENCE SUBMITTED IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>Date:　　　January 29, 2018<br>Time:　　　10:00 a.m.<br>Courtroom:  10D<br>Judge:　　　Hon. Andrew J. Guilford |

Defendant David Yamasaki, in his official capacity as Court Executive Officer/Clerk of the Orange County Superior Court ("OCSC") submits the following Response to Plaintiff Courthouse News Service's ("CNS") Objections To Evidence Submitted In Support OCSC's Motion for Summary Judgment.

## I.   OBJECTIONS TO THE DECLARATION OF SARA OCHOA

**OBJECTION NO. 1:**

"OCSC cannot simply publish all new civil unlimited complaints to an electronic in-box without some form of minimal review because California law mandates that certain types of cases must either be sealed or withheld from public view."

(Ochoa Decl. ¶ 18)

**GROUNDS FOR OBJECTION NO. 1:**

**Lack of foundation as to personal knowledge; opinion testimony by lay witness; contradicted by deposition testimony.**  (Fed. R. Evid. 601, 602; Fed. R. Evid. 701).  The witness testified in her deposition that she does not recall ever hearing the term electronic in-box and does not recall what she was thinking of when she used that term in her declaration ¶ 18.  Ochoa Depo. 300:11-22.  Ex. 16 to Fetterly Decl.  The witness has not examined other courts' e-filing systems that permit the filer to code a complaint for immediate public access (by using a check box or a radio button); and, further, she admitted in her deposition that she has never discussed speeding up the process for making complaints accessible to the public with her superiors.  Ochoa Depo. 91:19-25,92:16-25, 169:2-17, 175:25-176:13, 269:14-272:17, 277:9-14, 326:21-327:3.  She also is expressing a legal opinion that California law requires that a court employee must review a complaint before it is made publicly available, but she is not a lawyer.  See Ochoa Depo. 210:15-20.  (All excerpts of the Ochoa Deposition are attached as Ex. 16 to Fetterly Decl.)  Mr. Wertheimer, the OCSC general counsel, testified in his deposition that the determination of whether a complaint should be "sealed for some reason or

another" has to be made "by the filing party *or* ...by the clerk."  (Wertheimer Depo. 105:19-106:3, emphasis added, Ex. 19 to Fetterly Decl.)

**RESPONSE TO OBJECTION NO. 1:**

CNS's objections are without merit for the reasons below.

Ms. Ochoa has established proper foundation for her statement.  Consistent with her testimony throughout her deposition, Ms. Ochoa is expressing the basic opinion that new civil complaints cannot be made public (by way of an electronic inbox or any other means) without review by OCSC staff, specifically Legal Processing Specialists ("LPSs"), in order to ensure that complaints that are required to be sealed or kept confidential are not accidentally made public.  Ms. Ochoa established a factual foundation for her opinion by way of the 18 confidential complaints she identified that would have been made public but for LPS review. Declaration Cary D. Sullivan In Support of Reply ("Sullivan Decl. ISO Reply") ¶ 4, Ex. B, Sara Ochoa Deposition Testimony ("Ochoa Depo."), 217:20-219:9; 221:1-13; 223:17-224:5.  Ms. Ochoa's statement in her declaration simply explains that, in her experience, she is unaware of any way to ensure that complaints that are required to be sealed or kept confidential are not accidentally made public without LPS review.  As Deputy Operations Manager for civil e-filing at OCSC, responsible for overseeing the e-filing unit at the Civil Justice Center, ECF No. 75-2, Declaration of Sara Ochoa ("Ochoa Decl.") ¶ 1, and given the complaints she identified, Ms. Ochoa's personal knowledge and experience provide more than sufficient foundation for this statement.

Further, while Ms. Ochoa testified that she was not familiar with the details of the proposed electronic in-box and that she has not examined other courts' e-filing systems, neither is required for foundational purposes.  Ms. Ochoa testified about numerous examples where confidential complaints would have been made public but for LPS review.  Sullivan Decl. ISO Reply ¶ 4, Ex. B, Ochoa Depo. 217:20-219:9; 221:1-13; 223:17-224:5.  This demonstrable fact, alone, provides

1   foundation for Ms. Ochoa's statement by establishing that confidential complaints
2   are not always properly designated by filers, thereby necessitating LPS review as a
3   backstop.  And while CNS quibbles with the exact number of confidential
4   complaints that would have been made public but for LPS review, CNS concedes
5   that 13 would have been made public but for LPS review.  ECF No. 84, CNS
6   Response to OCSC SUF ("CNS Resp. to SUF"), ¶ 21.  In other words, CNS
7   concedes the dispositive fact that, but for LPS review, more than a dozen
8   confidential complaints would have been made public.

9       Ms. Ochoa is not providing a legal opinion; she is simply stating her
10  understanding of the sealing and confidentiality requirements that create the need
11  for LPS review.  As Deputy Operations Manager for civil e-filing at OCSC,
12  responsible for overseeing the e-filing unit at the Civil Justice Center, ECF No. 75-
13  2, Ochoa Decl. ¶ 1, Ms. Ochoa is required to be familiar with these requirements in
14  order to perform her job duties, and she personally reviewed these requirements in
15  the context of her job.  Sullivan Decl. ISO Reply ¶ 4, Ex. B, Ochoa Depo., 207:24-
16  210:14.  In fact, several of the training materials that her staff use summarize these
17  requirements.  *See id.* ¶ 4, Ex. B, Ochoa Depo., Ex. 8 (119:5-129:5); Ex. 10 (133:7-
18  135:21); Ex. 11 (136:5-139:21); Ex. 12 (139:23-141:10); Ex. 13 (141:18-144:20).
19  And Mr. Wertheimer's testimony is neither contradictory nor inconsistent with Ms.
20  Ochoa's statement.  Ms. Ochoa works in the clerk's office at OCSC, and her
21  ultimate superior is David Yamasaki, CEO and Clerk of OCSC.  *See id.* ¶ 4, Ex. B,
22  Ochoa Depo., 155:22-156:20.  Thus, Ms. Ochoa and her staff work for and on
23  behalf of the OCSC Clerk, helping to make sealing and confidentiality
24  determinations where appropriate.

25  **OBJECTION NO. 2:**

26      "It is not possible for OCSC to comply with its legal obligations to seal or
27  otherwise hold in confidence complaints in these and similar categories unless one
28  of our new complaint LPSs reviews each complaint prior to publication."

Def's Resp to Obj Evidence in Support of MSJ
8:17-cv-00126 AG (KESx)

1    (Ochoa Decl. ¶ 19)

2    **GROUNDS FOR OBJECTION NO. 2:**

3         **Opinion testimony by lay witness; contradicted by deposition testimony.**

4    (Fed. R. Evid. 701).  The witness is expressing a legal opinion that California law

5    requires that a court employee must review a complaint before it is made publicly

6    available, but she is not a lawyer.  See Ochoa Depo. 210:15-20.  Mr. Wertheimer,

7    the OCSC general counsel, testified in his deposition that the determination of

8    whether a complaint should be "sealed for some reason or another" has to be made

9    "by the filing party *or* ...by the clerk."  (Wertheimer Depo. 105:19-106:3, emphasis

10   added, Ex. 19 to Fetterly Decl.)

11   **RESPONSE TO OBJECTION NO. 2:**

12        CNS's objections are without merit for the reasons below.

13        Ms. Ochoa is not providing a legal opinion; she is simply stating her

14   understanding of the sealing and confidentiality requirements that create the need

15   for LPS review.  Moreover, Ms. Ochoa is not opining that LPS review is

16   specifically required by California law.  She is opining that LPS review is

17   necessary, as a practical matter, in order for OCSC to ensure that confidential

18   complaints are kept confidential and not accidentally made public.  As Deputy

19   Operations Manager for civil e-filing at OCSC, responsible for overseeing the e-

20   filing unit at the Civil Justice Center, ECF No. 75-2, Ochoa Decl. ¶ 1, Ms. Ochoa is

21   required to be familiar with these requirements in order to perform her job duties,

22   and she personally reviewed these requirements in the context of her job.  Sullivan

23   Decl. ISO Reply ¶ 4, Ex. B, Ochoa Depo., 207:24-210:14.  In fact, several of the

24   training materials that her staff use summarize these requirements.  *See id.* ¶ 4, Ex.

25   B, Ochoa Depo., Ex. 8 (119:5-129:5); Ex. 10 (133:7-135:21); Ex. 11 (136:5-

26   139:21); Ex. 12 (139:23-141:10); Ex. 13 (141:18-144:20).  And Mr. Wertheimer's

27   testimony is neither contradictory nor inconsistent with Ms. Ochoa's statement.

28   Ms. Ochoa works in the clerk's office at OCSC, and her ultimate superior is David

Def's Resp to Obj Evidence in Support of MSJ
8:17-cv-00126 AG (KESx)

Yamasaki, CEO and Clerk of OCSC.  *See id.* ¶ 4, Ex. B, Ochoa Depo., 155:22-156:20.  Thus, Ms. Ochoa and her staff work for and on behalf of the OCSC Clerk, helping to make sealing and confidentiality determinations where appropriate.

In addition, Ms. Ochoa testified about numerous examples where confidential complaints would have been made public but for LPS review.  *See id.* ¶ 4, Ex. B, Ochoa Depo., 217:20-219:9; 221:1-13; 223:17-224:5.  This demonstrable fact, alone, provides foundation for Ms. Ochoa's statement by establishing that confidential complaints are not always properly designated by filers, thereby necessitating LPS review as a backstop.  And while CNS quibbles with the exact number of confidential complaints that would have been made public but for LPS review, CNS concedes that 13 would have been made public but for LPS review.  ECF No. 84, CNS Resp. to SUF, ¶ 21.  In other words, CNS concedes the dispositive fact that, but for LPS review, more than a dozen confidential complaints would have been made public.

## OBJECTION NO. 3:

"LPSs review the data capture screen for new complaints, as well as the new complaints themselves, to ensure that new complaints are properly sealed or held in confidence.  For example, in some cases, the e-filer may improperly classify a complaint as "Petition Other" or some other category in our e-filing system that fails to alert our new complaint LPSs that the complaint requires special handling.  In addition, some of these complaints are filed by pro se litigants who may not understand that the law requires their pleadings to be filed under seal, let alone that they must properly mark their filings as "confidential."  In other cases, pro se and represented litigants may properly mark the face pages of their complaints and civil cover sheets as "confidential," but fail to note in the "Comments" section of our e-filing submission form that their complaints must be filed under seal or maintained in confidence."

(Ochoa Decl. ¶ 20)

**GROUNDS FOR OBJECTION NO. 3:**

      **Contradicted by deposition testimony; irrelevant testimony** (Fed. R. Evid. 401, 402).  The witness's first, conclusory statement that LPS review is necessary "to ensure the new complaints are properly sealed or held in confidence" is in conflict with her sworn deposition testimony that the LPS relies solely on the filer to indicate whether the complaint should be kept confidential.  Ochoa Depo. 208:11-19, 210:9-14; see also, Ochoa Dec. ¶ 19 at 8:15-16 (the Comments box "is used to notify the Court and its LPSs that a particular complaint should be sealed or held in confidence.")  Mr. Wertheimer also testified in his deposition that the determination of whether a complaint should be "sealed for some reason or another" has to be made "by the filing party *or* ...by the clerk."  (Wertheimer Depo. 105:19-106:3, emphasis added, Ex. 19 to Fetterly Decl.)  The remaining statements (after the first sentence) regarding improper classifications (including Petition Other) are irrelevant.

**RESPONSE TO OBJECTION NO. 3:**

      CNS's objections are without merit for the reasons below.

      Ms. Ochoa's statement is not contradicted by anything.  Ms. Ochoa testified about numerous examples where confidential complaints would have been made public but for LPS review.  Sullivan Decl. ISO Reply ¶ 4, Ex. B , Ochoa Depo., 217:20-219:9; 221:1-13; 223:17-224:5.  This demonstrable fact, alone, provides foundation for Ms. Ochoa's statement by establishing that confidential complaints are not always properly designated by filers, thereby necessitating LPS review as a backstop.  And while CNS quibbles with the exact number of confidential complaints that would have been made public but for LPS review, CNS concedes that 13 would have been made public but for LPS review.  ECF No. 84, CNS Resp. to SUF, ¶ 21.  In other words, CNS concedes the dispositive fact that, but for LPS review, more than a dozen confidential complaints would have been made public.

      Moreover, while LPSs necessarily rely on information provided by filers –

Def's Resp to Obj Evidence in Support of MSJ
8:17-cv-00126 AG (KESx)

the only information LPSs are able to review is that contained in the complaint and any other information the filer may provide – filers do not always mark the caption pages of their complaints, as required, for sealing or confidential treatment. Sullivan Decl. ISO Reply ¶ 4, Ex. B, Ochoa Depo., 217:20-219:9; 221:1-13; 223:17-224:5.  Thus, because filers do not always designate their complaints in the right way, LPS review is necessary, as established above, to prevent confidential complaints from accidentally being made public.

Mr. Wertheimer's testimony is neither contradictory nor inconsistent with Ms. Ochoa's statement.  Ms. Ochoa works in the clerk's office at OCSC, and her ultimate superior is David Yamasaki, CEO and Clerk of OCSC.  *See id.* ¶ 4, Ex. B, Ochoa Depo., 155:22-156:20.  Thus, Ms. Ochoa and her staff work for and on behalf of the OCSC Clerk, helping to make sealing and confidentiality determinations where appropriate.

The balance of Ms. Ochoa's statement is not irrelevant.  It provides valuable context by describing the many ways in which confidential complaints might accidentally be made public for lack of proper designation, thereby further demonstrating the need for LPS review.

## OBJECTION NO. 4:

"In other words, without LPS review, each of these complaints (other than the one filed with the motion to seal) would have been made public because the documents were not coded for sealing or confidentiality before LPS review."

(Ochoa Decl. ¶ 21 at 9:7-10)

## GROUNDS FOR OBJECTION NO. 4:

**Contradicted by deposition testimony; irrelevant testimony** (Fed. R. Evid. 401, 402).  The witness's conclusory statement is in conflict with her sworn deposition testimony that the LPS relies solely on the filer to indicate whether the complaint should be kept confidential.  Ochoa Depo. 208:11-19, 210:9-14; Ochoa Dec. ¶ 19 at 8:15-16 (the Comments box "is used to notify the Court and its LPSs

1    that a particular complaint should be sealed or held in confidence.").  The testimony

2    is irrelevant because it is not probative of whether LPS review would be necessary

3    prior to public access to non-confidential complaints in an upgraded electronic

4    system whereby the filer controls access directly.

5    **RESPONSE TO OBJECTION NO. 4:**

6         CNS's objections are without merit for the reasons below.

7         Ms. Ochoa's statement is not contradicted by anything.  Ms. Ochoa testified

8    about numerous examples where confidential complaints would have been made

9    public but for LPS review.  Sullivan Decl. ISO Reply ¶ 4, Ex. B, Ochoa Depo.,

10   217:20-219:9; 221:1-13; 223:17-224:5.  This demonstrable fact, alone, provides

11   foundation for Ms. Ochoa's statement by establishing that confidential complaints

12   are not always properly designated by filers, thereby necessitating LPS review as a

13   backstop.  And while CNS quibbles with the exact number of confidential

14   complaints that would have made public but for LPS review, CNS concedes

15   that 13 would have been made public but for LPS review. ECF No. 84, CNS Resp.

16   to SUF, ¶ 21.  In other words, CNS concedes the dispositive fact that, but for LPS

17   review, more than a dozen confidential complaints would have been made public.

18        Moreover, while LPSs necessarily rely on information provided by filers –

19   the only information LPSs are able to review is that contained in the complaint and

20   any other information the filer may provide – filers do not always mark the caption

21   pages of their complaints, as required, for sealing or confidential treatment.

22   Sullivan Decl. ISO Reply ¶ 4, Ex. B, Ochoa Depo., 217:20-219:9; 221:1-13;

23   223:17-224:5.  Thus, because filers do not always designate their complaints in the

24   right way, LPS review is necessary, as established above, to prevent confidential

25   complaints from accidentally being made public.

26        Ms. Ochoa's statement is not irrelevant.  First, the purported "upgraded

27   electronic system whereby the filer controls access directly" does not exist at OCSC

28   and, thus, is purely speculative.  Ms. Ochoa's statement cannot be rendered

irrelevant by something that doesn't exist.  Second, Ms. Ochoa already established – and CNS *conceded* – the dispositive fact that, but for LPS review, numerous confidential complaints would have been made public because filers did not properly designate their complaints.  *See id.* ¶ 4, Ex. B, Ochoa Depo., 217:20-219:9; 221:1-13; 223:17-224:5; ECF No. 84, CNS Resp. to SUF, ¶ 21.  This proves that relying solely on filers to determine confidentiality is not a failsafe approach, thereby making Ms. Ochoa's statement highly relevant.

**OBJECTION NO. 5:**

"Despite the fact that new complaints must be reviewed prior to publication, OCSC's LPSs have become quite proficient in reviewing new civil unlimited complaints and in publishing those that are not to be maintained in confidence in a timely fashion."

(Ochoa Decl. ¶ 24)

**GROUNDS FOR OBJECTION NO. 5:**

**Contradicted by deposition testimony; opinion testimony by lay witness.** (Fed. R. Evid. 701).  As to the initial statement that new complaints must be reviewed prior to publication, Ms. Kruse testified that if the Court were to implement a system that allows the filer to check a box that would automatically designate new complaints for public access or for confidential treatment, the LPS would not have to review new complaints prior to publication.  Kruse Depo. 397:4-20.  Ex. 17 to Fetterly Decl.  Additionally, Mr. Wertheimer testified in his deposition that the determination of whether a complaint should be "sealed for some reason or another" has to be made "by the filing party *or* ...by the clerk." (Wertheimer Depo. 105:19-106:3, emphasis added, Ex. 19 to Fetterly Decl.) Ms. Ochoa's assertion that the LPSs are publishing non-confidential complaints in a "timely fashion" is a legal opinion that the lay witness is not competent to make.

**RESPONSE TO OBJECTION NO. 5:**

CNS's objections are without merit for the reasons below.

1    Ms. Ochoa's statement is not contradicted by anything.  Ms. Ochoa testified

2    about numerous examples where confidential complaints would have been made

3    public but for LPS review.  Sullivan Decl. ISO Reply ¶ 4, Ex. B, Ochoa Depo.,

4    217:20-219:9; 221:1-13; 223:17-224:5.  This demonstrable fact, alone, provides

5    foundation for Ms. Ochoa's statement by establishing that confidential complaints

6    are not always properly designated by filers, thereby necessitating LPS review as a

7    backstop.  And while CNS quibbles with the exact number of confidential

8    complaints that would have made public but for LPS review, CNS concedes

9    that 13 would have been made public but for LPS review. ECF No. 84, CNS Resp.

10   to SUF, ¶ 21.  In other words, CNS concedes the dispositive fact that, but for LPS

11   review, more than a dozen confidential complaints would have been made public.

12      CNS misrepresents Ms. Kruse's testimony, which does not contradict Ms.

13   Ochoa's statement.  Ms. Kruse testified that if the Court "adopted and agreed upon"

14   a process by which it relied solely on a filer's designation of confidentiality, then

15   LPS review would not be necessary.  Sullivan Decl. ISO Reply ¶ 5, Ex. C, Deborah

16   T. Kruse  Deposition Testimony ("Kruse Depo."), 397:4-20.  But Ms. Kruse then

17   went on to testify that such a process "presents the same issue with the same

18   potential for error rate and concern with the filer checking or not checking [the

19   correct box]," and that it would lose "that layer of proverbial protection [through

20   LPS review] to try and protect the filings, that they're done correctly."  *See id.* ¶5,

21   Ex. C, Kruse Depo., 404:7-407:2.  CNS cherry-picked a soundbite and ignored the

22   totality of Ms. Kruse's testimony, rendering CNS's characterization of Ms. Kruse's

23   testimony misleading and improper.

24      In addition, Mr. Wertheimer's testimony is neither contradictory nor

25   inconsistent with Ms. Ochoa's statement.  Ms. Ochoa works in the clerk's office at

26   OCSC, and her ultimate superior is David Yamasaki, CEO and Clerk of OCSC.

27   *See id.* ¶ 4, Ex. B, Ochoa Depo., 155:22-156:20.  Thus, Ms. Ochoa and her staff

28   work for and on behalf of the OCSC Clerk, helping to make sealing and

1   confidentiality determinations where appropriate.

2        Ms. Ochoa is not providing a legal opinion; she is simply describing her

3   personal knowledge and experience with respect to the speed and efficiency of the

4   LPS review process.  As Deputy Operations Manager for civil e-filing at OCSC,

5   responsible for overseeing the e-filing unit at the Civil Justice Center, ECF No. 75-

6   2, Ochoa Decl. ¶ 1, Ms. Ochoa's whole job revolves around this process.  She has a

7   direct, personal, and factual basis for making this statement.

8   **OBJECTION NO. 6:**

9        "It is true that our LPSs "file" new civil unlimited complaints at the same

10  time they evaluate whether these new complaints must be sealed or maintained in

11  confidence."

12       (Ochoa Decl. ¶ 26)

13  **GROUNDS FOR OBJECTION NO. 6:**

14       **Opinion testimony by lay witness.**  (Fed. R. Evid. 701).  When complaints

15  are "filed" is a question of law, on which the lay witness is not competent to opine.

16  (If a complaint is accepted by the LPS, it is considered filed on the day the filer

17  e-filed it, even if the LPS accepts it the next day or later, for purposes of statutes of

18  limitations.)

19  **RESPONSE TO OBJECTION NO. 6:**

20       CNS's objections are without merit for the reasons below.

21       Ms. Ochoa is not providing a legal opinion; she is simply describing her

22  personal knowledge and experience with respect to the LPS review process.  As

23  Deputy Operations Manager for civil e-filing at OCSC, responsible for overseeing

24  the e-filing unit at the Civil Justice Center, ECF No. 75-2, Ochoa Decl. ¶ 1, Ms.

25  Ochoa's whole job revolves around this process.  She testified at length about the

26  different tasks LPSs perform during the review process, and that upon completion

27  of that process, non-confidential complaints are published to the public docket and

28  considered officially filed.  Sullivan Decl. ISO Reply ¶ 4, Ex. B, Ochoa Depo.,

27:17-47:23, 51:21-53:17.  Ms. Ochoa has a direct, personal, and factual basis for making this statement, which, by the way, is consistent with California law.  *See* Cal. R. Ct. 2.250(B)(7) (electronic filing "does not include the processing and review of the document, and its entry into the court records, which are necessary for a document to be officially filed").

**OBJECTION NO. 7:**

"LPSs have no practical way to determine whether any particular complaint might be "newsworthy" in the eyes of Courthouse News Service or any other member of the public, and cannot be expected to — and do not — identify and more promptly publish complaints for this reason."

(Ochoa Decl. ¶ 27)

**GROUNDS FOR OBJECTION NO. 7:**

**Irrelevant testimony; opinion testimony by lay witness.**  (Fed. R. Evid. 401, 402; Fed. R. Evid. 701).  The first statement is irrelevant because Courthouse News Service is not requesting that the OCSC identify and promptly publish only "newsworthy" complaints; it is asking that OCSC make all complaints available the same day they are submitted by the filer.  Additionally, whether the OCSC can be "expected" to more promptly publish complaints than it currently does is a question of law, on which the lay witness is not competent to opine.

**RESPONSE TO OBJECTION NO. 7:**

CNS's objections are without merit for the reasons below.

OCSC appreciates CNS's concession that it "is not requesting that the OCSC identify and promptly publish only 'newsworthy' complaints; it is asking that OCSC make all complaints available the same day they are submitted by the filer." This admission renders CNS's focus on and analyses specific to civil complex cases, ECF No. 83, CNS's Opposition to OCSC's Motion for Summary Judgment ("Opp."), 16:3-24; ECF No. 85, CNS's Additional Material Facts ("AMF"), ¶¶ 126-141, irrelevant as a matter of fact because CNS seeks equal access to all civil

complaints (complex and non-complex alike).  CNS's focus on complex cases, particularly in light of this admission, can only be intended to confuse or mislead the Court.

Ms. Ochoa is not providing a legal opinion; she is simply describing her personal knowledge and experience with respect to the LPS review process.  As Deputy Operations Manager for civil e-filing at OCSC, responsible for overseeing the e-filing unit at the Civil Justice Center, ECF No. 75-2, Ochoa Decl. ¶ 1, Ms. Ochoa's whole job revolves around this process.  In the first sentence of paragraph 26 of her declaration, to which CNS does not object, Ms. Ochoa states that LPSs review new complaints in the order received and do not review the substance of a complaint to determine newsworthiness or for any other reason.  Ochoa Decl., ¶ 26. Thus, it naturally follows that LPSs do not and cannot be expected to identify and publish "newsworthy" complaints more promptly than other complaints.  Ms. Ochoa has a direct, personal, and factual basis for making this statement.

**OBJECTION NO. 8:**

"As I mentioned above, it is not possible for OCSC to comply with its legal obligations to keep certain types of complaints confidential and to seal certain types of complaints without having LPSs review each new complaint that OCSC receives.  I am not aware of any way for OCSC to comply with these requirements in a quicker way, particularly given OCSC's budgetary and fiscal limitations.  And I am not aware of any other state trial court system that is able to comply with such requirements — and provide public access to new civil unlimited complaints — in a quicker way."

(Ochoa Decl. ¶ 30)

**GROUNDS FOR OBJECTION NO. 8:**

**Lack of foundation as to personal knowledge; speculation; opinion testimony by lay witness; contradicted by deposition testimony.**  (Fed. R. Evid. 601, 602; Fed. R. Evid. 701).  The witness first expresses a legal opinion that

California law requires that a court employee must review a complaint before it is made publicly available, but she is not a lawyer. Mr. Wertheimer, the OCSC general counsel, testified in his deposition that the determination of whether a complaint should be "sealed for some reason or another" has to be made "by the filing party *or* ...by the clerk." (Wertheimer Depo. 105:19-106:3, emphasis added, Ex. 19 to Fetterly Decl.) There is no foundation that the witness has personal knowledge of OCSC's "budgetary and fiscal limitations," as her work does not involve fiscal analysis. *Ward*, 173 F. 3d at 617-18 (to establish a proper foundation, the source of the witness' personal knowledge must be disclosed, whether it be personal observation, a written directive, direct conversation, or some other source). She provides no testimony establishing that the court has budgetary or fiscal concerns that affect the court's ability to provide public access to new civil unlimited complaints. The witness is speculating as to the court's future capabilities and potential limitations. Further, the witness admitted that she has no personal knowledge regarding what other courts in California or elsewhere do, let alone the speed at which any other court in the state – or anywhere else – provides public access to newly filed civil unlimited complaints. (Ochoa Depo. 269:14-272:17, 277:9-14, 326:21-327:3; Ex. 16 to Fetterly Decl.) She further admitted at her deposition that she has not been involved in, or aware of, any discussions about how OCSC could potentially provide quicker access to the public, and therefore lacks foundation to provide an opinion on this issue. (Ochoa Depo. 176:3-17; Ex. 16 to Fetterly Decl.).

**RESPONSE TO OBJECTION NO. 8:**

CNS's objections are without merit for the reasons below.

Ms. Ochoa is not providing a legal opinion; she is simply stating her understanding of the sealing and confidentiality requirements that create the need for LPS review. Moreover, Ms. Ochoa is not opining that LPS review is specifically required by California law. She is opining that LPS review is

necessary, as a practical matter, as a backstop in order for OCSC to fulfill its obligation to ensure that confidential complaints are kept confidential and not accidentally made public.  As Deputy Operations Manager for civil e-filing at OCSC, responsible for overseeing the e-filing unit at the Civil Justice Center, ECF No. 75-2, Ochoa Decl. ¶ 1, Ms. Ochoa is required to be familiar with the sealing and confidentiality requirements in order to perform her job duties.  Sullivan Decl. ISO Reply ¶ 4, Ex. B, Ochoa Depo., 207:24-210:14.  In fact, some of the training materials that her staff use summarize these requirements.  *See id.* ¶ 4, Ex. B, Ochoa Depo., Ex. 8 (119:5-129:5); Ex. 10 (133:7-135:21); Ex. 11 (136:5-139:21); Ex. 12 (139:23-141:10); Ex. 13 (141:18-144:20).

In addition, Ms. Ochoa testified about numerous examples where confidential complaints would have been made public but for LPS review.  *See id.* ¶ 4, Ex. B, Ochoa Depo., 217:20-219:9; 221:1-13; 223:17-224:5.  This demonstrable fact, alone, provides foundation for Ms. Ochoa's statement by establishing that confidential complaints are not always properly designated by filers, thereby necessitating LPS review as a backstop.  And while CNS quibbles with the exact number of confidential complaints that would have been made public but for LPS review, CNS concedes that 13 would have been made public but for LPS review. ECF No. 84, CNS Resp. to SUF, ¶ 21.  In other words, CNS concedes the dispositive fact that, but for LPS review, more than a dozen confidential complaints would have been made public.

Ms. Ochoa has established proper foundation for her statement regarding OCSC's budgetary and fiscal limitations.  As reflected in her declaration, the foundation is Mr. Wertheimer's statements.  ECF No. 75-2, Ochoa Decl. ¶¶ 1, 29. This is sufficient foundation, even according to the authority CNS cites.  *See Ward*, 173 F. 3d at 617-18.  In addition to the statements in Mr. Wertheimer's declaration, ECF No. 75-4, Declaration of Jeff Wertheimer ("Wertheimer Decl.") ¶ 10, Mr. Wertheimer and Mr. Yamasaki both discussed these limitations at deposition.

Sullivan Decl. ISO Reply ¶ 6, Ex. D, Jeff Wertheimer Deposition Testimony ("Wertheimer Depo.") 55:10-56:23; *see id.* ¶ 7, Ex. E, David Yamasaki Deposition Testimony ("Yamasaki Depo."), 182:16-184:25.

Mr. Wertheimer's testimony is neither contradictory nor inconsistent with Ms. Ochoa's statement.  Ms. Ochoa works in the clerk's office at OCSC, and her ultimate superior is David Yamasaki, CEO and Clerk of OCSC.  Sullivan Decl. ISO Reply ¶ 4, Ex. B, Ochoa Depo., 155:22-156:20.  Thus, Ms. Ochoa and her staff work for and on behalf of the OCSC Clerk, helping to make sealing and confidentiality determinations where appropriate.

Finally, Ms. Ochoa has established proper foundation for the balance of her statement.  Consistent with her testimony throughout her deposition, Ms. Ochoa is expressing the basic opinion that new civil complaints cannot be made public (by any means) without LPS review, in order to ensure that complaints that are required to be sealed or kept confidential are not accidentally made public.  Ms. Ochoa explained that, in her experience, she is unaware of any way to ensure that complaints that are required to be sealed or kept confidential are not accidentally made public without LPS review, and she is unaware of any way to speed up this process.  While Ms. Ochoa testified that she was not familiar with the details of other courts' e-filing systems, that is not required for foundational purposes.  As Deputy Operations Manager for civil e-filing at OCSC, responsible for overseeing the e-filing unit at the Civil Justice Center, ECF No. 75-2, Ochoa Decl. ¶ 1, Ms. Ochoa's personal knowledge and experience provide more than sufficient foundation for this statement, particularly given the numerous examples she provided where LPS review was the only thing that prevented a confidential complaint from being made public.

## II.   OBJECTIONS TO THE DECLARATION OF DEBORAH KRUSE

### OBJECTION NO. 9:

"Trade Secrets Cases.  Complaints in trade secrets cases may be filed

1  conditionally under seal as requested by the e-filing user in the "Comment" box or

2  by including language on the face page of the document at the time of submission.

3  Without LPS review, these new complaints would not be properly sealed or held in

4  confidence."

5      (Kruse Decl. ¶ 7)

6  **GROUNDS FOR OBJECTION NO. 9:**

7      **Contradicted by deposition testimony.** The second sentence is

8  contradicted by the first sentence and by the witness sworn deposition testimony

9  that the complex LPSs rely on the filer to indicate whether a trade secret complaint

10  should be conditionally sealed and that if the filer could automatically designate

11  whether the complaint should be publicly accessible, LPS review would not be

12  required before release. Kruse Depo. 166:12-167:16, 226:24-227:9, 333:6-334:8,

13  339:16-340:2, 397:4-20. (All excerpts of the Kruse Deposition are attached as

14  Ex. 17 to Fetterly Decl.) Mr. Wertheimer testified in his deposition that the

15  determination of whether a complaint should be "sealed for some reason or

16  another" has to be made "by the filing party *or* ...by the clerk." (Wertheimer Depo.

17  105:19-106:3, emphasis added, Ex. 19 to Fetterly Decl.)

18  **RESPONSE TO OBJECTION NO. 9:**

19      CNS's objections are without merit for the reasons below.

20      Ms. Kruse's testimony is not contradicted by itself. While Ms. Kruse

21  describes the ways in which filers may request sealing or confidential treatment –

22  by marking the face page of the complaint or so requesting in the 'comments' field

23  – Ms. Kruse and Ms. Ochoa both testified about numerous examples where

24  confidential complaints would have been made public but for LPS review. Sullivan

25  Decl. ISO Reply ¶ 4, Ex. B, Ochoa Depo. 217:20-219:9; 221:1-13; 223:17-224:5

26  *see id.* ¶ 5, Ex. C, Kruse Depo. 225:10-228:5; 335:17-339:15. This demonstrable

27  fact, alone, provides foundation for Ms. Kruse's statement by establishing that

28  confidential complaints are not always properly designated by filers, thereby

1  necessitating LPS review as a backstop.  And while CNS quibbles with the exact

2  number of confidential complaints that would have been made public but for LPS

3  review, CNS concedes that 13 would have been made public but for LPS review.

4  ECF No. 84, CNS Resp. to SUF, ¶ 21.  In other words, CNS concedes the

5  dispositive fact that, but for LPS review, more than a dozen confidential complaints

6  would have been made public.

7       Mr. Wertheimer's testimony is neither contradictory nor inconsistent with

8  Ms. Kruse's statement.  As Deputy Court Operations Manager, responsible for

9  complex litigation oversight, including case processing for the complex litigation

10  department, ECF No. 75-3, Declaration of Deborah T. Kruse ("Kruse Decl.") ¶ 1,

11  Ms. Kruse works in the clerk's office at OCSC, and her ultimate superior is David

12  Yamasaki, CEO and Clerk of OCSC.  *See id.* ¶ 5, Ex. C, Kruse Depo. 57:13-24.

13  Thus, Ms. Kruse and her staff work for and on behalf of the OCSC Clerk, helping

14  to make sealing and confidentiality determinations where appropriate.

15  **OBJECTION NO. 10:**

16       "While it is true that our LPSs 'file' new civil unlimited complaints in the

17  complex unit at the same time they evaluate whether these new complaints must be

18  sealed or maintained in confidence, public access is not unduly withheld during this

19  time."

20       (Kruse Decl. ¶ 9.)

21  **GROUNDS FOR OBJECTION NO. 10:**

22       **Contradicted by testimony; opinion testimony by lay witness.**  (Fed. R.

23  Evid. 701).  When complaints are "filed" is a question of law, on which the lay

24  witness is not competent to opine.  (If a complaint is accepted by the LPS, it is

25  considered filed on the day the filer e-filed it, even if the LPS accepts it the next

26  day or later, for purposes of statutes of limitations.)  Whether public access is

27  "unduly withheld" is also a question of law on which the witness is not competent

28  to opine.  Moreover, if a complaint is accepted by the LPS, it must be considered

1    filed on the day the filer submitted it, even if the LPS accepts it the next day or

2    later, for purposes of statutes of limitations.

3    **RESPONSE TO OBJECTION NO. 10:**

4           CNS's objections are without merit for the reasons below.

5           Ms. Kruse is not providing a legal opinion; she is simply describing her

6    personal knowledge and experience with respect to the LPS review process.  As

7    Deputy Court Operations Manager, responsible for complex litigation oversight,

8    including case processing for the complex litigation department, ECF No. 75-3,

9    Kruse Decl. ¶ 1, Ms. Kruse's job involves direct oversight of this process in the

10   complex department.  She testified about the different tasks LPSs perform during

11   the review process, and that upon completion of that process, non-confidential

12   complaints are published to the public docket and considered officially filed.  *See*

13   *id.* ¶ 5, Ex. C, Kruse Depo. (132:25-139:3; 140:22-141:20), discussing Sullivan

14   Decl. ISO Reply ¶ 4, Ex. B, Ochoa Depo. Exhibit 10 thereto.  Ms. Kruse has a

15   direct, personal, and factual basis for making this statement, which, by the way, is

16   consistent with California law.  *See* Cal. R. Ct. 2.250(B)(7) (electronic filing "does

17   not include the processing and review of the document, and its entry into the court

18   records, which are necessary for a document to be officially filed").

19          Moreover, CNS has not identified any purported contradiction in or with the

20   cited statement.  Ms. Kruse is simply describing how the LPS process works,

21   consistent with Rule of Court 2.250(B)(7).  The date of filing is irrelevant with

22   respect to Ms. Kruse's statement, and certainly does not create a contradiction.

23   **OBJECTION NO. 11:**

24          "LPSs have no practical way to determine whether any particular complaint

25   might be 'newsworthy' in the eyes of Courthouse News Service or any other

26   member of the public, and cannot be expected to — and do not — identify and

27   more promptly publish complaints for this reason."

28          (Kruse Decl. ¶ 10.)

**GROUNDS FOR OBJECTION NO. 11:**

**Irrelevant testimony; opinion testimony by lay witness.** (Fed. R. Evid. 401, 402; Fed. R. Evid. 701). The first statement is irrelevant because Courthouse News Service is not requesting that the OCSC identify and promptly publish only "newsworthy" complaints; it is asking that OCSC make all complaints available the same day they are submitted by the filer. Additionally, whether the OCSC can be "expected" to more promptly publish complaints than it currently does is a question of law, on which the lay witness is not competent to opine.

**RESPONSE TO OBJECTION NO. 11:**

CNS's objections are without merit for the reasons below.

OCSC appreciates CNS's concession that it "is not requesting that the OCSC identify and promptly publish only 'newsworthy' complaints; it is asking that OCSC make all complaints available the same day they are submitted by the filer." This admission renders CNS's focus on and analyses specific to civil complex cases, ECF No. 83, Opp., 16:3-24; ECF No. 85, AMF, ¶¶ 126-141, irrelevant as a matter of fact because CNS seeks equal access to all civil complaints (complex and non-complex alike). CNS's focus on complex cases, particularly in light of this admission, can only be intended to confuse or mislead the Court.

Ms. Kruse is not providing a legal opinion; she is simply describing her personal knowledge and experience with respect to the LPS review process. As Deputy Court Operations Manager, responsible for complex litigation oversight, including case processing for the complex litigation department, ECF No. 75-3, Kruse Decl. ¶ 1, Ms. Kruse's job involves direct oversight of this process in the complex department. In the first sentence of paragraph 10 of her declaration, to which CNS does not object, Ms. Kruse states that, just like for non-complex cases, complex department LPSs review new complaints in the order received and do not review the substance of a complaint to determine newsworthiness or for any other reason. *See* ECF No. 75-3, Kruse Decl., ¶ 10. Thus, it naturally follows that LPSs

1   do not and cannot be expected to identify and publish "newsworthy" complaints

2   more promptly than other complaints.  Ms. Kruse has a direct, personal, and factual

3   basis for making this statement.

4   **OBJECTION NO. 12:**

5        "As mentioned above, I understand that OCSC is required by California law

6   to keep certain types of complaints confidential and to seal certain types of

7   complaints.  I am not aware of any way for OCSC to comply with these

8   requirements without having LPSs review each new complaint that OCSC receives.

9   I am not aware of any way for OCSC to comply with these requirements in a

10  quicker way, particularly given OCSC's budgetary and fiscal limitations.  I am not

11  aware of any other state trial court system that is able to comply with such

12  requirements — and provide public access to new civil unlimited complaints — in

13  a quicker way."

14       (Kruse Decl. ¶ 13.)

15  **GROUNDS FOR OBJECTION NO. 12:**

16       **Lack of foundation as to personal knowledge; speculation; opinion**

17  **testimony by lay witness; contradicted by deposition testimony.**  (Fed. R. Evid.

18  601, 602; Fed. R. Evid. 701).  The witness first expresses a legal opinion that

19  California law requires that a court employee must review a complaint before it is

20  made publicly available, but she is not a lawyer.  Mr. Wertheimer, who is the

21  OCSC general counsel, testified in his deposition that the determination of whether

22  a complaint should be "sealed for some reason or another" has to be made "by the

23  filing party *or* ...by the clerk."  (Wertheimer Depo. 105:19-106:3, emphasis added,

24  Ex. 19 to Fetterly Decl.)  There is no foundation that the witness has personal

25  knowledge of OCSC's "budgetary and fiscal limitations," as her work is not

26  involved in court operations.  *Ward*, 173 F. 3d at 617-18 (to establish a proper

27  foundation, the source of the witness' personal knowledge must be disclosed,

28  whether it be personal observation, a written directive, direct conversation, or some

other source).  She provides no testimony establishing that the court has budgetary or fiscal concerns that affect the court's ability to provide public access to new civil unlimited complaints.  Instead, it appears the witness is speculating as to the court's capabilities and potential limitations.  Further, the witness admitted that she has no personal knowledge regarding what other courts in California or elsewhere do, let alone the speed at which any other court in the state – or anywhere else – provides public access to newly filed civil unlimited complaints.  Further, the witness admitted that she has not been involved in considering ways that the court could provide faster public access to new complaints, such as alternatives for the current way of identifying and classifying new complaints that should be filed under seal. (Kruse Depo. 229:22-230:20, 340:10-341:5, 344:18-345:7; 353:24-354:13, 355:7-356:1, 357:25-358:3, 397:4-20, Ex. 17 to Fetterly Decl.)

**RESPONSE TO OBJECTION NO. 12:**

CNS's objections are without merit for the reasons below.

Ms. Kruse is not providing a legal opinion; she is simply stating her understanding of the sealing and confidentiality requirements that create the need for LPS review.  Moreover, Ms. Kruse is not opining that LPS review is specifically required by California law.  She is opining that LPS review is necessary, as a practical matter, as a backstop in order for OCSC to fulfill its obligation to ensure that confidential complaints are kept confidential and not accidentally made public.  As Deputy Court Operations Manager, responsible for complex litigation oversight, including case processing for the complex litigation department, ECF No. 75-3, Kruse Decl. ¶ 1, Ms. Kruse is required to be familiar with the sealing and confidentiality requirements in order to perform her job duties. In fact, some of the training materials that her staff use summarize these requirements. *See id.* ¶ 5, Ex. C, Kruse Depo., Ex. 8 (128:9-129:3); Ex. 10 (129:20-130:6) ), discussing Sullivan Decl. ISO Reply ¶ 4, Ex. B, Ochoa Depo. Exhibits 8 and 10 thereto.

1    In addition, Ms. Kruse and Ms. Ochoa both testified about numerous

2  examples where confidential complaints would have been made public but for LPS

3  review.  Sullivan Decl. ISO Reply ¶ 4, Ex. B, Ochoa Depo. 217:20-219:9; 221:1-

4  13; 223:17-224:5 *see id.* ¶ 5, Ex. C, Kruse Depo., 225:10-228:5; 335:17-339:15.

5  This demonstrable fact, alone, provides foundation for Ms. Kruse's statement by

6  establishing that confidential complaints are not always properly designated by

7  filers, thereby necessitating LPS review as a backstop.  And while CNS quibbles

8  with the exact number of confidential complaints that would have been made public

9  but for LPS review, CNS concedes that 13 would have been made public but for

10  LPS review. ECF No. 84, CNS Resp. to SUF, ¶ 21.  In other words, CNS concedes

11  the dispositive fact that, but for LPS review, more than a dozen confidential

12  complaints would have been made public.

13    Ms. Kruse has established proper foundation for her statement regarding

14  OCSC's budgetary and fiscal limitations.  As reflected in her declaration, the

15  foundation is Mr. Wertheimer's statements.  ECF No. 75-3, Kruse Decl. ¶¶ 1, 12.

16  This is sufficient foundation, even according to the authority CNS cites.  *See Ward*,

17  173 F. 3d at 617-18.  In addition to the statements in Mr. Wertheimer's declaration,

18  ECF No. 75-4, Wertheimer Decl. ¶ 10, Mr. Wertheimer and Mr. Yamasaki both

19  discussed these limitations at deposition.  Sullivan Decl. ISO Reply ¶ 6, Ex. D,

20  Wertheimer Depo., 55:10-56:23; *see id.* ¶ 7, Ex. E, Yamasaki Depo., 182:16-

21  184:25.

22    Mr. Wertheimer's testimony is neither contradictory nor inconsistent with

23  Ms. Kruse's statement.  Ms. Kruse works in the clerk's office at OCSC, and her

24  ultimate superior is David Yamasaki, CEO and Clerk of OCSC.  *See id.* ¶ 5, Ex. C,

25  Kruse Depo., 57:13-24.  Thus, Ms. Kruse and her staff work for and on behalf of

26  the OCSC Clerk, helping to make sealing and confidentiality determinations where

27  appropriate.

28    Finally, Ms. Kruse has established proper foundation for the balance of her

1    statement.  Consistent with her testimony throughout her deposition, Ms. Kruse is

2    expressing the basic opinion that new civil complaints cannot be made public (by

3    any means) without LPS review, in order to ensure that complaints that are required

4    to be sealed or kept confidential are not accidentally made public.  Ms. Kruse

5    explained that, in her experience, she is unaware of any way to ensure that

6    complaints that are required to be sealed or kept confidential are not accidentally

7    made public without LPS review, and she is unaware of any way to speed up this

8    process.  As Deputy Court Operations Manager, responsible for complex litigation

9    oversight, including case processing for the complex litigation department, ECF

10   No. 75-3, Kruse Decl. ¶ 1, Ms. Kruse's personal knowledge and experience provide

11   more than sufficient foundation for this statement.

12       While Ms. Kruse testified that she was not familiar with the details of other

13   courts' e-filing systems, that is not required for foundational purposes.  The

14   numerous examples where LPS review prevented confidential complaints from

15   being made public, which fact CNS concedes, provides foundation for Ms. Kruse's

16   statement by establishing that confidential complaints are not always properly

17   designated by filers, thereby necessitating LPS review as a backstop.

18   **III.   OBJECTIONS TO THE DECLARATION OF JEFFREY**

19         **WERTHEIMER**

20   **OBJECTION NO. 13:**

21       "OCSC has at all times acted to provide prompt public access to all court

22   records, for viewing at the court and remotely, to the full extent permitted by

23   governing California statutes and the applicable California Rules of Court."

24       (Wertheimer Decl. ¶ 8.)

25   **GROUNDS FOR OBJECTION NO. 13:**

26       **Lack of foundation as to personal knowledge; speculation; contradicted**

27   **by his deposition testimony.**  (Fed. R. Evid. 601, 602).  The witness appears to be

28   offering a legal conclusion that California statutes and Rules of Court require

1   OCSC to use LPSs to review unlimited civil complaints before they are made

2   publicly available; but, he offers no foundational facts--such as statutory language--

3   to support his conclusion; and, he also admitted in his deposition that he was

4   unfamiliar with the practices of some other California Superior Courts of allowing

5   electronic filers to control automatically at filing whether a complaint may be made

6   accessible to the public.  (Wertheimer Depo. 170:1-13, 175:9-15, Exhibit 19 to

7   Fetterly Decl.)  Moreover, Mr. Wertheimer testified in his deposition that the

8   determination of whether a complaint should be "sealed for some reason or

9   another" has to be made "by the filing party *or* ...by the clerk."  (Wertheimer Depo.

10  105:19-106:3, emphasis added, Ex. 19 to Fetterly Decl.)

11  **RESPONSE TO OBJECTION NO. 13:**

12       CNS's objections are without merit for the reasons below.

13       Mr. Wertheimer is not offering a legal conclusion; he is simply describing

14  what he understands to be OCSC's obligations under California law and OCSC's

15  efforts to comply with these obligations.  As General Counsel for the OCSC, ECF

16  No. 75-4, Wertheimer Decl. ¶ 1, Mr. Wertheimer's job necessarily includes making

17  decisions regarding OCSC's compliance with applicable laws.  He thus has a direct,

18  personal, and factual basis for making this statement.  Further, Mr. Wertheimer

19  provides the foundation for his opinion as set forth in the cited California laws that

20  require OCSC to ensure that certain types of complaints are sealed or kept

21  confidential.  *See id.* ¶ 11(a)-(f).

22       Mr. Wertheimer's familiarity with other court's practices is irrelevant to what

23  he, as General Counsel of OCSC, understands to be OCSC's obligations under

24  California law.  That other courts may permit electronic filers to control

25  automatically at filing whether a complaint may be made accessible to the public is

26  irrelevant to Mr. Wertheimer's understanding of OCSC's obligations under

27  California law and how OCSC complies with these obligations.

28       Mr. Wertheimer's testimony is neither contradictory nor inconsistent with his

Def's Resp to Obj Evidence in Support of MSJ
8:17-cv-00126 AG (KESx)

25

statement.  Both Ms. Ochoa and Ms. Kruse work in the clerk's office at OCSC, and their ultimate superior is David Yamasaki, CEO and Clerk of OCSC.  *See id.* ¶ 4, Ex. B, Ochoa Depo., 155:22-156:20; *see id.* ¶ 5, Ex. C, Kruse Depo., 57:13-24. Thus, Ms. Ochoa, Ms. Kruse, and their staffs work for and on behalf of the OCSC Clerk, helping to make sealing and confidentiality determinations where appropriate.  This is not inconsistent with OCSC's efforts to provide prompt public access.

**OBJECTION NO. 14:**

"Given these severe budget restrictions, OCSC does not have resources to hire additional staff to review newly filed complaints.  Nor can OCSC allocate additional staff, beyond the five Legal Processing Specialists ("LPS") at the Civil Justice Center and the three LPSs in the complex unit already dedicated to reviewing and publishing new unlimited civil complaints.  Establishing the system that CNS is requesting would require us to hire LPSs to work 24 hours a day, 7 days a week to review every new civil unlimited complaint for sealing concerns so that the complaint could be made public within moments of when it hits our Work Queue.  Doing so would take considerable staff away from other essential functions of the court, including managing the huge volume of other filings the court receives on a daily basis, as well as providing resources necessary to continue many of our services in the family and juvenile areas, both of which are currently strained beyond capacity."

(Wertheimer Decl. ¶ 10.)

**GROUNDS FOR OBJECTION NO. 14:**

**Lack of foundation as to personal knowledge; speculation.**  (Fed. R. Evid. 601, 602).  There is no foundation that the witness has personal knowledge of OCSC's "budgetary and fiscal limitations," as he is a lawyer and he does not testify that his responsibilities extend to studying or analyzing the court's budget, finances or staffing.  *Ward*, 173 F. 3d at 617-18 (to establish a proper foundation, the source

1   of the witness' personal knowledge must be disclosed, whether it be personal

2   observation, a written directive, direct conversation, or some other source).

3   Mr. Wertheimer further admitted at his deposition that OCSC did not consider

4   automated alternatives that other courts use whereby the filer automatically codes

5   the complaint for publication or confidentiality (as on the federal PACER filing

6   system) and that he not aware of anyone at OCSC pricing out different alternatives

7   to assure faster public access to newly filed complaints.  (Wertheimer Depo. 170:1-

8   13, 175:9-15, Exhibit 19 to Fetterly Decl.)

9   **RESPONSE TO OBJECTION NO. 14:**

10       CNS's objections are without merit for the reasons below.

11       Mr. Wertheimer's statement is based on his direct and personal involvement

12   in the administration of OCSC.  As General Counsel for the OCSC, ECF No. 75-4,

13   Wertheimer Decl. ¶ 1, Mr. Wertheimer is apprised of information regarding the

14   management of OCSC—including staffing and budgetary matters.  Sullivan Decl.

15   ISO Reply ¶ 6, Ex. D, Wertheimer Depo., 41:22-46:15. His position at the court

16   establishes sufficient foundation for his statement.  *See Ward*, 173 F. 3d at 617-18

17   Further, Mr. Wertheimer testified to his relationship with other court administrators

18   and the role he commonly plays in making decisions on behalf of OCSC.  Sullivan

19   Decl. ISO Reply ¶ 6, Ex. D, Wertheimer Depo., 41:22-46:15.

20       Mr. Wertheimer's consideration of other court's practices is irrelevant to

21   what he, as General Counsel of OCSC, understands to be OCSC's obligations under

22   California law and the requisite staff to meet these obligations.  That federal courts

23   or other state courts may use an automated process is irrelevant to how Mr.

24   Wertheimer believes OCSC, as one of the largest and busiest trial court systems in

25   the nation, can meet the needs of litigants while complying with requisite law.

26   Further, other courts may not have to consider and comply with confidentiality

27   requirements similar to those imposed by California law.

28       Finally, Mr. Wertheimer's familiarity with whether anyone at OCSC is

Def's Resp to Obj Evidence in Support of MSJ
8:17-cv-00126 AG (KESx)

1  pricing out different alternatives to assure faster public access to newly filed

2  complaints is irrelevant.  As an initial matter, just because Mr. Wertheimer is not

3  aware of this does not mean that it is not occurring—indeed he testified that he is

4  not aware, not that it is not happening.  And even if this were the case, this does not

5  undermine his position on the need for LPS review of complaints before publication

6  to protect litigant confidentiality under California law.

7  **OBJECTION NO. 15:**

8     "LPSs have no practical way to determine whether any particular complaint

9  might be "newsworthy" in the eyes of Courthouse News Service or any other

10  member of the public, and cannot be expected to — and do not — identify and

11  more promptly publish complaints for this reason.  *** I am not aware of any way

12  for OCSC to comply with these requirements without having LPSs review each

13  new complaint that OCSC receives.  I also am not aware of any way for OCSC to

14  comply with these [confidentiality] requirements in a quicker way, particularly

15  given OCSC's budgetary and fiscal limitations."

16     (Wertheimer Decl. ¶ 12.)

17  **GROUNDS FOR OBJECTION NO. 15:**

18     **Irrelevant testimony; opinion testimony; contradicted by deposition**

19  **testimony; lacks personal knowledge.**  (Fed. R. Evid. 602; Fed. R. Evid. 401, 402;

20  Fed. R. Evid. 701).  The first sentence is irrelevant because Courthouse News

21  Service is not requesting that the OCSC identify and promptly publish only

22  "newsworthy" complaints; it is asking that OCSC make all complaints available the

23  same day they are submitted by the filer.  Additionally, whether the OCSC can be

24  "expected" to more promptly publish complaints than it currently does is a question

25  on which the witness is not competent to opine, because he is not an operational

26  expert.  The witness's last two, conclusory, sentences are in conflict with his sworn

27  deposition testimony.  Mr. Wertheimer testified that OCSC did not consider

28  automated alternatives that other courts use whereby the filer automatically codes

the complaint for publication or confidentiality (as on the federal PACER filing system) and that he was not aware of anyone at OCSC anyone pricing out different alternatives to assure faster public access to newly filed complaints.  (Wertheimer Depo. 170:1-13, 175:9-15, Exhibit 19 to Fetterly Decl.)  Therefore, he lacks any personal knowledge as a foundation to provide an opinion that there is no way for OCSC to comply with these requirements or to comply in a "quicker way."

**RESPONSE TO OBJECTION NO. 15:**

CNS's objections are without merit for the reasons below.

OCSC appreciates CNS's concession that it "is not requesting that the OCSC identify and promptly publish only 'newsworthy' complaints; it is asking that OCSC make all complaints available the same day they are submitted by the filer." This admission renders CNS's focus on and analyses specific to civil complex cases, ECF No. 83, CNS's Opposition to OCSC's Motion for Summary Judgment ("Opp."), 16:3-24; ECF No. 85, CNS's Additional Material Facts ("AMF"), ¶¶ 126-141, irrelevant as a matter of fact because CNS seeks equal access to all civil complaints (complex and non-complex alike).  CNS's focus on complex cases, particularly in light of this admission, can only be intended to confuse or mislead the Court.

Ms. Wertheimer is not providing a legal opinion; he is simply describing his personal knowledge and experience with respect to the LPS review process.  As General Counsel for OCSC, ECF No. 75-4, Wertheimer Decl. ¶ 1, Mr. Wertheimer's job includes familiarity with the administration of the clerk's office. Sullivan Decl. ISO Reply ¶ 6, Ex. D, Wertheimer Depo. 41:22-55:21.  Further, Ms. Ochoa and Ms. Kruse both declared that LPSs review new complaints in the order received and do not review the substance of a complaint to determine newsworthiness or for any other reason.  ECF No. 75-2, Ochoa Decl. ¶ 27; ECF No. 75-3, Kruse Decl. ¶ 10.  Thus, it naturally follows that LPSs do not and cannot be expected to identify and publish "newsworthy" complaints more promptly than

1    other complaints.  Mr. Wertheimer has a direct, personal, and factual basis for

2    making this statement.

3         Mr. Wertheimer's testimony is neither contradictory nor inconsistent with his

4    statement.  Mr. Wertheimer's consideration of other court's practices is irrelevant to

5    what he, as General Counsel of OCSC, understands to be OCSC's obligations under

6    California law and the requisite staff to meet these obligations.  That federal courts

7    or other state courts may use an automated process is irrelevant to how Mr.

8    Wertheimer believes OCSC, as one of the largest and busiest trial court systems in

9    the nation, can meet the needs of litigants while complying with requisite law.

10   Further, other courts may not have to consider and comply with confidentiality

11   requirements similar to those imposed by California law.

12        Finally, Mr. Wertheimer's familiarity with whether anyone at OCSC is

13   pricing out different alternatives to assure faster public access to newly filed

14   complaints is irrelevant.  As an initial matter, just because Mr. Wertheimer is not

15   aware of this does not mean that it is not occurring—indeed he testified that he is

16   not aware, not that it is not happening.  And even if this were the case, this does not

17   undermine his position on the need for LPS review of complaints before publication

18   to protect litigant confidentiality under California law.  In his opinion, given the

19   legal obligations OCSC must comply with and the budgetary constraints, there is

20   "no quicker" way to publish civil unlimited complaints—95.97% of which are

21   made available within eight business hours.

22

23

24

25

26

27

28

1

Dated: January 16, 2018                    JONES DAY

2

3                                           By: /s/ Robert A. Naeve

4                                                Robert A. Naeve

5                                           Attorneys for Defendant
                                            DAVID YAMASAKI

6

7

8       NAI-1503328320v1

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28