Mary-Christine Sungaila (#156795)
mc.sungaila@haynesboone.com
Marco A. Pulido (#308074)
marco.pulido@haynesboone.com
HAYNES AND BOONE, LLP
600 Anton Boulevard, Suite 700
Costa Mesa, CA 92626
Telephone: (949) 202-3062
Facsimile: (949) 202-3162

Attorneys for *Amici Curiae* Orange County Bar Association, National
Association of Women Lawyers, Family Violence Appellate Project, Legal Aid
Society of Orange County, Public Law Center, and Veterans Legal Institute

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| COURTHOUSE NEWS SERVICE,<br><br>        Plaintiff,<br><br>        v.<br><br>DAVID YAMASAKI, IN HIS OFFICIAL CAPACITY AS COURT EXECUTIVE OFFICER/CLERK OF THE ORANGE COUNTY SUPERIOR COURT,<br><br>        Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No. 8-17-CV-126 AG (KESx)<br>**APPLICATION FOR LEAVE TO FILE *AMICI CURIAE* BRIEF AND BRIEF OF *AMICI CURIAE* ORANGE COUNTY BAR ASSOCIATION, NATIONAL ASSOCIATION OF WOMEN LAWYERS, FAMILY VIOLENCE APPELLATE PROJECT, LEGAL AID SOCIETY OF ORANGE COUNTY, PUBLIC LAW CENTER, AND VETERANS LEGAL INSTITUTE IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br>MSJ Date:   January 29, 2018<br>Time:        10:00 a.m.<br>Courtroom: Court 10D, Santa Ana Division |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................3

INTRODUCTION .............................................................................................14

ARGUMENT....................................................................................................16

    A.    Fundamental privacy interests are at stake here. ................................16

    B.    Balancing of interests is proper when the right of access and right to privacy intersect..................................................18

    C.    The privacy interests at stake here override the right to access, and warrant minor delays in public disclosure. ......................21

    D.    The Orange County Superior Court's review of newly filed complaints is narrowly tailored to protect litigants' privacy, particularly that of self-represented litigants who are likely to be less adept at navigating court rules and e-filing procedures. ..............................................................23

CONCLUSION...................................................................................................26

PROOF OF SERVICE..........................................................................................27

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Trucking Ass'ns, Inc.* v. *City of L.A.* (C.D. Cal. Sept. 4, 2008)
No. CV 08-04920 CAS, 2008 WL 4381644 ...................................................... 8

*Castaneda* v. *Olsher* (Cal. 2007)
162 P.3d 610 ...................................................................................... 17

*Courthouse News Serv.* v. *Planet* (9th Cir. 2014)
750 F.3d 776 .................................................................................. 14, 18

*Cox Broad. Corp.* v. *Cohn* (1975)
420 U.S. 469 ...................................................................................... 21

*Craig* v. *Mun. Ct.* (Cal. Ct. App. 1979)
100 Cal. App. 3d 69 ............................................................................. 21

*Ctr. for Biological Diversity* v. *U.S. Bureau of Land Mgmt.* (D. Ariz.
Apr. 12, 2010) No. 09-CV-8011, 2010 WL 1452863 ..................................... 8, 9

*Davies* v. *Broadcom Corp.* (C.D. Cal. 2015)
130 F. Supp. 3d 1343 ............................................................................. 8

*Dhiab* v. *Trump* (D.C. Cir. 2017)
852 F.3d 1087 ..................................................................................... 14

*Gannett Co.* v. *DePasquale* (1979)
443 U.S. 368 ................................................................................. 21, 22

*Griswold* v. *Connecticut* (1965)
381 U.S. 479 ...................................................................................... 16

*Hill* v. *Nat'l Collegiate Athletic Ass'n* (Cal. 1994)
865 P.2d 633 ................................................................................. 16, 17

*Hoptowit* v. *Ray* (9th Cir. 1982)
682 F.2d 1237 ...................................................................................... 8

*In re Crawford* (9th Cir. 1999)
194 F.3d 954 ................................................................................. 16, 19

Case No. 8:17-CV-126-AG
APPLICATION FOR LEAVE TO FILE *AMICI CURIAE* BRIEF AND BRIEF OF *AMICI CURIAE* ORANGE
COUNTY BAR ASSOCIATION, NATIONAL ASSOCIATION OF WOMEN LAWYERS, FAMILY VIOLENCE
APPELLATE PROJECT, LEGAL AID SOCIETY OF ORANGE COUNTY, PUBLIC LAW CENTER, AND
VETERANS LEGAL INSTITUTE IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT.

*In re Globe Newspaper* (1st Cir. 1984)
  729 F.2d 47 ...................................................................................21

*Int'l Ass'n of Machinists & Aerospace Workers* v. *Org. of Petroleum Exporting Countries* (C.D. Cal. 1979)
  477 F. Supp. 553, *aff'd*, (9th Cir. 1981) 649 F.2d 1354 ..................8, 9

*Leigh* v. *Salazar* (9th Cir. 2012)
  677 F.3d 892 .....................................................................14, 18, 23

*NBC Subsidiary* v. *Superior Court* (Cal. 1999)
  980 P.2d 337 ...................................................................................20

*NGV Gaming, Ltd.* v. *Upstream Point Molate, LLC* (N.D. Cal. 2005)
  355 F. Supp. 2d 1061 .......................................................................9

*Oiye* v. *Fox* (Cal. Ct. App. 2012)
  151 Cal. Rptr. 3d 65 ......................................................................20

*Oregonian Pub. Co.* v. *U.S. Dist. Ct.* (9th Cir. 1990)
  920 F.2d 1462 ............................................................15, 19, 22, 23

*Ostergren* v. *Cuccinelli* (4th Cir. 2010)
  615 F.3d 263 ............................................................................23, 24

*Overstock.com* v. *Goldman Sachs Grp.* (Cal. Ct. App. 2014)
  180 Cal. Rptr. 3d 234 ...................................................................20

*Press–Enterprise Co.* v. *Superior Ct.* (1986)
  478 U.S. 1 ...............................................................................14, 18

*Press-Enter. Co.* v. *Superior Ct.* (1984)
  464 U.S. 501 ...................................................................................15

*Sander* v. *State Bar of Cal.* (Cal. 2013)
  314 P.3d 488 ...................................................................................20

*Sonoma Falls Developers, LLC* v. *Nevada Gold & Casinos, Inc.* (N.D. Cal. 2003) 272 F. Supp. 2d 919 .........................................................9

*Times Mirror Co.* v. *United States* (9th Cir. 1989)
  873 F.2d 1210 .................................................................................19

*U.D. Registry, Inc.* v. *Mun. Ct.* (Cal. Ct. App. 1996)
  57 Cal. Rptr. 2d 788 ...................................................................................17

*United States* v. *Cianci* (D.R.I. 2001)
  175 F. Supp. 2d 194.............................................................................21, 22

*United States* v. *Kaczynski* (9th Cir. 1998)
  154 F.3d 930 ...............................................................................................19

*Waller* v. *Georgia* (1984)
  467 U.S. 39 .................................................................................................21

*Ward* v. *Rock Against Racism* (1989)
  491 U.S. 781 ...............................................................................................14

**Statutes, Rules, and Constitution**

Cal. Civ. Proc. Code
  §§ 85–89 ......................................................................................................17
  § 86(a)(4) ....................................................................................................17
  § 340.1 ........................................................................................................21
  § 1161.2 ......................................................................................................17
  §§ 1277 (b)(1)–(3) ..........................................................................15, 16, 21

Cal. Elec. Code
  § 2166 .........................................................................................................21
  § 2166.5 ......................................................................................................21

Cal. Fam. Code § 1818(b) .................................................................................17

Cal. Ins. Code § 1871.7(e)(2) ...........................................................................21

Cal. R. Ct.
  2.254(c) .......................................................................................................17
  2.550 .....................................................................................................17, 20
  2.551(b) .......................................................................................................17
  2.550(d)(1) ..................................................................................................20
  2.570–2.573 ................................................................................................21
  3.54 .............................................................................................................17
  8.26 .............................................................................................................17

Cal. Const. art 1, § 1 .........................................................................................16

## Other Authorities

Thomas M. Clarke, Nat'l Ctr. for State Courts, *Best Practices for
    Court Privacy Policy Formulation* 3 (July 2017) *available at*
    www.csisoft.com/ncsc-report.pdf (last visited Jan. 18, 2018) ..........................25

Court Statistics Report, Judicial Council of California: Total Civil
    Filings, Tbl. 4a (2017), http://www.courts.ca.gov/documents/2017-
    Court-Statistics-Report.pdf (last visited Jan. 18, 2018) ....................................24

Governor's Budget, Expenditures by Program Entire Judicial Branch,
    LJE 4, *available at* http://www.ebudget.ca.gov/2018-
    19/pdf/GovernorsBudget/0010/0250.pdf (last visited Jan. 18, 2018)...............24

Governor's Budget, 3-Yr Expenditures and
    Positions,http://www.ebudget.ca.gov/budget/2018-
    19/#/ExpendituresPositions/0250 (last visited Jan. 18, 2018) ..........................24

Safe at Home 2016 Annual Report, Cal. Sec. of State (2017),
    http://admin.cdn.sos.ca.gov/reports/2016/sah-annual-report.pdf
    (last visited Jan. 18, 2018)................................................................................17

Statewide Civil Fee Schedule, http://www.courts.ca.gov/documents/....................16

Task Force on Self-Represented Litigants, Report to the Judicial
    Council of California, Attachment A at 1-3 (Oct. 2014),
    http://www.courts.ca.gov/partners/documents/EA-
    SRLTaskForce_FinalReport.pdf (last visited Jan. 18, 2018)............................25

Case No. 8:17-CV-126-AG
APPLICATION FOR LEAVE TO FILE *AMICI CURIAE* BRIEF AND BRIEF OF *AMICI CURIAE* ORANGE
COUNTY BAR ASSOCIATION, NATIONAL ASSOCIATION OF WOMEN LAWYERS, FAMILY VIOLENCE
APPELLATE PROJECT, LEGAL AID SOCIETY OF ORANGE COUNTY, PUBLIC LAW CENTER, AND
VETERANS LEGAL INSTITUTE IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT.

Mary-Christine Sungaila (#156795)
mc.sungaila@haynesboone.com
Marco A. Pulido (#308074)
marco.pulido@haynesboone.com
HAYNES AND BOONE, LLP
600 Anton Boulevard, Suite 700
Costa Mesa, CA 92626
Telephone: (949) 202-3062
Facsimile: (949) 202-3162

Attorneys for *Amici Curiae* Orange County Bar Association, National
Association of Women Lawyers, Family Violence Appellate Project, Legal Aid
Society of Orange County, Public Law Center, and Veterans Legal Institute

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| COURTHOUSE NEWS SERVICE,<br><br>Plaintiff,<br><br>v.<br><br>DAVID YAMASAKI, IN HIS OFFICIAL CAPACITY AS COURT EXECUTIVE OFFICER/CLERK OF THE ORANGE COUNTY SUPERIOR COURT,<br><br>Defendant. | Case No. 8-17-CV-126 AG (KESx)<br><br>**APPLICATION FOR LEAVE TO FILE *AMICI CURIAE* BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br><br>MSJ Date:   January 29, 2018<br>Time:          10:00 a.m.<br>Courtroom: Court 10D, Santa Ana<br>                  Division |

7

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT proposed *amici curiae*, the Orange County Bar Association, National Association of Women Lawyers, Family Violence Appellate Project, Legal Aid Society of Orange County, Public Law Center, and Veterans Legal Institute, request permission to file the attached *amici curiae* brief in support of Defendant David Yamasaki, in his official capacity as Court Executive Officer/Clerk of the Orange County Superior Court. Many of these *amici* previously submitted a brief at the preliminary injunction stage, which this Court accepted for filing and referenced in its order denying a preliminary injunction. Docket No. 56 at 2–3. Likewise, this Court should consider this brief at the summary judgment stage. The attached *amici* brief expands on the brief submitted at the preliminary injunction stage and analyzes the evidentiary record developed on summary judgment to further explain why the Orange County Superior Court's review policy satisfies the overriding interests test, assuming this Court finds that this test applies.

District courts have broad discretion to permit third parties to participate in an action as *amicus curiae*. *See Ctr. for Biological Diversity* v. *U.S. Bureau of Land Mgmt.*, No. 09-CV-8011, 2010 WL 1452863, at *2 (D. Ariz. Apr. 12, 2010) (citing *Hoptowit* v. *Ray*, 682 F.2d 1237, 1260 (9th Cir. 1982)). This Court and others in the Central District have repeatedly granted applications for leave to file an *amicus* brief. *See, e.g.*, *Davies* v. *Broadcom Corp.*, 130 F. Supp. 3d 1343, 1347 (C.D. Cal. 2015) (granting Securities and Exchange Commission leave to file an *amicus* brief); *Am. Trucking Ass'ns, Inc.* v. *City of L.A.*, No. CV 08-04920 CAS, 2008 WL 4381644, at *2 (C.D. Cal. Sept. 4, 2008) (finding that "amicus brief may be of assistance to the Court in determination of the substantive issues" and granting leave to participate as *amicus curiae*); *Int'l Ass'n of Machinists & Aerospace Workers* v. *Org. of Petroleum Exporting Countries*, 477 F. Supp. 553,

8

Case No. 8:17-CV-126-AG
APPLICATION FOR LEAVE TO FILE *AMICI CURIAE* BRIEF AND BRIEF OF *AMICI CURIAE* ORANGE COUNTY BAR ASSOCIATION, NATIONAL ASSOCIATION OF WOMEN LAWYERS, FAMILY VIOLENCE APPELLATE PROJECT, LEGAL AID SOCIETY OF ORANGE COUNTY, PUBLIC LAW CENTER, AND VETERANS LEGAL INSTITUTE IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT.

575 (C.D. Cal. 1979) ("With the persistent initiative of plaintiff, aided by the outstanding Amicus curiae briefs . . . , the Court has been able to arrive at a just and legally unassailable position here."), *aff'd*, 649 F.2d 1354 (9th Cir. 1981).

The role of *amicus curiae* is to "provide assistance in a case of general interest, supplement the efforts of counsel in the case, and draw the court's attention to legal arguments that have escaped consideration." *Ctr. for Biological Diversity*, 2010 WL 1452863, at *2. *Amicus curiae* briefs are particularly appropriate when the legal issues in a case "have potential ramifications beyond the parties directly involved." *Sonoma Falls Developers, LLC* v. *Nevada Gold & Casinos, Inc.*, 272 F. Supp. 2d 919, 925 (N.D. Cal. 2003); *NGV Gaming, Ltd.* v. *Upstream Point Molate, LLC*, 355 F. Supp. 2d 1061, 1067 (N.D. Cal. 2005). Other district courts—in addition to this Court—have accepted *amicus curiae* briefs for filing in cases like this, which implicate the First Amendment and privacy considerations. *See, e.g.*, *In re Search of an Apple iPhone Seized During the Execution of a Search Warrant on a Black Lexus IS300, Cal. License Plate #35KGD203*, No. 5:16-cm-0010-SP (C.D. Cal.); *IMDb.com, Inc.* v. *Becerra*, No. 3:16-cv-6535-VC (N.D. Cal.).

The *amici curiae* brief here will assist the Court in determining whether the Orange County Superior Court's ("OCSC") review policy passes constitutional muster under the overriding interests test. Specifically, this brief addresses cases in which courts have weighed an individual's right to privacy against the public's right to access judicial information, and shows why OCSC's review policy— which only delays rather than denies the right of access—is narrowly tailored to serve informational privacy interests that override any right of CNS to obtain immediate access to unlimited civil complaints from the moment they are e-filed.

*Interest of amici curiae.* The Orange County Bar Association (the "Bar") is one of the largest voluntary bar associations in California, with over 8,500

members. It provides a wide variety of programs, services, and opportunities for its attorney members, the judiciary, and the community. The Bar's mission includes enhancing the system of justice and assisting the community served by the Bar. The Bar is a leader in the Orange County legal community, dedicated to engaging with the community and promoting access to justice for all Orange County residents. Thus, the Bar is interested in the impact the Court's summary judgment ruling would have on the litigants that Bar members serve.

The mission of the National Association of Women Lawyers ("NAWL") is to provide leadership, a collective voice, and essential resources to advance women in the legal profession and advocate for the equality of women under the law. Since 1899, NAWL has been empowering women in the legal profession, cultivating a diverse membership dedicated to equality, mutual support, and collective success. As part of its mission, NAWL promotes the interests of women and families by participation as *amicus curiae* in cases impacting their rights. NAWL recognizes the importance that protecting the confidential information of litigants plays in the ability of women and children to pursue legal protection from harm.

Family Violence Appellate Project ("FVAP") is a nonprofit organization dedicated to ensuring, through the appellate legal system, the safety and well-being of domestic violence survivors and their children. FVAP provides legal assistance to domestic violence survivors at the appellate level through direct representation, collaborating with pro bono attorneys, offering training to those who practice family law, and advocating for domestic violence survivors on important appellate issues. FVAP monitors California family law litigation and has identified this case as one that has the potential to impact the interests of domestic violence victims.

Legal Aid Society of Orange County ("LASOC") has provided free legal services to low-income residents in Orange County and Southeast Los Angeles since 1958. With limited resources, LASOC focuses its legal programs and services on the community's most vulnerable population and tries to end clients' cycle of poverty. Within those priority areas, LASOC prioritizes two areas of legal services: representation of domestic violence victims and tenants facing unlawful detainer proceedings. The Orange County Superior Court's confidentiality policy allows victims to keep their contact or home address confidential for their own safety, and it also allows tenants to defend unlawful detainer cases without the eviction visible to future landlords.

LASOC has at least one client who has benefited from the confidentiality policy. LASOC's client had been married nine years to her husband, who sponsored her immigration from India. The marriage quickly turned, and her husband began controlling and abusing her. Her husband has been arrested multiple times and has at least two criminal protective orders issued against him. She was eventually able to obtain a domestic violence restraining order and keep her contact information confidential so that he could not find her. As a result, she was able to get a car and find a full-time job, and will soon be looking for her own place to live.

Public Law Center ("PLC") is Orange County's pro bono law firm. PLC staff and volunteers provide free civil legal services to low-income Orange County residents in the areas of consumer, veterans, small business, immigration, health, housing, and family law. In its work, PLC represents many of the most vulnerable members of our community, including tenants defending unlawful detainer actions and victims of domestic violence in all types of cases. PLC staff and volunteers regularly appear in both limited and unlimited civil cases in the Orange County Superior Court. PLC believes that this Court's ruling on

Defendant Yamasaki's summary judgment motion would significantly impact PLC's clients who must have their information kept confidential by law.

Veterans Legal Institute ("VLI"), which is located in Santa Ana, California, provides pro bono legal assistance to current and former members of the U.S. military who are homeless, at risk, disabled, or low income. VLI strives to fulfill two critical objectives. First, it seeks to remove barriers to housing, healthcare, education, and employment by providing legal services. Second, VLI advocates for increased protections benefitting veterans and military members by educating concerned civilians, decision makers, and attorneys about veterans-related issues.

For the foregoing reasons, *amici curiae* request that the Court permit the filing of the attached *amici curiae* brief in support of Defendant Yamasaki and OCSC.

Respectfully submitted,

Dated: January 19, 2018                         HAYNES AND BOONE, LLP

                                   By:   /s/ Mary-Christine Sungaila

                                         Mary-Christine Sungaila
                                         Counsel for *Amici Curiae*

Mary-Christine Sungaila (#156795)
mc.sungaila@haynesboone.com
Marco A. Pulido (#308074)
marco.pulido@haynesboone.com
HAYNES AND BOONE, LLP
600 Anton Boulevard, Suite 700
Costa Mesa, CA 92626
Telephone: (949) 202-3062
Facsimile: (949) 202-3162

Attorneys for *Amici Curiae* Orange County Bar Association, National
Association of Women Lawyers, Family Violence Appellate Project, Legal Aid
Society of Orange County, Public Law Center, and Veterans Legal Institute

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| COURTHOUSE NEWS SERVICE, | ) Case No. 8-17-CV-126 AG (KESx) |
| Plaintiff, | ) **BRIEF OF *AMICI CURIAE*** |
| | ) **ORANGE COUNTY BAR** |
| v. | ) **ASSOCIATION, NATIONAL** |
| | ) **ASSOCIATION OF WOMEN** |
| DAVID YAMASAKI, IN HIS | ) **LAWYERS, FAMILY VIOLENCE** |
| OFFICIAL CAPACITY AS | ) **APPELLATE PROJECT, LEGAL** |
| COURT EXECUTIVE | ) **AID SOCIETY OF ORANGE** |
| OFFICER/CLERK OF THE | ) **COUNTY, PUBLIC LAW** |
| ORANGE COUNTY SUPERIOR | ) **CENTER, AND VETERANS** |
| COURT, | ) **LEGAL INSTITUTE IN** |
| | ) **SUPPORT OF DEFENDANT'S** |
| Defendant. | ) **MOTION FOR SUMMARY** |
| | ) **JUDGMENT** |
| | ) MSJ Date:   January 29, 2018 |
| | ) Time:       10:00 a.m. |
| | ) Courtroom: Court 10D, Santa Ana |
| | )                  Division |

13

## INTRODUCTION

Defendant Yamasaki discusses at length in his motion for summary judgment whether Courthouse News Service ("CNS") enjoys a qualified right of access to complaints from the moment they are e-filed, and, if so, whether the Orange County Superior Court's review policy passes constitutional muster under the time, place, or manner doctrine. *See* Docket No. 75 ("Def.'s Mot.") at 7-22; *see also Ward* v. *Rock Against Racism*, 491 U.S. 781, 791 (1989); *Press–Enterprise Co.* v. *Superior Ct.* ("*Press–Enterprise II* "), 478 U.S. 1, 8–9 (1986); *Dhiab* v. *Trump*, 852 F.3d 1087, 1099 (D.C. Cir. 2017) (Rogers, J., concurring) (public has, at most, a "qualified" right of access to civil proceedings); *Leigh* v. *Salazar*, 677 F.3d 892, 898 (9th Cir. 2012) (explaining that under *Press-Enterprise II*'s two-step framework, courts first determine whether a qualified right of access exists by assessing (1) "whether the place and process have historically been open to the press and general public" and (2) "whether public access plays a significant positive role in the functioning of the particular process in question").

We do not repeat the discussion of those issues here. Rather, we supplement Defendant Yamasaki's discussion of the overriding interests test, showing that even if CNS enjoys a qualified right to access complaints from the moment they are e-filed, "the government may" still "overcome" that qualified right of access "by demonstrating 'an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest.'" *See Leigh*, 677 F.3d at 898 (quoting *Press–Enterprise II*, 478 U.S. at 9); *see also Courthouse News Serv.* v. *Planet* ("*Planet I*"), 750 F.3d 776, 792–93 n.9 (9th Cir. 2014).

These overriding privacy interests include, among other things, the right of a victim of domestic violence, stalking, or sexual assault to have her "current

legal name" kept "confidential by the court." *See* Cal. Civ. Proc. Code §§ 1277 (b)(1)–(3). Indeed, at the preliminary injunction stage, this Court identified this privacy interest and others and declined to grant CNS injunctive relief, reasoning that if "these newly filed complaints were made immediately available, significant privacy interests would be at risk." Docket No. 56 at 5, 8. This Court also reasoned that CNS could not likely win on the merits because OCSC "timely" provided access to 89% of complaints within 8 business hours, and that any "minor delays" did not violate the First Amendment. *See* Docket No. 56 at 7–8.

Nothing in the evidentiary record here warrants a different outcome on summary judgment. To the contrary, additional data indicates that over 95% of all non-confidential civil unlimited complaints are made public within 8 business hours. In addition, OCSC has come forward with 18 instances between 2016 and 2017 in which confidential information of litigants would have been made public but for OCSC's review policy. Therefore, assuming that OCSC's review policy must satisfy the *Press-Enterprise II* balancing test, this Court should find that (1) OCSC's review policy serves informational privacy interests that override any qualified right of immediate access to e-filed unlimited civil complaints; (2) there is a "substantial probability" that privacy interests would be harmed but for OCSC's review policy; and (3) OCSC's review policy is narrowly tailored, such that no alternatives would adequately protect the privacy interests at stake here. *See Press-Enter. Co.* v. *Superior Ct.* ("*Press-Enterprise I*"), 464 U.S. 501, 510 (1984) (district court's "findings" must be "specific enough that a reviewing court can determine whether the closure order was properly entered"); *see also Oregonian Pub. Co.* v. *U.S. Dist. Ct.*, 920 F.2d 1462, 1466 (9th Cir. 1990).

## ARGUMENT

### A.   Fundamental privacy interests are at stake here.

The United States and California Constitutions recognize an individual right to privacy. *See Griswold* v. *Connecticut*, 381 U.S. 479, 483 (1965); *In re Crawford*, 194 F.3d 954, 958 (9th Cir. 1999); *Hill* v. *Nat'l Collegiate Athletic Ass'n*, 865 P.2d 633, 641 (Cal. 1994). United States "Supreme Court precedents delineate . . . distinct kinds of constitutionally-protected privacy interests" under the U.S. Constitution. *In re Crawford*, 194 F.3d at 958. One such privacy interest is an individual's "interest in avoiding disclosure of personal matters," which is also known as "the right of 'informational privacy.'" *Id.*

Similarly, the California Constitution enumerates "'privacy'" as one "of 'the inalienable rights' of all Californians." *Hill*, 865 P.2d at 641 (quoting Cal. Const. art 1, § 1). A claim for invasion of the state constitutional right to privacy has three elements: "(1) a legally protected privacy interest; (2) a reasonable expectation of privacy in the circumstances; and (3) conduct by defendant constituting a serious invasion of privacy." *Id.* at 675 (George, J., concurring and dissenting).

These constitutional privacy rights are independent of—yet reflected in—the California Rules of Court and numerous California statutes mandating that certain information remain confidential by law. For example, California law, under the Safe at Home program, requires that the "current legal name" of a victim of domestic violence, stalking, or sexual assault who petitions for a name change[1] "shall be kept confidential by the court." Cal. Civ. Proc. Code §§ 1277 (b)(1)–(3). This is particularly significant because Orange County is home to a

---

[1] A name-change petition is classified as an unlimited civil case. *See* Statewide Civil Fee Schedule, http://www.courts.ca.gov/documents/ StatewideCivilFeeSchedule-20151010.pdf (last visited Jan. 18, 2018).

16

high number of Safe at Home program participants. In 2016, for instance, Orange County—of all 58 counties in California—had the second highest number of enrollees in California's Safe at Home program. *See* Safe at Home 2016 Annual Report, Cal. Sec. of State (2017), http://admin.cdn.sos.ca.gov/reports/2016/sah-annual-report.pdf (last visited Jan. 18, 2018).

Likewise, California law requires the confidentiality of family conciliation court petitions,[2] Cal. Fam. Code § 1818(b); juvenile court records, *Castaneda* v. *Olsher*, 162 P.3d 610, 618 (Cal. 2007); and fee waiver applications. *See* Cal. R. Ct. 3.54, 8.26. California law also generally requires, absent a showing of certain stringent requirements, a 60-day delay in public access to the files of unlawful detainer cases (some of which involve more than $25,000 in controversy and therefore constitute unlimited civil cases). *See* Cal. Civ. Proc. Code §§ 86(a)(4), 1161.2; *U.D. Registry, Inc.* v. *Mun. Ct.*, 57 Cal. Rptr. 2d 788, 788 (Cal. Ct. App. 1996).

The California Rules of Court add that the "[r]esponsibilites of [the] court" include providing "public access" to an electronically filed document "unless it is sealed under rule 2.551(b) or made confidential by law." Cal. R. Ct. 2.254(c); *see also* Cal. R. Ct. 2.550 & advisory committee cmt. ("rules" regarding sealed records "do not apply to records that *courts* must keep confidential by law") (emphasis added); *Hill*, 865 P.2d at 641–75 (disclosure of confidential information may expose court staff to claims of invasion of the constitutional right to privacy). Accordingly, certain litigants in unlimited civil cases filed in Orange County enjoy privacy rights in their information under both California and federal law.

---

[2] A family conciliation court petition is not expressly included in the provisions of the California Code of Civil Procedure regarding limited civil jurisdiction and is therefore classified as an unlimited civil case. *See* Cal. Civ. Proc. Code §§ 85–89.

**B.    Balancing of interests is proper when the right of access and right to privacy intersect.**

When the government limits a qualified right of access, the government's restriction may be justified under the First Amendment's time, place, or manner doctrine. *See Planet I*, 750 F.3d at 786, 792–93 n.9. Additionally, a limitation on that qualified right of access may also be appropriate under *Press-Enterprise II*'s balancing test. *See id.* at 792–93 n.9 (acknowledging that there "may be limitations on the public's right of access to judicial proceedings," and citing two legal frameworks for evaluating such limitations: the time, place, or manner doctrine and the *Press-Enterprise II* balancing test).

Defendant Yamasaki argues at length in his motion for summary judgment that CNS does not enjoy a qualified right to access complaints from the moment they are e-filed, and that even if CNS did enjoy such a right, the Orange County Superior Court's review policy passes constitutional muster under the time, place, or manner doctrine—eliminating the need to reach *Press-Enterprise II*'s balancing test. Def.'s Mot. at 7-22. We focus on supplementing Defendant Yamasaki's contention that, even if *Press-Enterprise II*'s balancing test applies, OCSC's review satisfies the overriding interests test. *See id.* at 22-25.

Under that balancing test, "the government may overcome" a qualified right of access "by demonstrating 'an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest.'" *Leigh*, 677 F.3d at 898 (quoting *Press–Enterprise II*, 478 U.S. at 9). The Ninth Circuit has amplified *Press-Enterprise II*'s balancing test, stating that the qualified right of access may be overcome if "(1) closure serves a compelling interest; (2) there is a substantial probability that, in the absence of closure, this compelling interest would be harmed; and (3) there are no alternatives to closure

18

that would adequately protect the compelling interest." *See Oregonian Pub. Co.*, 920 F.2d at 1466.

The Ninth Circuit has applied a balancing test for access to judicial documents in other similar contexts as well, routinely weighing the right to privacy against the interest in public disclosure. For example, in a dispute over whether to publicly disclose a defendant's psychiatric competency report, the Ninth Circuit "balanc[ed] the competing interests of the parties," specifically weighing "the media's need for disclosure" against "[the defendant]'s privacy interests." *United States* v. *Kaczynski*, 154 F.3d 930, 931–32 (9th Cir. 1998). As the *Kaczynski* court explained, in cases involving "the common-law right of access" and "the public's and the media's common-law right to inspect and copy judicial records and documents," "the court must balance the media's asserted need against any asserted reasons for confidentiality." *Id.* at 931.[3]

Similarly, in a dispute brought by the media to obtain search warrants and affidavits during a pre-indictment investigation, the Ninth Circuit held that the privacy interests of the people identified in the warrants and affidavits was a "factor weighing against public access." *Times Mirror Co.* v. *United States*, 873 F.2d 1210, 1211, 1216 (9th Cir. 1989). The Ninth Circuit observed that "[o]ther courts have also taken account of the privacy rights of individuals when considering access requests to judicial documents." *Id.* at 1216; *see also In re Crawford*, 194 F.3d at 958–60 ("weighing" the public's right to access judicial documents against the litigant's informational privacy).

Like the Ninth Circuit, California state courts also weigh these competing rights. For example, the California Supreme Court held that information contained in the State Bar of California's bar admissions database had to be

---

[3] In discussing cases where the right of access was denied, we do not imply that any qualified right of access has been denied—rather than delayed—in this case.

publicly disclosed because of the right of public access, but only if, among other things, the information could be provided in a form that protected applicants' privacy. *Sander* v. *State Bar of Cal.*, 314 P.3d 488, 491, 494–95 (Cal. 2013).

Moreover, when deciding whether to seal a court record, California courts must determine whether "[t]here exists an overriding interest that overcomes the right of public access to the record," and privacy is one such potential overriding interest. Cal. R. Ct. 2.550(d)(1) & advisory committee cmt. (citing *NBC Subsidiary* v. *Superior Court*, 980 P.2d 337, 368 n.46 (Cal. 1999)).[4] For instance, in a dispute over sealing financial information, the California Court of Appeal for the First Appellate District, Division One, conducted a "balancing inquiry" to determine "whether the state-recognized privacy interest in financial information overrides the federal constitutional right of access to court records." *Overstock.com* v. *Goldman Sachs Grp.*, 180 Cal. Rptr. 3d 234, 246–48, 262 (Cal. Ct. App. 2014).

Likewise, in a dispute over sealing medical records, the California Court of Appeal for the Sixth Appellate District "conclude[d] that the public's general right of access to court records . . . must give way to the public's concern about the privacy of medical information," which is protected by the federal constitution, state constitution, and state statute. *Oiye* v. *Fox*, 151 Cal. Rptr. 3d 65, 86, 90–92 (Cal. Ct. App. 2012). The Court of Appeal further stated that "surely the courts are not powerless to prevent court files from becoming the conduits of disclosure of sensitive private information," and "[t]he court's files and records are also subject to the court's control." *Id.* at 91-92.

---

[4] Although CNS does not suggest that it is entitled to access sealed records or information in complaints made confidential by law, authority about sealing records is nonetheless pertinent here because it shows how courts weigh the right of access against the right to privacy in other scenarios.

### C. The privacy interests at stake here override the right to access, and warrant minor delays in public disclosure.

As Defendant Yamasaki underscores, it is undisputed that this case involves only delays—rather than denials—of any qualified right of access. Docket No. 75 at 2. Under U.S. Supreme Court precedent, "*delaying* the release of documents is one method of striking an appropriate balance between" an overriding interest and the "media's right of access." *See United States* v. *Cianci*, 175 F. Supp. 2d 194, 205 (D.R.I. 2001) (emphasis added) (citing *Gannett Co.* v. *DePasquale*, 443 U.S. 368, 393 (1979)); *see generally Waller* v. *Georgia*, 467 U.S. 39, 45 (1984) ("the right to an open trial" "give[s] way" when balanced against "the defendant's right to a fair trial"); *In re Globe Newspaper*, 729 F.2d 47, 57 (1st Cir. 1984) ("harm in delayed access is not as great as that in denied access").

Here, litigants' identified and statutorily recognized privacy interests override any right of CNS to access civil complaints immediately upon filing, without any review of those complaints for privacy and confidentiality concerns. The privacy interests at stake here include name changes for domestic violence, stalking, and sexual assault victims under California's Safe at Home program, as well as at least four other statutes or California Rules of Court protecting civil litigants' privacy. *See* Cal. Civ. Proc. Code §§ 340.1, 1277(b)(1)–(3); Cal. Elec. Code §§ 2166, 2166.5; Cal. Ins. Code § 1871.7(e)(2); Cal R. Ct. 2.570–2.573; *see also Cox Broad. Corp.* v. *Cohn*, 420 U.S. 469, 496 (1975) ("If there are privacy interests to be protected in judicial proceedings, the States must respond by means which avoid public documentation or other exposure of private information."); *Craig* v. *Mun. Ct.*, 100 Cal. App. 3d 69, 77 (Cal. Ct. App. 1979) (observing that courts have a "duty . . . to resist attempts at unauthorized disclosure" of private information).

OCSC's review policy has been effective in preventing the inadvertent disclosure of information. As the evidence submitted by Defendant Yamasaki on summary judgment shows, between 2016 and 2017 OCSC staff caught 18 instances in which confidential complaints or attachments would have been disseminated to the public but for staff review. Docket No. 75-1 at 5. One of these instances involved a name-change petitioner who had trouble navigating the e-filing system and expressed concern that the document type that had been selected was "not a sealed documents thought [sic]." Docket No. 75-2 at 20. Accordingly, without OCSC's review policy, there is a substantial probability that litigants' private information would be at peril of public disclosure. Such constitutional and statutory privacy violations would be particularly serious were CNS to electronically publish these complaints and litigants' private information to a large audience. Moreover, in cases like that of the name-change petitioner identified above, revealing a victim's otherwise protected petition for a name change in order to escape her abuser would threaten her physical safety.

OCSC's review policy effectively prevents such disclosures from happening and appropriately limits any delay in public access. Over 95% of all non-confidential civil unlimited complaints are made public within 8 business hours. *See* Docket No. 75-1 at 7; *DePasquale*, 443 U.S. at 393; *Cianci*, 175 F. Supp. 2d at 205. Within 24 business hours, over 99% of these complaints are made available to the public. Docket No. 75-1 at 7. Therefore, this Court should find that there is a substantial probability that compelling informational privacy interests would be harmed in the absence of OCSC's review policy, which serves privacy interests that override any right of CNS to access unlimited civil complaints from the moment they are e-filed. *See Oregonian Pub. Co.*, 920 F.2d at 1466.

**D.    The Orange County Superior Court's review of newly filed complaints is narrowly tailored to protect litigants' privacy, particularly that of self-represented litigants who are likely to be less adept at navigating court rules and e-filing procedures.**

The Orange County Superior Court's review policy is efficient and narrowly tailored to preserve privacy interests of litigants and third parties, through a combined review process that utilizes both computer software and court staff to prevent the inadvertent disclosure of information made confidential by law. *See Leigh*, 677 F.3d at 898; *Oregonian Pub. Co.*, 920 F.2d at 1466.

At the Orange County Superior Court, court staff review all complaints, in the order received, to determine if they can be accepted for filing and made available to the public to the extent permitted by the Rules of Court or statute. Docket No. 84 at 14-15 ¶ 16. Electronic filings "are submitted online through third party services, which submit a data capture screen for each transaction." Docket No. 75-2 at 8. Court staff then review the "data capture screens," which contain, among other things, "the names of all parties, the names and addresses of all counsel[,] the type and classification of the particular case," and a "Comments" section that is "used to notify" court staff that "a particular complaint should be sealed or held in confidence." *Id.*

Court staff review data-capture screens for complaints and the newly filed complaints themselves for confidential information. Docket No. 75-2 at 8. Court staff conduct this review because an e-filer may improperly classify a complaint, fail to file the complaint under seal, or fail to mark the complaint as confidential. *Id*. Indeed, as noted above, there is at least one instance in 2017 when court staff prevented the inadvertent disclosure of a name-change petition filed by a litigant who apparently had trouble properly e-filing the petition. Docket No. 75-2 at 20.

Hiring additional court staff to review OCSC's massive caseload is untenable on account of dire budgetary constraints. *See Ostergren* v. *Cuccinelli*,

615 F.3d 263, 285 (4th Cir. 2010) (holding that "costs" incurred to avoid disclosure of sensitive information entrusted to the court, among other things, "plainly must factor into [the] narrow-tailoring analysis"). The Orange County Superior Court receives, "on average, 57" new unlimited civil complaint filings "per day, 266 per week, 1,175 per month, and 14,098 a year." Docket No. 75-1 at 2; *see also* Court Statistics Report, Judicial Council of California: Total Civil Filings, Tbl. 4a (2017), http://www.courts.ca.gov/documents/2017-Court-Statistics-Report.pdf (last visited Jan. 18, 2018). And "[o]ver the last six years, OCSC has experienced severe budget restrictions"—requiring staff to be "cut by over 20%"—"and, prior to the imposition of additional constraints, OCSC was projected to incur an $8 million deficit in the coming fiscal year."[5] Docket No. 75-4 at 4. These circumstances continue to show, as this Court previously determined at the preliminary injunction stage, that "scrimping taxpayers" should not be saddled with the bill for hiring additional staff at "the budget-strapped OCSC." *See* Docket No. 56 at 8–9.

Yet, CNS seems to assert that it is wholly plaintiffs' responsibility to ensure that privacy interests are not violated when complaints are filed, and that OCSC can do nothing about it. Docket No. 83 ("Pl's Opp'n") at 16. But the litigants whose privacy rights are at stake—including victims of domestic violence, stalking, and sexual assault; juveniles; and defendants in unlawful

---

[5] The Governor's recently signed proposed budget for fiscal year 2018-2019 increases funding for state trial courts. 2018-2019 Governor's Budget, 3-Yr Expenditures and Positions, *available* at http://www.ebudget.ca.gov/budget/2018-19/#/ExpendituresPositions/0250 (last visited Jan. 18, 2018). But increases in the state trial court budget over the past two years have not cured OCSC's budget deficits, and so budgetary shortfalls seem likely for OCSC in fiscal year 2018-2019 as well. *See id.*; *see also* 2018-2019 Governor's Budget, Expenditures by Program Entire Judicial Branch, LJE 4, *available at* http://www.ebudget.ca.gov/2018-19/pdf/GovernorsBudget/0010/0250.pdf (last visited Jan. 18, 2018).

APPLICATION FOR LEAVE TO FILE *AMICI CURIAE* BRIEF AND BRIEF OF *AMICI CURIAE* ORANGE COUNTY BAR ASSOCIATION, NATIONAL ASSOCIATION OF WOMEN LAWYERS, FAMILY VIOLENCE APPELLATE PROJECT, LEGAL AID SOCIETY OF ORANGE COUNTY, PUBLIC LAW CENTER, AND VETERANS LEGAL INSTITUTE IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT.

detainer suits—are generally some of the most vulnerable of all litigants. Requiring self-represented plaintiff-litigants to conduct the proper assessment of—and know how to protect—their privacy rights is not realistic. And self-representation is common. Indeed, over a quarter of all new civil unlimited complaints in 2017 were filed by *pro se* litigants, Docket No. 75-2 at 9-10, and many *pro se* plaintiffs, especially those whose privacy rights are at stake, are less adept at navigating filing rules aimed at maintaining privacy and confidentiality. *See id.* at 8 ("some . . . complaints are filed by pro se litigants who may not understand that the law requires their pleadings to be filed under seal, let alone that they must properly mark their filings as 'confidential'"); Task Force on Self-Represented Litigants, Report to the Judicial Council of California, Attachment A at 1-3 (Oct. 2014), http://www.courts.ca.gov/partners/documents/EA-SRLTaskForce_FinalReport.pdf  (last visited Jan. 18, 2018)(explaining that the majority of litigants in civil cases are self-represented and that, for example, 90% of tenants in unlawful detainer suits were self-represented in 2003 in California); Thomas M. Clarke, Nat'l Ctr. for State Courts, *Best Practices for Court Privacy Policy Formulation* 3 (July 2017) ("As the proportion of court cases involving self-represented litigants has grown over the last decade or so, the probability that filers will fully comply [with redaction rules] has correspondingly dropped."), *available at* www.csisoft.com/ncsc-report.pdf (last visited Jan. 18, 2018). In any event, the privacy interests of *defendants*—like tenants in eviction proceedings—are at risk too and should not be entrusted solely to the care of plaintiffs.

Case No. 8:17-CV-126-AG
APPLICATION FOR LEAVE TO FILE *AMICI CURIAE* BRIEF AND BRIEF OF *AMICI CURIAE* ORANGE COUNTY BAR ASSOCIATION, NATIONAL ASSOCIATION OF WOMEN LAWYERS, FAMILY VIOLENCE APPELLATE PROJECT, LEGAL AID SOCIETY OF ORANGE COUNTY, PUBLIC LAW CENTER, AND VETERANS LEGAL INSTITUTE IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT.

## CONCLUSION

For the foregoing reasons, and the reasons expressed in OCSC's briefing, the Court should grant Defendant Yamasaki's motion for summary judgment.

Dated: January 19, 2018                    HAYNES AND BOONE, LLP


                                   By:    /s/ Mary-Christine Sungaila

                                          Mary-Christine Sungaila
                                          Counsel for *Amici Curiae*

## PROOF OF SERVICE

I hereby certify that on January 19, 2018, I filed the forgoing **APPLICATION FOR LEAVE TO FILE *AMICI CURIAE* BRIEF AND BRIEF OF *AMICI CURIAE* IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** with the Court through this district's CM/ECF system. Pursuant to Local Rule 5 – 3.3, the "Notice of Electronic Filing" automatically generated by the CM/ECF at the time the document is filed with the system constitutes automatic service of the document on counsel of record who have consented to electronic service.

Dated: January 19, 2018

By:   /s/ Mary-Christine Sungaila

Mary-Christine Sungaila
Counsel for *Amici Curiae*