Robert A. Naeve (State Bar No. 106095)
rnaeve@jonesday.com
Cary D. Sullivan (State Bar No. 228527)
carysullivan@jonesday.com
JONES DAY
3161 Michelson Drive
Suite 800
Irvine, CA  92612.4408
Telephone: +1.949.851.3939
Facsimile:  +1.949.553.7539

Nathaniel P. Garrett (State Bar No. 248211)
ngarrett@jonesday.com
JONES DAY
555 California Street, 26th Floor
San Francisco, CA  94104
Telephone: +1.415.626.3939
Facsimile:  +1.415.875.5700

Attorneys for Defendant
DAVID YAMASAKI

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| COURTHOUSE NEWS SERVICE,<br><br>Plaintiff,<br><br>v.<br><br>DAVID YAMASAKI, in his official capacity as Court Executive Officer/Clerk of the Orange County Superior Court,<br><br>Defendant. | Case No. 8:17-cv-00126 AG (KESx)<br><br>Assigned for all purposes to<br>Hon. Andrew J. Guilford<br><br>**DEFENDANT'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**<br><br>Trial Date:     May 29, 2018<br>Pretrial Conf.:  May 14, 2018<br>Time:           8:30 a.m.<br>Courtroom:      10D |

## INTRODUCTION

This is not a typical Local Rule 16-4 Contentions Memorandum.  This is because Defendant assumes that the Court will enter a final summary judgment order consistent with its detailed Tentative Order, while Plaintiff proceeds as if no such motion had been filed or decided.

1    In the absence of a final order on Defendant's motion for summary judgment,

2    it is difficult for the parties to proceed.  Unclear as to precisely where this case is

3    going, both sides submit an exhibit list that includes virtually every document

4    produced by either side in this case – and then some.  Plaintiff's witness list

5    identifies *42 witnesses*, for a case the parties estimated would take six days to try.

6    In addition, Plaintiff is coy as to what it will contend at trial.  In all pleadings and

7    discovery to date, Plaintiff contended that the First Amendment required state

8    courts to provide access to new complaints upon receipt and before processing – a

9    so-called right of "same-day access."  However, in discussions leading to the filing

10   of our pre-trial submissions, it appears that Plaintiff will attempt to jettison its claim

11   that the First Amendment *requires* same-day access to new complaints, preferring

12   to make the alternative and utterly inconsistent argument that the First Amendment

13   requires access to new complaints within a time period that is longer than one day,

14   although precisely what that time period might be is entirely opaque.

15   For these reasons, we divide this Contentions Memorandum into two basic

16   parts.  We first proceed from the assumption that this Court's final order will mirror

17   in large part its March 1, 2018 Tentative Order.  We will first explain that the

18   court's finding that there is no right of same-day access requires that judgment be

19   entered in favor of defendant, both as a matter of law and fact.  We then will

20   proceed to assume that Plaintiff will be allowed to change legal theories on the eve

21   of trial, over our explicit objection.  Although we still do not know precisely what

22   standard Plaintiff will now be advocating, we will at least provide a framework for

23   how this new and improved theory can be evaluated at trial.

24   **I.    <u>There Is Nothing Left of Plaintiff's Claim To Try.</u>**

25   This is a First Amendment action between plaintiff Courthouse News Service

26   ("CNS" or "Plaintiff") and defendant David Yamasaki, sued in his official capacity

27   as Court Executive Officer and Clerk of the Superior Court of California, County of

28   Orange ("OCSC" or "Defendant").  Pursuant to Local Rule 16-4, OCSC will set

Def's Memo of Contentions of Fact & Law
8:17-cv-00126 AG (KESx)

forth a summary of the issues that *could* be tried if the Court permits CNS to alter the theory of liability despite OCSC's objection.  Preliminarily, however, it must be noted that the reasoning of the Court's tentative summary judgment ruling—if finally adopted—would extinguish the only claim CNS has actually pled and preserved.

**A.    CNS Consistently Asserts that the First Amendment Requires OCSC to Provide Same-Day Access to New Complaints, Before They Are Processed by OCSC Staff.**

CNS has pursued one—and only one—theory of liability in this proceeding, from the date CNS first sent OCSC a demand letter through summary judgment. CNS's theory is that the public has a First Amendment right of ***immediate*** access to newly filed civil unlimited complaints, and that this right of access attaches to each complaint ***upon receipt*** by OCSC.  For the past two years, this has been CNS's sole theory:

- *Pre-Suit Demand Letter:*  In its October 11, 2016 demand letter, CNS demanded that OCSC either "provid[e] access to an electronic queue where complaints can be viewed ***on receipt, before processing***," or that OCSC "provide access to complaints ***on receipt*** by some other means . . . ."  ECF No. 11-2 at 65 (emphasis added).

- *Complaint:*  CNS's complaint alleged that OCSC violated the First Amendment by depriving CNS of its purported right to "access to new civil unlimited complaints ***upon receipt for filing***…."  ECF No. 1 ¶ 48 (emphasis added).

- *Discovery Responses:*  When asked to explain how quickly CNS expects OCSC to provide newly filed civil unlimited complaints for review, CNS responded:

  If complaints are not withheld pending processing and can be viewed during the hours they can be filed, the result is access "soon after they are received by the court," which is timely. [Citation].  That will usually be ***by the end of the day on which they were filed***, if not earlier depending on when they are received by the court.

Def's Memo of Contentions of Fact & Law
8:17-cv-00126 AG (KESx)

- • *Rule 30(b)(6) Corporate Representative Testimony:* William Girdner, CNS's Editor, confirmed during his Rule 30(b)(6) deposition that CNS demands access to complaints upon receipt:

> Q.   So to you, it doesn't matter if the court receives the complaint one minute before it closes, as opposed to receiving it first time -- first thing in the morning? To you, it's not timely if you don't get it, if the court received it that day, correct?
>
> A.   That's correct.  (Girdner Depo. at 45:25 – 46:6.)

- • *CNS's Opposition To OCSC's Motion For Summary Judgment:* Most recently, CNS opposed OCSC's motion for summary judgment on the ground that experience throughout the United States "shows a practice of court clerks … allowing reporters [to] view 'new complaints ***immediately upon … receipt***." ECF No. 83 at 20:4-6 (emphasis in original).  And CNS contended that logic "demands that the qualified right of timely access ***must arise the moment a complaint is received*** by the court…." *Id.* at 24:10-12 (emphasis in original).  CNS summed up its position thusly: "the First Amendment right of access to complaints attaches on receipt by a court…." *Id.* at 28:4-6.

**B.   CNS's First Amendment Theory Of Liability Does Not Survive This Court's Ruling On Summary Judgment.**

On March 1, 2018, this Court entered its detailed tentative order granting in part and denying in part OCSC's motion for summary judgment ("Tentative Order").  As is relevant to these further proceedings, this Court flatly rejected the notion that the *Press-Enterprise* experience and logic tests supported a right of same-day access to new civil unlimited complaints.  This Court held in part as follows:

(a)   When OCSC publicly releases complaints on its website between 4 and 5 p.m., the complaint is considered publicly-available that day, even if the public no longer has access to OCSC's free terminals after 4 p.m.; and

Def's Memo of Contentions of Fact & Law
8:17-cv-00126 AG (KESx)

(b)     The public does not have a right to access new civil complaints on the same day OCSC receives them.

Tentative Order at 41.

This Court's ruling on OCSC's motion for summary judgment dispatched CNS's First Amendment claim in its entirety, both as a matter of law, and as a matter of fact.

### 1.     <u>As a Matter of Law, this Court's Summary Judgment Ruling Obviates the Need for Trial.</u>

The rulings quoted above, if finally adopted, require entry of judgment in favor of OCSC in this action.  As noted above, CNS's sole theory is that the First Amendment requires OCSC to provide "access to new civil complaints ***upon receiving them for filing***, whether or not the clerical tasks associated with the intake of that complaint have been completed."  ECF No. 1 ¶ 23 (emphasis added).  Indeed, CNS demands an injunction prohibiting Defendant from denying access to new civil unlimited jurisdiction complaints "***once they are received by the court for filing***."  *Id.* at 14-15 (emphasis added).

The Court's conclusion that the First Amendment does not require immediate or same-day access is law of the case.  *See In re Flashcom, Inc.*, 503 B.R. 99, 128–29 (C.D. Cal. 2013), *aff'd,* 647 F. App'x 689 (9th Cir. 2016).  Hence, CNS cannot continue to press the sole theory alleged in its complaint – at least not without exposing itself to sanctions.  *See id.*  Nor can CNS now pivot and seek a trial on the alternative theory that the First Amendment requires publication within some determinate number of hours or days – a theory that utterly contradicts CNS's repeated claims for same-day access.  *See Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294–95 (9th Cir. 2000).

In short, there is nothing left of CNS's claim, as pled and argued, to try.  The Court should enter final judgment and CNS, if it desires, should appeal to the Ninth

1    Circuit the only theory it has preserved in this Court: that the First Amendment

2    requires access to civil complaints the moment they are received by the court clerk.

3    **2.    As a Matter of Fact, this Court's Summary Judgment**
     **Ruling Precludes CNS from Prevailing on Its Facial**
4    **Challenge to OCSC's Practice of Reviewing and Processing**
5    **Complaints Prior to Public Release.**

6    The Court's summary judgment reasoning also dispatches of CNS's First

7    Amendment theory on the facts.  That is so because CNS does not challenge

8    OCSC's policy of reviewing and processing complaints prior to public release ***as***

9    ***applied*** to any particular civil complaint.  Instead, CNS challenges whether OCSC

10   ever has the right to conduct a confidentiality review and to otherwise process new

11   civil unlimited complaints prior to releasing them to the public.  In other words,

12   CNS asserts a ***facial challenge*** to OCSC's new complaint review policies and

13   practices, and must meet the exacting standards required of such challenges.

14   Facial challenges are disfavored.  *E.g.*, *Wash. State Grange v. Wash. State*

15   *Republican Party*, 552 U.S. 442, 450-51 (2008).  In the context of First Amendment

16   cases, plaintiffs can prevail on a facial challenge only by establishing either (a) the

17   defendant's policy is unconstitutional in all its applications; or (b) the defendant's

18   policy is unconstitutional in a substantial number of cases, both in an absolute sense

19   and relative to its legitimate sweep.  *New York State Club Ass'n v. City of New*

20   *York*, 487 U.S. 1, 14 (1988); *see also United States v. Salerno*, 481 U.S. 749, 745

21   (1987); *Wash. State Grange*, 552 U.S. at 450 n.6.

22   Under this test, "there must be a realistic danger" that the challenged policy

23   "will significantly compromise recognized First Amendment protections."

24   *Members of City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789,

25   800–01 (1984).  In other words, CNS—as the party challenging Defendant's

26   policy—must demonstrate "from actual fact that a substantial number of instances

27   exist" in which Defendant's policy cannot be applied constitutionally.  *New York*

28   *State Club Ass'n*, 487 U.S. at 14.

Def's Memo of Contentions of Fact & Law
8:17-cv-00126 AG (KESx)

As noted above, this Court has already held that the First Amendment right of access does not require OCSC to provide public access to newly filed civil unlimited complaints on the day they are received.  At a bare minimum, this holding means that OCSC complies with the First Amendment right of access to the extent that it provides public access to these complaints on the next business day after they are received.

OCSC cannot meet the standard required of facial challenges, no matter how the time between filing and public access is measured.  If measured in terms of business hours, OCSC provides access to 95.97% of all new civil unlimited complaints within 8 business hours of receipt, and provides access to virtually *all* (99.5%) within 24 business hours.

| Time Period (2017 to date) | % Published Within 4 Business Hours | % Published Within 8 Business Hours | % Published Within 24 Business Hours |
|---|---|---|---|
| January 2017 | 78.4% | 92.8% | 97.8% |
| February 2017 | 73.5% | 94.9% | 99.1% |
| March 2017 | 81.4% | 95.9% | 99.1% |
| April 2017 | 79.3% | 95.4% | 99.6% |
| May 2017 | 96.6% | 98.7% | 99.8% |
| June 2017 | 66.2% | 94.4% | 99.7% |
| July 2017 | 65.9% | 93.8% | 99.7% |
| August 2017 | 89.1% | 97.9% | 99.8% |
| September 2017 | 89.2% | 98.3% | 100.0% |
| October 2017 through 10/18/2017 | 90.2% | 96.4% | 99.8% |
| **2017 YTD % through 10/18/2017** | **80.97%** | **95.97%** | **99.50%** |

ECF No. 75-1 ¶ 29.

If measured in terms of days, the uncontested facts establish that OCSC provides access to 97.52% of all new civil unlimited complaints within one

business day of receipt, with access being provided to virtually *all* (99.01%) new complaints within two business days.

| Time Period (January 2017 through March 2018) | % Published Within One Business Day of Receipt | % Published Within Two Business Days of Receipt | % Published Within Three Business Days of Receipt |
|---|---|---|---|
| January 2017 | 94.76% | 97.15% | 98.44% |
| February 2017 | 96.95% | 98.65% | 99.01% |
| March 2017 | 97.35% | 98.85% | 99.57% |
| April 2017 | 97.21% | 99.02% | 99.84% |
| May 2017 | 98.87% | 99.70% | 99.85% |
| June 2017 | 97.60% | 99.33% | 99.86% |
| July 2017 | 98.05% | 99.65% | 99.74% |
| August 2017 | 98.94% | 99.57% | 99.78% |
| September 2017 | 99.27% | 99.92% | 100.00% |
| October 2017 | 97.73% | 99.19% | 99.84% |
| November 2017 | 99.42% | 99.84% | 99.92% |
| December 2017 | 97.67% | 99.05% | 99.74% |
| January 2018 | 96.66% | 98.37% | 99.18% |
| February 2018 | 96.00% | 98.53% | 99.84% |
| March 2018 | 95.91% | 98.13% | 99.35% |
| % January 2017 through March 2018 | 97.52% | 99.01% | 99.61% |

Given the plainly legitimate sweep of OCSC's policies, the fact that less than 2.5% of all civil unlimited complaints are delayed by two business days conclusively disproves that OCSC's policy of reviewing complaints prior to release is substantially overbroad, both in an absolute sense and relative to its legitimate sweep.[1]

---

[1] Nor can CNS avoid this conclusion by measuring delays by calendar, rather than business, days, such that a complaint filed on Friday evening before the Memorial Day weekend and published the following Tuesday morning is characterized as a four-day delay. As a matter of "experience," rules governing court deadlines almost universally skip weekends and holidays. *See, e.g.*, Fed. R. Civ. P. 6(a)(1); Cal. Code Civ. Proc. Code §§ 12, 12b; Cal. R. Ct. 1.10. As a matter of "logic," it is illogical to expect state courts across the country to pay staff

Accordingly, OCSC respectfully submits that judgment should be entered in OCSC's behalf in lieu of going to trial.  Nonetheless, if the Court permits CNS to effectively redraft its complaint at this late date, to proceed on the theory that the First Amendment requires access to civil complaints within some as-yet undefined determinate date, OCSC submits the enclosed Memorandum of Contentions of Fact and Law in compliance with Local Civil Rule 16-4.

**II.** **Memorandum of Contentions of Law & Fact, Assuming CNS Is Permitted to Change Its Theory of the Case.**

**A.** **OCSC Objects to Any Attempt by CNS to Change Legal Theories at This Late Date.**

As noted above, CNS's original theory of liability was that OCSC violated the First Amendment by failing to provide "same-day access" to new civil unlimited complaints – the same legal theory it pressed in *Planet, Jackson*, *Brown, Tingling* and other cases it has filed around the country.  As also noted above, CNS seeks to jettison this theory of liability in light of this Court's tentative summary judgment ruling that the First Amendment does not require courts to provide same-day access to new civil unlimited complaints.  Instead, CNS now appears to claim that the First Amendment is more forgiving, and that it gives trial courts some longer period of time – the precise length of which is unknown – in which to release new complaints to the public.  Of course, this longer time period would not survive CNS's original theory of liability, inasmuch as it would not provide "same-day access."

OCSC objects to CNS's last-minute attempt to change theory simply because this Court rejected its same-day access theory on summary judgment. *See Nguyen v. United States,* 792 F.2d 1500, 1503 (9th Cir. 1986) ("'Much of the value of summary judgment procedure in the cases for which it is appropriate . . . would be dissipated if a party were free to rely on one theory in an attempt to defeat a motion

overtime on weekends and holidays to ensure CNS obtains access to civil complaints within a certain number of calendar days.

1  for summary judgment and then, should that theory prove unsound, come back long

2  thereafter and fight on the basis of some other theory.'" (quoting *Freeman v.*

3  *Continental Gin Co.,* 381 F.2d 459, 469-70 (5th Cir. 1967))).

4  Out of an abundance of caution, however, we attempt to address what

5  appears to be CNS's 'new and improved' theory of liability.

6  ### B.  Local Rule 16-4.1(a): Summary of Claim

7  Proceeding under 42 U.S.C. § 1983, CNS's complaint demanded an

8  injunction prohibiting OCSC from denying access to new civil unlimited

9  jurisdiction complaints "once they are received by the court for filing," and sought

10  an award of attorney's fees and costs.  ECF No. 1 at 14-15.  We assume for

11  purposes of this Memorandum that CNS will now seek an injunction prohibiting

12  OCSC from denying access to new civil unlimited complaints after some longer

13  period of time has elapsed.

14  ### C.  Local Rule 16-4.1(b): Claim Elements

15  As we now understand its trial theory, CNS does not claim that its First

16  Amendment rights were violated because it was denied access to any particular

17  proceeding or case file.  Rather, CNS seeks to facially invalidate OCSC's "policy"

18  of processing civil complaints and reviewing them for confidentiality before

19  publication, to the extent that this policy results in a delay of access for some

20  number of days.

21  To prevail on any claim under 42 U.S.C. § 1983 claim, the plaintiff must

22  prove by a preponderance of the evidence that:

23  (1)  The defendant acted under color of state law; and

24
25  (2)  The defendant's acts deprived the plaintiff of its First
     Amendment rights under the United States Constitution.

26  Ninth Circuit, Model Civil Jury Instruction No. 9.3 (Dec. 2017).

27  With respect to the particular alleged constitutional violation here, CNS

28  originally contended that OCSC violated CNS's First Amendment right to access

court records by depriving CNS of its purported right to access new unlimited civil complaints upon receipt, and before administrative processing or confidentiality review.  Assuming the Court permits CNS to alter its theory, and to now claim that the First Amendment requires access to civil complaints within some number of hours or days—albeit some period longer than the day after receipt, which this Court has concluded is constitutionally permissible—CNS must prove by a preponderance of the evidence that:

> (1) Civil complaints have "historically been open to the press and general public" in the manner requested, *i.e.*, before OCSC makes civil complaints available and before administrative processing or a confidentiality review; and

> (2) Providing access to newly-filed unlimited civil complaints within an as-yet undetermined number of hours or days, "plays a significant positive role in the functioning" of the judicial process, even if such access would require OCSC to abandon its administrative processing or confidentiality review.

*Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 8-9 (1986); *Leigh v. Salazar*, 6677 F.3d 892, 900-01 (9th Cir. 2012); *Sullo & Bobbitt, P.L.L.C. v. Milner*, 765 F.3d 388, 392 n.3 (5th Cir. 2014).

Finally, because CNS does not challenge Defendant's policy as-applied to any particular civil complaint—but rather challenges Defendant's policy in all its applications—CNS must prove that Defendant's policy is facially invalid.  To prove that Defendant's policy is facially invalid, CNS must prove by a preponderance of the evidence that:

> (1) Defendant's policy is unconstitutional in all its applications; or

> (2) Defendant's policy is unconstitutional in a substantial number of applications, relative to its legitimate sweep.

*See Salerno*, 481 U.S. at 745 (1987); *Wash. State Grange*, 552 U.S. at 450 n.6.  In other words, if the Court determines that the First Amendment requires courts to

Def's Memo of Contentions of Fact & Law
8:17-cv-00126 AG (KESx)

make new complaints available within a determinate deadline, CNS must prove that OCSC's policy results in a "substantial number" of untimely complaints.

### D. Local Rule 16-4.1(c): Key Evidence in Opposition to Claims

OCSC denies CNS's contention that disclosing civil complaints after administrative processing and a confidentiality review violates the First Amendment.  Defendant provides the public with access to civil complaints faster than civil complaints have historically been open to the public, and logic does not prohibit the OCSC clerk's office from processing complaints and conducting a confidentiality review before making civil unlimited complaints available for public review.

The key evidence in opposition to CNS's First Amendment claim includes the following:

- OCSC is one of the largest and busiest state trial courts in the country, and receives, on average, 14,098 civil unlimited complaints every year – or 57 per day.  ECF No. 75-1 ¶¶ 1-3.

- Since 2013, OCSC has required all litigants, except *pro se* litigants, to file civil complaints electronically, which litigants may do 24-hours a day, seven days a week.  *Id.* ¶ 6; ECF No. 75-4 ¶¶ 3-7.

- OCSC employs five Legal Process Specialists ("LPS") to receive, handle, and review civil unlimited complaints for confidentiality, privacy interests, and compliance with filing requirements before filing and posting them for public viewing.  ECF No. 75-1 ¶ 11.

- LPSs review the data capture screen for new e-filed civil unlimited complaints, as well as the complaints themselves, to ensure that new complaints are properly sealed or otherwise kept confidential.  ECF No. 75-2 ¶ 20.

- From 2016 to present, OCSC identified at least 18 cases in which confidential civil unlimited complaints and/or attachments would have been made public but for LPS review.  ECF No. 75-1 ¶ 21.

- Between January 2017 and March 2018, 97.52% of new e-filed civil unlimited complaints were made available to the public within one business day of receipt.

- With respect to the approximately 2.48% of e-filed civil unlimited complaints that were made available to the public more than one business day after receipt, there are various reasons for the delay unrelated to OCSC's processing time.  For example, complex complaints are held (instead of rejected) by OCSC staff when there are certain errors in the filing, until the plaintiff corrects the filing.  (D. Kruse Depo. at 396:4-22.)  These complaints can show up as delayed by more than one business day if the plaintiff does not promptly correct the problem.

- The public can access court records, including civil unlimited complaints, on public computer terminals located in OCSC's Central Justice Center clerk's office between 8 a.m.-4 p.m. every business day, and between 8 a.m.-5 p.m. every business day in other OCSC justice centers.  ECF No. 75-2 ¶ 32.  The public also can access court records on the court's public website from any computer connected to the internet 24 hours a day, seven days a week.  *Id.* ¶ 33.

- A majority of California courts do not provide same-day access to new civil unlimited complaints.  ECF No. 75-6.

- Over the last six years, OCSC has experienced severe budget restrictions. Staff has been cut by over 20% and, prior to the imposition of additional constraints, OCSC was projected to incur an $8 million deficit in the coming fiscal year.  ECF No. 75-4 ¶ 10.

- Complying with CNS's demand to provide access to civil unlimited complaints immediately (or at least by the end of the day in which a complaint is submitted) would require OCSC to redirect staff from other essential functions and departments of the court to the task of reviewing and publishing civil unlimited complaints, unless OCSC abandons its confidentiality review entirely.  ECF No. 75-2 ¶ 30; ECF No. 75-4 ¶ 10.

**E.     Local Rule 16-4.1(d-f): Defenses OCSC Plans to Pursue**

Defendant plans to pursue the following affirmative defense:

**1.     <u>Reasonable Time, Place, Manner Restriction</u>**

Even if CNS had a First Amendment right to access civil unlimited complaints within a determinate amount of time, and OCSC's policy results in a "substantial number" of untimely complaints, defendant's policy should be upheld as a reasonable time, place, manner restriction.  As this Court already recognized, the time, place, and manner framework—not strict scrutiny—is the applicable test for "mere delays" of access to court records.  Tentative Order at 49.

To establish this affirmative defense, defendant must prove that his policies and practices:

(1)     Serve a significant government interest;

(2)     Are narrowly tailored; and

(3)     Leave open ample alternative channels of communication.

*Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989).

The key evidence in support of this affirmative defense includes:

- Evidence that OCSC processes complaints and conducts a confidentiality review to protect privacy interests before making new civil unlimited complaints available to the public.

- Evidence that OCSC's processing and confidentiality review promote the orderly functioning of the Superior Court.

- Evidence that OCSC's policies and practices are content-neutral.
- Evidence that OCSC's policies and practices have prevented the disclosure of confidential information.
- Evidence that OCSC's policies and practices do not preclude any litigant or member of the public from discussing the contents of civil complaints or the court system generally.

**F.     Local Rule 16-4.1(g): Third Party Statement**

This section is not applicable.

**G.     Local Rule 16-4.1(h): Anticipated Evidentiary Issues**

        **1.     Objections to Exhibits**

Defendant will be filing objections to CNS's proposed exhibits with the proposed Final Pretrial Conference Order, to be lodged May 3, 2018, pursuant to Local Rules 16-6.3 and 16-7.1.

        **2.     Motions *in Limine***

Defendant anticipates filing two motions *in limine*.

First, OCSC anticipates moving to preclude CNS from changing legal theories at trial.

Second, Defendant anticipates moving to strike four witnesses from CNS's trial witness list – James Shimabukuro, Don DeBenedictis, Joe Harries, and Lisa Morris – for failure to adequately disclose any of these witnesses before the close of discovery.

**H.     Local Rule 16-4.1(i): Germane Issues of Law**

Again assuming that this Court permits CNS to change legal theories at this late date, OCSC submits that the following issues of law would be germane to a decision on the merits.

1.   **Issue of Law #1: Whether civil complaints have "historically been open to the press and public" before Defendant makes such complaints available.**

When a plaintiff claims his First Amendment right of access has been violated, the "*Press-Enterprise* test" instructs courts to first ask whether there has been a tradition or history of access to the particular proceeding or record. *Press-Enterprise*, 478 U.S. at 8. To satisfy the "experience" prong of the *Press-Enterprise* test, CNS must do more than establish that the First Amendment grants a right of access to complaints *generally*. Instead, CNS must show that the alleged restrictions Defendant actually imposes upon access to new civil complaints are unconstitutional. *See Leigh*, 677 F.3d at 900-01.

The Court already has ruled that the constitution does not enshrine a same-day right of access to civil complaints. If CNS is permitted to change its theory of the case from a purported right of immediate access, to access within some determinate number of days beyond one day, the evidence will show that, at most, there is a modern tradition of courts providing access to court records "within a reasonable time." Nat'l Ctr. for State Courts, *Developing CCJ/COSCA Guidelines for Public Access to Court Records* at 58 (Oct. 18, 2002). In light of Defendant's obligation to process complaints and review them for confidentiality, OCSC's track record of making 97.52% of new e-filed civil unlimited complaints available to the public within one business day of receipt, and virtually all (99.01%) within two business days, is reasonable.

2.   **Issue of Law #2: Whether access to civil complaints before Defendant makes such complaints available "plays a significant positive role in the functioning" of the judicial process.**

Under the *Press-Enterprise* test, the Court must next examine "whether public access plays a significant positive role in the functioning of the particular

Def's Memo of Contentions of Fact & Law
8:17-cv-00126 AG (KESx)

1   process in question." 478 U.S. at 8. The "logic" prong of the *Press-Enterprise* test

2   does not require courts to provide public access upon receipt.

3       The First Amendment right of access serves to protect the "free discussion of

4   *governmental* affairs." *Courthouse News Serv. v. Planet*, 750 F.3d 776, 787 (9th

5   Cir. 2014) (emphasis added). As this Court observed in its tentative summary

6   judgment order, courts do not act as "umpires," let alone "lawmakers" in "a

7   coordinate branch of *government*," upon submission of a complaint. Tentative

8   Order at 27 (quoting *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 595

9   (1980) (Brennan, J., concurring) (emphasis in original)). Thus, there is no "logic of

10  immediate or same-day access to new complaints." *Id.* at 28.

11      If the Court is inclined to determine the amount of time within which state

12  courts logically must make court records available, Defendant's position is that the

13  qualified First Amendment right of access should attach, at its earliest, when the

14  complaint "is used in some manner by the court 'as a basis for adjudication' of a

15  material controversy.'" *See Mercury Interactive Corp. v. Klein*, 158 Cal. App. 4th

16  60, 68 (2007). Because there is no evidence Defendant has delayed publication of

17  civil complaints until after they are used by courts in the adjudication stages of

18  litigation, CNS's claim fails under the logic prong of the *Press-Enterprise* test.

19              **3.    Issue of Law #3: Whether OCSC's policy is impermissibly**

20                     **overbroad because, when applied, a "substantial number" of**

21                     **complaints are untimely, as judged in relation to the plainly**
                       **legitimate sweep of the policy.**

22      CNS brings a facial challenge under the First Amendment to OCSC's policy

23  of reviewing complaints for confidentiality and engaging in limited processing

24  before publication. As a result, CNS must establish that OCSC's policy is facially

25  unconstitutional because it results in a "substantial number" of untimely

26  complaints, as judged in relation to the policy's plainly-legitimate sweep.

27      As explained above, plaintiffs who facially challenge a governmental policy

28  under the First Amendment must prove "from actual fact that a substantial number

of instances exist" in which Defendant's policy cannot be applied constitutionally. *New York State Club Ass'n*, 487 U.S. at 14. To prevail in this case, therefore, CNS must not only persuade the Court that the First Amendment enshrines a deadline by which civil complaints must be published; it must demonstrate that Defendant's policy results in a "substantial number" of untimely complaints, as judged in relation to the number of complaints that are timely published under Defendant's policy.

Because this Court has already ruled that "timely access to new complaints" does not require "immediate or same-day access," Tentative Order at 23, and because OCSC makes 97.52% of new e-filed civil unlimited complaints available to the public one business day of receipt, CNS cannot prove a "substantial number" of untimely complaints. CNS thus cannot prevail on its facial challenge.

### 4. **Issue of Law #4: Whether OCSC's policy is a valid time, place, and manner restriction.**

If the Court concludes that the First Amendment enshrines a right of access to civil complaints within a determinate number of days, and that OCSC's policy of reviewing complaints before publication results in a "substantial number" of instances in which complaints are not made timely available, then the Court must determine whether OCSC's policy nevertheless is a permissible time, place, and manner restriction. *See Courthouse News Serv. v. Planet*, 750 F.3d 776, 793 n.9 (9th Cir. 2014).

Under this test, a restriction on constitutionally-mandated access is valid if it is narrowly tailored to serve a significant governmental interest, and leaves open ample alternatives for communication. *See Burson v. Freeman*, 504 U.S. 191, 197 (1992). Here, Defendant's policy of processing complaints and reviewing them for confidentiality before publication is narrowly-tailored to serve OCSC's significant interest in protecting confidential information, and leaves open ample alternatives of communication.

Def's Memo of Contentions of Fact & Law
8:17-cv-00126 AG (KESx)

As this Court's tentative summary judgment ruling concluded, OCSC has a significant interest in protecting privacy and "there's a reasonable fit' between that interest and OCSC's privacy review."  Tentative Order at 36.  The Court also concluded that ample alternative channels exist, as evidenced by the fact that "information about new complaints has effectively spread even when access to new complaints was denied…."  *Id.* at 40.

The Court allowed that there might be circumstances where the parties seek to quickly settle the case with a protective order—presumably before the complaint is made public by OCSC—thereby closing down an otherwise-open channel of communication.  *Id.*  Yet OCSC is unaware of such a situation ever occurring, and given the speed in which OCSC is able to publish newly-filed civil complaints, this hypothetical risk is too minimal to justify invalidating the Court's processing policies.

## I.     Local Rule 16-4.3: Bifurcation of Issues

Defendant does not request the bifurcation of any issues.

## J.     Local Rule 16-4.4: Jury Trial

Because CNS seeks only equitable relief—in the form of an injunction and declaration—it has no Seventh Amendment right to a jury trial.  *See City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 719 (1999); *Toyota Motor Sales, U.S.A. Inc. v. Tabari*, 610 F.3d 1171, 1184 (9th Cir. 2010). Accordingly, the parties' claims and defenses are to be tried in a bench trial.

## K.     Local Rule 16-4.5: Attorneys' Fees

Under 42 U.S.C. § 1988(b), the court, in its discretion, may allow the prevailing party a reasonable attorney's fee as part of the costs.  Under § 1988(b), a prevailing defendant is entitled to fees when the plaintiff's claims are "frivolous, unreasonable, or groundless."  *Harris v. Maricopa Cnty. Superior Court*, 631 F.3d 963, 971 (9th Cir. 2011).  Fees may be awarded to a defendant if a plaintiff continues to litigate a § 1983 claim after it became clear the claim was frivolous,

unreasonable, or groundless.  *See Galen v. Cty. of Los Angeles*, 477 F.3d 652, 666
(9th Cir. 2007).  If Defendant prevails, he anticipates seeking fees for all attorney
time incurred responding to CNS's claim that the First Amendment mandates same-
day access to civil complaints after this Court issued its summary judgment ruling,
holding that "timely access to new complaints" does not require "immediate or
same-day access."  Tentative Order at 22.  That ruling forecloses the only claim
alleged in CNS's Complaint, *i.e.*, that CNS has been deprived of its purported right
to receive "access to new civil unlimited complaints upon receipt for filing," ECF
No. 1 ¶ 48, given that OCSC makes 97.52% of new e-filed civil unlimited
complaints available to the public within one business day of receipt, and virtually
all (99.01%) within two business days.  Sanctions would thus be appropriate if CNS
continues to press a theory that this Court already has rejected.  *Flashcom*, 647 F.
App'x at 693.

### L.     Local Rule 16-4.6: Abandonment of Issues

For purposes of this trial only, Defendant has abandoned the following
affirmative defenses as set forth in his Answer to Complaint (ECF No. 31): First,
Second, Third, Fourth, Fifth, Sixth, Eighth, Ninth, Tenth, Eleventh, Twelfth, and
Thirteenth.

Dated: April 23, 2018                              JONES DAY


                                        By: /s/ Robert A. Naeve
                                             Robert A. Naeve

                                        Attorneys for Defendant
                                        DAVID YAMASAKI