John W. Amberg (SBN 108166)
jwamberg@bclplaw.com
Nancy Franco (SBN 294856)
nancy.franco@bclplaw.com
BRYAN CAVE LEIGHTON PAISNER LLP
120 Broadway, Suite 300
Santa Monica, CA 90401-2386
Telephone:  (310) 576-2100
Facsimile:  (310) 576-2200

Jonathan G. Fetterly (SBN 228612)
jon.fetterly@bclplaw.com
BRYAN CAVE LEIGHTON PAISNER LLP
3 Embarcadero Center, 7th Floor
San Francisco, CA 94111
Telephone:  (415) 675-3400
Facsimile:  (415) 675-3434

Attorneys for Plaintiff
COURTHOUSE NEWS SERVICE

## IN THE UNITED STATES DISTRICT COURT
### FOR THE CENTRAL DISTRICT OF CALIFORNIA
### SOUTHERN DIVISION

| | |
|---|---|
| Courthouse News Service,<br><br>Plaintiff,<br><br>vs.<br><br>David Yamasaki, in his official capacity as Court Executive Officer/Clerk of the Orange County Superior Court,<br><br>Defendant. | Case No.  8:17-cv-00126 AG (KESx)<br><br>**TRIAL BRIEF OF PLAINTIFF COURTHOUSE NEWS SERVICE**<br><br>Final Hearing: July 11, 2018 at 9:00 a.m. |

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER 7TH FLOOR
SAN FRANCISCO, CA 94111-4070

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER 7TH FLOOR
SAN FRANCISCO, CA  94111-4070

# TABLE OF CONTENTS

Page

I.  PROCEDURAL BACKGROUND ................................................................  1

II.  CLAIMS AND ISSUES FOR SUMMARY BENCH TRIAL ........................  2

    A.  CNS's Claim And Prayers For Relief ......................................................  3

    B.  Elements Of CNS's Claim And Prayers For Relief ................................  3

    C.  Issues Remaining For Summary Bench Trial After MSJ Order ...............  4

        1.  Application Of "Experience And Logic" Test For Access
            Delays Of More Than One Day ......................................................  5

        2.  Delays At Issue/Extent Of The Burden On The Right Of
            Access ...............................................................................................  9

        3.  Application of TPM To Delays of More Than One Day .................. 11

        4.  Remaining Elements of CNS's § 1983 Claim and Prayers
            For Relief ........................................................................................ 11

    D.  CNS Response Re Defendant's Issues For Trial ..................................... 13

III.  DELAYS IN ACCESS AT OCSC OF MORE THAN ONE DAY
ARE SUBSTANTIAL, ONGOING, AND VIOLATE THE FIRST
AMENDMENT ............................................................................................. 15

IV.  CNS's CLAIM IS BOTH FACIAL AND AS A-APPLIED, AND CNS
MEETS THE REQUIREMENTS FOR BOTH TYPES OF CLAIMS ........... 22

    A.  The Facial Versus As-Applied Distinction Does Not Control The
       Disposition of This Case ......................................................................... 22

    B.  CNS Has Brought An As-Applied Challenge ......................................... 23

    C.  CNS Has Also Brought A Facial Challenge ........................................... 24

CONCLUSION ....................................................................................................... 25

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

**Federal Cases**

4   *Armster v. U.S. District Court*,
5      806 F.2d 1347 (9th Cir. 1986) ............................................................... 14

6   *Chicago Council of Lawyers v. Bauer*,
7      522 F.2d 242 (7th Cir. 1975) ................................................................. 15

8   *Citizens United v. Fed. Election Comm'n*,
       558 U.S. 310 (2010) ............................................................................... 22
9

10  *Courthouse News Serv. v. Brown*,
       2018 WL 318485 (N.D. Ill.  Jan. 8, 2018) ............................................. 16

11
12  *Courthouse News Serv. v. Brown*,
       2018 WL 835220 (N.D. Ill.  Feb. 13, 2018) ........................................... 14

13
14  *Courthouse News Serv. v. Planet*,
       750 F.3d 776 (9th Cir. 2014) .......................................................5, 13, 24

15
16  *Courthouse News Serv. v. Planet*,
       2016 WL 4157210 (C.D. Cal. May 26, 2016) ....................................4, 6

17  *Elgin v. Dep't of Treasury*,
18     567 U.S. 1 (2012) ................................................................................... 22

19  *Eureka Fed. Sav. & Loan Ass'n  v. Am. Cas. Co.*,
       873 F.2d 229 (9th Cir. 1989) ...................................................................4
20

21  *Foti v. City of Menlo Park*,
       146 F.3d 629 (9th Cir. 1998) ................................................................. 24
22

23  *Grove Fresh Distribs., Inc. v. Everfresh Juice Co.*,
       24 F.3d 879 (7th Cir. 1994) ................................................................... 16

24
25  *Hoye v. City of Oakland*,
       653 F.3d 835 (9th Cir. 2011) .........................................................23, 24

26
27  *In re Associated Press*,
       172 Fed. App'x 1 (4th Cir. 2006) .......................................................... 14

28

/ BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER 7TH FLOOR
SAN FRANCISCO, CA  94111-4070

*In re Charlotte Observer*,
     882 F.2d 850 (4th Cir. 1989) .................................................................16

*Isaccson v. Horne*,
     716 F.3d 1213 (9th Cir. 2013) ...............................................................22

*Legal Aid Servs. of Oregon v. Legal Servs. Corp.*,
     608 F.3d 1084 (9th Cir. 2010) ..........................................................22, 23

*Leigh v. Salazar*,
     677 F.3d 892 (9th Cir. 2012) .................................................................24

*Members of City Council of L.A. v. Taxpayers*,
     466 U.S. 789 (1984)..................................................................................25

*New York State Club Ass'n v. City of N.Y.*,
     487 U.S. 1 (1988)......................................................................................25

*Press-Enterprise Co. v. Superior Court*,
     478 U.S. 1 (1986).............................................................................5, 6, 10

*Valley Broad. Co. v. District Court*,
     798 F.2d 1289 (9th Cir. 1986) ................................................................14

**State Cases**

*Iverson v. Super. Ct.*,
     167 Cal. App. 3d 544 (1985) ..................................................................16

**Federal Statutes and Rules**

28 U.S.C. § 2201...............................................................................................3

42 U.S.C. § 1983.....................................................................................1, 5, 11

Fed. R. Civ. P. 26(a)(1)-(2)............................................................................16

**State Statutes and Rules**

Cal. Civ. Proc. Code § 1005 ..........................................................................16

Rule of Court 3.400 .......................................................................................16

/ BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER 7TH FLOOR
SAN FRANCISCO, CA 94111-4070

1

**Other Authorities**

2

Richard H. Fallon, *As-Applied and Facial Challenges and Third-Party Standing*,
   113 Harv. L. Rev. 1321 (2000) .............................................................................22

3

4

Alex Kreit, *Making Sense of Facial and As-Applied Challenges*,
   18 Wm. & Mary Bill Rts. J. 657 (2010) ...............................................................23

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

/ BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER 7TH FLOOR
SAN FRANCISCO, CA 94111-4070

1    Pursuant to Local Rule 16-10 and paragraph 6 of the Court's May 23, 2018

2    Modified Order Granting Joint Request for Summary Bench Trial (ECF 156),

3    Plaintiff Courthouse News Service ("CNS") submits the following trial brief.

# I.
# PROCEDURAL BACKGROUND

On January 24, 2017, CNS filed its complaint against David Yamasaki, in his official capacity as Court Executive Officer/Clerk of the Orange County Superior Court ("OCSC"), seeking declaratory and injunctive relief to address its claim under 42 U.S.C. § 1983 for violation of its First Amendment right of access to new civil unlimited complaints (ECF 1).  On August 7, 2017, the Court issued its order denying CNS's motion for a preliminary injunction (ECF 56), which is currently on appeal (Ninth Cir. No. 17-56331).  On May 9, 2018, the Court issued its Order Granting in Part and Denying in Part Defendant's Summary Judgment Motion (ECF 149) ("MSJ Order").  In its MSJ Order, pp. 43-44, the Court concluded:

(1)    The public doesn't have a right of access to new civil complaints on the same day OCSC receives them.

(2)    When a complaint is released to the public on OCSC's website, access to that complaint is neither delayed nor denied, even if the public no longer has access to OCSC's free terminals.

(3)    Issues of material fact prevent the Court from determining if or when delays longer than one day may violate the First Amendment right of access.

(4)    Issues of material fact prevent the Court from determining that no delay involved in this case violates the First Amendment right of access.

On May 14, 2018, the Court held its pretrial conference in advance of the May 29 trial date originally set for this case,[1] during which the parties and the Court discussed the possibility of a summary bench trial on a stipulated record in lieu of a

/ BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER 7TH FLOOR
SAN FRANCISCO, CA 94111-4070

---

[1] The pretrial conference transcript can be found at ECF 154.  Because it is not yet available on PACER, a copy of the transcript is attached as **Exhibit A** to this brief.

1

live trial.  On May 17, the parties filed their Joint Request for Summary Bench Trial (ECF 152).  On May 23, the Court issued its Modified Order granting that request (ECF 156) ("Modified Order").  Pursuant to the Modified Order, the Court vacated the May 29 trial date and ordered the parties to identify the record for the Summary Bench Trial and submit evidence not already in the record on or before May 25.  On May 25, the parties identified the stipulated record (hereinafter "Trial Record" or "TR"), which consists of the summary judgment record and additional evidence submitted by the parties (ECF 161).[2]  Pursuant to the Modified Order, each party submitted not more than 100 pages of additional evidence.  *Id.*; TR Tabs 1-15.  This additional evidence consists of delay calculations (TR Tabs 1, 15) submitted in response to the Court's questions in the MSJ Order, *see* ECF 149 at 27-28, 40-41, 43-44, excerpts of deposition testimony designated by Defendant (TR Tabs 11-14), and excerpts of deposition testimony counter-designated by CNS (TR Tabs 2-5).  Also on May 25, the parties jointly requested leave to submit foundational evidence in the form of OCSC "turnaround reports," reflecting the dates and times that new civil unlimited complaints e-filed from January 2016 to March 2018 were received by OCSC and made available to the public.  ECF 161 at 11-12; TR Tabs 16-31.  This data forms the basis for both parties' delay calculations (TR Tabs 1, 15).  On May 29, the Court granted the Joint Request.  ECF 163.  A final hearing is set for July 11, during which the parties are to answer questions from the Court and are each allotted one hour for closing argument.  ECF 156.

## II.
## CLAIMS AND ISSUES FOR SUMMARY BENCH TRIAL

CNS's claims, their elements, and the issues that remain to be tried following the MSJ Order are as follows:

---

[2] Citations to portions of the Trial Record already in the record are to ECF number (*e.g.*, TR ECF 98).  Citations to new evidence are to the tab number of the additional evidence binders (*e.g.*, TR Tab 1).

/ BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER 7TH FLOOR
SAN FRANCISCO, CA 94111-4070

/ BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER 7TH FLOOR
SAN FRANCISCO, CA 94111-4070

A.     **CNS's Claim And Prayers For Relief**

CNS's claim and prayers for relief are set forth below.  Following the MSJ Order, the policies and practices of Defendant that remain at issue are those resulting in delays in access to newly filed civil unlimited complaints for more than one day after the day of filing.  Whether delays should be counted in calendar days or business/court days remains at issue for trial.  ECF 151 at 1.

**Count One:**  Defendant's actions under color of state law, including without limitation his policy and practice of withholding newly filed civil unlimited complaints from press and public view until after administrative processing, and the resulting denial of timely access to new civil unlimited complaints upon receipt for filing, deprive CNS, and by extension its subscribers, of their right of access to public court records secured by the First Amendment.  ECF 1, ¶ 48.

**Prayer for Relief 1**:  CNS seeks a permanent injunction against Defendant, including his agents, assistants, successors, employees and all persons acting in concert or cooperation with him, or at his direction or under his control, prohibiting him from continuing his policies that deny CNS timely access to new civil unlimited complaints once they are received by the court for filing, including, inter alia, his practice of denying access to complaints until after processing.  ECF 1, p. 14, ¶ 1.

**Prayer for Relief 2**:  CNS seeks a declaratory judgment pursuant to 28 U.S.C. § 2201 declaring Defendant's policies and practices that delay access to newly filed unlimited civil complaints are unconstitutional under the First and Fourteenth Amendments to the United States Constitution because these policies and practices constitute an effective denial of timely public access to documents that become public court records when received for filing.  ECF 1, pp. 14-15, ¶ 2.

B.     **Elements Of CNS's Claim And Prayers For Relief**

The elements of CNS's claim and prayers for relief are as follows:

**Count 1:**  (1) Defendant, in his official capacity as the Court Executive Officer/Clerk of the Superior Court of California, County of Orange, acted under

3

color of law; and (2) Defendant caused CNS, and by extension its subscribers, to be deprived of their First Amendment right of timely access to new civil unlimited complaints.

**Prayer for Relief 1:** (1) CNS has suffered an irreparable injury; (2) remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (2) considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (3) the public interest would not be disserved by a permanent injunction.

**Prayer for Relief 2:** (1) There is an actual controversy; (2) regarding a matter within federal court subject matter jurisdiction.[3]

The legal authorities addressing the application of these elements to CNS's claim and prayers for relief are addressed in CNS's Memorandum of Contentions of Fact and Law (ECF 135) ("CNS's Memorandum"). The legal analysis remains the same following the MSJ Order, except the delays at issue are those of more than one day, whether measured in calendar days or business days.

## C.   Issues Remaining For Summary Bench Trial After MSJ Order

During the May 14 pretrial conference, the Court informed the parties it "did not want to revisit … issues" already determined by the MSJ Order, Hr. Trans. 7:5-6, and on May 15, 2018, the Court issued its Order Regarding Trial Timing, Trial Procedure, and Motions in Limine (ECF 151) ("May 15 Order"), stating that "[t]he parties may not attempt to relitigate issues decided as a matter of law" in the MSJ Order. Mindful of this directive, CNS has identified four issues that remain for trial: (1) application of the "experience and logic" test to access delays of more than one day; (2) delays at issue, including whether delays should be measured in calendar or

---

[3] *See also Courthouse News Serv. v. Planet*, 2016 WL 4157210, * 9 (C.D. Cal. May 26, 2016) ("'A judicial declaration … "clarifies the parties" legal relations and affords relief from the uncertainty surrounding [a defendant's obligations,' including those under the First Amendment.") (quoting *Eureka Fed. Sav. & Loan Ass'n v. Am. Cas. Co.*, 873 F.2d 229, 232 (9th Cir. 1989)).

4

/ BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER 7TH FLOOR
SAN FRANCISCO, CA 94111-4070

business days, and the extent of the burden of such delays on the right of access; (3) application of the "ample alternative channels" prong of Defendant's time, place and manner ("TPM") affirmative defense to delays of more than one day, whether measured in calendar or business days;[4] and (4) remaining elements of CNS's § 1983 claim and prayers for injunctive and declaratory relief.

1. **Application Of "Experience And Logic" Test For Access Delays Of More Than One Day**

At the pretrial conference, the parties disagreed over whether the "experience and logic" test of *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1 (1986) ("*Press-Enterprise II*) remained at issue for delays of more than one day. CNS told the Court it read the MSJ Order as leaving the issue for trial, Hr. Trans. 24:19-22, *see also id.* at 10:19-24, whereas Defendant expressed the view that "we're done with *Press-Enterprise*." *Id.* at 25:17-18, *see also id.* at 21:15-18. CNS's view that this remains an issue for trial is based on the following:

In its MSJ Order, the Court states that *Courthouse News Serv. v. Planet*, 750 F.3d 776 (9th Cir. 2014) ("*Planet I*") "established that there is a qualified First Amendment right to 'timely' access to new complaints" and that "the Court's first task is ... to determine the definition of 'timely' access." MSJ Order at 16-17. Applying the "experience and logic" test of *Press-Enterprise II* to answer this question, the Court concluded that "the experience and logic test sufficiently establishes only what the definition of timely is *not*" and "the experience and logic

---

[4] Because the MSJ Order appears to make a final determination that strict scrutiny does not apply to the delays at issue in this case, *see* MSJ Order 28-31, CNS does not list strict scrutiny as an issue to be tried. In addition, Defendant did not assert this defense in his pretrial filings. *See* Defendant's Mem. of Contentions of Fact and Law (ECF 140); [Proposed] Final Pretrial Conference Order (ECF 145-1). As explained in CNS's Memorandum, CNS believes strict scrutiny does apply and, to the extent CNS has misread the MSJ Order and Defendant wishes to assert this defense, CNS respectfully submits that the evidence in the Trial Record demonstrates Defendant cannot meet his burden of proof.

5

/ BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER 7TH FLOOR
SAN FRANCISCO, CA 94111-4070

/ BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER 7TH FLOOR
SAN FRANCISCO, CA 94111-4070

test doesn't resolve the meaning of timeliness." *Id*. at 17-18 (emphasis in original). However, the MSJ Order also goes on to find:

> On the one hand, the experience and logic test shows that the public doesn't have a First Amendment right to access new civil complaints on the same day they are submitted to the courts.  Quite the opposite, timely access is provided – at a minimum – when complaints are released the calendar day after they're submitted.  … On the other hand, the experience and logic test establishes that courts don't have a discretionary right to keep complaints from the public until such time as the court clerk is ready or willing to release them.  …  And the question of how long delays can last while still being constitutional remains.

MSJ Order at 28.  While the MSJ Order goes on to turn to the strict scrutiny and time, place and manner ("TPM") analysis for the purposes of Defendant's MSJ, it does not state that the application of the experience and logic test to delays of more than one calendar day has been resolved, and thus appears to leave the issue for trial.

The legal authorities addressing the experience and logic analysis are as set forth in CNS's Memorandum.  ECF 135 at 14-23.  The analysis remains the same following the MSJ Order, except the delays at issue are those of more than one day.[5] *See Planet*, 2016 WL 4157210, at *13, 14, 20 (determining that "the qualified right of timely access must arise the moment a complaint is received by the court, rather than after processing," and finding that right was implicated by delays of "two or more days after they were received," as well as delays "until the next day").

_____

[5] For purposes of evaluating the impact of the inability of the press and public to read new civil unlimited complaints, calendar days are a more appropriate measure than business days.  The harms that follow from ignorance that new civil litigation exists compound as time passes, and that passing time is not suspended on weekends and holidays.  *See infra* Section III; *see also* TR ECF 12-1 (Girdner *Planet* MSJ Reply Decl., ¶ 3).  However, the delays at issue in this case violate the First Amendment whether measured in business days or calendar days.

The Trial Record shows that application of the experience and logic test does not allow delays in access of more than one calendar day without satisfying the requirements for the strict scrutiny or time, place, and manner defenses.  Portions of the Trial Record establishing that civil complaints have traditionally been available to the press and public shortly after filing include:

- *William Girdner* – TR ECF 86 (Girdner MSJ Decl., ¶¶ 2-3, 19, 21-30, 37-41, 44, 92, 95-101, 102-111 & Exh. 2) (various courts); TR ECF 87 (Girdner MSJ Decl., Exhs. 20-22) (same); TR ECF 12-1 (Girdner *Planet* MSJ Decl., ¶¶ 13, 18-19, 25-26, 28-33, 35-36, 38-51, 53-55, 57, 59-60) (same); TR ECF 12-1 (Girdner *Planet* MSJ Reply Decl., ¶ 22)

- *Defendant's Witnesses* – TR Tab 3 (Kruse Depo. 40:24-41:3, 41:6, 41:8-12, 41:14, 41:16-17, 41:19-42:1); TR ECF 91 (Kruse Depo. 34:9-19) (OCSC); TR ECF 91 (Yamasaki Depo. 164:20-165:1, 165:6-12, 250:15-251:8) (Santa Clara Superior)

- *CNS Reporters & Editors* – TR ECF 12 (Decl. of Ryan Abbott, ¶¶ 21-40) (E.D. Pa., Allegheny County Ct. C.P., W.D. Pa.); TR ECF 12 (Decl. of Adam Angione, ¶¶ 9-21, 25-78) (Cook County Cir. Ct. (Chicago), N.D. Ill., Cuyahoga County Ct. C.P. (Cleveland), N.D. Ohio, Hamilton County Ct. C.P. (Cincinnati), S.D. Ohio,  N.Y. County Sup. Ct. (Manhattan), S.D.N.Y., D. N.J.. W.D. Mich.); TR ECF 12 (Decl. of Karina Brown, ¶¶ 3-25) (Multnomah County Ct. (Portland), D. Or., Salt Lake County Dist. Ct., D. Utah); TR ECF 12 (Decl. of Nick Cahill, ¶¶ 4-17) (Sacramento Super. Ct. & E.D. Cal.); TR ECF 12 (Decl. of Sabrina Canfield, ¶¶ 3- 19) (Multnomah County Cir. Ct. (Portland), D. Or., Orleans Parish Civil Dist. Ct. (New Orleans), E.D. La.); TR ECF 12 (Decl. of Gina Carrano, ¶¶ 3-10) (Philadelphia County Ct.); TR ECF 12 (Decl. of Nick Divito, ¶¶ 3-23) (8th Jud. Dist. of Nev. (Las Vegas), D. Nev., Kings County Sup. Ct. (NY), E.D.N.Y.); TR ECF 12 (Decl. of Sergio Frez, ¶ 18-23) (S.D. Cal.); TR ECF 12-1 (Decl. of Jacqueline Holness,

/ BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER 7TH FLOOR
SAN FRANCISCO, CA  94111-4070

¶¶ 3-24) (Fulton County St. Ct., Fulton County Super. Ct. (Atlanta), N.D. Ga.); TR ECF 12-1 (Decl. of Rebekah Kearn, ¶¶ 2-11) (Kern Super. Ct.); TR ECF 12-1 (Decl. of Cameron Langford, ¶¶ 3-17) (Harris County Dist. Ct. (Houston), S.D. Tex.); TR ECF 12-1 (Decl. of David Lee, ¶¶ 3-24) (Dallas County Dist. Ct., N.D. Tex.); TR ECF 12-1 (Decl. of Kevin Lessmiller, ¶¶ 3-11) (Davidson County Circuit Ct., Davidson County Ch. Ct. (Nashville)); TR ECF 12-2 (Decl. of Christopher Marshall, ¶¶ 3-66) (N.D. Cal, 8th Jud. Dist. Nev. (Las Vegas), 2d Jud. Dist. Nev. (Reno), D. Nev., Oahu 1st Cir. Ct., D. Haw., Anchorage Super. Ct., Alameda Super. Ct., Contra Costa Super. Ct., Santa Clara Super. Ct., Solano Super. Ct., San Mateo Super. Ct.); TR ECF 12-2 (Decl. of Andrew Olesko, ¶¶ 2-19) (Wayne County Cir. Ct. (Detroit), E.D. Mich.); TR ECF 12-2 (Decl. of Patrick Pemberton, ¶¶ 3-4, 6-11) (San Luis Obispo Super. Ct.); TR ECF 12-2 (Decl. of Milton Policzer, ¶¶ 2-7) (L.A. Super. Ct.); TR ECF 12-2 (Decl. of Jamie Ross, ¶¶ 3-13) (Maricopa County Super. Ct. (Phoenix), D. Ariz., Colo. Dist. Cts.); TR ECF 12-2 (Decl. of Christine Stuart, ¶¶ 4-17) (Hartford Super. Ct., D. Conn.); TR ECF 12-2 (Decl. of David Tartre, ¶¶ 3-8) (S.F. Super. Ct.); TR ECF 12-2 (Decl. of Madison Venza, ¶¶ 3-37) (Travis County Dist. Ct. (Austin), Tarrant County Dist. Ct. (Forth Worth), E.D. Tex., Okla. County Dist. Ct. (Okla. City), Pulaski County Cir. Ct. (Little Rock), E.D. Ark., W.D. Ark.); TR ECF 12-2 (Decl. of Tracey Walsh, ¶¶ 3-12) (Jefferson County Cir. Ct. (Birmingham), N.D. Ala.); TR ECF 12-2 (Decl. of Elizabeth Warmerdam, ¶¶ 3-15) (Fresno Super. Ct.); TR ECF 12-3 (Decl. of Theodore Wheeler, ¶¶ 3-14) (Douglas County Dist. Ct. (Omaha), D. Neb.); TR ECF 12-3 (Decl. of June Williams, ¶¶ 3-16) (King County Super. Ct. (Seattle), W.D. Wash.); TR ECF 12-3 (Decl. of Molly Willms, ¶¶ 3-22) (Milwaukee County Cir. Ct., E.D. Wis., W.D. Wis.)

/ BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER 7TH FLOOR
SAN FRANCISCO, CA 94111-4070

- *Other Journalists* – TR ECF 12 (Decl. of Robert Drechsel, ¶¶ 4, 34-36) (Otter Tail County St. & Muni. Ct. (MN), Milwaukee County Cir. Ct.); TR ECF 12-2 (Decl. of Pamela Maclean, ¶¶ 3-11) (N.D. Cal., S.F. Super., E.D. Wash., W.D. Wash., S.D.N.Y., E.D. Cal., D. Or., D. Alaska, D. Haw.); TR ECF 12-2 (Decl. of Skip Rimer, ¶¶ 5-6) (Ventura Super. Ct.); TR ECF 12-2 (Decl. of Jeff Sturgeon, ¶¶ 4-15) (Ventura Super. Ct., W.D. Vir.)

Portions of the Trial Record establishing that logic supports access to new civil complaints by at least the day after filing include:

- TR ECF 12-2 (Maclean Decl., ¶ 12) (importance of prompt access to civil complaints); TR ECF 12 (Drechsel Decl., ¶¶ 7, 11-12, 14-18, 20-31, 48-50) (same); TR ECF 12-2 (Sturgeon Decl., ¶ 16) (same)

- TR ECF 12 (Frez Decl., ¶ 17) (example of delayed release of civil complaint of high public interest); TR ECF 12-2 (Tartre Decl., ¶¶ 8-10) (same)

- TR ECF 34 (Girdner Supp. P.I. Decl., ¶¶ 11, 18) (CNS serves as a pool reporter); TR ECF 35 (Girdner Supp. P.I. Decl., Exhs. 6, 7); TR ECF 86 (Girdner MSJ Decl., ¶¶ 11-12, 16)

- TR ECF 34 (Girdner Supp. P.I. Decl., ¶ 17(d) & Exhs. 4, 5); TR ECF 86 (Girdner MSJ Decl., ¶¶ 14-15 & Exh. 1) (examples of CNS reporting)

- TR ECF 34 (Girdner Supp. P.I. Decl., ¶ 17(a) & Exh. 1) (examples of CNS Orange County Reports covering OCSC civil unlimited complaints implicating issues of particular public interest, including health and safety issues)

### 2.    Delays At Issue/Extent Of The Burden On The Right Of Access

Also remaining to be tried are the "delays at issue" and the "extent of the burden on the right of access." MSJ Order at 6-7, 39-41. As the Court explains, to evaluate "the extent of the burden imposed by OCSC's privacy review practice," the court must "answer two related questions: (1) How much access does the practice actually restrict? (2) Does the practice restrict substantially more access than

/ BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER 7TH FLOOR
SAN FRANCISCO, CA 94111-4070

9

necessary?"  The Court then states: "the *Press-Enterprise II* experience and logic analysis showed that the public doesn't have a right of access to complaints on the same day that they are filed.  This means that, whether or not delays of more than one day may ultimately be considered access restrictions, the Court must begin by separating delays of no more than one day from longer delays."  MSJ Order at 40.

The Court said it could not do this on the basis of MSJ record.  As for CNS's statistics, the Court said, they "reflect CNS's position that when a complaint is released after 4 p.m. (including before 5 p.m.) on one day, access to that complaint is delayed until the following business day – which may be several calendar days late."  MSJ Order at 6; *see also id* at 40.  Rejecting this position, the Court determined "that access to complaints released after 4 p.m. on OCSC's public website cannot be deemed delayed or denied after the complaints' release online."  *Id*. at 40; *accord id.* at 43.  The Court also could not "find numbers beyond dispute about one day delays in OCSC's statistics," since OCSC's data was framed in terms of "business hours" and "[u]sing OCSC's methods, a one day delay might be counted in the 'within 8 business hours' or 'within 24 business hours' categories, while complaints released 'within 8 business hours' may be released up to several calendar days after submission."  *Id*. at 41.

Revised statistics computed in accordance with the MSJ Order are discussed in Section III below, together with other Trial Record evidence regarding delays.  These statistics and other evidence reflect the Court's determination "that access to complaints released after 4 p.m. on OCSC's public website cannot be deemed delayed or denied after the complaints' release online."  MSJ Order at 40.  Evidence and statistics are provided for the time periods that were the subject of the MSJ record as well as for the last three months of 2017 and first three months of 2018, which were not in the MSJ record, and also break out the greater delays for complex complaints within all of these relevant time periods.

/ BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER 7TH FLOOR
SAN FRANCISCO, CA 94111-4070

### 3.      Application of TPM To Delays of More Than One Day

In the MSJ Order, the Court states that "[e]ven protected speech is subject to reasonable time, place and manner restrictions if (1) the restrictions are content neutral, (2) they are 'narrowly tailored to serve a significant government interest," and (3) they 'leave open ample alternative channels for communication of the information.'"  MSJ Order at 31 (quotation omitted).  The MSJ Order then resolved elements (1) and (2) in Defendant's favor.  *Id*. at 33-39.  However, the MSJ Order said it could not determine element (3), apparently due to the questions about "the extent of the burden on the right of access" discussed above.  *See id.* at 43 ("the Court cannot conclusively say on this motion that adequate alternative channels to receive information in new complaints exist no matter how long delays last.").  Element (3) thus remains an issue for trial.

### 4.      Remaining Elements of CNS's § 1983 Claim and Prayers For Relief

In addition, certain other elements of CNS's § 1983 claim and prayers for relief remain to be tried:

*Whether Defendant Acted Under Color of Law* – That Defendant acted under color of law is undisputed.  *See* Def.'s Memo. of Contentions of Fact and Law ("Defendant's Memorandum") (ECF 139) at 10-19; *see also* 2017 Order Denying CNS's Motion for a Preliminary Injunction (ECF 56), at 6 ("To succeed on a section 1983 claim, a plaintiff must first show that the defendant was acting … 'under color of law.' … Here, it's clear that Defendant was acting in his official capacity under color of state law while implementing or enforcing OCSC policies that delay access to newly filed complaints.") (citations omitted).  The Trial Record confirms that Defendant acted under color of law.  TR ECF 91 (Yamasaki Depo. 15:21-16:18); TR Tab 5 (Wertheimer Depo. 52:11-53:21).

*Prayer for Injunctive Relief* – As noted on pages 9-10 of CNS's Memorandum, once it is determined CNS is entitled to a judgment in its favor on its § 1983 claim, no further evidence is needed to show that CNS suffered an

/ BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER 7TH FLOOR
SAN FRANCISCO, CA  94111-4070

1    irreparable injury or that remedies available at law are inadequate to compensate for

2    that injury.  However, the Trial Record also shows that delays in access diminish the

3    value of CNS's reports to its subscribers, leading to a loss of goodwill.  TR ECF 86

4    (Girdner MSJ Decl., at ¶ 52); TR ECF 12-1 (Girdner *Planet* MSJ Decl., at ¶ 62; TR

5    ECF 12 (Angione Decl., ¶ 79); TR ECF 12-2 (Pemberton Decl., ¶ 12).

6         As for the balance of hardships and the public interest, the Trial Record

7    shows both factors favor injunctive relief because CNS, its subscribers, and the

8    public (including other non-subscribing media entities who learn about new civil

9    actions through CNS's free web site) will be denied information about new civil

10   actions while they are withheld unless an injunction issues, whereas Defendant has

11   many other alternative means to protect confidentiality interest, including one or

12   more of the methods used by other state and federal courts, such as the examples

13   from federal courts across the country and state courts in New York, Georgia,

14   Nevada, Alabama, Utah, and California (Fresno Superior).  *See* TR ECF 86 (Girdner

15   MSJ Decl., ¶¶ 91-92, 95-101, 102-115); ECF 87 (Girdner MSJ Decl., Exhs. 20-22);

16   TR ECF 12 (Abbott Decl., ¶¶ 15-20, 36-40); TR ECF 12 (Angione Decl, ¶¶ 16-19,

17   37-40, 50-54, 66-71, 77-80); TR ECF 12 (Brown Decl.,  ¶¶ 8, 16-18, 19-22); TR

18   ECF 12 (Canfield Decl., ¶¶ 16- 19); TR ECF 12 (Divito Decl.  ¶¶ 6-11, 18-23) ; TR

19   ECF 12-1 (Holness Decl., ¶¶ 5-14, 20-24); TR ECF 12-1 (Lee Decl., ¶¶ 18-24); TR

20   ECF 12-2 (Marshall Decl., ¶¶ 18, 19-25, 32); TR ECF 12-2 (Olesko Decl., ¶ 19); TR

21   ECF 12-2 (Stuart Decl., ¶ 17); TR ECF 12-2 (Venza Decl., ¶¶ 25, 34, 37); TR ECF

22   12-2 (Walsh Decl., ¶¶ 5-7); TR ECF 12-3 (Wheeler Decl., ¶¶ 12-14); TR ECF 12-3

23   (Williams Decl., ¶¶ 15-16); TR ECF 12-3 (Willms Decl., ¶¶ 21-22); *see also* CNS

24   Memorandum at 26-27.

25        *Prayer for Declaratory Relief* – Since neither party contests jurisdiction, the

26   only issue for trial on CNS's prayer for declaratory relief is whether there is an

27   actual controversy.  There clearly is: Defendant continues to take the position that

28   the press and public do not have a right of access to complaints before they are

/ BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER 7TH FLOOR
SAN FRANCISCO, CA 94111-4070

processed, *see*, *e.g.*, TR Tab 4 (Yamasaki Depo. 173:20, 173:22-174:11); TR Tab 13 (Yamasaki Depo. 179:5-180:7); TR ECF 91 (Yamasaki Depo. 123:21-124:4, 124:6-126:6, 166:14-169:18, 171:4-12, 172:2-23, 175:17-176:12, 177:17-178:2, 179:19-23, 201:6-202:4); TR ECF 91 (Wertheimer Depo. 103:21-105:11, 105:19-106:13, 109:9-13, 109:19-110:12), and Defendant's practice of denying access until after processing delays access to complaints for more than one day, TR Tab 1 (Shimabukuro Decl., ¶¶ 12, 13 & Exh. 2), with delays especially bad for complex complaints.  TR Tab 1 (Shimabukuro Decl., ¶¶ 12, 13, 16 & Exhs. 1, 3).

### D.      CNS Response Re Defendant's Issues For Trial

Based on Defendant's Memorandum (ECF 140), and comments during the pretrial conference, as well as discussions between the parties regarding the concept of a summary bench trial leading to the Joint Request for Summary Bench Trial, it is CNS's understanding Defendant believes there are two additional issues for trial not noted above.  CNS addresses Defendant's contentions on these points as follows:

*Costs to government* – Defendant has informed CNS it believes the issue of costs to the government, as discussed on page 18 of the MSJ Order and at the pretrial hearing, Hr. Trans. 22-23, is also an issue for trial.  But since the Court has informed the parties it does not wish to revisit issues already decided in the MSJ Order, the only issue left to try for which costs would arguably be relevant is in the "balance of hardships" element of CNS's request for injunctive relief, as noted above.  CNS respectfully disagrees that costs to the government should be given more weight in a case involving the First Amendment right of access versus other First Amendment contexts,[6] and, in any event, the Trial Record does not support the

---

[6] *See Planet I*, 750 F.3d at 787 ("CNS's [First Amendment] right of access claim implicates the same fundamental First Amendment interests as a free expression claim, and it equally commands the respect and attention of the federal courts."); *accord id*. at 788-89.  Courts have also rejected the notion that the incremental administrative burdens associated with providing contemporaneous access should override the public and press' First Amendment interests in such access.  *See*,

/ BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER 7TH FLOOR
SAN FRANCISCO, CA  94111-4070

/ BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER 7TH FLOOR
SAN FRANCISCO, CA 94111-4070

premise, Hr. Trans. 23, that the relief CNS seeks would be "very expensive." *See, e.g.,* TR Tab 4 (Yamasaki Depo. 146:2-6) (no consideration of zero-cost solution of requiring confidential documents to be filed in paper); TR ECF 91 (Wertheimer Depo. 171:15-18) (same); TR Tab 4 (Yamasaki Depo.193:3-194:2) (OCSC did not consider cost of any alternatives); TR Tab 4 (Yamasaki Depo. 188:15-189:5, 189:9-13, 189:17, 189:19-20, 189:24-190:6, 190:8-9, 190:12-18, 190:21-22) (pre-processing access need not implicate staffing costs); TR ECF 91 (Yamasaki Depo. 185:1-9, 189:19-20, 189:24-190:3) (same); TR Tab 2 (Ojeda Depo. 72:1-6, 9-24; 77:4-79:8; 79:16-82:14; 83:5-84:8; 84:24-85:6; 91:5-15; 94:19-21; 102:24-103:11; 104:17-22; 105:1, 111:5-112:16, 134:12-15, 134:18-135:22) (existing OCSC CCMS/e-filing functionality could protect confidentiality); TR Tab 11 (Ojeda Depo. 143:13-25) (same); TR ECF 86 (Girdner MSJ Decl., ¶ 118, 122) (illustrating existing functionality); TR Tab 2 (Ojeda Depo. 39:13-22, 40:11-42:7, 47:20-48:17, 55:25-57:23, 143:13-147:12) (implementing e-filing confidentiality safeguards a question not of money but of time for OCSC staff to familiarize themselves with CCMS code, test changes, and coordinate with e-filing vendors); TR ECF 86

---

*e.g., Valley Broad. Co. v. District Court*, 798 F.2d 1289, 1295 (9th Cir. 1986) (given "administratively feasible" available procedures for providing press with tapes, "the district court should have given little, if any, weight to … administrative burdens" in case under common law right of access); *In re Associated Press*, 172 Fed. App'x 1, 5-6 (4th Cir. 2006) (rejecting argument "incremental administrative burdens that would arise from accommodating [the press'] First Amendment right of access" justified denying access to trial exhibits "until after completion of trial"); *Courthouse News Serv. v. Brown*, 2018 WL 835220, *2 (N.D. Ill. Feb. 13, 2018) (need to "devot[e] resources to enabling contemporaneous access to filed documents" did not entitle clerk to delay access to complaints, noting "one might think that a mechanism for compliance with the public's right of access to judicial proceedings is a necessary component of an appropriate e-filing system … and not some sort of a frill"); *see also Armster v. U.S. District Court*, 806 F.2d 1347, 1360 (9th Cir. 1986) ("While we are fully sympathetic to concerns of 'fiscal responsibility,' the Constitution may not be suspended for want of an appropriation.").

1   (Girdner MSJ Decl., ¶ 93) (NY Supreme Court able to implement in-box alternative

2   within six weeks of injunction ordering pre-processing access); TR Tab 13

3   (Yamasaki Depo. 39:3-41:8) (OCSC either will or has already hired staff with

4   necessary expertise).

5          *Facial v. factual* – Defendant's Memorandum claims the MSJ Order

6   precludes CNS from prevailing on its First Amendment claim on the theory that (1)

7   CNS has not made an as-applied challenge and (2) CNS cannot satisfy the

8   requirements for a facial challenge, and Defendant identified this at the pretrial

9   conference as an issue to be tried.  Hr. Trans. at 10:2-4.  CNS disagrees that this is

10  an issue to be tried because the facial versus as-applied distinction does not control

11  the disposition of this case, and, in any event, CNS's First Amendment challenge is

12  both facial *and* as-applied.  To the extent the Court determines this is an issue to be

13  tried, CNS refers the Court to its discussion in Section IV, *infra*.

### III.
### DELAYS IN ACCESS AT OCSC OF MORE THAN ONE DAY ARE SUBSTANTIAL, ONGOING, AND VIOLATE THE FIRST AMENDMENT

16         Defendant's practice of processing new complaints before making them

17  available to the press or public results in substantial and ongoing delays in access

18  beyond one day in violation of CNS's First Amendment rights.

19         Defendant contends that in order to determine the impact of the delays beyond

20  one day, the Court must first decide whether delays should be measured in calendar

21  or business days.  *See* ECF 154, pp. 9, 11 (Ex. A).  CNS maintains that delays

22  should be measured in calendar days because the news cycle does not stop for

23  weekends or holidays, and "it is only when the litigation is … current news that the

24  public's attention can be commanded." *Chicago Council of Lawyers v. Bauer*, 522

25  F.2d 242, 250 (7th Cir. 1975).  *See* TR ECF 12-1 (Girdner Planet MSJ Decl. ¶ 63)

26  and TR ECF 86 (Girdner MSJ Decl. ¶ 53).  It is precisely "because '[t]he

27  newsworthiness of a particular story is often fleeting'" – including, the district court

28

/ BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER 7TH FLOOR
SAN FRANCISCO, CA 94111-4070

in Illinois held, CNS stories about newly filed complaints – that "delaying or postponing disclosure could have 'the same result as complete suppression,'" *Courthouse News Serv. v. Brown,* 2018 WL 318485, *3 (N.D. Ill. Jan. 8, 2018) (quoting *Grove Fresh Distribs., Inc. v. Everfresh Juice Co*., 24 F.3d 893, 879 (7th Cir. 1994)), and "undermines the benefit of public scrutiny." *Grove Fresh,* 24 F.3d at 879; *accord*, *e.g*., *In re Charlotte Observer*, 882 F.2d 850, 856 (4th Cir. 1989). Further, counting delays based on business days runs contrary to rules on computing time, in which every hour or day is counted (not just business hours or days). *See*, *e.g*., Fed. R. Civ. P. 26(a)(1)-(2); *Iverson v. Super. Ct.*, 167 Cal. App. 3d 544, 547-48 (1985) (striking down OCSC rule counting notice under Cal. Civ. Proc. Code § 1005 in "court days" because "'five days' means five *calendar* days") (emphasis in original).

In any event, whether measured in calendar or business days, Defendant's practice of withholding access to new civil complaints until after administrative processing, including confidentiality review, consistently results in delays in access beyond one day, with new civil complaints designated as "complex" (defined by Rule of Court 3.400) experiencing the greatest delays. These delays are demonstrated by so-called "turnaround reports" produced by OCSC for the period of January 2016 through March 2018 that identify the dates and times OCSC received all new unlimited civil complaints e-filed during that period, and the dates and times OCSC made those complaints available to the public. *See* TR Tabs 16-31; *see also* ECF 161, pp. 8-11; ECF 163.

For each complaint identified, the turnaround reports provide a "Receive" date and time and a "Conf." date and time, the difference between which establishes the lapse of time between receipt and availability of the complaint. *See* TR Tabs 16-31. Both CNS and Defendant used these reports as a common data set to calculate delays beyond one day, with CNS calculating them measured in calendar days in

/ BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER 7TH FLOOR
SAN FRANCISCO, CA 94111-4070

16

contrast to the business day calculations submitted by Defendant.  TR Tab 1 (Shimabukuro Decl. ¶¶ 3-4) and TR Tab 15 (Ochoa Decl. ¶ 9).

In light of the MSJ Order, CNS does not apply a 4:00 p.m. cut-off time when calculating days as it previously did when opposing Defendant's MSJ.  Rather, CNS adopts and follows Defendant's approach of using a 24-hour model to determine when a day begins and ends.  Under this approach, a complaint received by OCSC on any given day is treated as made available that same day only if it is processed on the same calendar date it is received.  *See, e.g.,* TR Tab 31, Yamasaki00034908-34933 (complaints "Publicized Same Day of Receipt" in March 2018).  A complaint received for filing after 5:00 p.m. is counted by both parties as delayed if it is not made available the day it is received for filing.  *See, e.g.,* TR Tab 31, Yamasaki00034934 (complaints filed after 5:00 p.m. on 03/01/18 and made available 03/02/18 treated as "Publicized One Business Day After Receipt").  Each subsequent calendar day, including a weekend or holiday, is then counted by CNS when measuring delays based on calendar days.  *See, e.g.,* TR Tab 1 (Shimabukuro Decl. ¶¶ 12-13).  Conversely, only subsequent court days are counted by OCSC when measuring in business days.  *See*, *e.g*., TR Tab 31, Yamasaki00034935 (complaints filed on Fri. 03/02/18 and made available Mon. 03/05/18 treated as "Publicized One Business Day After Receipt").  Using this model, the distinction between calendar and business days applies only when new unlimited civil complaints are delayed by one day or longer, and over a weekend and/or holiday.

The parties' respective statistics demonstrate their use of a common data set and approach.  CNS's calculation of new unlimited civil complaints "Available Day of Receipt" for the period of January 2017 through March 2018 is identical to OCSC's calculation of new unlimited civil complaints "Publicized Same Day of Receipt" during the same period.  *Compare* TR Tab 1, Ex. 2, *with* TR Tab 15,  Ex. A.  However, CNS's calendar day measurements show that during that 15-month period, on average Defendant withheld approximately 11% of all new unlimited

17

civil complaints for more than one calendar day.  Within this period there is a great deal of variability, with access much worse at times.[7]  *See* TR Tab 1, Ex. 2.  Indeed, in the most recent month for which OCSC produced a turnaround report, March 2018, Defendant withheld almost 20% of new civil complaints for more than one calendar day.

The turnaround reports can be used to determine the delays for any period of time, including months, weeks or even days.  For instance, there were 277 new unlimited civil complaints filed during the week of February 19-25, 2018, of which approximately 152 (54.87%) were made available the day of receipt, 79 (28.52%) were delayed one calendar day, and 46 (16.6%) were delayed two or more calendar days.[8]  *See* TR Tab 30.

Delays in access to new civil complex cases were even greater.  The reports produced by OCSC identify new civil complex cases by their "CXC" case number designation.  Applying the same approach discussed above to measure delays for the subset of complex complaints identified on the turnaround reports shows the extent of delays for those cases.[9]  For the period of January 2017 to March 2018, OCSC on average withheld approximately 44% of all new complex civil complaints for more

_____

[7] The percentage of complaints made available two calendar days or more after receipt (i.e., withheld more than one day) is broken down by month at TR Tab 1, Ex. 2, as follows: Jan. 2017 (11.94%), Feb. 2017 (12.53%); Mar. 2017 (13.95%); Apr. 2017 (10.19%); May 2017 (5.58%); Jun. 2017 (14.06%); Jul. 2017 (15.28); Aug. 2017 (6.34%); Sept. 2017 (9.23%); Oct. 2017 (7.37%); Nov. 2017 (10.97%);  Dec. 2017 (10.96%); Jan. 2018 (9.37%); Feb.2018 (11.04%); Mar. 2018 (19.94%).  *See* **Exhibit B** to this brief.

[8] One example of a daily calculation is Feb. 23, 2018, on which 69 complaints were filed, of which approximately 40 (57.97%) were made available the day of receipt, and 29 (42.03%) were delayed two days or more.  *See* TR Tab 30.

[9] CNS's calculations for complex civil complaints exclude cases assigned to Judge Ronald Bauer, who is not on the roster of complex civil judges but whose cases are assigned a CXC case number due to the location of his courtroom.  TR Tab 1 (Shimabukuro Decl. ¶ 15, Exs. 5 and 6); TR ECF 88 (Mendoza Decl. ¶ 29).

18

/ BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER 7TH FLOOR
SAN FRANCISCO, CA 94111-4070

1  than one calendar day.[10]  Even if measured in business days, OCSC still withheld

2  approximately 27% of all new complex civil complaints during this 15 month period

3  for more than one business day.[11]  Under either measurement, OCSC's practice of

4  withholding access to complex civil complaints, which are often the most important

5  and newsworthy cases, cannot withstand constitutional scrutiny.  *See* ECF 86

6  (Girdner Decl., ¶¶ 135-137); ECF 88 (Mendoza Decl., ¶¶ 13, 34-42 & Exs. 7-14)

7  Although both parties submit summaries of their calculations analyzing the

8  voluminous turnaround reports, the Court can determine for itself the extent of the

9  delays for any period of time reflected in the reports using nothing more than the

10  turnaround reports themselves and simple math.

11  For example, delays in access to new e-filed complex civil complaints can be

12  readily ascertained in the manner described above by identifying the complex

13  ("CXC") cases identified on the turnaround reports, categorizing them according to

14  the length of the delay (0 to 5+ days) based on the "Received" date/time and "Conf"

15  date/time, and then adding up the number of complaints within each category per

16  month.  The delays per category per month can be demonstrated as percentages by

17  dividing the number of complex complaints per category each month against the

18

19  [10] The total percentage of complex civil complaints made available two calendar

20  days or more (*i.e.,* withheld more than one calendar day) for each month depicted on
    TR Tab 1, Ex. 3 is: Jan. 2017 (54.84%), Feb. 2017 (21.75%); Mar. 2017 (42.56%);

21  Apr. 2017 (69.76%); May 2017 (21.05%); Jun. 2017 (23.8%); Jul. 2017 (25.81%);
    Aug. 2017 (25%); Sept. 2017 (23.26%); Oct. 2017 (41.31%); Nov. 2017 (26.84%);

22  Dec. 2017 (57.45%); Jan. 2018 (69.77%); Feb. 2018 (95.56%); Mar. 2018 (61.67%).

23  *See* **Exhibit C** to this brief.

24  [11] The total percentage of complex civil complaints made available two business

25  days or more after receipt (*i.e.,* withheld more than one court day) for each month
    depicted on TR Tab 1, Ex. 1, is: Jan. 2017 (45.16%), Feb. 2017 (4.35%); Mar. 2017

26  (29.79%); Apr. 2017 (44.19%); May 2017 (7.89%); Jun. 2017 (14.28%); Jul. 2017

27  (3.23%); Aug. 2017 (2.5%); Sept. 2017 (9.3%); Oct. 2017 (28.25%); Nov. 2017
    (4.88%);  Dec. 2017 (38.3%); Jan. 2018 (62.79%); Feb. 2018 (86.67%); Mar. 2018

28  (36.67%).  See **Exhibit D** to this brief.

total number of complex complaints filed that month.  Excluding the cases assigned to Judge Bauer, the math used to determine delays in access to new complex complaints measured in both calendar and business days during the first three months of 2018 looks like this:

| | **January 2018** Total Complex Cases: 43 | | **February 2018** Total Complex Cases: 45 | | **March 2018** Total Complex Cases: 60 | |
|---|---|---|---|---|---|---|
| **Avail. / Delay** | Total # / % **(Cal. Days)** | Total # / % **(Ct. Days)** | Total # / % **(Cal. Days)** | Total # / % **(Ct. Days)** | Total # / % **(Cal. Days)** | Total # / % **(Ct. Days)** |
| **0 Day** | 3 / 6.98% | 3 / 6.98% | 0 / 0.0% | 0 / 0.0% | 8 / 13.33% | 8 / 13.33% |
| **1 Day** | 10 / 23.26% | 13 / 30.23% | 2 / 4.44% | 6 / 13.33% | 15 / 25% | 30 / 50% |
| **2 Day** | 10 / 23.26% | 14 / 32.56% | 12 / 26.67% | 25 / 55.56% | 2 / 3.33% | 9 / 15% |
| **3 Day** | 4 / 9.30% | 6 / 13.95% | 5 / 11.11% | 14 / 31.11 % | 12 / 20% | 9 / 15% |
| **4 Day** | 2 / 4.65% | 3 / 6.98% | 8 /17.78% | 0 / 0.0% | 10 / 12.67% | 4 / 6.67% |
| **5 +** | 14 / 32.56% | 4 / 9.30% | 18 / 40% | 0 / 0.0% | 13 / 21.67% | 0 / 0.0% |

*See* TR Tab 1 (Shimabukuro Decl. ¶ 16, Exs. 1 and 3).

Using simple division, the table above demonstrates that 59.5% of all complex cases filed during January through March 2018 were withheld by two business days or more (*i.e.*, total complex cases withheld 2 business days or more (88) divided by total complex cases filed (148) equals 59.5%).

Both CNS's and Defendant's statistics prove that delays in access vary over time, and that delays can improve or worsen in response to events, such as in this litigation.  The turnaround reports show that for October 2016, there were approximately 1,187 new e-filed complaints, of which CNS's calculations show 450 (37.9%) were made available the day they were received, 430 (36.23%) were made available the next calendar day, and 307 (25.86) were delayed more than one calendar day.[12]  *See* TR Tab 16 (Yamasaki 00000797-822, 1046-1059, 1173-1186,

---

[12] Per the 2016 turnaround reports, delays over one day during Oct. 2016 measured in calendar days are: two days - 76 complaints (7.89%); three days - 86 complaints

/ BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER 7TH FLOOR
SAN FRANCISCO, CA  94111-4070

1368-1382, 1397-1402).  The week of October 3-9, 2016, was particularly bad with 100 complaints (32.89%) made available the day of receipt, 142 (46.71%) delayed one calendar day, and 62 (20.39%) delayed more than on calendar day.  *Id.*

CNS sent a letter to Defendant on October 11, 2016 (TR ECF 86, ¶ 85, Ex. 16), and by the time CNS commenced this lawsuit in January 2017, OCSC had significantly stepped up its efforts, as 2017 saw increased turnaround times, and decreased delays.  *See* TR Tab 1, Ex. 2.  However, in apparent response to the Court's tentative ruling on Defendant's motion for summary judgment issued on March 1, 2018, the number of cases made available the day of filing fell dramatically in March 2018, with delays that month resembling the delays from October 2016, before CNS sent its letter and filed this lawsuit.  *Id.*

Defendant acknowledges that the time required to process new complaints is subject to numerous other factors that OCSC deems equally if not more important than providing timely access to new complaints.  *See* TR Tab 15 (Ochoa Decl. ¶ 3).  It is not surprising then that a ruling by the Court that delays of more than one day do not violate the First Amendment would result in additional and greater delays extending beyond one day.  The fluctuating nature of these delays further demonstrates that without an order enjoining Defendant's practices and declaring them unconstitutional the delays in access at OCSC can and likely will worsen over time.  *See* ECF 86 (Girdner Decl., ¶¶ 129-132); *see also* ECF 12, Exh. 14 (Krolak Decl., ¶¶ 33-34).

/ BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER 7TH FLOOR
SAN FRANCISCO, CA 94111-4070

(10.53%); four days - 90 complaints (10.53%); five or more days - 55 complaints (4.63%).  *See* TR Tab 30.  This is just one example among many from the turnaround reports.

21

**IV.**
**CNS's CLAIM IS BOTH FACIAL AND AS-APPLIED, AND CNS**
**MEETS THE REQUIREMENTS FOR BOTH TYPES OF CLAIMS**

In an effort to avoid injunctive or declaratory relief that would constrain OCSC from its practice of withholding access until after administrative processing, including confidentiality review, however long that may take, Defendant's Memorandum argues, for the first time in this case, that CNS's First Amendment claim is not as-applied, and that CNS cannot meet the requirements for facial challenges for delays beyond one day.  Def's Mem. at 6-8, 11, 17-18.  As shown below, both premises are wrong, as is the assertion that the distinction between as-applied and facial claims controls the disposition of this case.

**A.     The Facial Versus As-Applied Distinction Does Not Control The**
**Disposition Of This Case**

As the Supreme Court recently recognized, "the distinction between facial and as-applied challenges is not so well defined that it has some automatic effect or that it must always control the pleadings and disposition in every case involving a constitutional challenge."  *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 331 (2010); *accord Elgin v. Dep't of Treasury*, 567 U.S. 1, 15 (2012) (quoting *Citizens United* for same point).  While the "distinction is both instructive and necessary, … '[o]nce a case is brought, no general categorical line bars a court from making broader pronouncements of invalidity in properly "as-applied" cases.  Nor is there a distinctive class of "facial challenge" cases in which the court is required to do so.'"  *Citizens United*, 558 U.S. at 331 (quoting Richard H. Fallon, J., *As-Applied and Facial Challenges and Third-Party Standing*, 113 Harv. L. Rev. 1321, 1339 (2000)); *accord, e.g.*, *Isaccson v. Horne*, 716 F.3d 1213, 1230 (9th Cir. 2013) (quoting *Citizens United*).

While "'[f]acial and as-applied challenges differ in the extent to which the invalidity" of the statute need be demonstrated, *id*. (quoting *Legal Aid Servs. of Oregon v. Legal Servs. Corp*., 608 F.3d 1084, 1096 (9th Cir. 2010)), "[t]he

/ BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER 7TH FLOOR
SAN FRANCISCO, CA  94111-4070

22

1    substantive legal tests used in facial and as-applied challenges are 'invariant.'"  *Id*.

2    (quoting *Hoye v. City of Oakland*, 653 F.3d 835, 857 (9th Cir. 2011)).  Thus,

3    regardless of whether a particular challenge is facial or factual, the "underlying

4    constitutional standard" is the same.  *Legal Aid Servs*., 608 F.3d at 1096.[13]

5    **B.    <u>CNS Has Brought An As-Applied Challenge</u>**

6         Defendant's Memorandum contends CNS's First Amendment claim is not as-

7    applied because "CNS does not challenge Defendant's policy as-applied to any

8    particular civil complaint – but rather challenges Defendant's policy in all of its

9    applications."  Def's Mem. at 11; *see also id*. at 6.  Defendant offers no legal

10   citations to support this theory, and it is plainly wrong.

11        CNS seeks injunctive and declaratory relief, on behalf of itself and its

12   subscribers, to address Defendant's "policy and practice of withholding newly filed

13   civil unlimited complaints from press and public view until after administrative

14   processing, and the resulting denial of timely access to new civil complaints" –

15   Complaint ¶ 48; *see also id*., Prayer for Relief ¶ 1.  The fact it is not just one

16   "particular civil complaint" that is affected by this policy and practice, but rather

17   many complaints on an ongoing basis, does not mean that CNS has not brought an

18   as-applied claim.

19        "An as-applied First Amendment challenge contends that a given …

20   regulation is unconstitutional as it has been applied to a litigant's particular speech

21   activity."  *Legal Aid Servs.*, 608 F.3d at 1096; *see also Hoye*, 653 F.3d at 857

22   (plaintiff brings "a paradigmatic as-applied challenge, arguing that it is

23   unconstitutional to apply the Ordinance to him because, given all the circumstances,

24   _____

25   [13] Other commentators have similarly observed that "the distinction between facial
     and as-applied challenges is not as clear-cut as it is traditionally made out to be,"
26   and warned that the distinction should not "obscure and deflect attention from the
     real issues at the heart of each."  Alex Kreit, *Making Sense of Facial and As-Applied*
27   *Challenges*, 18 Wm. & Mary Bill Rts. J. 657, 662-63 (2010) (discussing cases and
     commentary).
28

/ BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER 7TH FLOOR
SAN FRANCISCO, CA  94111-4070

23

1   his ability to communicate is unduly constricted.").  Where, as here, CNS visits

2   OCSC on a daily basis for the express purpose of reviewing newly filed unlimited

3   civil complaints so it can provide news coverage about them to its subscribers and

4   others – including readers of its web site – and CNS has alleged that OCSC practice

5   of delaying access to new complaints until after processing restricts its "ability to

6   communicate," *Hoye*, 653 F.3d at 857, it is clear CNS has brought an as-applied

7   challenge.  *See Planet I*, 750 F.3d at 787-88 ("The purpose of CNS's effort to timely

8   access filed unlimited civil complaints is to report on whatever newsworthy content

9   they contain, and CNS cannot report on complaints [OCSC] withholds.")

10  **C.**     **CNS Has Also Brought A Facial Challenge**

11         While "[a]s-applied challenges are the most common type of challenges to

12  restrictions on speech activity," they "may be coupled with facial challenges," *Foti*

13  *v. City of Menlo Park*, 146 F.3d 629, 635 (9th Cir. 1998), and CNS's challenge is

14  facial as well.  This is because OCSC's policy and practice of withholding access

15  until after processing "seeks to prohibit such a broad range of protected conduct that

16  it is constitutionally overbroad," *Hoye*, 653 F.3d at 857, and "may inhibit the

17  constitutionally protected speech" not just of CNS, but also "third parties."  *Foti*,

18  146 F.3d at 635.  As the Ninth Circuit instructed in *Planet I*, if OCSC's "policy of

19  withholding filings violates CNS's *First Amendment* rights, it also violates the rights

20  of anyone else who has tried to access a complaint … More important, if CNS's

21  protected expression is delayed while the litigation proceeds in state court, then the

22  expression of the newspapers, lawyers, libraries and others who rely on CNS for

23  information will also be stifled.  CNS is a 'surrogate[] for the public,' … and the

24  public cannot discuss the content of unlimited civil complaints about which it has no

25  information."  *Planet I*, 750 F.3d at 788 (quoting *Leigh v. Salazar*, 677 F.3d 892,

26  897 (9th Cir. 2012)); *accord id*. at 786 ("The news media's right of access to

27  judicial proceedings is essential not only to its own free expression, but also to the

28  public's.").  Certainly, there is a "realistic danger" that Defendant's practice and

/ BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER 7TH FLOOR
SAN FRANCISCO, CA 94111-4070

24

1   policy of withholding access to new complaints until after processing will

2   "significantly compromise recognized First Amendment protections of parties not

3   before the Court" for the purposes of a facial challenge.  *Members of City Council of*

4   *L.A. v. Taxpayers*, 466 U.S. 789, 800-01 (1984).  And it is also true, based on the

5   delays discussed in Section III above and as evidenced in the Trial Record, "that a

6   substantial number of instances exist" in which Defendant's policy of withholding

7   complaints until after processing "cannot be applied constitutionally."  *New York*

8   *State Club Ass'n v. City of N.Y.*, 487 U.S. 1, 14 (1988).  This is both true as a

9   general matter and as applied to complex complaints, which represent some of the

10  most important new cases and are the most delayed.

## CONCLUSION

12       For the foregoing reasons, Plaintiff CNS respectfully submits that that the law

13  and the Trial Record demonstrate that Defendant's practice of withholding access to

14  newly filed complaints until after processing, including confidentiality review,

15  violates the First Amendment right of timely access to complaints with respect to

16  delays in access of more than one calendar day, and that appropriate declaratory

17  relief should issue as well as an injunction prohibiting Defendant from continuing to

18  enforce this practice and requiring Defendant to provide timely access.

19  Dated:  May 29, 2018                **BRYAN CAVE LLP**

20                                       By: /s/ John W. Amberg

21                                           John W. Amberg
                                         Attorneys for Plaintiff
22                                       COURTHOUSE NEWS SERVICE

/ BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER 7TH FLOOR
SAN FRANCISCO, CA 94111-4070